PETER J. ELIASBERG, SBN 189110
 peliasberg@aclu-sc.org
AHILAN ARULANANTHAM, SBN 237841
 aarulanantham@aclu-sc.org
PETER BIBRING, SBN 223981
 pbibring@aclu-sc.org
JENNIFER PASQUARELLA, SBN 263241
jpasquarella@aclu-sc.org
KATHERINE TRAVERSO, SBN 290559
ktraverso@aclu-sc.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
Phone:  (213) 977-9500
Facsimile:  (213) 977-5299

Attorneys for Plaintiffs
(continued on next page)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DUNCAN ROY et al.<br><br>            Plaintiffs,<br><br>        vs.<br><br>COUNTY OF LOS ANGELES;<br>JIM MCDONNELL, et al.,<br><br>                Defendants. | Case No. CV 12-09012 BRO (FFMx)<br><br>Honorable Beverly Reid O'Connell<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:          July 13, 2015<br>Time:          1:30 p.m.<br>Courtroom:  14 |

BARRETT S. LITT, SBN 45527
 blitt@kmbllaw.com
LINDSAY B. BATTLES, SBN 262862
 lbattles@kmbllaw.com
KAYE, MCLANE, BEDNARSKI &
LITT
234 Colorado Blvd., Ste. 230
Pasadena, CA 91101
Telephone: (626) 844-7600 x112
Facsimile: (626) 844-7670

CHRIS NEWMAN, SBN 255616
 newman@ndlon.org
JESSICA KARP BANSAL, SBN 277347
 jbansal@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
675 S. Park View Street, Suite B
Los Angeles, California 90057
Telephone: (213) 380-2214
Facsimile: (213) 380-2787

OMAR C. JADWAT (pro hac vice)
ojadwat@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th floor
New York, NY 10004
Telephone: (212) 549-2660

CECILLIA D. WANG, SBN 187782
cwang@aclu.org
KATHERINE DESORMEAU, SBN
266463
kdesormeau@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0778

TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................1

II.  PLAINTIFFS' ALLEGATIONS..........................................................2

III. ARGUMENT .......................................................................................3

   A.  Standard of Review. ...................................................................3

   B.  Plaintiffs Complied with the California Tort Claims Act. .....................4

   C.  Plaintiffs' State Law Claims are Not Barred by
       Government Code §844.6. ...........................................................7

   D.  Plaintiffs Have Adequately Alleged a Violation of
       California Civil Code §52.1. ....................................................10

       1.  Plaintiffs Need Not Allege Coercion Independent of the Coercion
           Inherent in the Unlawful Detention....................................11
       2.  Whichever Standard this Court Adopts, Plaintiffs Have Sufficiently
           Pled Coercion for their Bane Act Claim.............................17

   E.  Article I, Sections 7 and 13 of the California Constitution Provide a
       Basis for Recovery of Monetary Damages. ...............................20

       1.  Sections 7 and 13 Provide a Basis for Liability under Civil Code
           §52.1 and Government Code §815.6. ....................................21
       2.  Article I, §13 Provides an Independent Damages Remedy.................23

   F.  PLAINTIFFS' CLAIMS AGAINST THE SHERIFF SHOULD NOT
       BE DISMISSED AS "REDUNDANT."......................................27

IV. CONCLUSION ..................................................................................30

i

1

## <u>TABLE OF AUTHORITIES</u>

2

### FEDERAL CASES

3

*Agyeman v. I.N.S.*

4

   296 F.3d 871 (9th Cir. 2002) ................................................................................. 9

5

*Alvarez v. Chevron Corp.*

6

   656 F.3d 925 (9th Cir. 2011 ............................................................................... 17

7

*B.O.L.T. v. City of Rancho Cordova*

8

   No. 14-01588, 2014 U.S. Dist. LEXIS 170233 (E.D. Cal. Dec. 8, 2014) ......... 29

9

*Bass v. City of Fremont*

10

   No. 12-4943, 2013 U.S. Dist. LEXIS 32590 (N.D. Cal. Mar. 8, 2013) ............ 13

11

*Beverly v. Cnty. of Los Angeles*

12

   12-10874, 2014 U.S. Dist. LEXIS 7968 (C.D. Cal. Jan. 21, 2014) .................. 16

13

*Bivens v. Six Unknown Fed. Narcotics Agents*

14

   403 U.S. 388 (1971) .................................................................................... 23, 24

15

*Brown v. City & Cnty. of San Francisco*

16

   No. 11-02162, 2014 U.S. Dist. LEXIS 48386 (N.D. Cal. Apr. 7, 2014) .......... 14

17

*Camarillo v. City of Maywood*

18

   No. 07-3469, 2008 U.S. Dist. LEXIS 85386 (C.D. Cal. Aug. 27, 2008)........... 24

19

*Cardoso v. Cnty. of San Mateo*

20

   No. 12-05130, 2013 U.S. Dist. LEXIS 4798 (N.D. Cal. Jan. 11, 2013) ........... 20

21

*Carmen v. San Francisco Unified Sch. Dist.*

22

   982 F.Supp.1396 (N.D. Cal. 1997), *aff'd*, 237 F.3d 1026 (9th Cir. 2001).......... 3

23

*Carvalho v. Equifax Info. Servs., LLC*

24

   629 F.3d 876 (9th Cir. 2010) ............................................................................ 17

25

*Chavez v. Cnty. of Kern*

26

   2014 U.S. Dist. LEXIS 13193 (E.D. Cal. Feb 3, 2014) .................................... 16

27

*Clark K. v. Guinn*

28

   No. 06-1068, 2007 U.S. Dist. LEXIS 35232 (D. Nev. May 14, 2007)............. 28

*Cnty. of Riverside v. McLaughlin*
   500 U.S. 44 (1991) ..................................................................... 3

*Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*
   533 F.3d 780 (9th Cir. 2008) ................................................ 27, 28

*Cuviello v. City & Cnty. of San Francisco*
   940 F. Supp. 2d 1071 (N.D. Cal. Apr. 15, 2013 ............................... 14

*D.V. v. City of Sunnyvale*
   No. 14-2155, 2014 U.S. Dist. LEXIS 114632 (N.D. Cal. Aug. 14, 2014) ........ 13

*Davis v. City of San Jose*
   No. 14-02035, 2014 U.S. Dist. LEXIS 84641 (N.D. Cal. June 20, 2014) ......... 14

*Dillman v. Tuolumne Cnty.*
   No. 13-00404, 2013 U.S. Dist. LEXIS 65206 (E.D. Cal. May 7, 2013) ........... 13

*Ervin v. City of Los Angeles*
   No. 11-03243, 2012 U.S. Dist. LEXIS 144776 (C.D. Cal. Oct. 5, 2012) ......... 16

*Fireman's Fund Ins. Co. v. City of Lodi*
   302 F.3d 928 (9th Cir. 2002) ..................................................... 29

*Fisher v. Kealoha*
   869 F. Supp. 2d 1203 (D. Haw. 2012) ........................................... 29

*Fleming v. Pickard*
   581 F.3d 922 (9th Cir. 2009) .................................................. 3, 4

*Frary v. Cnty. of Marin*
   No. 12-3928, 2012 U.S. Dist. LEXIS 177517 (N.D. Cal. Dec. 13, 2012) ......... 10

*Galarza v. Szalczyk*
   745 F.3d 634 (3d Cir. 2014) ................................................. 2, 19

*Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day
   Adventist Congregational Church*
   887 F.2d 228 (9th Cir. 1989) .................................................... 4

*Herrera v. City of Brea*
   No. 12-1650, at 40-43 (C.D. Cal. March 30, 2015), Dkt. No. 176 ............... 17

*Holland v. City of San Francisco*
    Case No. 10-2603, 2013 U.S. Dist. LEXIS 34294 (N.D. Cal. Mar. 12,
    2013 ........................................................................................................ 14

*Jones v. City of Oakland*
    No. 11-4725, 2013 U.S. Dist. LEXIS 46031 (N.D. Cal. Mar. 29, 2013) ........... 16

*Karim-Panahi v. Los Angeles Police Dep't*
    839 F.2d 621 (9th Cir. 1988) ................................................................. 5

*Keum v. Virgin Am. Inc.*
    781 F. Supp. 2d 944 (N.D. Cal. 2011 .................................................. 10

*Lopez v. Regents of Univ. of California*
    5 F. Supp. 3d 1106, 1113 (N.D. Cal. 2013 .......................................... 10

*Luong v. City & Cnty. of San Francisco*
    No. 11-5661, 2012 U.S. Dist. LEXIS 165190 (N.D. Cal. Nov. 19, 2012) ........ 16

*M.H. v. Cnty. of Alameda*
    No. 11-02868, 2013 U.S. Dist. LEXIS 55902 (N.D. Cal. Apr. 18, 2013) ......... 13

*Mabe v. San Bernardino Cnty.*
    237 F.3d 1101 (9th Cir. 2001) ................................................................ 5

*Mangold v. California Pub. Utils. Comm'n*
    67 F.3d 1470 (9th Cir. 1995) ................................................................. 5

*Mateos-Sandoval v. Cnty. of Sonoma*
    No. 11-5817, 2013 U.S. Dist. LEXIS 104549 (N.D. Cal. July 25, 2013) .......... 14

*Millender v. Cnty. of Los Angeles*
    No. 05-2298, 2007 U.S. Dist. LEXIS 102252 (C.D. Cal. Mar.15, 2007)
    *rev'd in part on other grounds,* 472 Fed. App'x 627 (9th Cir.2012) ................. 24

*Monell v. Department of Social Services*
    436 U.S. 658 (1978) ............................................................................. 25

