UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DUNCAN ROY; et al,                    )
                                      )
            Plaintiffs,               )
                                      )
       vs.                            )
                                      )  No. CV 12-09012 BRO
COUNTY OF LOS ANGELES; et al,         )  (FFMx)
                                      )
            Defendants.               )
_____  )

DEPOSITION OF GREGORY SIVARD

Los Angeles, California

Thursday, May 28, 2015

REPORTED BY:

JEAN KIM
CSR NO. 13555, RPR

JOB NO.
80517KAY

LUDWIG KLEIN
REPORTERS & VIDEO, INC.
10868 KLING STREET
TOLUCA LAKE, CALIFORNIA 91602
800.540.0681    FAX 818.508.6326
email: lois@ludwigklein.com

Exhibit "A"
9

```
 1                    UNITED STATES DISTRICT COURT

 2                   CENTRAL DISTRICT OF CALIFORNIA

 3

 4   DUNCAN ROY; et al,                )
                                       )
 5              Plaintiffs,            )
                                       )
 6         vs.                         )
                                       ) No. CV 12-09012 BRO
 7   COUNTY OF LOS ANGELES; et al,     ) (FFMx)
                                       )
 8              Defendants.            )
     _____)
 9

10        Deposition of GREGORY SIVARD, taken on behalf of the

11   Plaintiffs, at 1313 West 8th Street, Los Angeles,

12   California, commencing at 10:05 a.m., on Thursday,

13   May 28, 2015, before Jean Kim, CSR No. 13555, RPR, a

14   Certified Shorthand Reporter in and for the County of

15   Los Angeles, State of California.

16

17

18

19

20

21

22

23

24

25
```

Exhibit "A"

10

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1              MR. CLARK:  Objection.  Vague and ambiguous.

2              THE WITNESS:  Of what the Sheriff's Department's

3    doing with them?

4    BY MS. BATTLES:

5         Q    Yes.

6         A    No.  Because, again, that's all being handled by

7    Operations.  So I honestly can't answer.

8              Two things have happened:  One, something has

9    changed; two, I was off work for the last few weeks.  So

10   I'm coming in nearly cold to this whole new ICE

11   procedures.

12        Q    How did you become aware of changes within the

13   last week and a half?

14        A    LA Times.

15        Q    Okay.  And have you discussed changes that have

16   happened within the last week and a half with anyone at

17   work?

18        A    No.  Nobody knows.

19             So I'm coming back to work on Tuesday.  The

20   Operation Lieutenant is off work.  He was on vacation

21   until today.

22             So with him -- whatever has been done by an

23   Operations standpoint, if anything, and me coming back

24   and -- for a few days before this and him being off?  I

25   have no idea what's going on.  I have no e-mails that

Exhibit "A"
11

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1  state what the current policy is by him.  So nothing to

2  go on right now.

3      Q    Prior to this most recent change, what was your

4  understanding of the Sheriff's Department's policy with

5  regard to ICE holds?

6      A    They were not being placed on the inmate in the

7  system.  The Sheriff's Department -- they would not be

8  placed on the inmate.  The hold may come in, would be

9  placed in the jacket, but would not be placed into the

10  system.

11      Q    And by "the system," are you referring to a

12  computer information system?

13      A    Yes.

14      Q    And which system?

15      A    AJIS.

16      Q    Okay.

17          MR. CLARK:  For the court reporter's sake,

18  that's A-J-I-S.

19  BY MS. BATTLES:

20      Q    All right.  And how long had that practice been

21  in place, of not placing the holds into AJIS?

22          MR. CLARK:  Objection.  Lacks foundation.

23          If you know.  If you don't, you don't.

24          THE WITNESS:  It would be a couple months.

25          Again, it was very fluid for the last

LUDWIG KLEIN REPORTERS & VIDEO, INC. - 800.540.0681        29

**Exhibit "A"**
12

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1   different changes.  So there's no confusion, I think, as

2   far as who they answer to.

3           Like I said, the ICE desk personnel, we never

4   see.  It's this mysterious group of five or six, and I

5   have no idea where they're even at as far as where

6   they're sitting.

