CHAD A. READLER
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
COLIN A. KISOR
Deputy Director
J. MAX WEINTRAUB
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
Tel.: (202) 305-7551
Fax: (202) 305-7000
Email: jacob.weintraub@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GERARDO GONZALEZ, *et al.*, | ) | Case No. CV12-9012 BRO(FFMx) |
| | ) | Consolidated with: |
| Plaintiffs, | ) | No. 2:13-cv-4416-BRO (FFMx) |
| | ) | |
| v. | ) | **DEFENDANTS'** |
| | ) | **MEMORANDUM OF POINTS** |
| IMMIGRATION AND CUSTOMS | ) | **AND AUTHORITIES FOR** |
| ENFORCEMENT, *et al.*, | ) | **MOTION TO DISMISS AND** |
| | ) | **PARTIAL SUMMARY** |
| Defendants. | ) | **JUDGMENT** |
| | ) | |
| | ) | DATE: Friday, July 24, 2017 |
| _____ | ) | TIME: 1:30 p.m. |
| | | JUDGE: Beverly Reid O'Connell |
| | | Courtroom: 7C |

# TABLE OF CONTENTS

INTRODUCTION ............................................................. 1

FACTS AND PROCEDURAL BACKGROUND ........................................... 2

   A. ICE's detainer practices.......................................... 2

   B. Brief procedural history......................................... 6

   C. Plaintiffs Gonzalez and Chinivzyan .............................. 7

LEGAL STANDARDS FOR REVIEW ................................................ 8

   A. Dismissal under Federal Rule of Civil Procedure 12(b)(1).................... 8

   B. Summary Judgment under Federal Rule of Civil Procedure 56............. 9

ARGUMENT ................................................................ 10

   A. This Court lacks subject-matter jurisdiction over Plaintiffs'
      claims, because the Immigration and Nationality Act
      provides exclusive judicial review through the
      Petition for Review process..................................... 10

   B.  The Court should grant judgment in favor of Defendants
      as to the Statutory Subclass, because ICE issues warrants
      with each detainer .............................................. 15

   C.  The Court should grant judgment in favor of Defendants
      as to the Probable Cause Subclass, because the Fourth Amendment
      does not require ICE to alter practices regarding the determination
      of probable cause of removability ............................... 16

CONCLUSION ............................................................. 20

i

# TABLE OF AUTHORITIES

### Cases

*Abdisalan v. Holder*,
774 F.3d 517 (9th Cir. 2014) ..................................................................4

*African Am. Contractors v. City of Oakland*,
96 F.3d 1204 (9th Cir.1996) ..................................................................8

*Aguilar v. U.S.,*
*ICE*, 510 F.3d 1 (1st Cir. 2007) ...................................................... 12, 13

*Allstate Ins. Co. v. Madan*,
889 F. Supp. 374 (C.D. Cal. 1995) ........................................................9

*Arizona v. Evans*,
514 U.S. 1 (1995) ..................................................................................18

*Case v. Kitsap Cty. Sheriff's Dep't.*,
249 F.3d 921 (9th Cir. 2001) ................................................................18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..........................................................................9, 10

*Cool Fuel, Inc. v. Connett*,
685 F.2d 309 (9th Cir. 1982) ..................................................................9

*Fleck & Assoc., Inc v. Phoenix City of Ariz. Mun. Corp.*,
471 F.3d 1100 (9th Cir. 2006)...............................................................8

*In Re Joseph*,
22 I. & N. Dec. 799 (BIA 1999)...........................................................11

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016)........................................ 11, 12, 13, 14

*Jimenez-Angeles v. Ashcroft*,
291 F.3d 594 (9th Cir. 2002)....................................................... 14, 15

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ................................................................................8

*Marinelli v. Capone*,
868 F.2d 102 (3d Cir. 1989)................................................................18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .........................................................................9, 10

*McAllister v. Desoto Cnty, Miss.*,
No. 11-60482, 2012 WL 1521642 (5th Cir. May 1, 2012) ...................18

*Miranda-Olivares v. Clackamas County*,
2014 WL 1414305 n. 4 (D. Ore. 2014)..................................................4

iii

*Moreno v. Napolitano*,
   --- F. Supp. 3d--, 2016 WL 5720465 (N.D. Ill. Sept. 30, 2016) ..........................16

*Nadarajah v. Gonzalez*,
   443 F.3d 1069 (9th Cir. 2006) ...................................................................13

*People v. Xirum*,
   993 N.Y.S.2d 627 (N.Y. Sup. Ct. 2014) .....................................................4

*Reno v. Am.-Arab Anti-Discrimination*,
   *Com.*, 525 U.S. 471 (1999) ................................................................ 12, 14

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ....................................................................8

*Singh v. Gonzalez*,
   499 F.3d 969 (9th Cir. 2007) ....................................................................13

*Singh v. Holder*,
   638 F.3d 1196 (9th Cir. 2011) ..................................................................13

*Sissoko v. Rocha*,
   509 F.3d 947 (9th Cir. 2007) ....................................................................15