*Murray v. Corr. Corp. of Am.*
    No. 11-2210, 2012 U.S. Dist. LEXIS 94110 (D. Ariz. July 9, 2012) ................. 9

*Nelson v. Cnty. of Sacramento*
    926 F. Supp. 2d 1159 (E.D. Cal. 2013) ............................................... 29

*Olvera v. City of Modesto*
  No. 11-00540, 2014 U.S. Dist. LEXIS 18155 (E.D. Cal. Feb. 12, 2015)..........13

*OSJ PEP Tennessee LLC v. Harris*
  No. 14-03741, 2014 U.S. Dist. LEXIS 142822 (C.D. Cal. Oct. 7, 2014)..........24

*Pac. W. Grp., Inc. v. Real Time Solutions, Inc.*
  321 Fed. App'x 566 (9th Cir. 2008)....................................................10

*Page v. Torrey*
  201 F.3d 1136 (9th Cir. 2000) ...........................................................9

*Quinn v. Fresno Cnty. Sheriff*
  No. 10-01617, 2011 U.S. Dist. LEXIS 48958 (E.D. Cal. May 6, 2011) ..........28

*Rendon v. Fresno Police Dept.*
  No. 05-00661, 2006 U.S. Dist. LEXIS 71170 (E.D. Cal. 2006)................26, 27

*Robinson v. Solano Cnty.*
  278 F.3d 1007 (9th Cir. 2002) (*en banc*).........................................25

*Rodriguez v. City of Modesto*
  No. 10-01370, 2013 U.S. Dist. LEXIS 172958 (E.D. Cal. Dec. 9, 2013) .........14

*Sanchez v. City of Fresno*
  No. 12-00428, 2013 U.S. Dist. LEXIS 68561 (E.D. Cal. May 14, 2013) .........14

*Sialoi v. City of San Diego*
  No. 11-2280, 2013 U.S. Dist. LEXIS 172876 (S.D. Cal. Dec. 9, 2013)...........14

*Skeels v. Pilegaard*
  No. 12-2175, U.S. Dist. LEXIS 34302 (N.D. Cal. Mar. 12, 2013)...................14

*Smith v. Cnty. of Los Angeles*
  2015 WL 1383539 (C.D. Cal. Mar. 25, 2015) ....................................24

*Streit v. County of Los Angeles*
  236 F.3d 552 (9th Cir. 2001) .....................................................28, 30

*Wigfall v. City & Cnty. of San Francisco*
  No. 06-4968, 2007 U.S. Dist. LEXIS 82047 (N.D. Cal. Jan. 22, 2007)...........26

v

1

<strong>OTHER CASES</strong>

2

3

*Allen v. City of Sacramento*
    234 Cal. App. 4th 41 (Cal. Ct. App. 2015)..............................................15, 16, 17

4

5

*Ardon v. City of Los Angeles*
    52 Cal. 4th 241 (Cal. 2011) ................................................................................4, 6

6

7

*Bender v. County of Los Angeles*
    217 Cal. App. 4th 968 (Cal. Ct. App. 2013)..................................................16, 18

8

9

*Cal. Rest. Mgmt. Sys. v. City of San Diego*
    195 Cal. App. 4th 1581 (Cal. Ct. App. 2011).........................................................7

10

11

*Canova v. Trustees of Imperial Irrig. Dist. Emp. Pension Plan*
    150 Cal. App. 4th 1487 (Cal. Ct. App. 2007 ........................................................4

12

13

*City of San Jose v. Superior Court*
    12 Cal. 3d 447 (Cal. 1974) ...............................................................................4, 6

14

15

*Eaton v. Ventura Port Dist.*
    45 Cal. App. 3d 862 (Cal. Ct. App. 1975)..........................................................6, 7

16

17

*Gillan v. City of San Marino*
    147 Cal. App. 4th 1033 (Cal. Ct. App. 2007 .......................................................15

18

19

*Haggis v. City of Los Angeles*
    22 Cal. 4th 490 (Cal. 2000) ..........................................................................21, 22

20

21

*Jones v. Kmart Corp.*
    17 Cal. 4th 329 (Cal. 1998) ..........................................................................11, 15

22

*Katzberg v. Regents of the University of California*
    . 29 Cal. 4th 300 (Cal. 2002) .......................................................23, 24, 25, 26

23

24

*Kelley Property Dev., Inc. v. Town of Lebanon*
    226 Conn. 314 (1993)...........................................................................................26

25

26

*Lawson v. Sup. Ct.*
    180 Cal. App. 4th 1372 (Cal. Ct. App. 2010).......................................................9

27

28

*Nelson v. Cnty. of Los Angeles*
    113 Cal. App. 4th 783 (Cal. Ct. App. 2003).........................................................5

*Nguyen v. Los Angeles Cnty. Harbor/UCLA Med. Ctr.*
    8 Cal. App. 4th 729 (Cal. Ct. App. 1992)....................................................5

*Ogborn v. City of Lancaster*
    101 Cal. App. 4th 448 (Cal. Ct. App. 2002)................................................25

*People v. City of San Buenaventura*
    213 Cal. 637, 3 P.2d 3 (Cal. 1931) ............................................................22

*Reed v. Cnty. of Santa Cruz*
    37 Cal. App. 4th 1274 (Cal. Ct. App. 1995)..................................................9

*Reese v. Kizer*
    251 Cal. Rptr. 299 (Cal. 1988) ..................................................................22

*Shoyoye v. Cnty. of Los Angeles*
    203 Cal. App. 4th 947 (Cal. Ct. App. 2012).............................................passim

*State Bd. of Ed. v. Levit*
    52 Cal. 2d 441 (Cal. 1959) ........................................................................22

*Sullivan v. Cnty. of Los Angeles*
    12 Cal. 3d 710 (Cal. 1974) .............................................................1, 7, 8, 10

*Teter v. City of Newport Beach*
    30 Cal. 4th 446 (Cal. 2003) .........................................................................8

*Unger v. Superior Court*
    102 Cal. App. 3d 681 (Cal. Ct. App. 1980)................................................22

*Venegas v. Cnty. of Los Angeles*
    32 Cal. 4th 820 (Cal. 2004) ..................................................................passim

**FEDERAL STATUTES**

42 U.S.C. § 1983................................................................25, 26, 27, 28

**OTHER STATUTES**

Cal. Civ. Proc. Code § 1021.5 ........................................................26

Cal. Gov't Code § 26605 ................................................................28

Cal. Penal Code §§ 1384 ...............................................................22

California Civil Code § 52.1(b) ................................................................ 11, 21

Civil Code § 52.1 ....................................................................... passim

Gov. Code § 844 ............................................................................... 9

Gov. Code § 844.6(d) ...................................................................... 10

Gov. Code § 905 ............................................................................... 4

Gov't Code §§ 810.6, 815.6 ........................................................... 22

Government Code 815.6 ........................................................... 21, 26

Government Code § 815.6 ............................................... 1, 2, 21, 22

Government Code § 844.6 .......................................................... passim

Government Code § 910 and (2) ..................................................... 6

## RULES

Federal Rule of Civil Procedure 25(d) ........................................... 2

Rule 12(b)(6) ................................................................................... 3

Rule 12(c) ........................................................................................ 3

## CONSTITUTIONAL PROVISIONS

CAL. CONST. Article  I § 26 ........................................................... 22

California Constitution .................................................................. 22

Article I, §§ 7 and 13 of the California Constitution................. 1, 8, 20, 22

Article I, § 13 of the California Constitution ........................... 1, 2, 23

Eleventh Amendment ..................................................................... 29

Fourth Amendment ....................................................................... 15

U.S. Constitution ............................................................................. 8

**I.     INTRODUCTION**

This lawsuit arises from the Los Angeles Sheriff's Department's (LASD) system-wide practice of unlawfully detaining inmates beyond when they were due for release on criminal matters solely on the basis of immigration detainers (also referred to herein as Immigration and Customs Enforcement ("ICE") detainers). Plaintiffs further allege that Defendants had a system-wide practice of unlawfully refusing to allow inmates with ICE detainers to post bail. Because the ICE detainers provided no legal justification to delay inmates' release from custody, these practices violated Plaintiffs' rights under the U.S. and California Constitutions. At issue in Defendants' motion for judgment on the pleadings are Plaintiffs' state law claims for damages under Civil Code §52.1 (Bane Civil Rights Act), Government Code §815.6 (failure to discharge mandatory duties), and Art. I, §13 of the California Constitution. Plaintiffs also assert tort claims for false imprisonment and negligence per se.

Defendants' motion raises a variety of objections to Plaintiffs' claims, but in each case, Defendants misapprehend the law.  Government Code §844.6 does not warrant dismissal of Plaintiffs' state law claims because, as the California Supreme Court held more than forty years ago, this section is inapplicable to unlawful detention claims.  *Sullivan v. Cnty. of Los Angeles*, 12 Cal. 3d 710, 716-717 (Cal. 1974).  It is similarly inapplicable to persons detained solely for civil immigration matters. Accordingly, there is no basis to dismiss the state claims under § 844.6.

Plaintiffs have also pled viable claims under Civil Code §52.1. Contrary to Defendants' position, Plaintiffs are *not* required to allege coercion independent of the coercion inherent in the alleged constitutional violations, and, in any event, Plaintiffs have alleged independent coercion and thus satisfy any such element.

Defendants also argue that monetary damages are not available under Article I, §§7 and 13. However, substantial authority has recognized a private

1   right of action under Art. I, § 13. And, irrespective of whether these provisions

2   provide a damages remedy, both serve as a basis for liability under Civil Code

3   §52.1 and Gov. Code §815.6, both of which are pled in this case.