7           I knew where they once were, but like I said,

8   PMB took over a lot of stuff, and I don't know where

9   they're at now.

10  BY MS. BATTLES:

11      Q    Where were they formerly located?

12      A    Up on the secured side of IRC or Twin Towers.

13           But they're on the secured side.  And, again,

14  we're on the unsecured side.  So our dealings with them

15  would be slim to none.

16      Q    On the document that we've been looking at,

17  there's a note at the very bottom of page 2.  And it says

18  "A bond or bail presented on behalf of an inmate for a

19  bondable charge(s) being held on an ICE detainer shall be

20  accepted at a Station or IRC."

21           Was it your understanding that this note in any

22  way changed policy?

23      A    It reiterated policy.

24      Q    And do you have any understanding as to why it

25  needed to be reiterated?

**Exhibit "A"**
13

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1           MR. CLARK:  Objection.  Assumes facts not in

2    evidence.  Argumentative.

3           THE WITNESS:  There was -- there was some

4    misinterpretation of the MPP with regards to posting of

5    bail when a no-bail hold was also placed on the inmate.

6    BY MS. BATTLES:

7      Q    What do you mean by a "no-bail hold"?

8      A    When a hold is presented to LA County to place

9    on an inmate, if there is no -- per MPP, if there is no

10   bail attached to that hold, LASD does not assume what

11   it's going to be.  So it becomes a no-bail hold.

12     Q    And what was the misunderstanding concerning the

13   no-bail holds?

14     A    That, even though the inmate had a bailable

15   offense for matters within LA County, having the no-bail,

16   there was a misconception that people were doing

17   themselves a favor by alerting the fact that they should

18   not -- you shouldn't post because the inmate's not

19   getting out of custody.

20     Q    Was that misinterpretation still occurring as

21   recently as 2013?

22          MR. CLARK:  Objection.  Lacks foundation.

23          If you know.

24          THE WITNESS:  I don't -- I would -- I thought

25   everything was resolved before then, that the -- again,

**Exhibit "A"**
14

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1    it's hard to put perspective on time because so much has

2    happened.  But 2013, I believe that the matters were

3    clarified enough.  But maybe during this period, it was

4    still early enough where there still needed to be a

5    reminder for them.

6    BY MS. BATTLES:

7        Q    I'm going to hand you a copy of what's been

8    marked as Exhibit 7 to Commander Sharp's deposition.

9             Are you familiar with this type of document?

10       A    Yes.

11       Q    Can you describe to me what it is.

12       A    On the LASD Web site, you can pull inmate

13   information regarding their booking, their charges,

14   court appearances, et cetera.

15       Q    And if you take a look at this second box where

16   it says bail, the second field says "Total Hold Bail

17   Amount:  No Bail."

18            Is this the no-bail notation that you were just

19   referring to?

20       A    Yes.

21       Q    And so if I'm following you, then some holds

22   would have a specific bail amount attached to them.  And

23   an immigration hold, however, would not have a specific

24   bail amount attached to it; so, by default, it was

25   entered in as no bail.  Is that right?

**Exhibit "A"**

15

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1       A       Correct.

2       Q       And because it said no bail, it indicated that

3    there was no bail attached to the immigration hold -- it

4    did not necessarily mean that the inmate had a

5    nonbailable offense; it just meant that there was no bail

6    attached to the immigration hold.  Is that right?

7       A       Yes.

8       Q       But for some period of time, there was confusion

9    about the meaning of no bail?

10              MR. CLARK:  Objection.  Misstates prior

11   testimony.  I don't think he said there was a confusion

12   about the meaning of no bail.

13              THE WITNESS:  No.  Whether or not a bond could

14   be posted for someone who had a no-bail hold.

15   BY MS. BATTLES:

16      Q       Okay.  So for at least some period of time,

17   there were some people who interpreted no bail as meaning

18   no bond could be posted?

19              MR. CLARK:  Objection.  Calls for speculation.

20   Misstates prior testimony.

21              THE WITNESS:  The MPP was very clear to those

22   who would read it that said that bail can be accepted

23   regardless of what the offense was.  If there's a bail

24   attached to it, a bond could be posted.