*State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*,
   138 F.3d 772 (9th Cir. 1998) .....................................................................9

iv

*Tejeda-Mata v. I.N.S.,*

626 F.2d 721, 725 (9th Cir. 1980)..................................................................16

*United States v. Carranza,*

289 F.3d 634 (9th Cir. 2002)........................................................................17

*United States v. Corral-Villavicencio,*

753 F.2d 785 (9th Cir.1985).........................................................................17

*United States v. Garza,*

980 F.2d 546 (9th Cir.1992).........................................................................17

*United States v. Howard,*

480 F.3d 1005 (9th Cir. 2007)......................................................................16

*United States v. Marin-Cuevas,*

147 F.3d 889 (9th Cir. 1998)........................................................................18

*United States v. Martinez-Jimenez,*

464 F.3d 1205 (10th Cir. 2006)....................................................................19

*United States v. Palmer,*

536 F.2d 1278 (9th Cir. 1976)......................................................................19

*United States v. Wallace,*

213 F.3d 1216 (9th Cir.2000).......................................................................17

v

*Wade v. Kirkland*,
  118 F.3d 667 (9th Cir. 1997) ...................................................................16

*Wolfe v. Strankman*,
  392 F.3d 358 (9th Cir. 2004) ...................................................................8

Statutes

8 U.S.C. § 1225 ..................................................................................... . . .4

8 U.S.C. § 1226 .................................................................................. …..16

8 U.S.C. § 1228(b) ....................................................................................6

8 U.S.C. § 1231(a)(5) ...............................................................................6

8 U.S.C. § 1252 ............................................................................... 12, 17

8 U.S.C. § 1252(a)(2)(D) ........................................................................13

8 U.S.C. § 1252(a)(5) .................................................................... 1, passim

8 U.S.C. § 1252(b)(9)..................................................................... 1, passim

8 U.S.C. § 1252(g) ..............................................................................1, 14

8 U.S.C. § 1357 ......................................................................................16

8 U.S.C. § 1357(a)(2) ....................................................................... 10, 15

## Regulations

8 C.F.R. § 236.1(a)(8) ............................................................................. 6

8 C.F.R. § 236.1(c)(8) ............................................................................ 11

8 C.F.R. § 236.1(d)(1) ............................................................................11

8 C.F.R. § 239.1(a) ..................................................................................6

8 C.F.R. § 287.3(d) .................................................................................11

8 C.F.R. § 287.8(c).................................................................................16

8 C.F.R. § 1235.3 ................................................................................... 4

## Federal Rules of Civil Procedure

12(b)(1) ..................................................................................8, 17, 22

56.........................................................................................9, 23

56(a) ........................................................................................9

56(f)(1) ...................................................................................10

# I.   <u>INTRODUCTION</u>

This case involves constitutional and statutory challenges to U.S. Immigration and Customs Enforcement's (ICE's) practice of issuing immigration detainers to local, state, or federal law enforcement agencies for aliens in their jails or prisons.  This motion challenges the Court's jurisdiction to hear Plaintiffs' claims at all, under 8 U.S.C. § 1252(a)(5), (b)(9) and (g).  It further seeks partial summary judgment on Plaintiffs' Probable Cause and Statutory subclass claims.[1] ICE is entitled to judgment as a matter of law as to both subclasses because the practice of issuing detainers based primarily on search results from various databases does not violate the Fourth Amendment, and, as Plaintiffs cannot plausibly dispute, ICE now issues administrative warrants with each detainer.

The named Plaintiffs, Gerardo Gonzalez and Simon Chinivizyan, are two U.S. citizens who had been in the criminal custody of the Los Angeles County Sheriff's Department (LASD), but, it is undisputed, are no longer subject to any ICE detainer and had never been in the physical custody of ICE, much less been held longer than 48 hours on an ICE detainer beyond the time when they otherwise would have been released from LASD custody.

On September 9, 2016, the Court partly granted and partly denied Plaintiffs' motion to certify a class, limiting what Plaintiffs call the "Judicial Determination Class" to "those who were detained for more than forty-eight hours without

---

[1] The parties previously briefed and argued Plaintiffs' motion for partial summary judgment on behalf of the Judicial Determination Class.  ECF No. 219.  It asked the Court to import criminal procedural requirements into the civil administrative processes of removing aliens from the United States under the immigration laws, imposing responsibilities and obligations upon ICE that neither the Constitution nor statutes require, and that would impose significant administrative burden upon ICE and reviewing courts.  Defendants here incorporate by reference the arguments proffered in their opposition to Plaintiffs' motion for partial summary judgment as to the Judicial Determination Class.  *See* ECF No. 225 at 11-22.

receiving a judicial determination of probable cause." ECF No. 96 at 42.

Additionally, the Court certified the Probable Cause and Statutory subclasses. *Id*.