4        Defendants assert that Plaintiffs' state law claims should be dismissed for

5   failure to allege compliance with the California Tort Claims Act ("TCA"). This

6   argument is frivolous. Plaintiffs have satisfactorily alleged compliance with

7   claims filing requirements and have in fact complied.

8        Finally, Plaintiffs' claims against the Sheriff in his official capacity are not

9   "redundant" with those against the County.[1]  Because questions remain about the

10  adequacy of relief available to Plaintiffs if the Sheriff is no longer a party to the

11  lawsuit, there is no basis for dismissing Plaintiffs' claims against him.

## II.   PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that Defendants had a system-wide policy and practice of

over-detaining every person in their custody who was subject to an ICE detainer

beyond the time when they were legally eligible for release from criminal

custody. Compl. (Dkt. 1), ¶ 49. They engaged in this practice even though an ICE

detainer is merely a voluntary request for extra detention—by ICE's own

admission—and is not supported by probable cause, a judicial determination of

probable cause, a judicial warrant, or any of the procedural protections applicable

to criminal detainers and holds. _Id._ ¶¶ 18, 33-34. _See also Galarza v. Szalczyk,_

_745 F.3d 634, 642 (3d Cir. 2014) ("[T]he position of federal immigration_

_agencies has remained constant: detainers are not mandatory.")._ Seventy-eight

percent of the detainers ICE submitted to LASD explicitly disavowed any

evidentiary basis to support the requested detention.  Compl., ¶¶ 25-26 (detainers

---

[1] Since the filing of this lawsuit, Sheriff Leroy Baca has been replaced by Sheriff
Jim McDonnell.  Accordingly, under Federal Rule of Civil Procedure 25(d),
Sheriff McDonnell is automatically substituted for Sheriff Baca as a party to this
lawsuit.

claiming only that ICE had "initiated an investigation"). Even when inmates declared at booking that they were born in the United States, thus indicating that they were U.S. citizens, Defendants would still enforce the ICE detainers and extend their detention beyond their release dates. *Id.* ¶¶ 28, 50.

Plaintiffs further allege that Defendants had a policy and practice of detaining people more than 48 hours after the expiration of any legal basis for custody without bringing them before a federal judge for a probable cause determination. *Id.* ¶¶ 114, 144. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991) (absent extraordinary circumstances, a detention of more than 48 hours without a judicial determination of probable cause violates the Fourth Amendment as a matter of law). As a result, when Plaintiffs' complaint was filed, LASD had over-detained an estimated 20,000 people per year beyond their release dates on the sole authority of ICE detainers. Compl. ¶ 116.

Finally, Plaintiffs allege that Defendants had a system-wide practice of unlawfully refusing to allow County inmates to post bail to secure their release from criminal custody because of ICE detainers.  *Id.* ¶¶ 38-47. As a result, Plaintiffs and the putative class members were forced to remain incarcerated until their criminal cases resolved, even though they had the financial resources to pay their bail. For example, Defendants over-detained Plaintiff Roy for 89 days because of this practice. *Id.* ¶ 63.

## III.   ARGUMENT

### A.   STANDARD OF REVIEW.

The standard applied on Rule 12(c) motions is virtually identical to the standard applied to a Rule 12(b)(6) motion to dismiss. *Carmen v. San Francisco Unified Sch. Dist.*, 982 F.Supp.1396, 1401 (N.D. Cal. 1997), *aff'd*, 237 F.3d 1026 (9th Cir. 2001). Judgment on the pleadings is proper when there is no issue of material fact in dispute. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Courts must accept all factual allegations as true and draw all inferences of fact in

1   favor of the responding party. *Id.* Defendants are not entitled to judgment on the

2   pleadings if the complaint raises issues of fact which, if proved, would support

3   recovery. *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day*

4   *Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

### B.   PLAINTIFFS COMPLIED WITH THE CALIFORNIA TORT CLAIMS ACT.

6          Defendants contend that the claims of Plaintiffs De La Cerda and Martinez-

7   Perez should be dismissed for failure to allege compliance with the TCA. This

8   argument has no merit. Martinez-Perez, together with the other Plaintiffs seeking

9   damages, alleged compliance and did in fact comply with the Act. *See* Compl. ¶¶

10  132–35 ("Plaintiffs have complied with the jurisdictional prerequisites for filing

11  a tort claim for damages against the County.").[2] Because De La Cerda seeks only

12  injunctive relief, Compl. ¶¶ 87, 106, he was not required to file a tort claim. *See*

13  Gov. Code § 905; *Canova v. Trustees of Imperial Irrig. Dist. Emp. Pension Plan*,

14  150 Cal. App. 4th 1487, 1493 (Cal. Ct. App. 2007) (the statute does not apply to

15  non-pecuniary actions, "such as those seeking injunctive relief, specific or

16  declaratory relief.").

17         Defendants contend that Martinez-Perez's claims should be dismissed

18  because he failed to allege that he had filed an *individual* tort claim. This

19  contention is incorrect. As the California Supreme Court has held, Section 910

20  permits a litigant to bring a claim on behalf of a representative class. *Ardon v.*

21  *City of Los Angeles*, 52 Cal. 4th 241, 248 (Cal. 2011); *City of San Jose v.*

22  *Superior Court*, 12 Cal. 3d 447, 457 (Cal. 1974) ("reject[ing] the suggested

23  necessity of filing an individual [tort] claim for each member of the purported

24  class"). Here, the complaint alleges that Alliksoo, Roy, and non-party Antonio

25

26

27  ───────────────

[2] Plaintiffs' allegations include details concerning the tort claims filed by Alliksoo and

28  Roy on behalf of themselves and the damages classes, amendments to their claims, and
    the dates on which the County of Los Angeles rejected the claims. *Id.* ¶¶ 133-135.

Montejano[3] filed claims on behalf of themselves *and the representative class*. Compl., ¶¶ 133-135. Because Plaintiffs alleged facts to demonstrate compliance with the Claims Act—i.e. that Roy and Alliksoo filed claims on behalf of the class—Martinez-Perez was not required to allege that he filed an individual claim.[4]

Defendants do not explain what further allegations are required, nor do they cite any precedent indicating that Plaintiffs' allegations are insufficient. Defendants rely solely on cases in which the plaintiffs failed to allege *any* compliance with the CTA; none of these cases reflect concern with the level of detail alleged. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988); *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). Defendants also rely on *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101 (9th Cir. 2001), which does not address the need to *allege* compliance with the CTA's exhaustion requirements and is therefore inapposite.

Defendants contend that Roy and Alliksoo's alleged compliance "is of no consequence," but their position is wholly unsupported. The only cases on which Defendants rely concern tort claims on behalf of *individuals*, not a class. *See Nelson v. Cnty. of Los Angeles*, 113 Cal. App. 4th 783, 796-97 (Cal. Ct. App. 2003) (claim on behalf of parent did not provide notice of claim by son's estate because there was nothing in parent's claim "to suggest it was filed in anything other than her individual capacity"); *Nguyen v. Los Angeles Cnty. Harbor/UCLA Med. Ctr.*, 8 Cal. App. 4th 729, 733-34 (Cal. Ct. App. 1992) (claim filed by child did not provide notice of parent's separate claim). Defendants do not even acknowledge the California Supreme Court's holdings applying to class claims in

---

[3] Although Montejano is not a plaintiff, his tort claim provided notice of the claims of the class, as detailed in the Complaint at paragraph 134.

[4] Although Roy was not a named plaintiff on behalf of the class in this complaint, that does not alter the effectiveness of his administrative claim as meeting the notice requirement of Section 910.

1   *Ardon*, 52 Cal.4th at 248, and *San Jose*, 12 Cal. 3d at 457, let alone attempt to

2   explain how the tort claims here fail to comply with that precedent.

3       Defendants' brief does not contest that Plaintiffs in fact complied with the

4   CTA. Although it is unnecessary to decide this issue, we explain, in an abundance

5   of caution, why the class claims Roy, Alliksoo, and Montejano filed satisfied the

6   claim-filing requirements for Martinez-Perez and putative class members. Under

7   *San Jose*, 12 Cal. 3d at 457, class claims must satisfy a two-part test. Other

8   members of the class need not file tort claims as long as a class claim reflects (1)

9   "*some* compliance with *all* of the statutory requirements" of Government Code §

10  910 and (2) "this compliance [is] sufficient to constitute *substantial* compliance."

11  *Id.* at 456-457 (emphasis in the original).

12      The claims Alliksoo and Roy filed meet both requirements set forth in *San*

13  *Jose*.  First, each reflects "some compliance with all statutory requirements" in

14  Section 910 because they indicate the name and mailing address of the claimant;

15  the date, place, and circumstances giving rise to the claim; a general description

16  of the liability; the names of the defendants; and the amount of damages. *Eaton v.*

17  *Ventura Port Dist.*, 45 Cal. App. 3d 862, 868 (Cal. Ct. App. 1975) (a class claim

18  must "contain sufficient information to enable the governmental entity, either

19  from its own records or from the claim itself, to reasonably determine the

20  circumstances which it is claimed give rise to liability . . . .") (citation omitted).

21      Second, each "substantially complies" with Section 910 by providing

22  notice of the "possible outer limits" of Defendants' liability and by "establish[ing]

23  a well-defined community of interest in questions of law and fact." *Id.* at 869.

24  Alliksoo's and Roy's claims were brought on behalf of all others "similarly

25  situated" in LASD custody with immigration holds.  They indicated

26  approximately how many individuals with ICE detainers were in LASD custody

27  and alleged that LASD had an unlawful practice of denying bail and over-

28  detaining these individuals—precisely the two theories of liability articulated in

the complaint.  *See* Decl. of Jennie Pasquarella ¶¶ 2-4, Exs. A, B, C.