25              The belief by some was that the mere fact that

**Exhibit "A"**
16

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1    there's a no-bail attached -- even though he could bail

2    out on $100 for an LA County matter, he's still not

3    getting out of custody for that.  He was still going to

4    be held on this no-bail charge hold.  And in that case,

5    they would say no, you can't post for that reason.

6           But -- so that's what needed to be addressed and

7    the people reminded that you can post bond.  As long as

8    there's a bail amount attached to it and they have the

9    money, you accept it.

10          But, again, they were thinking they were being

11   the nice person.  "Why are you posting it when there's

12   something that's going to keep him still in custody."

13          And that was the ambiguity that we sought

14   clarification on.

15   BY MS. BATTLES:

16      Q    And when you say "when they're still in

17   custody," is that because, if someone posted bail and had

18   an immigration hold, they wouldn't be released to the

19   street; they would be transferred to immigration?

20      A    Correct.  The expectation of a person posting

21   bond is that that person will be able to walk freely out

22   onto the street.

23          In this case, with the immigration hold in

24   place, then the bail bond money is deemed not

25   necessarily, for a lack of better word, lost, but you're

LUDWIG KLEIN REPORTERS & VIDEO, INC. - 800.540.0681          118

**Exhibit "A"**
17

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1   throwing money out there when the inmate isn't being able

2   to come out on the street.  They're going to be held

3   48 hours and then released to ICE.  And that's how that

4   came about.

5       Q    At some point, did the policy of holding people

6   who had posted bail and then transferring them to ICE

7   change?

8           In other words, at some point, were people who

9   had immigration holds allowed to post bail and actually

10  be released?

11      A    The people that had ICE detainers -- so once

12  this became more clear and it was placed out there and

13  this memo -- and, again, reminder with the MPP if there

14  was any ambiguity to clarify that once and for all --

15  then freely, anyone can post bond on any LA County matter

16  with the understanding that, if they had an immigration

17  hold, that that inmate's bond would be accepted; however,

18  he was then going to be made available to ICE and

19  transferred then.

20          And it got to the point where it was

21  immediately, you know, during certain changes, and then

22  where we are now with ICE.

23          So you can post bond at any time.

24      Q    It just does not ensure that you will be

25  released --

Exhibit "A"
18

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1    A    From LA --

2    Q    -- to the street?

3    A    Exactly.

4    Q    I see.

5         (Exhibit 300 was marked for identification by

6         the certified shorthand reporter.)

7         MS. BATTLES:  And I have only one copy of this

8    document.  This is a Sheriff's Department Broadcast.  It

9    is dated February 6, 2015.

10   Q    Can you read the second full paragraph.

11   A    "In the event an inmate with an ICE detainer

12   posts bond or cash bail, either at a Sheriff's Station or

13   at the Inmate Reception Center, the bond or cash bail

14   will be accepted.  If the inmate's booking record is

15   maintained at IRC, the inmate is to be made immediately

16   available to the custody of ICE."

17   Q    Is that your understanding of the Department's

18   current policy?

19   A    Again, it has changed recently.  I don't believe

20   it is the, quote/unquote, current because of that.

21        The problem with our JDIC is that they're placed

22   on a disk, sent out almost every Monday, and it doesn't

23   always catch up with current policy.  It does not always

24   get sent out immediately.  Welcome to the county.

25   Q    So, in other words, there's another revision of

LUDWIG KLEIN REPORTERS & VIDEO, INC. - 800.540.0681          120

**Exhibit "A"**
19

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1    the bail policy more recent than February 2015?

2         A    There will be.  Probably --

3         Q    Do you have any --

4         A    -- effective June 1st.

5         Q    Do you have any knowledge of what that policy

6    would say?

7         A    No.  Not yet.

8              I don't know because, again -- let me just --

9    when I say "welcome to the county," reiterate:  They were

10   sending out JDIC, seven years after I took the position,

11   with my predecessor's name on it.  If they find a disk

12   and -- the day shift people have their own disk -- and

13   yes, we're still working with disks.  This is pretty

14   sad -- and they aren't used by the same -- day-shift

15   people have their own disks; p.m. shift has their own

16   disks, et cetera, et cetera.