## II.    FACTS AND PROCEDURAL BACKGROUND

### A.    ICE's detainer practices

When a local law enforcement agency (LEA) within the Area of Responsibility of ICE's Los Angeles Field Office (providing the geographic limitations of this action) arrests an individual and obtains that individual's fingerprints for comparison, those prints are sent to the Federal Bureau of Investigation (FBI), which sends the information to ICE's Law Enforcement Support Center (LESC) in Burlington, Vermont, through a system called "interoperability."[2]  Ex. A, excerpts from the deposition of Brian Demore, taken on February 10, 2016, 32:6 - 34:11. The LESC may conduct certain basic database background checks, relating to immigration and criminal history, then sends an Immigration Alien Response (IAR) to ICE's Pacific Enforcement Response Center (PERC).  *Id*. at 34:12-19.  When ICE personnel at the PERC receive an IAR, ICE conducts further investigation and database checks, searching between five and ten different databases for each individual.[3]  *Id*. at 35:15 - 36:4.  If the ICE officer determines through that investigation or those database checks that probable cause exists that the individual is a removable alien, then the officer issues a detainer.  *Id*. at 35:11-14.  If there is not enough information to issue a detainer after ICE receives an IAR and completes the investigation and database checks, then the PERC refers that message, along

---

[2] Interoperability is when an individual is fingerprinted by a law enforcement agency; those prints are sent to the FBI; the FBI shares those prints with DHS.  Ex. B, at 39:8-11.

[3] Among those databases, maintained by a number of different federal government agencies, are CLAIMS, CIS, CLETS, ENFORCE, NCIC, IDENT, TECS, and others.  Ex. A, at 36-37.

with the database checks that it has run, to the relevant field office so that the field office personnel can follow up by interviewing the individual or by obtaining conviction documents to make a determination as to whether to issue a detainer. Ex. A, at 40:2-8.

At the time Plaintiffs commenced their action, ICE might issue a detainer if the database search and investigation of an individual known to be born outside the United States returned no information (known as a foreign born, no match). Ex. C, excerpts from the ICE Headquarters 30(b)(6) deposition of Marc Rapp, taken on March 10, 2016, at 145:15-21. Now (and, in fact, since June 2015, *see* Priority Enforcement Program Fact Sheet[4]), ICE does not issue detainers unless first confirming through biometrics or a personal interview with the subject that it has probable cause that the individual is removable. ICE Policy Number 10074.2, entitled "Issuance of Immigration Detainers by ICE Immigration Officers," which established current ICE policy and procedures regarding the issuance of civil immigration detainers to LEAs.[5] *See also* Ex. C, at 145:22 - 148:9.

ICE uses a detainer to request that an LEA notify ICE before the alien is released from the LEA's custody, and detain an individual, already in that agency's custody after arrest by that agency, for a period of up to 48 hours beyond when the LEA would otherwise release the individual, so that ICE may assume custody of that individual, based on an ICE officer's determination that there is probable cause that the individual is a removable alien. ECF No. 220 (Plaintiffs' Statement of

---

[4] Available at https://www.ice.gov/sites/default/files/documents/Fact%20sheet/2015/pep_brochure.pdf, last visited May 16, 2017.

[5] Available at https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf, last visited May 16, 2017.

3

Uncontroverted Facts and Conclusions of Law ("SOF")), accompanying their prior Motion for Partial Summary Judgment ¶ 1; ECF Nos. 221-1, 2, 3 (Pasquarella Decl. Exs. A (Detainer Form I-247 (12/12) (superseded)), B (Detainer Form I-247D), C Detainer Form I-247X)).[6]  ECF No. 220 ¶ 2, 5; *see also* new Form I-247A.[7]

On March 24, 2017, ICE issued Policy Number 10074.2, entitled "Issuance of Immigration Detainers by ICE Immigration Officers," which established current ICE policy and procedures regarding the issuance of civil immigration detainers to

---

[6] In many instances, however, ICE bases its detainer on the individual's final order of removal, in which an immigration judge *has* found the individual to be removable.  *See Abdisalan v. Holder*, 774 F.3d 517, 523 (9th Cir. 2014), as amended (Jan. 6, 2015) ("Congress has defined an order of removal as 'the order' of the IJ "concluding that the alien is deportable or ordering deportation."); *People v. Xirum*, 993 N.Y.S.2d 627, 631-32 (N.Y. Sup. Ct. 2014) (holding that ICE detainer request based on a final order of deportation provided sufficient probable cause for the New York Department of Corrections to hold an individual for up to 48 hours after the conclusion of the state case); *cf. Miranda-Olivares v. Clackamas County*, 2014 WL 14145305, at *4 n. 4 (D. Ore. 2014) (noting that a refusal by a locality to honor a detainer based on a final order of removal could be constitutionally preempted).  ICE may also base its detainer on removal orders issued by immigration officers.  *See, e.g.,* 8 U.S.C. § 1225, 8 C.F.R. §1235.3.  In this litigation, however, the Court has defined the class to exclude detainers issued on those bases.

[7] Since April 2, 2017, ICE has used a new detainer form, called the I-247A (available at https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf, last visited May 16, 2017), which continues to indicate that the officer issuing the detainer has probable cause that the subject is a removable alien, and continues to include the specific criteria that indicate the base(s) for probable cause as did the prior forms I-247D and I-247X that Plaintiffs cite.