Moreover, unlike class claims California courts have rejected, Alliksoo's and Roy's claims gave notice of who the injured class members were and the commonality of their injuries: all individuals with ICE detainers in LASD custody subject to the same LASD policies regarding bail and detainers. *Cf. Cal. Rest. Mgmt. Sys. v. City of San Diego*, 195 Cal. App. 4th 1581, 1599 (Cal. Ct. App. 2011) (claim about overcharging of individual and other *residential* owners did not sufficiently appraise defendants of potential liability for *commercial* owners); *Eaton*, 45 Cal. App. 3d at 865-66 (claim did not present "community of interest[s]" where some claimed personal injury, some damage to property, some complete loss of property, and some loss of leasehold interest).

Because Alliksoo and Roy filed class claims that satisfy *San Jose*'s two-part test, Martinez-Perez was not required to file an individual tort claim. *See Craft*, No. 05-359, 2006 U.S. Dist. LEXIS 96979, at *17 (C.D. Cal. Mar. 21, 2006) (rejecting assertion that named plaintiffs needed to file individual tort claims where another class member filed a class claim on behalf of all individuals affected by LASD's strip search policy and there was little "factual or legal diversity in the nature of the claim").  In sum, Plaintiffs properly alleged compliance with the California Tort Claims Act and did in fact comply with the Act.

### C.   PLAINTIFFS' STATE LAW CLAIMS ARE NOT BARRED BY GOVERNMENT CODE §844.6.

Section 844.6 immunizes government entities for "injur[ies] to any prisoner." Gov. Code §844.6. Critically, however, the California Supreme Court has held that the statute does not apply to bar claims of unlawful detention, like those Plaintiffs raise here. *Sullivan v. Cnty. of Los Angeles,* 12 Cal. 3d 710, 717 (Cal. 1974). Sullivan was held in jail for several days *after* his term expired, and he asserted false imprisonment arising from the over-detention. As the Supreme Court explained, unlawful detention claims are categorically exempt from §844.6:

> In a false imprisonment case, the 'injury' suffered by an individual is the illegal confinement itself rather than any detriment occurring after imprisonment; in other words, false imprisonment is not an 'injury to a prisoner' but instead is an injury to a non-prisoner which converts him into a prisoner.

*Id.* at 716. *Sullivan* rejected the argument that the inmate should be considered a "prisoner" because he had been continuously confined after having been arrested, charged and sentenced pursuant to the criminal process. "Continued confinement cannot legally make him a 'prisoner' when the jail term has expired; in the eyes of the law plaintiff is no longer a 'prisoner.'" *Id* at 717. The California legislature would not have intended "to distinguish between an individual who is wrongfully deprived of his liberty before his jail term starts and one wrongfully deprived of his liberty after his jail term ends." *Id.* at 717. *See also Teter v. City of Newport Beach*, 30 Cal. 4th 446, 455 (Cal. 2003) (citing *Sullivan*, "'an injury to any prisoner' does not apply to a case of *false* imprisonment") (original emphasis).

Under *Sullivan*, §844.6 is plainly inapplicable to Plaintiffs' claims in this case, which derive exclusively from their unlawful detention beyond the time when they were due for release on criminal matters. *See* Compl. ¶¶ 136-79. As in *Sullivan*, the "injury" Plaintiffs suffered was the illegal confinement *itself,* not a separate violation of their rights arising from conditions of confinement. And as in *Sullivan*, it is immaterial that Plaintiffs had been detained on criminal charges prior to their over-detentions. Their status as "prisoners" expired the moment they became due for release.[5]

In addition, Defendants were holding Plaintiffs for reasons unrelated to the criminal process at the time their claims arose. Once Plaintiffs became due for

---

[5] For the purpose of this analysis, there is no distinction between persons who were over-detained and persons who were prohibited from posting bail. Both claims rest on Plaintiffs' unconstitutional deprivation of liberty, in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution (due process and unlawful seizure) and Art. I, §§7 and 13 of the California Constitution (due process and unlawful seizure).

release on criminal matters, they were held on the sole authority of civil immigration detainers. At that point, their status changed from criminal detainees to civil detainees. *Agyeman v. I.N.S.*, 296 F.3d 871, 885-87 (9th Cir. 2002) (holding that immigration detainees are civil detainees). For the purpose of §844.6, the statutory term "prisoner" applies exclusively to persons confined for "a penological or correctional objective" or as "part of the penal processes…" Gov. Code §844 (the term prisoner applies to "lawfully arrested" persons "upon [their] initial entry into a prison, jail or penal or correctional facility, *pursuant to penal processes*."); *Reed v. Cnty. of Santa Cruz*, 37 Cal. App. 4th 1274, 1277 (Cal. Ct. App. 1995) ("courts have further refined the definition of 'prisoner' to reflect that the confinement of the person must be for 'a penological or correctional objective' or the person must be 'incarcerated as a part of the penal processes…'"); *Lawson v. Sup. Ct.*, 180 Cal. App. 4th 1372, 1386-87 (Cal. Ct. App. 2010) (child of an inmate who resided in a community-based facility for prisoners with young children was not a prisoner under §844.6). Defendants do not cite, and cannot cite, any cases indicating that §844.6 applies to civil immigration detainees held for reasons independent of the criminal process.

In an analogous context, federal courts have repeatedly held that civil detainees—including immigration detainees—do not qualify as "prisoners" for the purpose of the Prison Litigation Reform Act (PLRA). Under the PLRA, the statutory term "prisoner" is limited to detainees who are "currently detained as a result of accusation, conviction, or sentence for a *criminal* offense." *Page v. Torrey*, 201 F.3d 1136, 1139 (9th Cir. 2000) (emphasis added). As the Ninth Circuit has held, immigration detainees are civil detainees and are not subject to the restrictions of the PLRA. *Agyeman*, 296 F.3d at 885-87; *see also Murray v. Corr. Corp. of Am.*, No. 11-2210, 2012 U.S. Dist. LEXIS 94110, at *9 (D. Ariz. July 9, 2012) (immigration detainee was not a prisoner within the meaning of the PLRA; no authority for the proposition that a criminal conviction—standing alone—renders an immigrant detainee a "prisoner" for the purpose of the PLRA).

1
2
3
4
5
6
7
8

While we consider *Sullivan* dispositive with regard to claims against the LASD, should the Court disagree, Plaintiffs request leave to amend to add claims against individual defendants, who would not be protected by the immunity. Section 844.6 applies only to government entities, not to government employees sued in their personal capacity. Gov. Code §844.6(d) ("Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission."); *Frary v. Cnty. of Marin*, No. 12-3928, 2012 U.S. Dist. LEXIS 177517, at *33 (N.D. Cal. Dec. 13, 2012).

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Leave to amend is appropriate where, as here, the deficiency can be corrected through amendment. *Pac. W. Grp., Inc. v. Real Time Solutions, Inc.*, 321 Fed. App'x 566, 569 (9th Cir. 2008) ("Motions for judgement on the pleadings [ ] and motions to dismiss for failure to state a claim are 'functionally identical,' and this court has held that in 12(b)(6) dismissals, leave to amend should be granted *even if no request is made unless* amendment would be futile.") (citation omitted; emphasis added); *Lopez v. Regents of Univ. of California*, 5 F. Supp. 3d 1106, 1113 (N.D. Cal. 2013) ("Where a court grants a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c), leave to amend should be freely given if it is possible that further factual allegations will cure any defect.") (citing *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013)); *Keum v. Virgin Am. Inc.*, 781 F. Supp. 2d 944, 949 (N.D. Cal. 2011) (in the context of a motion for judgement on the pleadings, "The Ninth Circuit has 'repeatedly held that a district court should grant leave to amend even if no request…was made, unless…the pleading could not possibly be cured . . . .'") (citing *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)).

25
26

**D.    PLAINTIFFS HAVE ADEQUATELY ALLEGED A VIOLATION OF CALIFORNIA CIVIL CODE § 52.1.**

27
28

Defendants argue that Plaintiffs' claims under Civil Code § 52.1 ("Bane Act") should be dismissed for failure to allege "threats, intimidation, or coercion

independent of the coercion *inherent* in a detention or arrest." Defs' Mot. for Judgment on Pleadings ("MJP") (Dkt. #71) at 6. Their argument fails for two reasons, as described below. First, the Bane Act does not require "threats, intimidation, or coercion" to be independent of the constitutional violation. Defendants' argument to the contrary is not only inconsistent with the California Supreme Court's interpretation of the Bane Act's requirements, but also against the weight of federal and California case law. Second, irrespective of which standard is correct, Plaintiffs have nonetheless alleged coercive conduct sufficiently independent of the initial detention/arrest to qualify for a Bane Act claim even under the broad restrictions claimed by Defendants.

### 1.   Plaintiffs Need Not Allege Coercion Independent of the Coercion Inherent in the Unlawful Detention.

California Civil Code § 52.1(b) provides a private right of action for damages against any person who "interferes" or "attempts to interfere by threat, intimidation, or coercion" with the exercise or enjoyment of rights under California or federal law. The California Supreme Court has explained that section 52.1 simply requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (Cal. 1998). Stated another way, a claim under section 52.1 is available where a plaintiff can show "threats, intimidation, or coercion that interferes with a constitutional or statutory right." *Venegas v. Cnty. of Los Angeles*, 32 Cal. 4th 820, 843 (Cal. 2004).