17             Those -- you need to tell the people we're

18   sending this out with somebody else's name on it who

19   hasn't worked here in seven years that's still going out

20   every Monday.

21             This is how often somebody looks at this in the

22   county.  ACLU, they look at a lot more.  But we -- I

23   haven't looked at a JDIC in God only knows how long

24   because now it's just more stuff that -- the minutiae.

25             It's the same thing.  Every Monday they send out

**Exhibit "A"**
20

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1    the same thing.  Why would it change?  Well, guess what?

2    Things do change.  But does it trickle down to lowest

3    common denominator, which is my staff?  As an

4    intermediate clerk, you know, who are the lowest paid in

5    the county -- and they're saying "Oh, well, if I knew

6    that.  If somebody would tell me that."

7            So it gets up here, and it may be the policy in

8    place, but you're still maybe looking at old -- antiqued

9    teletypes.

10           MR. CLARK:  I want to take a quick break,

11   please.

12           (Recess.)

13           THE WITNESS:  So if I may clarify one thing with

14   the -- in regards to Exhibit 300, the JDIC regarding

15   acceptance of cash bail and bonds.

16           When I alluded earlier to the fact that

17   something could change tomorrow, I was referring to the

18   process for ICE and not the fact that the acceptance of

19   cash bonds or bails would change.  That's always been the

20   same policy that the Sheriff's Department has always had,

21   that we would accept a cash bail or bond on any LA County

22   matter that had a bond or bail attached to it.

23   BY MS. BATTLES:

24   Q    So you're not aware of any coming changes

25   concerning the acceptance of bail or bond?

**Exhibit "A"**
21

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1      A      Correct.

2      Q      Okay.  So that does bring me to

3  Sheriff's Department policies and the Manual of Policy

4  and Procedures on bail and bond.

5            And I know that you mentioned that these

6  policies had pretty much always been clear; so I want --

7  I just want to cover some of the older ones.  And we can

8  mark this as the next one in the 400 sequence.  So it'll

9  be 401.

10           (Exhibit 401 was marked for identification by

11           the certified shorthand reporter.)

12  BY MS. BATTLES:

13     Q      Have you seen this before?

14     A      In some way, shape or form, I probably have.

15     Q      Okay.  Can you tell me what it is?

16     A      It's the MPP regarding the acceptance of bail,

17  presented on multiple charges and/or releases.

18     Q      And what's the revision date on this policy?

19     A      10/18/09.

20     Q      Earlier, I believe you testified that the

21  Sheriff's Department policy was always that, if there was

22  bond attached to a charge, the Sheriff's Department would

23  accept bond or bail; is that right?

24     A      Yes.

25     Q      Okay.  And is this policy consistent with that

LUDWIG KLEIN REPORTERS & VIDEO, INC. - 800.540.0681          123

**Exhibit "A"**

22

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1    understanding?

2            MR. CLARK:    Objection.    The document speaks for

3    itself.

4            THE WITNESS:    Yes.

5    BY MS. BATTLES:

6        Q    And I want to -- well, let me ask you this:

7    When this policy was in effect, do you remember if there

8    was any misunderstanding or confusion about whether bail

9    or bond could be accepted on behalf of someone with an

10   ICE hold?

11       A    I don't, that I remember.    I don't.

12       Q    Okay.    I have a more recent one, and this one

13   we'll mark, I believe, 402.

14            (Exhibit 402 was marked for identification by

15            the certified shorthand reporter.)

16   BY MS. BATTLES:

17       Q    And are you familiar with this policy?

18       A    Yes.

19       Q    Okay.    This one was revised in January 2013.

20   And in the third paragraph, there are some clarification

21   about processing of bail and bond for inmates with

22   ICE holds.

23       A    Yes.

24       Q    Do you know if this policy was issued to clarify

25   confusion about whether bail or bond could be accepted on

**Exhibit "A"**
23

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1    behalf of inmates with ICE holds?

2           MR. CLARK:  Objection.  Misstates prior

3    testimony.  Vague and ambiguous.  Calls for speculation.