4

LEAs.[8]  The directive expressly reaffirms the requirement, which has been in place since its inclusion on the 2015 detainer forms, that "ICE immigration officers must establish probable cause to believe that the subject is an alien who is removable from the United States before issuing a detainer[,]" and also that ICE officers must accompany all detainers with "either: (1) a properly completed Form I-200 (Warrant for Arrest of Alien) signed by an authorized ICE immigration officer; or (2) a properly completed Form I-205 (Warrant of Removal/Deportation) signed by an authorized ICE immigration officer."  *Id.* at ¶ 2.4.  The directive also reaffirms that an ICE officer "may not issue a detainer based upon the initiation of an investigation to determine whether the subject is a removable alien," an option that has been precluded since the 2012 revision of the detainer form, and that an ICE officer "may not establish probable cause of alienage and removability, for purposes of detainer issuance, solely based on evidence of foreign birth and the absence of records in available databases ('foreign-born-no match')."  *Id.* at ¶ 2.6.

Additionally, the directive reaffirms that "[a]s a matter of law, ICE cannot assert its civil immigration enforcement authority to arrest and/or detain a U.S. citizen," and reaffirms that ICE immigration officers must continue to comply with the requirements of ICE Policy No. 16001.2, *Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE* (Nov. 10, 2015), when issuing detainers.  *Id.* at ¶ 2.9 & n. 4.

Once ICE takes physical custody of an individual on whom it has placed a detainer, an ICE officer processes the individual and determines whether to issue a charging document, known as a Notice to Appear (NTA),[9] placing the individual

_____

[8] (Available at https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf, last visited May 16, 2017.)

[9] This is the general practice, although, other circumstances may exist.  For instance, where an alien is already in removal proceedings, ICE might not issue an

into removal proceedings, and whether to keep the person in custody or permit release on bond, other conditions, or recognizance.  ECF No.  ¶¶ 9, 10. This process, including, where applicable, issuance of an NTA and a custody determination, requires the review of a supervisory officer, providing an additional level of review of the individual's alienage and removability.  *See* 8 C.F.R. §§ 239.1(a) (setting forth the officers authorized to issue NTAs, which are limited to supervisory positions); 236.1(a)(8) (proving that a custody determination is made by any officer authorized to issue a warrant of arrest, which in the case of ICE is limited to supervisory positions).

### B.   Brief procedural history

On June 19, 2013, Plaintiff Gerardo Gonzalez filed his first complaint against Defendants as the sole named Plaintiff and putative class representative. ECF No. 1.  On July 10, 2013, Plaintiffs filed their first amended complaint as a matter of right, adding Simon Chinivizyan as a named Plaintiff and putative class representative.  ECF No. 10.  On September 10, 2013, Plaintiffs filed their Second Amended Complaint (SAC), this time pursuant to a stipulation of the parties.  ECF Nos. 20, 20-1.  After the Court granted Defendants' motion to dismiss the SAC (ECF No. 42), Plaintiffs filed a Third Amended Complaint (TAC), along with a motion to certify a class, on August 18, 2014.  ECF Nos. 44, 45.  On October 24, 2014, the Court partly granted and partly denied Defendants' motion to dismiss the TAC, permitting Plaintiffs to proceed, but not with their claims for injunctive relief.  ECF No. 61 at 9.  The Court also denied Plaintiffs' motion to certify a class, but did so without prejudice to permit them to renew their motion at a later date. *Id.* at 12.

---

NTA.  ICE might also process that alien for administrative removal under 8 U.S.C. § 1228(b) or reinstatement of removal under 8 U.S.C. § 1231(a)(5).

6

After Plaintiffs moved again for class certification (ECF No. 152), the Court partly granted and partly dismissed the motion on September 9, 2016. (ECF No. 184). The Court certified Plaintiffs' Judicial Determination Class, Statutory Subclass, and Probable Cause Subclass. *Id.* The Court certified the Judicial Determination Class as "[a]ll current and future persons who are subject to an immigration detainer issued by an ICE officer located in the Central District of California, where the detainer is not based upon a final order of removal signed by an immigration judge or the individual is not subject to ongoing removal proceedings," but limited the class to "those who were detained for more than forty-eight hours without receiving a judicial determination of probable cause." *Id.* The Court also certified the Probable Cause Subclass, which it defined as "all members of the Judicial Determination Class for whom ICE has issued an immigration detainer based solely on checks for the individual in government databases" and the Statutory Subclass, encompassing "all members of the Judicial Determination Class for whom ICE did not issue an administrative warrant of arrest at the time it issued an immigration detainer." *Id.*

## C. Plaintiffs Gonzalez and Chinivizyan

Plaintiffs Gerardo Gonzalez and Simon Chinivizyan, Judicial Determination Class Representatives, are both United States citizens. ECF No. 220 ¶¶ 14-15. Both were in the custody of LASD and subject to immigration detainers issued by ICE at the time they initiated this lawsuit. *Id.* ¶¶ 16-17. ICE issued the detainers against them while they were in LASD custody, without obtaining a judicial determination of probable cause, in accordance with longstanding ICE practice. *Id.* ¶¶ 18-19. On June 19, 2013, ICE canceled the detainer lodged against Plaintiff Gonzalez, without ever having taken him into custody. ECF No. 44 ¶¶ 68-69. On July 12, 2013, ICE canceled the detainer lodged against Plaintiff Chinivizyan, without ever having taken him into its custody. *Id.* ¶ 85. Neither has ever been in

the physical custody of ICE, and neither currently has an ICE detainer lodged against him.  *See id*. ¶¶ 68-69, 78, 85.