Defendants contend that Plaintiffs must show coercion independent of the unconstitutional detention they suffered, but Defendants' argument is based on a misreading of two cases. The first case, *Shoyoye v. Cnty. of Los Angeles*, 203 Cal. App. 4th 947 (Cal. Ct. App. 2012), involved a clerical error—a jail employee mistakenly and unknowingly attached someone else's paper work to the plaintiff's—that led the County to detain the plaintiff for 16 days beyond his

release date. The Court, faced with the question "whether section 52.1 affords protection to every claimant who alleges interference with his or her right to be free of an unreasonable seizure . . . where the overdetention occurs because of mere negligence" rather than an intentional act, *id.* at 957, concluded that the purpose of the statute "is not to provide relief for an overdetention brought about by human error rather than intentional conduct." *Id.* at 959. Thus, *Shoyoye* concluded that, where plaintiff had shown only that the County employees had been negligent, something more than the coercion inherent in their detention was required to meet section 52.1. *Id.* at 961-62.

Defendants read too much into *Shoyoye*'s use of the word "independent." *Id.* at 958. Contrary to Defendants' interpretation, *Shoyoye* does not stand for the proposition that unlawful detention, by itself, is never sufficiently coercive to satisfy section 52.1. Indeed, *Shoyoye* specifically recognized that *Venegas*—the seminal California Supreme Court case on section 52.1—did not require coercion separate from the acts that gave rise to the unconstitutional detention. *Shoyoye* distinguished itself because the conduct that caused the over-detention in *Venegas* was intentional, whereas the conduct in *Shoyoye* was not.  The Court explained:

> [t]he coercion [Shoyoye experienced] was not carried out in order to effect a knowing interference with Shoyoye's constitutional rights.  This is in stark contrast to *Venegas II*, for example, in which the evidence presented could support a finding that the probable cause that initially existed to justify stopping the plaintiffs eroded at some point, such that the officers' conduct became intentionally coercive and wrongful, i.e., a knowing and blameworthy interference with the plaintiffs' constitutional rights.

203 Cal. App. 4th at 961. Defendants' argument that *Shoyoye* requires coercive conduct separate and apart from the unconstitutional detention here—where Plaintiffs have alleged deprivations of their rights that were intentional and pursuant to LASD policy—is simply not borne out by a close reading of *Shoyoye*, nor can it be squared with the California Supreme Court's decision in *Venegas*,

which found a section 52.1 violation where there was no coercive conduct independent of the unlawful detention.

Unsurprisingly, the vast majority of federal courts interpreting *Shoyoye* "have largely limited *Shoyoye* to its first holding, that § 52.1 requires intentional interference with a constitutional right, and not merely negligent acts." *D.V. v. City of Sunnyvale*, No. 14-2155, 2014 U.S. Dist. LEXIS 114632, at *13 (N.D. Cal. Aug. 14, 2014). "Most [courts] have distinguished *Shoyoye* on the basis that conduct which is intentional or egregious does not implicate *Shoyoye* at all." *Olvera v. City of Modesto*, No. 11-00540, 2014 U.S. Dist. LEXIS 18155, at *6 (E.D. Cal. Feb. 12, 2015). As one district court recently explained:

> *Shoyoye* is best viewed as a carve-out from the general rule stated in *Venegas*. The key difference in the facts of the two cases is—as the *Shoyoye* court put it—that the constitutional violation in that case was brought about solely 'by human error rather than intentional conduct.' In *Shoyoye*, the plaintiff's overdetention resulted from the negligent inaction of administrators, whereas in *Venegas*, the defendant officer engaged in a series of actions involving 'threats, intimidation, or coercion' that resulted in the plaintiffs' unreasonable seizure and wrongful arrest.

*Bass v. City of Fremont*, No. 12-4943, 2013 U.S. Dist. LEXIS 32590, at *15-16 (N.D. Cal. Mar. 8, 2013) (declining to dismiss the plaintiff's section 52.1 claim and explaining that as in *Venegas*, "Bass's alleged detention and arrest resulted from the officers' action, rather than their inaction") (internal citation omitted). Thus, "the relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct, and. . . *Shoyoye* applies only when the conduct is unintentional." *M.H. v. Cnty. of Alameda*, No. 11-02868, 2013 U.S. Dist. LEXIS 55902, at *20-21 (N.D. Cal. Apr. 18, 2013). *See also, e.g., Dillman v. Tuolumne Cnty.*, No. 13-00404, 2013 U.S. Dist. LEXIS 65206, at *58 (E.D. Cal. May 7, 2013) ("Where Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is at issue, there is no need for a plaintiff to allege a showing of coercion independent from the coercion in the seizure or

use of force."); *Holland v. City of San Francisco*, Case No. 10-2603, 2013 U.S. Dist. LEXIS 34294, at \*29-30 (N.D. Cal. Mar. 12, 2013) (*Shoyoye* involved an "administrative error" in contrast to *Venegas*; the "*Shoyoye* court thus acknowledged that a Bane Act claim could be based on an arrest without probable cause, even if no 'threat, intimidation, or coercion' were shown separate and apart from that inherent to the underlying constitutional violation").[6] The overwhelming weight of authority demonstrates that *Shoyoye* does not stand for the proposition that Plaintiffs must plead coercion independent from the coercion inherent in the unlawful detention.

_____

[6] *See also Davis v. City of San Jose*, No. 14-02035, 2014 U.S. Dist. LEXIS 84641, at \*24 (N.D. Cal. June 20, 2014) ("the Officers ignore the wealth of subsequent case law that has limited *Shoyoye* to its narrow circumstances"); *Brown v. City & Cnty. of San Francisco*, No. 11-02162, 2014 U.S. Dist. LEXIS 48386, at \*60 (N.D. Cal. Apr. 7, 2014) (the line of cases permitting §52.1 liability based on the same conduct as an underlying constitutional violation "comports with the legislative history and the relatively broad statutory interpretation advanced in *[V]enegas*"); *Sialoi v. City of San Diego*, No. 11-2280, 2013 U.S. Dist. LEXIS 172876, at \*40 (S.D. Cal. Dec. 9, 2013) (Southern District adopting the reasoning and conclusion of Northern District in *Bass*); *Rodriguez v. City of Modesto*, No. 10-01370, 2013 U.S. Dist. LEXIS 172958, at \*31-32, \*35-36 (E.D. Cal. Dec. 9, 2013) ("there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force"). *Little v. City of Richmond*, No. 13-02067, 2013 U.S. Dist. LEXIS 149804, at \*13 (N.D. Cal. Oct. 17, 2013) ("by requiring a Section 52.1 plaintiff to allege intentional conduct that is threatening, coercive, or intimidating, … Section 52.1's requirement of intentional interference [is taken] into account"); *Mateos-Sandoval v. Cnty. of Sonoma*, No. 11-5817, 2013 U.S. Dist. LEXIS 104549, at \*26 (N.D. Cal. July 25, 2013) (*Shoyoye* involved negligent conduct, and is inapplicable to harm brought about by intentional conduct or conduct that is "inherently coercive"); *Sanchez v. City of Fresno*, No. 12-00428, 2013 U.S. Dist. LEXIS 68561, at \*33-37 (E.D. Cal. May 14, 2013) (Eastern District adopting analysis of *M.H.* court in Northern District); *Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1102 (N.D. Cal. Apr. 15, 2013) ("*Shoyoye* does not diminish the holdings in *Gillan* and *Venegas*, which recognized Bane Act claims for arrest without probable cause where the arrest constituted *intentional* interference of the plaintiff's rights"); *Skeels v. Pilegaard*, No. 12-2175, U.S. Dist. LEXIS 34302, at \*11 (N.D. Cal. Mar. 12, 2013) (distinguishing *Shoyoye* because plaintiff's alleged harms "were not brought about by human error, but rather by intentional conduct, conduct which could be reasonably perceived as threatening, intimidating, or coercive").

1    The second case on which Defendants rely, *Allen v. City of Sacramento*,
2    234 Cal. App. 4th 41 (Cal. Ct. App. 2015), is a recently decided California court
3    of appeals decision involving a challenge by homeless residents to the
4    constitutionality of a city ordinance that prohibited extended camping without a
5    city permit. *Id.* at 46. The plaintiffs alleged that the city violated section 52.1 by
6    arresting them for violating the ordinance. *Id.* at 66-67. Although the court
7    recognized that *Shoyoye* held that "*incidental* interference brought about by
8    *negligent* conduct is not sufficient" to violate section 52.1, *id.* at 67, *Allen* went
9    on to adopt a more expansive reading of *Shoyoye,* incorrectly concluding that *any*
10   "wrongful arrest or detention, without more, does not satisfy both elements of
11   section 52.1." *Id.* at 69 (emphasis added).