4           THE WITNESS:  From the meeting that I mentioned

5    earlier with Peter Eliasberg and "Michael" Grambo amongst

6    others, one of the discussion points was the

7    clarification regarding bond or bail being accepted at

8    the time that the inmate also had an ICE detainer.

9    BY MS. BATTLES:

10      Q    And when you say that the MPP had always been

11   clear on LASD's policy, is it your understanding that the

12   MPP has been clear since this earlier version in 2009

13   that states that bail or bond will be accepted for any

14   charge that's associated with a bail or bond -- do you

15   think it was -- it was clear as far as back as 2009, or

16   do you think that it was clear back to the 2013 policy?

17          MR. CLARK:  Objection.  Compound.  Vague and

18   ambiguous.  And argumentative.  And also, the document

19   speaks for itself.

20          THE WITNESS:  According to Greg, that both the

21   '09 that says it shall be accepted and/or this -- '09, it

22   was absolutely the same to me as '13, that it will be

23   accepted.

24          The difference is when it comes down to the

25   '13's revision is to specify regarding ICE detainers

LUDWIG KLEIN REPORTERS & VIDEO, INC. - 800.540.0681        125

**Exhibit "A"**
24

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1    because it was brought to our attention.  Otherwise,

2    '09's, to me, was just as good as what '13's was.  It

3    didn't need to be reminded.  You're handling the

4    LA County matter, and it says here that bond will be

5    accepted.  It says the same thing in '13.

6          It gives the examples, though, regarding ICE

7    because there were concerns about that and, again, with

8    the no-bail.  But '09 stands the same as '13.  If you

9    have something -- an LA County matter which has a bail

10   attached to it, bond wants to be posted, accept the bond.

11   BY MS. BATTLES:

12   Q    When did you first learn that there was

13   confusion about the interpretation of the '09 policy?

14         MR. CLARK:  Objection.  Misstates prior

15   testimony.  Vague and ambiguous.

16   BY MS. BATTLES:

17   Q    You mentioned earlier that this issue was

18   brought to your attention during a meeting with

19   Peter Eliasberg and Roger Grambo.

20         Was that the first you had heard about confusion

21   concerning the '09 policy?

22         MR. CLARK:  Objection.  Misstates prior

23   testimony.

24         THE WITNESS:  As far as I recall, that's the

25   first time that there was any question about whether or

LUDWIG KLEIN REPORTERS & VIDEO, INC. - 800.540.0681          126

**Exhibit "A"**
25

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1    not bond for an LA County matter could be accepted or

2    wasn't being accepted for an LA County matter that had

3    bond or bail amount associated with it was not being

4    taken because of an ICE hold.  That was the first time.

5    BY MS. BATTLES:

6        Q     And are you aware of any confusion that

7    persisted after the MPP was revised in January 2013?

8             MR. CLARK:  Objection.  Misstates prior

9    testimony.  Vague and ambiguous.

10            THE WITNESS:  I believe that there were some

11   past '13 that still had some questions about it.

12            But, again, by training and getting the word out

13   there, whether it's through the MPP or Chief Fender's

14   memo, it was being constantly reminded to personnel that,

15   regardless of the circumstances, if bond is to be

16   posted -- or is able to be posted, accept the bond.

17   BY MS. BATTLES:

18       Q     And aside from I guess the MPP, which we've

19   discussed, this memo from Chief Fender, what other

20   efforts are you aware of to address any potential

21   confusion as to whether bail or bond could be accepted on

22   behalf of an inmate with an ICE hold?

23       A     We've conducted shift briefings within Records,

24   informing the staff.

25            We have briefings every shift.  And this was one

LUDWIG KLEIN REPORTERS & VIDEO, INC. - 800.540.0681        127

**Exhibit "A"**

26

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1   of the reminders that we consistently drilled into them

2   was that there's been a revision to the MPP.  And in

3   doing so, it's just a reminder that, again, bond will be

4   taken.  In addition to:  It doesn't matter if there's an

5   ICE hold attached to it or not.  Accept the bond.

6       Q    Are you aware of any efforts to clarify this

7   issue with personnel beyond Booking and Records?