### III.   **LEGAL STANDARDS FOR REVIEW**

**A.   Dismissal under Federal Rule of Civil Procedure 12(b)(1).**

A motion to dismiss an action pursuant to Federal Rule of Civil Procedure 12(b)(1) raises the question of the federal court's subject-matter jurisdiction over the action.  Because federal courts are of limited jurisdiction, they possess original jurisdiction only as the Constitution and statutes authorize.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Moreover, "no matter how important the issue, a court lacking jurisdiction is powerless to reach the merits under Article III of the Constitution."  *Fleck & Assocs., Inc. v. Phoenix, City of, an Ariz. Mun. Corp.*, 471 F.3d 1100, 1107 n.4 (9th Cir. 2006).

An attack on the Court's subject-matter jurisdiction can take either a facial or factual form.  *See, e.g., Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial challenge, as Defendants raise here, asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*  In adjudicating a facial challenge, the Court must presume Plaintiffs' allegations to be true and must draw all reasonable inferences in Plaintiffs' favor.  *See, e.g., Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *see also African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir.1996).

The burden rests on "the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute."  *United States v. Hays*, 515 U.S. 737, 743 (1995) (internal quotations omitted).

**B.    Summary Judgment under Federal Rule of Civil Procedure 56.**

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If applicable, a court may grant summary judgment on part of a claim or defense, known as partial summary judgment, to which the same legal standard applies. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."); *see also Allstate Ins. Co. v. Madan*, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995); *State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication). Additionally, after giving notice and a reasonable time to respond, a court may also grant summary judgment to a nonmoving party. Fed. R. Civ. P. 56(f)(1); *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982) ("It is, nevertheless, true that the overwhelming weight of authority supports the conclusion that if one party moves for summary judgment and, at the hearing, it is made to appear from all the records, files, affidavits and documents presented that there is no genuine dispute respecting a material fact essential to the proof of movant's case and that the case cannot be proved if a trial should be held, the court may sua sponte grant summary judgment to the non-moving party.").

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  In resolving a summary judgment motion, a court must accept the evidence of the opposing party and draw all reasonable inferences in favor of the opposing party.  *Anderson*, 477 U.S. at 255.

# IV.   <u>ARGUMENT</u>

## A. This Court lacks subject-matter jurisdiction over Plaintiffs' claims, because the Immigration and Nationality Act provides exclusive judicial review through the Petition for Review process.

Plaintiffs' challenge to their detainers, and to the detainer process in general, asks this Court to opine on ICE's practices relating to the removal of aliens. Specifically, Plaintiffs assert that when ICE issues detainers – which is but one step of many in the removal process – it violates the Fourth Amendment (both by failing to obtain a determination of probable cause from a neutral and detached magistrate and by issuing detainers solely on database checks).  *See* ECF No. 96 at 12-13.  Plaintiffs further claim that ICE's practice of issuing of detainers without making an individualized determination that the individual is likely to escape before a warrant can be obtained for his arrest violates 8 U.S.C. § 1357(a)(2).  *Id.* at 13.

Congress, however, has expressed its clear intent to foreclose district court adjudication of claims that individuals could raise in removal proceedings through the jurisdiction channeling provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(a)(5), (b)(9), and (g).  To clarify, Congress has specifically stripped federal district courts of jurisdiction to hear Plaintiffs' claims.

In 1996, as part of the Illegal Immigration Reform and Immigrant Responsibility Act, Congress passed several amendments to the INA circumscribing the availability of judicial review.  The REAL ID Act of 2005 unequivocally clarified the sweeping nature of Congress's decision to preclude

district court jurisdiction over claims seeking to challenge certain Executive Branch decisions in the immigration context.  Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005).

Plaintiffs' challenge to the detainer process – in which ICE seeks to detain individuals to determine how, if at all, to proceed with their removal – "arise[s] from an[] action taken or proceeding brought to remove [them] from the United States."  *See* 8 U.S.C. § 1252(a)(5), (b)(9).  The Ninth Circuit has recently clarified, further, that the petition for review process Congress established in 8 U.S.C. § 1252 is the *exclusive* means by which aliens may bring such challenges.  *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) ("The section titled 'Exclusive means of review,' 8 U.S.C. § 1252(a)(5), prescribes the vehicle for judicial review: '[A] petition for review . . . shall be the sole and exclusive means for judicial review of an order of removal . . . .'  Lest there be any question about the scope of judicial review, § 1252(b)(9) mandates that '[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States ... shall be available only in judicial review of a final order . . . .'").  Regardless of whether Plaintiffs must raise that claim in removal proceedings, they certainly can do so.  *See, e.g.,* 8 C.F.R. § 236.1(c)(8); 8 C.F.R. § 236.1(d)(1); 8 C.F.R. § 287.3(d); *see also In Re Joseph*, 22 I. & N. Dec. 799, 799 (BIA 1999).