12      *Allen*'s conclusion is based on an incorrect reading of *Shoyoye* (as
13   described above) and, more significantly, of the California Supreme Court's
14   controlling decision in *Venegas*, and thus it carries no persuasive weight for this
15   Court. Although *Allen* acknowledged that *Venegas* found a viable section 52.1
16   claim based on an unreasonable search and seizure, 234 Cal. App. 4th at 67, *Allen*
17   went on to misread *Venegas*, erroneously stating that *Venegas* did not hold that "a
18   wrongful arrest or detention, without more, constitutes threats, intimidation or
19   coercion under section 52.1 where the arrest is itself the alleged constitutional
20   violation." *Allen*, 234 Cal. App. 4th at 69. Although *Venegas* did not say anything
21   about a requirement that coercion be separate and apart from the alleged
22   constitutional violation, it is at least implicit in the *Venegas* decision that the
23   Court did not believe there was such a requirement because it could not otherwise
24   have concluded that the plaintiffs stated a 52.1 cause of action where no
25   allegation of coercion, apart from the coercion inherent in the Fourth Amendment
26   violations, was made. *Venegas*, 32 Cal. 4th at 827-28, 843. *See also Jones*, 17
27   Cal. 4th at 332 (implicitly recognizing §52.1 claim based on excessive force and
28   unreasonable search, if carried out by state actors); *Gillan v. City of San Marino*,
     147 Cal. App. 4th 1033, 1044 (Cal. Ct. App. 2007) (affirming liability verdict for

15

the plaintiff on a 52.1 claim based solely on false arrest with no use of additional force); *Bender v. County of Los Angeles*, 217 Cal. App. 4th 968, 978 (Cal. Ct. App. 2013) ("[n]o California case supports [the] proposition" "that the Bane Act does not apply because coercion is inherent in an unlawful arrest"). Moreover, contrary to *Allen*'s conclusion, Justice Baxter made clear the breadth of the Supreme Court's holding and that no separate allegation of coercion was required, stating that "it should not prove difficult to frame many, if not most, asserted violations of any state or federal statutory or constitutional right . . . as incorporating a threatening, coercive, or intimidating verbal or written component." *Venegas*, 32 Cal. 4th at 851 (Baxter, J., concurring).[7] Based on this erroneous conclusion, the *Allen* Court dismissed as unpersuasive a series of federal court cases, none of which found a requirement that there be allegations of coercion apart from the coercion inherent in the arrest or detention.[8]

This Court is bound by the California Supreme Court's interpretations of state law and should not follow a Court of Appeals decision when there is

---

[7] *See also Venegas v. Cnty. of Los Angeles*, B218948, 2011 Cal. App. Unpub. LEXIS 6326, *29 (Cal. App. 2d Dist. Aug. 23, 2011) ("[as defined in *Venegas*], section 52.1 also encompasses unconstitutional searches or detentions effected by the use of coercion or intimidation, that is, constitutional violations in which the threat, coercion or intimidation is an integral part of the violation itself.").

[8] Defendants cite *Beverly v. Cnty. of Los Angeles*, 12-10874, 2014 U.S. Dist. LEXIS 7968, *25 (C.D. Cal. Jan. 21, 2014), as support for the *Allen* rule, but that case held, on a motion for summary judgment, that the Plaintiff's rights under section 52.1 were not violated because she failed to establish an underlying constitutional violation. They also cite *Jones v. City of Oakland*, No. 11-4725, 2013 U.S. Dist. LEXIS 46031, at *11-12 (N.D. Cal. Mar. 29, 2013) and *Ervin v. City of Los Angeles*, No. 11-03243, 2012 U.S. Dist. LEXIS 144776, *4 (C.D. Cal. Oct. 5, 2012) for the same proposition, but neither case is persuasive because both adopt the rule, citing *Shoyoye*, without any explanation of how it arrived at the rule. The other two cases, *Chavez v. Cnty. of Kern*, 2014 U.S. Dist. LEXIS 13193, *22-23, 28 (E.D. Cal. Feb 3, 2014) and *Luong v. City & Cnty. of San Francisco*, No. 11-5661, 2012 U.S. Dist. LEXIS 165190, at *25-26 (N.D. Cal. Nov. 19, 2012), are similarly not persuasive because both adopt the more expansive reading of *Shoyoye* and erroneously narrow reading of *Venegas*.

16

1   "convincing evidence that the California Supreme Court would hold otherwise."

2   *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010). *See*

3   *also Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 n.7 (9th Cir. 2011) (a decision

4   of a California Court of Appeal on an issue of state law is binding on a federal

5   court "because there is no California Supreme Court decision on point, and no

6   indication that the California Supreme Court would disagree" with the Court of

7   Appeal). Here, the Court is bound by the California Supreme Court's

8   interpretation in *Venegas*, and it should not follow the *Allen* decision, which is

9   clearly at odds with the California Supreme Court's interpretation of the statute.[9]

10                **2.    Whichever Standard this Court Adopts, Plaintiffs Have**
11                       **Sufficiently Pled Coercion for their Bane Act Claim.**

12          Under either the California Supreme Court's prevailing interpretation of

13   section 52.1 in *Venegas*, or the standard Defendants urge the Court to employ

14   (which is inconsistent with *Venegas*), Plaintiffs have satisfactorily stated a claim

15   under section 52.1.

16          Plaintiffs Roy, Alliksoo, and Martinez-Perez[10] seek damages on behalf of

17   themselves and the putative classes under 52.1 for the over-detention they

18   suffered due to Defendants' refusal to permit them to post bail because ICE had

19   placed a detainer on them, and due to Defendants' policy and practice of

20   detaining people beyond their release time on ICE detainers, including more than

21   48 hours without a judicial determination of probable cause.  Compl., ¶ 44.

22   Contrary to Defendants' representations, Plaintiffs' allegations in their complaint

23   _____

24   [9] A Central District court has already questioned whether the California Supreme Court

25   would decide otherwise than the *Allen* court did. *Herrera v. City of Brea*, No. 12-1650, at 40-43 (C.D. Cal. March 30, 2015), Dkt. No. 176 (Order Granting in Part and Denying

26   in Part Defendants' Motion for Summary Judgment).

27   [10] Plaintiff Roy seeks damages only on behalf of himself, whereas Plaintiffs Alliksoo and Martinez-Perez seek damages on behalf of themselves and the putative classes.

28   Plaintiff De La Cerda does not seek relief under section 52.1 because he only seeks injunctive relief.  Complaint, Dkt.1, 37 n.5.

state claims under both interpretations of section 52.1. *Compare id.* ¶¶ 174-176 ("such unlawful detention was accomplished through coercion, i.e., the forced continuing incarceration in LASD custody") *with id.* ¶ 178 ("the acts of coercion alleged herein were *separate from* the unlawful acts of denying Plaintiffs and the members of Classes Two, Four and Six the right to post bail and of treating the immigration detainer as a mandate or authorization to hold Plaintiffs and the Class members.") (emphasis added).

There is no question that Defendants interfered with Plaintiffs' rights to be free from an unreasonable seizure through intentional and deliberate acts. They intended to deny them the right to post bail and they intended to extend their detention on the sole authority of the ICE detainers. *Shoyoye*, therefore, should not apply. As *Shoyoye* explained, Plaintiffs' claims are more like those in *Venegas* where the lawful basis for Plaintiffs' imprisonment ended and the LASD took deliberate actions to refuse bail and to keep them in jail on their ICE holds. *See Shoyoye*, 203 Cal. App. 4th at 961 (in *Venegas* "the evidence presented could support a finding that the probable cause that initially existed to justify stopping the plaintiffs eroded at some point, such that the officers' conduct became intentionally coercive and wrongful, i.e., a knowing and blameworthy interference with the plaintiffs' constitutional rights."). And there is no question that the over-detention Plaintiffs and the putative class-members suffered—on the magnitude of 20,000 people per year—was itself inherently coercive. *Bender*, 217 Cal. App. 4th at 978 ("[c]oercion is, of course, inherent in any arrest, lawful or not").

Where Plaintiffs' case stands apart from *Venegas* is that Plaintiffs have alleged coercion independent of the over-detention itself. As stated in Plaintiffs' complaint, Compl. ¶ 178, Defendants systematically interfered with Plaintiffs' right to post bail through a series of independent, coercive acts aimed at thwarting Plaintiffs' ability to post bail that were separate from the unconstitutional detention itself. These practices were so coercive that they had the effect of

making inmates, bail agents, state judges, and other actors believe it to be true that an ICE hold meant "no bail" was permitted. *See id.* ¶¶ 40-46, 59 (describing Defendants' practices of marking ICE detainers in LASD's electronic system as "no bail" holds, even though an ICE detainer has no legal impact on a person's bail rights; broadcasting this "no bail" code publicly, including to other police departments, so that a person could not post bail when in police custody either; telling anyone who asked that a person with an ICE detainer could not post bail and that the LASD would not permit bail to be posted; and ignoring inmate complaints that they could not post bail and that their ICE holds were placed in error).

Further, Defendants coercively interfered with Plaintiffs' rights by treating ICE detainers as a mandatory reason to maintain custody of a person beyond the expiration of any state law basis to hold the person, even though the hold was never anything more than a voluntary request and even though it was plain from the form that it did not bear the markers of a valid detainer authorizing detention. *See Galarza*, 745 F.3d at 642 (reviewing history of ICE detainers and concluding they were never anything more than requests). Under the "separate" conduct framework, the LASD's use of and reliance on the ICE hold is a coercive/threatening act that is independent of and prior to the subsequent unlawful detention (which occurred when the person became otherwise entitled to release). Further, because immigration detention is civil detention (see *supra* re 844.6) separate from the criminal detention that initially occasioned the arrest, and because that initial detention is a separate but necessary precondition to the claims here, the coercion inherent in that initial detention/arrest provides separate coercion from the unlawful immigration detention if separate coercion is statutorily necessary.

This erroneous interpretation led Defendants to coercively interfere with the rights of Plaintiffs and the putative class, not just through the practices that led to over-detention, but, as discovery in this case has revealed, by treating them

differently from other inmates—a fact that *Shoyoye* recognizes places Defendants' conduct in a different light. For example, discovery has revealed that Defendants detained inmates with ICE holds in the general criminal population, even though immigration detention is civil detention; denied inmates with ICE holds participation in alternatives-to-custody programs and early release credits, which meant that on average inmates with ICE holds were detained longer than other inmates, *see* Compl. ¶ 16 (inmates spend on average 20.6 days longer in LA County jails); and denied them in-court release and release to court-ordered mental health facilities and drug rehabilitation facilities; and treated them differently in the release process by subjecting them to different procedures, which further prolonged their detention.[11] This purposeful intervention through coercive acts apart from the detention itself and differential treatment satisfy either standard for a 52.1 claim. *See, e.g., Shoyoye*, 203 Cal. App. 4th at 961 (noting that there was "no evidence that [the plaintiff] was treated differently than other inmates who were lawfully incarcerated, or that any conduct directed at him was for the purpose of interfering with his constitutional rights.").