8       A    We hosted -- and I don't know the date as to

9   when, but we hosted a tutorial/classroom setting with the

10  station jailers and got the word out that way as well.

11      Q    So there were trainers for the station jailers,

12  briefings for Booking and Records, and updates to the

13  MPP.  Anything else?

14      A    That's all I can recall.

15      Q    Okay.  The briefings that you mentioned, were

16  those daily briefings for Bookings and Records?

17      A    There would be --

18      Q    At daily briefings, but not every day, I would

19  imagine?

20      A    Correct.  So it would be those reminder points

21  that we would bring up during the time that the revision

22  was first introduced.

23      Q    During what time period were you conducting the

24  reminder briefings?

25      A    As soon as this came out.

LUDWIG KLEIN REPORTERS & VIDEO, INC. - 800.540.0681          128

**Exhibit "A"**

27

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1      A      No.

2      Q      Okay.  And just to confirm something you said

3  earlier, as far as you're aware, there were no mechanisms

4  in Booking and Records to track the amount of time it

5  took someone -- to process someone from release from the

6  moment they become due for release until the moment they

7  are actually released?

8      A      I think we're looking at a time -- and, again,

9  the only way we have -- you have two entities going on.

10  You have DIMS, which contract the movement of the body.

11  That doesn't help because that only tells you the amount

12  of time that that inmate spent in the release area.

13          But if we're looking at the jacket -- because

14  every jacket -- the moment that that first check is done,

15  isn't then taken to the second check, they'll let jackets

16  stack up until they have enough of them to warrant going

17  up to the Release Area for that second check.  That

18  second check may or may not have work already there.

19          So, again, I don't believe that there's any

20  mechanism that we have to track, even from that second --

21  the second clerk may sign it, and we may say "go."  But

22  if they haven't sent the pass, we don't know at what

23  point that that inmate was available to go because they

24  may stack them all up and approve them and then send the

25  teletypes all at one time.  It just depends.

LUDWIG KLEIN REPORTERS & VIDEO, INC. - 800.540.0681          178

**Exhibit "A"**

28

GREGORY SIVARD - May 28, 2015
ROY VS. COUNTY OF LOS ANGELES

1      Q     Okay.   Since the policy changed -- since the

2    Sheriff's Department's policy changed to not honor

3    ICE holds, are you aware of any circumstances in which

4    the Department held someone beyond their normal release

5    time on the basis of an ICE hold?

6      A     I'm not aware of any.

7      Q     Are you aware of any delays in ICE picking up

8    inmates?

9      A     I'm not aware of those, no.

10           MS. BATTLES:   Okay.   Nothing further from me.

11           MR. CLARK:   Nothing from me.

12           You want to propose a stipulation on that?

13           (Discussion held off the record.)

14           MS. BATTLES:   I propose that the court reporter

15    be relieved her duties under the rules; that the original

16    transcript be sent to Lawrence, Beach, Allen & Choi.

17           Defense counsel will see that Mr. Sivard has an

18    opportunity to review it, sign it under penalty of

19    perjury, and return it within 30 days.

20           30 days okay?

21           MR. CLARK:   Yeah.   That's fine.

22           MS. BATTLES:   Defense counsel will maintain

23    custody of the original and produce it should this case

24    proceed to trial.

25           If the original is lost or not available, then

Exhibit "A"
29

REPORTER'S CERTIFICATE

1

2

3        I, Jean Kim, CSR No. 13555, RPR, a

4    Certified Shorthand Reporter in and for the State of

5    California, do hereby certify:

6        That prior to being examined, the witness named

7    in the foregoing proceedings declared under penalty of

8    perjury to testify to the truth, the whole truth,

9    and nothing but the truth;

10        That said proceedings were taken by me in

11    shorthand at the time and place herein named and were

12    thereafter transcribed into typewriting under my

13    direction, said transcript being a true and correct

14    transcription of my shorthand notes;

15        Pursuant to Federal Rule 30(e), transcript

16    review was requested;

17        I further certify that I have no interest in

18    the outcome of this action.

19                        June 10, 2015

20

21

22    _____

      Jean Kim

23    CSR No. 13555, RPR

24

25

**Exhibit "A"**

30