Under the REAL ID Act, "[j]udicial review of *all questions of law and fact*, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought* to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order," which may occur exclusively in the courts of appeals.  8 U.S.C. § 1252(a)(5), (b)(9) (emphasis added).  Moreover Congress expressly precluded

11

district court review "by habeas corpus . . . or by any other provision of law (statutory or nonstatutory)" of "questions of law or fact" arising from any action taken or proceeding brought to remove an alien from the United States.  8 U.S.C. § 1252(b)(9); *see also* *Reno v. Am.-Arab Anti-Discrimination Com.*, 525 U.S. 471, 483-85 (1999) (section 1252(b)(9) is "the unmistakable 'zipper' clause," channeling "judicial review of all . . . decision and *actions leading up to or consequent upon final orders of deportation*," including "*non-final order[s]*," into one proceeding exclusively before a court of appeals) (emphasis added); *Aguilar v. U.S. ICE*, 510 F.3d 1, 9, 11 (1st Cir. 2007) ("[S]ection 1252(b)(9) is not limited to singular orders of removal," but "consolidate[s] 'all questions of law and act' that 'arise from' either an 'action' or a 'proceeding' brought in connection with the removal of an alien," and "channels federal court jurisdiction over 'such questions[]' to the courts of appeals" following "exhaustion of administrative procedures and the consolidation of claims for judicial review.").

When Congress amended section 1252(b)(9) through the REAL ID Act to eliminate "claim-splitting – pursuing selected arguments in the district court and leaving others for adjudication in the immigration court," it sought to eliminate the "obvious loss of efficiency and bifurcation of review mechanisms." *Aguilar*, 510 F.3d at 14 (claim-splitting and inefficiency were "among the principal evils that Congress sought to avoid through . . . section 1252(b)(9)") (citing H.R. Rep. No. 109-72, at 174, reprinted in 2005 U.S.C.C.A.N. at 299).

As the Ninth Circuit discerned, if a claim on behalf of any alien, "however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal," then that claim "is prohibited by section 1252(a)(5)." *J.E.F.M.*, 837 F.3d at 1032 (internal citation omitted). Accordingly, Plaintiffs' challenge to ICE's detainer practices – which are part of the "procedure and substance of an agency determination" relating to the removal

12

process – falls under the auspices of 8 U.S.C. § 1252(b)(9).  Plaintiffs' judicial determination and probable cause claims, relating to the constitutionality of how, when, and by whom ICE may issue detainers, are therefore outside the subject-matter jurisdiction of this Court, because issuing a detainer to hold Plaintiffs in anticipation of issuing an NTA is an "action taken" to remove them that is inextricably linked to their removal proceedings.  *See id.*  Plaintiffs' statutory claims must fail under the same analysis.

Acknowledging the "built-in limits" of 8 U.S.C. § 1252(b)(9), the Ninth Circuit excluded from the section's scope those claims that are independent of or collateral to the removal process.  *J.E.F.M.*, 837 F.3d at 1032.  The Court defined those claims very narrowly, however, specifying essentially three categories of such claims: (i) a claim to ineffective assistance of counsel that "occurred *after* the issuance of the final order of removal," *Singh v. Gonzalez*, 499 F.3d 969, 979 (9th Cir. 2007) (explaining that such a claim necessarily could not have been brought before the IJ) (emphasis in original); (ii) a claim for unconstitutionally prolonged detention, *see Nadarajah v. Gonzalez*, 443 F.3d 1069, 1075-76 (9th Cir. 2006) (holding that challenge to five-year detention "without any established timeline for . . . when he may be released" following the grant of immigration relief could be brought in district court); and (iii) certain claims challenging bond determinations, *see Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("Although § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law").  At their essence, the exclusions all relate to claims that an individual cannot raise in immigration court during removal proceedings.  Plaintiffs do not face that situation here.

Critically, "section 1252(b)(9) is a judicial channeling provision, not a claim-barring one." *Aguilar*, 510 F.3d at 18.  Congress was clear when it drafted the INA that "[n]othing . . . in any other provision of this chapter . . . shall be construed as

13

precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate *court of appeals* in accordance with this section." 8 U.S.C. § 1252(a)(2)(D) (emphasis added).  Because each Plaintiff may raise his or claims before an immigration judge, and again to the Board of Immigration Appeals, and then, ultimately, may seek review of all constitutional and statutory claims – the very basis of the complaint – in the Ninth Circuit, this Court lacks subject-matter jurisdiction over those claims.

The Ninth Circuit recognized the seemingly "draconian" result of denying individuals access to district courts, but that recognition did not sway the Court from finding that aliens in Plaintiffs' situation can still "receive their 'day in court'." *J.E.F.M.*, 837 F.3d at 1031 ("First, while these sections limit *how* immigrants can challenge their removal proceedings, they are not jurisdiction-stripping statutes that, by their terms, foreclose *all* judicial review of agency actions. Instead, the provisions channel judicial review over final orders of removal to the courts of appeals.") (emphasis in the original).

Congress further deprives this Court of jurisdiction over Plaintiffs' claims through 8 U.S.C. § 1252(g), which denies district courts jurisdiction "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Government] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).  As the Supreme Court has held, the statute should be narrowly applied "only to [the] three discrete actions" listed.  *Reno v. Am.-Arab. Anti-Discrimination Comm.*, 525 U.S. 471, 482–83 (1999).  Nonetheless, even under this narrow application, the Ninth Circuit has found that section 1252(g) bars district courts from reviewing every aspect of the Government's decisions within those three action areas.  For example, district courts lack jurisdiction over "not only a decision in an individual case whether to commence, but also when to commence, a proceeding." *Jimenez-Angeles v.*

*Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) (emphasis in original).  Moreover, district courts lack jurisdiction over the direct and natural consequences "arising from" from one of the discretionary acts enumerated in section 1252(g).  *Sissoko v. Rocha*, 509 F.3d 947, 949 (9th Cir. 2007).  Plaintiffs cannot plausibly argue that the decision to issue a detainer does not arise from ICE's determination of whether, when, or how to commence removal proceedings.