E. **ARTICLE I, SECTIONS 7 AND 13 OF THE CALIFORNIA CONSTITUTION PROVIDE A BASIS FOR RECOVERY OF MONETARY DAMAGES.**

Defendants contend that Article 1, §§7 and 13 are not self-executing and do not provide an independent basis for damages. While they are correct regarding Article §7, federal courts have repeatedly recognized a private right of action under §13. (See Section E(2), below). Regardless of whether the sections provide

---

[11] Plaintiffs believe that these practices are encompassed within the general allegations of the complaint and sufficiently pled to make out this claim and permit discovery on these topics. *See Cardoso v. Cnty. of San Mateo*, No. 12-05130, 2013 U.S. Dist. LEXIS 4798, at *2 (N.D. Cal. Jan. 11, 2013) (denying motion to dismiss based on *Shoyoye* because plaintiff's Bane Act claim "may turn on details about the alleged application of excessive force – details which are unavailable at this early stage in the litigation"). In any event, Plaintiffs are prepared to amend to add such allegations should the Court consider it necessary.

a private right of action, both form a basis for liability under Civil Code §52.1 and Government Code §815.6.

## 1.   **Sections 7 and 13** Provide a Basis for Liability under **Civil Code § 52.1** and **Government Code § 815.6.**

As a preliminary matter, Sections 7 and 13 provide the bases of liability under Civil Code 52.1 and Government Code 815.6. Both statutes provide a basis for monetary damages regardless of whether Sections 7 and 13 are self-executing.

Civil Code §52.1(b) states that any individual whose exercise or enjoyment of the rights secured by the "Constitution or laws of this state" may institute an action for damages. Accordingly, if, as here, the defendants violated the plaintiffs' constitutional rights through threat, intimidation or coercion, the claim is viable under §52.1.

Government Code § 815.6 establishes public entity liability for failure to discharge a mandatory duty designed to protect against the kind of injury suffered by a plaintiff.  Such a violation imposes a distinct and separate cause of action against a public entity; thus, the underlying enactment does not need to provide a private right of action. *Haggis v. City of Los Angeles*, 22 Cal. 4th 490, 499 (Cal. 2000). As the California Supreme Court held,

> It is *section 815.6, not the predicate enactment, that creates the private right of action*. If the predicate enactment is of a type that supplies the elements of liability under section 815.6—if it places the public entity under an obligatory duty to act or refrain from acting, with the purpose of preventing the specific type of injury that occurred—then liability lies against the agency under section 815.6, regardless of whether private recovery liability would have been permitted, in the absence of section 815.6, under the predicate enactment alone.

*Id.* at 499-500 (emphasis in original).  Accordingly, the relevant question is whether the enactments in question impose obligatory as opposed to permissive

duties, and whether they are designed to protect the person complaining of the violation—not whether they are self-executing as Defendants contend. *Id.* at 498.

The Constitutional provisions alleged in Plaintiffs' complaint qualify as mandatory duties.[12] An "enactment" giving rise to a mandatory duty includes "a constitutional provision, statute, charter provision, ordinance or regulation." Gov't Code §§ 810.6, 815.6.  Further, "[t]he provisions of th[e] Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise." CAL. CONST. art. I § 26. *See People v. City of San Buenaventura*, 213 Cal. 637, 639-640, 3 P.2d 3 (Cal. 1931) ("This declaration applies to all sections of the Constitution alike, and is binding upon any department of the state government, legislative, executive or judicial.") (citation omitted); *accord Reese v. Kizer*, 251 Cal. Rptr. 299, 302 (Cal. 1988); *Unger v. Superior Court*, 102 Cal. App. 3d 681, 685 (Cal. Ct. App. 1980); *State Bd. of Ed. v. Levit*, 52 Cal. 2d 441, 460-461 (Cal. 1959). This analysis is consistent with general rules of constitutional interpretation, which construe the provisions of constitutions throughout the country as mandatory provisions that may not be treated as merely directory. *American Jurisprudence, Second Edition,* Constitutional Law, §95 ("it is the general rule to regard constitutional provisions as mandatory"). Thus, all provisions of the California Constitution impose obligatory as opposed to permissive duties. Further, these provisions were clearly designed to protect citizens against the types of unreasonable government actions alleged here.

---

[12] Article I, §§ 7 and 13 are not the sole basis for Plaintiffs' claims under Government Code § 815.6. As alleged in the Complaint, California also imposes a mandatory duty to release on bail any arrestee or inmate who meets the statutory conditions for bail. *See* Compl. ¶ 162 (citing CAL. CONST. art. 1, § 12; Cal. Penal Code §§ 1268, 1269b, 1295(a)). California likewise imposes mandatory duties to release persons from custody when their criminal charges are dismissed/resolve, when they are ordered released on their own recognizance, and when their sentence is completed. Cal. Penal Code §§ 1384; 1270, 3000(b)(2)(A).

2.    **Article I, §13** Provides an Independent Damages Remedy.

While no California court has decided the issue, federal courts have repeatedly recognized that, pursuant to the California Supreme Court's analysis in *Katzberg v. Regents of the University of California.* 29 Cal. 4th 300 (Cal. 2002), Article I, §13 would likely provide a damages remedy.

*Katzberg* establishes the framework for determining whether specific provisions of California's Constitution provide a self-executing right to monetary damages. The first question is whether there is evidence of affirmative legislative intent to authorize or withhold a damages remedy. In performing this inquiry, courts consider the language and history of the constitutional provision at issue; the existence of any guidelines, mechanisms or procedures implying a monetary remedy; and any pertinent common law history. *Katzberg*, 300 Cal. 4th at 317. If these materials reveal no evidence of affirmative intent, the court proceeds to the "constitutional tort" analysis adopted by *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *Katzberg*, 300 Cal. 4th at 317.

Article I, §13's protection against illegal searches and seizures derives from an common law history that supports recognition of an independent damages remedy.[2] In *Katzberg*, the California Supreme Court referenced a New York state decision recognizing "historical support for an implied remedy in damages" in English Common law. *Id.* at 322-23 ("'[t]he prohibition against unlawful searches and seizures originated in the Magna Carta . . . . The civil cause of action was fully developed in England and provided a damage remedy for the victims of unlawful searches at common law'") (quoting *Brown v. State of New York*, 89 N.Y. 2d 172, 188 (1996)). Quoting a Maryland Supreme Court decision, *Katzberg* stated "'Legal scholars also have long taken the position that an unlawful search and seizure gives rise to a damage action against both the officer

---

[2] Plaintiffs are aware of no evidence of affirmative intent—one way or the other—in the legislative history regarding Article I, §13.

23

executing an illegal warrant and the official causing it to issue.... *Fraenkel, Concerning Searches and Seizures*, 34 Harv. L. Rev. 361, 363-364 (1921).'" *Id* at 324 n.21 (quoting *Widgeon v. Eastern Shore Hosp. Center*, 479 A.2d 921, 923-925 (Md. 1984)). *Katzberg* noted that courts in other jurisdictions had identified similar historical support for an implied damages remedy. *Id.* at 323 nn.20, 21, 22.

As acknowledged by several district courts, *Katzberg*'s analysis of common law history indicates that the California Supreme Court would likely recognize a private cause of action for search and seizure violations. *Smith v. Cnty. of Los Angeles*, 2015 WL 1383539, at *7 (C.D. Cal. Mar. 25, 2015) (recognizing private cause of action); *OSJ PEP Tennessee LLC v. Harris*, No. 14-03741, 2014 U.S. Dist. LEXIS 142822, at *21 (C.D. Cal. Oct. 7, 2014) ("following the analytic pattern set forth by *Katzberg*…Plaintiff can claim damages for a violation of §13."); *Camarillo v. City of Maywood*, No. 07-3469, 2008 U.S. Dist. LEXIS 85386, at *19 (C.D. Cal. Aug. 27, 2008) (citing *Smith v. Cnty. of Riverside*, No. 05-00512, 2006 U.S. Dist. LEXIS 98213 (C.D. Cal. May 16, 2006)); *Millender v. Cnty. of Los Angeles*, No. 05-2298, 2007 U.S. Dist. LEXIS 102252, at *116 (C.D. Cal. Mar.15, 2007) (because *Katzberg* implied a historical foundation for tort remedy for unlawful searches and seizures; California Supreme Court would recognize a private cause of action) *rev'd in part on other grounds*, 472 Fed. App'x 627 (9th Cir.2012).

Given *Katzberg's* assessment of common law support for an implied damages remedy, some federal decisions have recognized a private right of action without proceeding to constitutional tort analysis using the *Bivens* factors. Analysis of the *Bivens* factors nonetheless favors recognition of a damages remedy. The factors include: (1) adequacy of existing remedies (e.g. declaratory and injunctive relief); (2) the extent to which a constitutional tort action would change established tort law; (3) the nature of the provision and the significance of the purpose that it seeks to effectuate; and (4) whether the creation of a damages

action would produce adverse policy consequences or practical problems of proof. *Katzberg*, 300 Cal. 4th at 317.

The first consideration—availability of meaningful alternative remedies—strongly weighs in favor of recognizing a private cause of action. *Katzberg*, 29 Cal. 4th at 325-27 (observing that declaratory relief, injunctive relief and a name clearing hearing provided alternative, non-monetary remedies for government employee who asserted due process claims arising from stigmatization from termination). In this case, as alleged in the complaint, Plaintiffs did not have access to meaningful non-monetary forms of redress to challenge their illegal confinement or ability to post bail.