Accordingly, 8 U.S.C. § 1252 forecloses subject-matter jurisdiction over Plaintiffs' claims in this Court, and Federal Rule of Civil Procedure 12(b)(1) mandates dismissal of the third amended complaint in its entirety.

**B. The Court should grant judgment in favor of Defendants as to the Statutory Subclass, because ICE issues warrants with each detainer.**

Plaintiffs' Statutory Subclass seeks a declaration that Defendants' issuance of detainers against subclass members without making an individualized determination that the individual is likely to escape before a warrant can be obtained for his arrest violates 8 U.S.C. § 1357(a)(2).  ECF No. 96 at 13.  As noted, *supra*, however, ICE no longer issues detainers without a warrant.  *See* Policy Number 10074.2, entitled "Issuance of Immigration Detainers by ICE Immigration Officers."[10]  Among other things, this memorandum requires that that ICE officers must accompany all detainers with "either: (1) a properly completed Form I-200 (Warrant for Arrest of Alien) signed by an authorized ICE immigration officer; or (2) a properly completed Form I-205 (Warrant of Removal/Deportation) signed by an authorized ICE immigration officer."  *Id.*  The directive explains that ICE implemented this "warrant measure as a nationwide policy in light of one district court's ruling that detention pursuant to an ICE detainer constitutes a warrantless arrest" and that 8 U.S.C. § 1357(a)(2) only authorizes a warrantless

---

[10] (Available at https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf, last visited May 16, 2017.)

arrest – as Plaintiffs' Statutory Subclass here alleges – "if there is reason to believe the alien will escape before an arrest warrant can be secured." *Id.* at n. 2 (citing *Moreno v. Napolitano*, --- F. Supp. 3d---, 2016 WL 5720465, at *8 (N.D. Ill. Sept. 30, 2016)).  ICE's policy and practice of issuing warrants with each detainer means that there are no members of the Statutory Subclass after April 1, 2017.

This Court can take note of the fact that the Government did not appeal the *Moreno* decision.  Accordingly, the Court should not find that ICE Policy 10074.2 – based on a judicial decision that the Government has accepted as binding, at least in one district – renders the class "inherently transitory" such that the new policy does not resolve Plaintiffs' Statutory Subclass claims.  *See Wade v. Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997).  Instead, ICE's decision to base Policy 10074.2 on a binding judicial determination distinguishes the new policy from the former, such that it is not likely that future individuals will find themselves subject to detainers without warrants of arrest or removal.  Plaintiffs' claims, therefore, do not challenge the current policy, but, rather, the prior policy and are, therefore, moot. *See United States v. Howard*, 480 F.3d 1005, 1010 (9th Cir. 2007) (holding that a case does not become moot if the challenged policy is ongoing).  Accordingly, the Court must enter judgment in favor of Defendants' on Plaintiffs' Statutory Subclass Claims.

**C. The Court should grant judgment in favor of Defendants as to the Probable Cause Subclass, because the Fourth Amendment does not require ICE to alter its practices regarding the determination of probable cause of removability.**

An ICE officer can arrest anyone who he or she has reason to believe has committed an offense against the United States or is an alien illegally present in the United States.  *See e.g.,* 8 U.S.C. §§ 1226, 1357; and 8 C.F.R. § 287.8(c).  Reason to believe has been equated with the constitutional requirement of probable cause. *See Tejeda-Mata v. I.N.S.,* 626 F.2d 721, 725 (9th Cir. 1980).  Probable cause –

16

even in criminal cases, much less, as here, in civil matters – does not require proof beyond a reasonable doubt of every element. *United States v. Corral-Villavicencio*, 753 F.2d 785, 788 (9th Cir.1985). Instead, probable cause exists where under the totality of the circumstances known to the officer, a prudent person would have concluded that there was a fair probability that the suspect had committed or was committing an offense. *Id.* at 788 (citing *United States v. Wallace*, 213 F.3d 1216, 1220 (9th Cir.2000)); *see also United States v. Carranza*, 289 F.3d 634, 641 (9th Cir. 2002); *United States v. Garza*, 980 F.2d 546, 550 (9th Cir.1992).