*Katzberg* noted that it was not necessary to consider "what role the availability of a federal law remedy (for example, under 42 U.S.C. § 1983) should play." *Katzberg* 29 Cal.4th at 327 n.29. While federal remedies should not factor into alternative remedies analysis, should the Court consider the issue, we note that federal remedies involve several disadvantages that would not exist with a private cause of action under section 13. Whereas state law permits *respondeat superior* liability, federal law does not. To establish entity liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), plaintiffs must prove the existence of an unconstitutional policy, practice or custom. *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) (*en banc*) (California rejects *Monell* and imposes liability under *respondeat superior* for acts of employees). In addition, federal law, unlike California law, provides the defense of qualified immunity, which increases the difficulty of establishing liability against individual defendants. *Ogborn v. City of Lancaster*, 101 Cal. App. 4th 448, 460 (Cal. Ct. App. 2002) (no qualified immunity on state law claims).

*Katzberg* likewise did not consider alternative state law mechanisms for securing monetary redress. Insofar as alternative state causes of action are relevant to the analysis, they are inferior to a private cause of action because they do not provide for recovery of attorney's fees or would require an additional

element not required under §13. Claims under Civil Code §52.1, for example, require proof that the constitutional violation was effectuated by means of threats, coercion or intimidation, which increases the difficulty in establishing liability. Government Code 815.6 is viable only where the plaintiff can establish violation of a mandatory duty. Unlike a private right of action, false imprisonment claims would not provide for recovery of attorneys' fees. Cal. Civ. Proc. Code § 1021.5 (Private Attorney General).

The second and third factors also militate towards recognition of a damages remedy. Recognizing a damages remedy would not substantially change existing tort law; it would only confirm what is already implied by §13. Article, I §13 derives from bedrock constitutional principles and protects the fundamental right to liberty without unjust governmental intrusion.

Finally, there are no "special factors" counseling against providing a damages remedy to the victims of unlawful seizures and searches. *Katzberg*, 29 Cal. 4th at 329. There would be no "adverse policy consequences," *id.*, at least not those identified in *Katzberg*, at 329 n.32; the defendants are not, for example, "laypersons with little or no technical expertise." *Kelley Property Dev., Inc. v. Town of Lebanon,* 226 Conn. 314, 341 (1993). There should not be any adverse effect on "governmental fiscal policy." *Katzberg*, 29 Cal.4th at 317.  The cost of compensating those unreasonably seized should not be great and is easily avoidable. Finally, there are no "practical issues of proof," and the courts have a proven "competence" to assess the "particular types of damages" occasioned by wrongful seizures.  *Id.*

Defendants' brief cites only two cases in support of their position: *Wigfall v. City & Cnty. of San Francisco*, No. 06-4968, 2007 U.S. Dist. LEXIS 82047 (N.D. Cal. Jan. 22, 2007) and *Rendon v. Fresno Police Dept.*, No. 05-00661, 2006 U.S. Dist. LEXIS 71170 (E.D. Cal. 2006). *Wigfall* concluded that a damages remedy under § 13 was unavailable because a plaintiff has "an equally effective monetary remedy under 42 U.S.C. § 1983." 2007 U.S. Dist. LEXIS, at *15. This

analysis is wrong. As discussed above, a § 1983 remedy is *not* "equally effective." *Rendon* is similarly unpersuasive. The decision hinges on the availability of alternative statutory or common law means of redress, without identifying such causes of action or whether they provide equally meaningful redress. Alternative damages remedies under California law are substantially inferior to a private right of action because they require more proof and/or do not allow recovery of attorneys' fees.

### F.   PLAINTIFFS' CLAIMS AGAINST THE SHERIFF SHOULD NOT BE DISMISSED AS "REDUNDANT."

Defendants argue that Plaintiffs' claims against the Sheriff in his official capacity "should be dismissed as redundant" with those against the County.  MJP at 12.  It is true, of course, that "'[o]fficial-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Id.* at 11 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  But that does not mean, as Defendants contend, that plaintiffs may never sue an official-capacity defendant if the municipality where he works is also a proper defendant.  The dismissal of allegedly redundant defendants is not mandatory— and it is not appropriate where, as here, there are questions about whether the defendants are truly duplicative, and whether the official-capacity defendant is necessary to provide effective injunctive relief.

The leading Ninth Circuit case on point is one Defendants do not cite: *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780 (9th Cir. 2008). There, both the Sheriff's Department and the Sheriff himself were named as defendants. Given the identity of interests between the two, the Ninth Circuit concluded that the Sheriff should be dismissed, explaining that "[w]hen both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court *may* dismiss the officer as a

redundant defendant." *Id.* at 799 (emphasis added). Critically, the Ninth Circuit phrased its holding in permissive terms, not mandatory ones.[13]

Just as importantly, *Center for Bio-Ethical Reform* concluded only that suing "Sheriff Baca" in his official capacity was duplicative of suing "the Sheriff's Department." 533 F.3d at 799 & n.18. That does not remotely suggest that the Sheriff is also duplicative of *the County as a whole*, as Defendants argue here. While Plaintiffs believe the Sheriff is a final policymaker for the County in relevant respects, *see Streit v. County of Los Angeles*, 236 F.3d 552, 564-65 (9th Cir. 2001), the Sheriff's Department and the County are nevertheless distinct entities with their own separate powers and duties. *See* Cal. Gov't Code § 26605 ("[T]he Sheriff shall take charge of and be the sole and exclusive authority to keep the county jail and the prisoners in it. . . ."). An injunction directed at the County alone, and not the Sheriff or Sheriff's Department, may not afford Plaintiffs complete and adequate relief.

Indeed, Defendants' own affirmative defenses suggest that the Sheriff may not consider himself bound by an injunction addressed to the County.

---

[13] District courts within this Circuit have recognized that they are not required to dismiss well-pled claims against an official-capacity defendant. *See, e.g., Quinn v. Fresno Cnty. Sheriff*, No. 10-01617, 2011 U.S. Dist. LEXIS 48958, at *8 (E.D. Cal. May 6, 2011) (unpub.) ("Defendants cite no authority for the proposition that the alleged redundancy they complain requires dismissal of the TAC. . . . *Center for Bio–Ethical Reform* . . . contain[s] permissive, not mandatory language."); *Clark K. v. Guinn*, No. 06-1068, 2007 U.S. Dist. LEXIS 35232, at *22 (D. Nev. May 14, 2007) (unpub.) ("[W]hile the Court may in its discretion dismiss the individual Defendants from this case, it refrains from so doing at this stage of the litigation."); Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357 n.39 (3d ed.) ("The court should not dismiss a claim against an individual in his official capacity solely because it may be redundant with the separate claim against the government entity of which the official was an agent") (citation omitted).  Indeed, the dismissal of valid claims against allegedly duplicative defendants contravenes the very text and purpose of Section 1983, which permits an individual whose constitutional rights have been harmed to sue "*[e]very* person" acting under color of state law who was a "cause[]" of the injury.  42 U.S.C. § 1983 (emphasis added).

28

Defendants' Answer asserts that "[t]he County Sheriff . . . act[s] on behalf of the State, *not the County*," Dkt. #30 at ¶42 (emphasis added)—an assertion that seriously undermines their claim of redundancy. *See Nelson v. Cnty. of Sacramento*, 926 F. Supp. 2d 1159, 1169 (E.D. Cal. 2013) ("It is contradictory, if not disingenuous, to argue the County and the Sheriff's Department are redundant parties, but that the head of the Sheriff's Department is a state actor, not a local actor for the County.").

If there is any question whether an official-capacity defendant is a necessary party to ensure the efficacy of injunctive relief—as there is here—the district court should not dismiss the official-capacity defendant as redundant. *See, e.g.*, *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 957 (9th Cir. 2002) (reversing district court's dismissal of "duplicative" official-capacity defendants where "the official capacity claims are necessary to effectively foreclose any assertion by [the City] of Eleventh Amendment [i]mmunity"); *B.O.L.T. v. City of Rancho Cordova*, No. 14-01588, 2014 U.S. Dist. LEXIS 170233, at *6 (E.D. Cal. Dec. 8, 2014) (declining to dismiss official-capacity defendants where, if plaintiffs prevail, "the injunction will have to be served on [the officials] themselves and not the county.") (internal quotation marks omitted); *Fisher v. Kealoha*, 869 F. Supp. 2d 1203, 1215-16 & n.18 (D. Haw. 2012) (declining to dismiss official-capacity claims where it was unclear "whether it is necessary to maintain an action against police chief in his official capacity in order to enforce the injunction").

Therefore, Defendants' motion should be denied.  Because the Sheriff is not redundant with Los Angeles County, and because questions remain about the adequacy of relief available to Plaintiffs if the Sheriff is excused from the lawsuit, Plaintiffs' claims against the Sheriff should not be dismissed.  At the very least, the Court should not dismiss the Sheriff unless and until Defendants disclaim their Eleventh Amendment defense and stipulate that any injunction issued against the County would be binding on the Sheriff.

Alternatively, if the court dismisses the Sheriff without such a stipulation, it should grant Plaintiffs leave to amend the complaint to add the Sheriff's Department as a defendant in his place to ensure the effectiveness of injunctive relief.  *See Streit*, 236 F.3d at 565-66 ("we agree with the district court and conclude that . . . the LASD is a separately suable entity").

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Judgement on the Pleadings should be denied.

Dated:  June 22, 2015             KAYE, McLANE, BEDNARSKI & LITT

                                  By ____/s/ Lindsay Battles_____
                                        Lindsay Battles
                                        Attorney for Plaintiffs