An ICE officer issues a detainer only after determining that there is probable cause that an individual is a removable alien. *See, e.g*., Policy Number 10074.2. Although not the legal limit to the scope of probable cause of removability, ICE policy permits the officer to base that determination on: (1) a final order of removal against the alien; (2) pending ongoing removal proceedings against the alien; (3) biometric confirmation of the alien's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the alien either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or (4) statements made by the alien to an immigration officer that affirmatively indicate the alien either lacks immigration status or, notwithstanding such status, is removable under U.S. immigration law. Form I-247A, Immigration Detainer.[11]

On their face, therefore, Plaintiffs' Probable Cause subclass claims must fail, because ICE may incorporate final orders of removal, pending removal proceedings, and "statements made by the alien" into the probable cause calculus, rather than – as Plaintiffs allege – "basing probable cause only on information

---

[11] Available at https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf, last visited May 16, 2017.

contained in an online database, rather than through in-person interviews or determinations." *See* ECF No. 96 at 27 (citing Gonzalez Motion to Certify Class at 18). Moreover, this has been the case predating the March 2017 change in ICE's policies and practices. *See* Ex. D, excerpts from the ICE Los Angeles Field Office 30(b)(6) deposition of James Anthony Hamm, taken on March 16, 2016, at 44 (an interview would be required "when there is conflicting information" from databases.).

Nonetheless, even in those situations where ICE does not interview an alien or rely on the alien's statements, the Fourth Amendment does not prohibit ICE from relying on database checks to determine that there is probable cause that a particular alien is removable. Even in a criminal context, numerous courts – including the Ninth Circuit – have found that officers can reasonably rely on computer databases in determining whether probable cause exists. *See, e.g., Case v. Kitsap Cty. Sheriff's Dep't.*, 249 F.3d 921, 928 (9th Cir. 2001) (noting that an "NCIC hit," although not definitive in terms of conviction, "has been routinely accepted in establishing probable cause for a valid arrest"), *Marinelli v. Capone*, 868 F.2d 102, 104-6 (3d Cir. 1989); *McAllister v. Desoto Cnty, Miss.*, No. 11-60482, 2012 WL 1521642, *6 (5th Cir. May 1, 2012) (affirming entry of summary judgment based on qualified immunity because officers "reasonably believed that Connie McAllister in the Eagle System was the drug dealer ["Connie Mac"]"); *see generally, Arizona v. Evans*, 514 U.S. 1, 16 (1995) (no indication that arresting officer was not acting objectively reasonably when he relied upon the police computer record that included incorrect information).

The Ninth Circuit has expressly concluded that computer reports and printouts may be sufficiently reliable for court and law enforcement use. *See, e.g., United States v. Marin-Cuevas*, 147 F.3d 889, 895 (9th Cir. 1998) ("[T]he probation officer who prepared [the] Presentence Report obtained his information from a

reliable source [–] the computerized criminal history – and had no reason to prevaricate.  Therefore, the probation officer's attestation . . . bore sufficient indicia of reliability, and the district court did not err in considering it at sentencing.") (quotation omitted).  As the Tenth Circuit has held, this is especially true when a law enforcement officer combines a single computer database – such as NCIC – with other information.  *United States v. Martinez-Jimenez*, 464 F.3d 1205, 1212 (10th Cir. 2006) (holding that an NCIC report, in combination with a letter from the Supreme Court of New York confirming a conviction, was sufficiently reliable evidence to establish the prior conviction).  Here, the evidence is uncontroverted that ICE officers may search a number of different databases before issuing detainers.  *See* Demore Feb. 10, 2016 Dep. Tr. at 36-37 (noting that ICE officers search for information on individuals in CLAIMS, CIS, CLETS, ENFORCE, NCIC, IDENT, TECS, and others).

The Ninth Circuit, in particular, has explained that a database search can establish the basis for a probable cause determination where a law enforcement officer seeks information such as an individual's name, identity, and address.  *United States v. Palmer*, 536 F.2d 1278, 1283 (9th Cir. 1976).  This type of biographic information – based first on a biometric match – is precisely what an ICE officer seeks when conducting a database search.  *See* Ex. B, excerpts from the deposition of Brian Demore, taken on December 2, 2015, at 99:5-16 (responding that some searches are name-based, some are fingerprint-based, and "others are linked through things like FBI number, FIN number, SIN number, which is a state identification number, so, no, they're not just name-based.").

ICE officers may base their probable cause determinations for detainers on a number of factors, including interviews with aliens and other statements those aliens might make, in addition to searching several different computer databases for criminal and immigration histories that match the biometric data for the

19

relevant individuals.  Accordingly, this Court should award summary judgment in favor of Defendants on Plaintiffs' Probable Cause Subclass claims.

## V.   CONCLUSION

Federal Rule of Civil Procedure 12(b)(1) requires that this Court dismiss Plaintiffs' action in its entirety, because 8 U.S.C. § 1252(a)(5), (b)(9), and (g) channels jurisdiction from this Court to the Ninth Circuit, via petitions for review, for review of each class member's claims.  Regardless, because ICE issues warrants with each detainer, the Court should enter judgment in favor of Defendants on Plaintiffs' Statutory Subclass claims.  Finally, the Court should enter judgment for Defendants under Federal Rule of Civil Procedure 56 on Plaintiffs' Probable Cause Subclass claims, because ICE's detainer practices do not violate the Fourth Amendment.

DATED:  May 16, 2017           Respectfully Submitted,

CHAD A. READLER
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director

COLIN A. KISOR
Deputy Director

_/s/ J. Max Weintraub_
J. MAX WEINTRAUB, VSB 36188
Senior Litigation Counsel
United States Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 305-7551, Fax: (202) 305-7000
Email: jacob.weintraub@usdoj.gov

_Counsel for Defendants_

20