PETER J. ELIASBERG, SBN 189110
 peliasberg@aclu-sc.org
AHILAN ARULANANTHAM, SBN 237841
PETER BIBRING, SBN 223981
JENNIFER PASQUARELLA, SBN 263241
 jpasquarella@aclu-sc.org
KATHERINE TRAVERSO, SBN 290559
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, California 90017
Phone: (213) 977-9500
Facsimile: (213) 977-5299

BARRETT S. LITT, SBN 45527
 blitt@kmbllaw.com
LINDSAY B. BATTLES, SBN 262862
 lbattles@kmbllaw.com
KAYE, MCLANE, BEDNARSKI & LITT
234 Colorado Boulevard, Suite. 230
Pasadena, California 91101
Telephone: (626) 844-7600 x112
Fax: (626) 844-7670

Attorneys for Plaintiffs
(continued on next page)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUNCAN ROY; *et al*.,<br><br>Plaintiffs,<br><br> vs.<br>COUNTY OF LOS ANGELES; *et al*.,<br>Defendants.<br>_____<br><br>GERARDO GONZALEZ, *et al.*,<br> Plaintiffs,<br><br> vs.<br>IMMIGRATION AND CUSTOMS ENFORCEMENT, an entity; *et al.*,<br>Defendants. | Case No. CV 12-09012 BRO (FFMx)<br>Consolidated with:<br>Case No. CV 13-04416 BRO (FFMx)<br><br>[Honorable Beverly Reid O'Connell]<br><br>PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION REGARDING LIABILITY<br><br>Date: July 24, 2017<br>Time: 1:30 p.m.<br>Courtroom: 7C |

i

CHRIS NEWMAN, SBN 255616
 newman@ndlon.org
JESSICA KARP BANSAL, SBN 277347
 jbansal@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
675 South Park View Street, Suite B
Los Angeles, California 90057
Telephone: (213) 380-2214
Facsimile: (213) 380-2787

OMAR C. JADWAT (pro hac vice)
ojadwat@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th floor
New York, NY 10004
Telephone: (212) 549-2660

CECILLIA D. WANG, SBN 187782
cwang@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111

MARK M. FLEMING (pro hac vice)
mfleming@heartlandalliance.org
NATIONAL IMMIGRANT JUSTICE CENTER
208 S. LaSalle Street, Suite 1300
Chicago, IL 60604
Telephone: (312) 660-1628
Facsimile: (312) 660-1505

TO THE HONORABLE COURT, ALL INTERESTED PARTIES, AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on July 24, 2017 at 1:30 p.m. in Courtroom 7C of the United States District Court for the Central District of California, 350 West First Street, Los Angeles, California 90012, Plaintiffs will, and hereby do, move this Court for an Order granting summary adjudication. This motion is based on the accompanying Memorandum of Law, the accompanying Declarations and/or exhibits, the files and records in this case, and such evidence as may be adduced at a hearing on this motion.

Dated: May 16, 2017    ACLU of SOUTHERN CALIFORNIA
KAYE, McLANE, BEDNARSKI & LITT, LLP
NATIONAL DAY LABORER ORGANIZING NETWORK
NATIONAL IMMIGRANT JUSTICE CENTER

By /s/ Lindsay Battles
Attorney for Plaintiffs

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................1

II.   STATEMENT OF FACTS .................................................................2

   A.   ICE's Detainer Forms and Practices.................................2

   B.   Until 3/2014, the LASD's Practice Was to Detain ICE-Detainer Inmates for 48 Hrs Excluding Weekends & Holidays .................5

   C.   LASD Bail Practices ........................................................7

      1.   Until October 2012, LASD Classified Immigration Detainers as "No Bail" Holds, Preventing Inmates With Detainers from Posting Bail ..............7

      2.   Until June 2014, LASD Refused to Release Inmates Who Would Have Been Eligible for Release Without Posting Bail, Solely on the Basis of Immigration Detainers ...................................9

III.  LEGAL ARGUMENT ........................................................9

   A.   Plaintiffs Are Entitled to Summary Adjudication on Their §1983 Fourth Amendment Claims.....................................10

      1.   Plaintiffs Are Entitled to Summary Adjudication on Liability for the Post-48-Hour Gerstein Classes ...............................10

      2.   Plaintiffs Are Entitled to Summary Adjudication on the "Investigative" Detainer Class ...................................13

   B.   Plaintiffs Are Entitled to Summary Adjudication on Liability for the False Imprisonment Classes.............................14

   C.   Plaintiffs Are Entitled To Summary Adjudication Under California Civil Code §52.1....................................17

   D.   Plaintiffs Are Entitled to Summary Adjudication on Liability for the Bail Class and "No Money" Bail Subclass.....................18

1.   LASD's Classification of Immigration Detainers as No Bail Holds and Policy Of Denying Own-Recognizance Release To ICE Detainees Deprived Plaintiffs Of Due Process Or Alternatively Violated The Fourth Amendment. .................................................................................................. 18

2.   LASD's Bail Policy and Practices Deprived Plaintiffs Of Equal Protection. .............................................................................................. 22

3.   LASD's Bail Practices Violated California Law. ................................. 24

IV.   CONCLUSION .............................................................................................. 25

1
2

# TABLE OF AUTHORITIES

3
4

**Cases**

5
6

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)..............................................................................10

7
8

*Arizona Dream Act Coal. v. Brewer,*
    757 F.3d 1053 (9th Cir. 2014) ............................................................23

9
10

*Arizona v. United States,*
    132 S.Ct. 2492 (2012)..................................................................13, 14

11
12

*Arline v. City of Jacksonville,*
    359 F.Supp.2d 1300 (M.D.Fla.2005)..................................................22

13
14

*Armendariz v. Penman,*
    75 F.3d 1311 (9th Cir. 1996) ..............................................................23

15
16

*Barnes v. D.C.,*
    793 F. Supp. 2d 260 (D.D.C. 2011).....................................................22

17
18

*Brass v. County of Los Angeles,*
    328 F.3d 1192 (9th Cir.2003) ..............................................................21

19
20

*Buquer v. City of Indianapolis,*
    2013 WL 1332158 (S.D. Ind. Mar. 28, 2013) ....................................12

21
22

*Campbell v. Johnson,*
    586 F.3d 835 (11th Cir.2009) ..............................................................21

23
24

*Carson Harbor Vill., Ltd. v. City of Carson,*
    86 F. App'x 274 (9th Cir. 2004)...........................................................19

25
26

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..............................................................................10

27
28

*Cervantez v. J. C. Penney Co.,*
    595 P.2d 975 (Cal. 1979)......................................................................15

*Christian Gospel Church, Inc. v. City and Cnty. of San Francisco,*
 896 F.2d 1221 (9th Cir.1990) .................................................................22

*City of Cleburne, Tex. v. Cleburne Living Ctr.,*
 473 U.S. 432, 105 S. Ct. 3249, (1985) ..............................................22, 23

*Collins v. City & County of San Francisco,*
 50 Cal. App. 3d 671, 123 Cal. Rptr. 525 (1975) .................................15

*County of Riverside v. McLaughlin,*
 500 U.S. 44 (1991).........................................................................11, 12, 14

*Dennison v. Ryan,*
 522 F. App'x 414 (9th Cir. 2013) .........................................................18

*Diaz v. Brewer,*
 656 F.3d 1008 (9th Cir. 2011) ...............................................................23

*Dodds v. Richardson,*
 614 F.3d 1185 (10th Cir.2010) .............................................................21

*Erdelyi v. O'Brien,*
 680 F.2d 61 (9th Cir.1982) ....................................................................19

*Fermino v. Fedco, Inc.,*
 7 Cal. 4th 701, 30 Cal.Rptr.2d 18 (Cal. 1994).................................14

*Flores v. City of Baldwin Park,*
 No. CV 14-9290-MWF JCX, 2015 WL 756877 (C.D. Cal. Feb. 23, 2015) ..4, 5,
 18

*Galarza v. Szalcyk,*
 745 F.3d 634 (3d Cir. 2014) ...........................................................4, 18

*Galarza v. Szalczyk,*
 2012 WL 1080020 (E.D. Pa. Mar. 30, 2012) ................................10, 21

*Gerstein v. Pugh,*
 420 U.S. 103 (1975)................................................................................11

vii

*Golinski v. U.S. Office of Pers. Mgmt.*,
  824 F. Supp. 2d 968 (N.D. Cal. 2012)................................................................23

*Gonzales v. City of Peoria*,
  722 F.2d 468 (9th Cir. 1983) ...........................................................................15

*Ilae v. Tenn*,
  2013 WL 4499386 (D. Haw. Aug. 20, 2013) .......................................................21

*Kanekoa v. City & County of Honolulu*,
  879 F.2d 607 (9th Cir. 1989) ...........................................................................14

*Ker v. California*,
  374 U.S. 23 (1963)..........................................................................................15

*Lopez-Valenzuela v. Arpaio*,
  770 F.3d 772 (9th Cir. 2014) ...........................................................................20

*McKibben v. McMahon*,
  2015 WL 10382396 (C.D. Cal. Apr. 17, 2015) ..................................................25

*Mendia v. Garcia*,
  2016 WL 2654327 (N.D. Cal. May 10, 2016)....................................................10

*Michigan v. DeFillippo*,
  443 U.S. 31 (1979)..........................................................................................15

*Miller v. United States*,
  357 U.S. 301 (1958)........................................................................................15

*Miranda-Olivares v. Clackamas County*,
  2014 WL 1414305 (D. Or. Apr. 11, 2014) .................................10, 13, 21, 22

*Moore v. City & Cnty of San Francisco*,
  5 Cal. App. 3d 728 (1970) .......................................................................20, 24

*Morales v. Chadbourne*,
  793 F.3d 208 (1st Cir. 2015).............................................................................10

*Moreno v. Napolitano*,
  213 F.Supp.3d 999, 2016 WL 5720465 (N.D. Ill. 2016) ...................................10

*Nozzi v. Housing Authority of the City of Los Angeles*,
   806 F.3d 1178 (9th Cir. 2015) ..................................................................24

*Nunez v. City of Los Angeles,*
   147 F.3d 867 (9th Cir.1998) ...................................................................19

*Oviatt v. Pearce,*
   954 F.2d 1470 (9th Cir.1992) ..................................................................20

*Papachristou v. City of Jacksonville*,
   405 U.S. 156 (1972)................................................................................14

*People ex rel. Swenson v. Ponte,*
   994 N.Y.S.2d 841 (N.Y. Sup. Ct. 2014)............................................15, 16

*Powell v. Barrett*,
   376 F.Supp.2d 1340 (N.D.Ga. 2005)......................................................22

*Reno v. Flores,*
   507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) .........................19, 25

*Rhoden v. Dep't of Justice,*
   121 F.3d 716, 1997 WL 408786 (9th Cir. July 21, 1997) ..........................12

*Rhoden v. United States*,
   55 F.3d 428 (9th Cir. 1995) ...................................................................12

*Rivas v. Martin*,
   781 F.Supp.2d 775 (N.D. Ind. 2011)..................................................12, 21

*Roy v. Cty. of Los Angeles*,
   2015 WL 12582637 (C.D. Cal. Nov. 20, 2015) ....................................18, 25

*Sandin v. Conner*,
   515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) ...........................19

*Shadwick v. City of Tampa*,
   407 U.S. 345 (1972)...............................................................................11

*Shakespeare v. City of Pasadena*,
   40 Cal. Rptr. 863 (Cal. App. 2d Dist. 1964)...........................................20

*Shoyoye v. Cty. of L.A.*,
   203 Cal. App. 4th 947 (2012) ............................................................. 25

*U.S. v. Davis*,
   174 F.3d 941 (8th Cir. 1999) ............................................................... 14

*U.S. v. Ramirez*,
   473 F.3d 1026 (9th Cir. 2007) ........................................................ 13, 14

*U.S. v. Sholola*,
   124 F.3d 803 (7th 1997) ...................................................................... 14

*United States v. Arizona*,
   641 F.3d 339 (9th Cir. 2011) ............................................................... 17

*United States v. Bueno-Vargas*,
   383 F.3d 1104 (9th Cir. 2000) ............................................................. 11

*Vill. of Willowbrook v. Olech*,
   528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) ............... 23

*Wilkinson v. Austin*,
   545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) ............... 18, 19

*Willis v. City of Chicago*,
   *999 F.2d 284 (7th Cir. 1993)* ............................................................. 14

*Wolff v. McDonnell*,
   418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ....................... 19

*Youngberg v. Romeo*,
   457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) ....................... 19

**Statutes**

Cal. Civ. Code §51.2 (a) ........................................................................ 17

Cal. Civ. Proc. §1993(a)(1) .................................................................... 16

Cal. Const., Art. 1, section 12 .......................................................... 20, 24

Cal. Gov't Code, Section 7282.5(a) ........................................................ 5

Cal. Pen. Code § 16 ....................................................................................16

Cal. Pen. Code § 836(a)(1)-(3) ...................................................................16

Cal. Pen. Code §15 ....................................................................................16

Cal. Penal Code §§ 1268, 1269b, 1295(a) ..........................................20, 24

Cal. Welfare and Institutions Code §5150 ................................................16

CALIFORNIA CIVIL CODE §52.1 ...........................................iv, 17, 24, 25

Civil Code § 815.6 .....................................................................................24

Pen.Code, § 1295 .................................................................................20, 24

Penal Code § 836(a) ...................................................................................16

§836 ............................................................................................................16

**Rules**

Fed.R.Civ.P. 56(c) ......................................................................................9

**Regulations**

8 C.F.R. § 238.1(d)(1) .................................................................................4

8 C.F.R. § 287.7 .........................................................................................21

8 C.F.R. § 287.7(a) ......................................................................................4

8 C.F.R. § 287.7(a), (b) ...............................................................................2

8 C.F.R. §287.7(b) .......................................................................................3

**Other Authorities**

A.B. 4 ...........................................................................................................5

AB4 ..............................................................................................................5

CACI 1401 .................................................................................................18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This class action arises from the LASD's policy and practice of detaining jail inmates solely based on immigration detainers, refusing bail on behalf of inmates with immigration detainers, and failing to release inmates who would otherwise be eligible for release on their own recognizance pursuant to LASD ICE detainer policies. On September 9, 2016, this Court certified two injunctive relief classes and four damages classes (including one subclass) based on a determination that the classes' claims hinged on the legality of LASD departmental policies and practices. *See* Dkt. 184, 9/9/16 Class Cert Order.

The undisputed facts establish that the LASD had a formal policy and practice of (1) detaining inmates solely on the basis of ICE detainers, beyond the time they were due for release on criminal matters; (2) detaining inmates on ICE detainers for more than 48 hours after they were due for release on criminal matters; (3) detaining inmates on "investigative detainers," which, on their face, indicated the absence of probable cause for arrest; and (4) not permitting inmates with immigration detainers and bail of less than $25,000 to be released on their own recognizance as would be permitted for inmates without immigration detainers.

Plaintiffs move for summary judgment on whether these undisputed departmental practices are sufficient to establish liability as a matter of law. Plaintiffs contend that because the LASD had no state law authority to detain inmates for civil immigration purposes, detention for any period of time on an ICE detainer—which, in effect, is a warrantless arrest for civil immigration violations—constituted false imprisonment under California law. Plaintiffs further contend that the LASD violated the Fourth Amendment by routinely detaining inmates beyond 48 hours after they were due for release without ensuring a judicial determination of probable cause and by detaining inmates pursuant to investigative immigration

detainers, which explicitly requested detention for an unconstitutional purpose (i.e. to give ICE time to conduct an investigation). In addition, Plaintiffs contend that denying inmates release on their own recognizance solely on the basis of an ICE detainer violated their rights under the U.S. Constitution and California law. In sum, Plaintiffs move for summary adjudication on liability for the False Imprisonment Injunctive Relief and Damages Classes, Post-48-Hour Injunctive Relief and Damages Class, Investigative Detainer Class, and No-Money-Bail Subclass.

## II.   STATEMENT OF FACTS

### A.   ICE'S DETAINER FORMS AND PRACTICES

Immigration detainers are unsworn documents (I-247 form) that may be issued "at any time" by individual ICE agents to request that law enforcement agencies notify ICE of an inmate's pending release. 8 C.F.R. § 287.7(a), (b) (listing officials who may issue ICE detainers). An immigration detainer is used only for civil immigration enforcement purposes (where the penalty is removal); it is not used for criminal purposes.

Between October 1, 2010 and February 22, 2016, ICE issued 31,925 immigration detainers to the LASD. UMF 1. During this time period, ICE used several different versions of the detainer form. UMFs 2-11. All versions of the form requested that LASD detain an individual beyond the time he or she would otherwise have been released. UMF 6, 9. The versions of the form used between 2010 and 2015 requested that the LASD detain an individual beyond the time he or she would otherwise be eligible for release for 48 hours, *excluding weekends and holidays*. UMF 6. In 2015, ICE revised its detainer forms to include weekends and holidays in calculating the 48-hour limit on detention. UMF 9.

All versions of the form contain checkboxes used by immigration officers to indicate the basis of the detainer. UMFs 2-4, 8. There is a checkbox to indicate whether the detainer was supported by a final order of removal or by a Notice to Appear, a document that initiates removal proceedings. UMF 11. More than 80

2

percent of the detainers issued to LASD had neither box checked. Only 19 percent were supported by final orders of removal, signed by immigration judges, and 0.5 percent were supported by the initiation of removal proceedings. *See* UMF 12 (Battles Decl., ¶3) (ICE reported 170 detainers supported by an NTA and 5,937 detainers supported by a removal order). ICE data indicates that 25,818 detainers were not supported by a final order of removal or NTA. UMF 12.

The August 2010 and December 2011 versions of the form contained checkboxes indicating that the detainer was issued on the basis of a *pending investigation*. The forms stated respectively, as the reason for the detainer, that an "[i]nvestigation has been initiated," or ICE had "[i]nitiated an investigation." UMFs 2,3. During the class period, ICE issued 21,179 detainers to the LASD with the "initiated an investigation" box checked, and 2,911 detainers with no detainer reason box checked. UMF 5. In December 2012, two months after this lawsuit was filed, ICE revised the detainer form, replacing the check box for "initiated an investigation" with a new check box option that provided the boilerplate statement: ICE has "[d]etermined that there is a reason to believe the individual is an alien subject to removal from the United States." UMF 4.

ICE issues detainers were issued without any independent judicial review. Any rank and file deportation officer may issue a detainer without review from a neutral magistrate. 8 C.F.R. §287.7(b) (authorizing all deportation officers and immigration enforcement agents to issue detainers). No judge, magistrate, or immigration judge reviews ICE detainers either before or promptly after they are issued. UMF 13. ICE has never had a policy or practice of providing a prompt judicial review of probable cause (before or promptly after arrest caused by the detainer). UMF 14. The only arguable exceptions are those detainers supported by a

final order of removal, issued by an immigration judge in some but not all circumstances.[1]

There is no meaningful dispute that detainers are voluntary, administrative requests, not mandatory holds binding the requested law enforcement agency. All versions of the I-247 form used since 2010 indicate that compliance is "requested," not mandatory. UMF 10. The forms specifically state that"It is [] **requested** that you maintain custody of him/her…". UMF 10 (2010 – 2015 forms use the language "it is requested"). This language is consistent with the relevant federal regulation, which characterizes immigration detainers as requests. *See* 8 C.F.R. § 287.7(a) ("The detainer is a *request* that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.") (emphasis added); *id.* § 287.7(d) (referring to "[t]emporary detention at Department request"). ICE has regularly taken the position that its detainers are merely requests and that other law enforcement agencies are not required to enforce them. *See Galarza v. Szalcyk*, 745 F.3d 634, 640 (3d Cir. 2014) (discussing ICE policy statements and litigation statements dating back to 1994 construing ICE detainers as requests rather than mandatory); *Flores v. City of Baldwin Park*, No. CV 14-9290-MWF JCX, 2015 WL 756877, at *4 (C.D. Cal. Feb. 23, 2015) ("[F]ederal law leaves compliance with immigration holds wholly within the discretion of states and localities.").

---

[1] In some limited situations, a final removal order may be issued by an ICE officer and not an Immigration Judge. *See, e.g.,* 8 C.F.R. § 238.1(d)(1).

4

**B.** **UNTIL 3/2014, THE LASD'S PRACTICE WAS TO DETAIN ICE-DETAINER INMATES FOR 48 HRS EXCLUDING WEEKENDS & HOLIDAYS**

From October 2010 until March 2014, LASD complied with immigration detainers indiscriminately, treating them as mandatory holds. UMF 15, 16, 20. During this period, LASD recorded immigration detainers in its Automated Jail Information System ("AJIS"), making them visible to jail staff and the public through LASD's inmate locator. Recording ICE detainers as "holds" initiated various consequences including over-detention after all criminal matters resolved, ineligibility to post bail, and Alternatives to Custody Programs, including work release, electronic monitoring release, mental health treatment centers and substance abuse treatment centers. UMFs 18-20.

LASD's policy was to hold individuals with detainers beyond the time they were eligible for release on the immigration detainer for up to 48 hours excluding weekends and holidays. UMF 16, 17.[2] The LASD had no procedures to track the time inmates held solely on immigration detainers were held before transfer to ICE, despite the fact that it has long maintained such procedures to track the length of time a person subject to an out-of-county warrant is held before transfer to the requesting agency to ensure they are not over-detained. UMF 28.

---

[2] In March 2014, the LASD initiated steps to comply with a California law, known as AB4 (The TRUST Act), Cal. Gov't Code, Section 7282.5(a). The TRUST Act restricts law enforcement agencies' discretion to detain individuals on immigration detainers unless certain conditions are met, including, *inter alia*, that the individual has been convicted of certain crimes. *See Flores*, 2015 WL 756877, at *1 (describing TRUST Act). The TRUST Act explicitly does not confer any affirmative authority for law enforcement agencies to detain individuals on immigration detainers under any circumstance. *See* 2013 Cal. Legis. Serv. Ch. 570 (A.B. 4) (WEST) ("It is the intent of the Legislature that this act shall not be construed as providing, expanding, or ratifying the legal authority for any state or local law enforcement agency to detain an individual on an immigration hold."). UMF 21.

The LASD detained thousands of individuals for longer than 48 hours after they were due for release on criminal matters. LASD inmate data shows that, between October 2010 and June 2014, approximately 7,197 inmates were held for more than 48 hours after they became due for release on criminal matters. UMF 17. Beginning in June 2014, LASD adopted policies and practices aimed at reducing the time that it detains an individual on an ICE detainer and enabling transfer to ICE without extending a person's detention beyond the time they are eligible for release. UMF 22.

The LASD has never implemented procedures to bring people held on ICE detainers before a neutral magistrate for a probable cause determination within 48 hours. UMFs 24. LASD's failure to ensure that inmates held solely on ICE detainers were brought before a magistrate within 48 hours was not due to any emergency or necessary administrative tasks, but rather, because LASD recognized no legal obligation to ensure that inmates held solely on ICE detainers received a prompt judicial determination of probable cause. UMF 25, 26. LASD was nonetheless aware that ICE did not provide a judicial determination of probable cause within 48 hours of taking custody. UMF 27.

The LASD similarly did not maintain procedures to ensure that persons held on ICE detainers were released within 48 hours if they had not been brought before a magistrate (despite maintaining procedures for ensuring other inmates held on warrantless arrests would be released within 48 hours). UMF 28. LASD nonetheless continued to detain inmates beyond the time they were eligible for release from criminal custody on ICE detainers for 48 hours (or longer), excluding weekends and holidays until at least June 2014, even though it did not bring those inmates before a judge within 48 hours for a probable cause determination. UMF 16. The LASD maintained this practice despite its knowledge that ICE did not provide a judicial determination of probable cause within 48 hours of ICE taking custody of the individual. UMF 27.

### C.   LASD BAIL PRACTICES

#### 1.   *Until October 2012, LASD Classified Immigration Detainers as "No Bail" Holds, Preventing Inmates With Detainers from Posting Bail*

The undisputed facts establish that, until October 2012, LASD's practice was to characterize immigration detainers as "No Bail" holds, effectively denying inmates with detainers the right to post bail. Within LASD's electronic data system, holds, including ICE holds, are entered as individual charges. UMF 29. While some "charges" have specific bail amounts attached to them others do not have a specific dollar amount attached. UMF 30.  Holds that do not have a specific dollar amount attached (each of which are separately entered as a "charge") are entered as a bail amount of $0 and classified as "No Bail" holds. UMF 31. Aside from ICE holds, the "No Bail" designation is used exclusively for holds for which the inmate **cannot** post bail, including state prison holds (indicating that the person must be returned to the custody of state prison), probation holds (indicating that the person may not be released for probation reasons) and warrants for which there is no bail. UMF 32. Because immigration detainers are not associated with a specific dollar amount, they were also designated as "No Bail" holds within LASD's electronic data system, despite the fact that an immigration detainer has no legal bearing on the right to post bail (unlike the other types of "No Bail" holds, under which an inmate has no right to bail). UMF 33, 34.

The "No Bail" notation communicated to LASD employees and to the public that inmates with immigration detainers could not post bail. The "No Bail" designation was communicated to LASD employees via "Inmate Information" sheets (documents containing basic information about inmates including arrest information, booking details and eligibility for bail). UMFs 35-39. All LASD employees with access to its internal network could generate "Inmate Information" sheets (UMFs 36), which have fields for the "Total Hold Bail Amount" and "Grand Total Bail Amount." Both these fields would display as "No Bail" if an inmate had a

single "No Bail" hold (including an immigration detainer). UMFs 37-39. As a result, the information sheets associated with any ICE-hold inmate would display the "Grand Total" bail amount as "No Bail" when the inmate was in fact eligible to post bail. UMF 39.

LASD's publicly accessible online, inmate locator service, which allows public access to arrest, booking and bail information, similarly used the "No Bail" notation for inmates with immigration detainers. For inmates with immigration detainers, both the "Total Hold Bail Amount" and "Grand Total (bail amount)" displayed as "No Bail," communicating that the inmate was ineligible to post bail. UMFs 40-44.

By characterizing immigration detainers as "No Bail" holds within both internal data systems and to the public, LASD effectively communicated that ICE-hold inmates were ineligible to post bail. LASD acknowledges that characterizing immigration holds as "No Bail" holds created confusion among its employees, and concedes that at least some employees misinterpreted the "No Bail" notation as a bar to posting bail. UMFs 45, 46. Due to this confusion, some LASD personnel advised the public that inmates with ICE holds were not permitted to post bail. UMF 47.  Before October 2012, LASD personnel routinely informed inmates, attorneys, and bail bondsmen that inmates with ICE holds could not post bail. UMF 50. Before October 2012, it was widely understood among the public and inmates that LASD did not accept bail on behalf of inmates with immigration detainers. UMF 51. In October 2012, LASD issued a written policy advising personnel that inmates with immigration detainers are permitted to post bail. UMFs 48. In December 2013, LASD changed the Manual of Policy and Procedure to make clear that bail must be accepted on behalf of inmates with ICE detainers. UMF 49.

Between October 19, 2010 and March 20, 2015, 71 individuals with ICE holds were released on bail or bond of 13,794 of releases with an ICE Hold). Bail/bond releases comprise only 0.5 percent of all releases among inmates with

8

ICE holds. UMF 52. Between October 19, 2010 and March 20, 2015, 33,711 inmates with **no** holds were released on bail or bond (of 400,973 of releases with no holds). Bail/bond releases comprise (8.4 percent) of releases among inmates with no holds. UMF 53.

> ### 2. Until June 2014, LASD Refused to Release Inmates Who Would Have Been Eligible for Release Without Posting Bail, Solely on the Basis of Immigration Detainers

Until June 5, 2014, the LASD maintained a formal written policy releasing without posting bail arrestees "carrying a maximum aggregate bail amount of $25,000.00 or less for new and/or remanded misdemeanor cases, and $25,000.00 or less for warrant cases (including bench warrants) … unless they fell into certain enumerated exceptions." However, inmates with "a hold placed by the Bureau of Immigration and Custom Enforcement" were exempted from the policy. See UMF 56-58. LASD data shows that an estimated 9,197 inmates with ICE detainers within the federal class period, and 6,052 within the state period, would have been eligible for release without posting bail. UMF 59.

LASD's policy of refusing to release inmates who would have otherwise been released without posting bail (i.e. on their own recognizance) only bolsters the conclusion that LASD did not accept bail on behalf of inmates with immigration detainers. Between October 19, 2010 and March 20, 2015, 102 inmates with ICE holds were released on their own recognizance. UMF 54. Between October 19, 2010 and March 20, 2015, 28,972 inmates with **no** holds were released on their own recognizance. UMF 55. There is no rational reason to conclude that the LASD permitted ICE-hold inmates to post bail of more than $25,000 when it expressly denied release to ICE-hold inmates with bail of less than $25,000.

## III. LEGAL ARGUMENT

Summary adjudication is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party satisfies its initial burden by showing "that

there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Thereafter, the burden shifts to the non-moving party to designate specific facts showing there is a genuine issue for trial on claims for which the opposing party must offer facts providing sufficient evidence "for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## A. PLAINTIFFS ARE ENTITLED TO SUMMARY ADJUDICATION ON THEIR §1983 FOURTH AMENDMENT CLAIMS

### 1. *Plaintiffs Are Entitled to Summary Adjudication on Liability for the Post-48-Hour Gerstein Classes*

Undisputed facts establish that the LASD had a practice of detaining inmates on immigration detainers for more than 48 hours after they were due for release from criminal custody, without ensuring judicial determination of probable cause. It may be determined as a matter of law whether all detentions beyond 48 hours were unreasonable. Dkt. 184, 9/6/2016 Class Cert Order, p. 24.

After an inmate becomes due for release on all criminal matters, incarceration on an immigration detainer is a **new** seizure to which Fourth Amendment rights unquestionably apply. *Morales v. Chadbourne*, 793 F.3d 208, 215-218 (1st Cir. 2015) (under "clearly established" law, the Fourth Amendment applies to immigration detainers); *Moreno v. Napolitano*, 213 F.Supp.3d 999, 2016 WL 5720465 (N.D. Ill. 2016) (DHS concedes "…that being detained pursuant to an ICE immigration detainer constitutes a warrantless arrest."); *Galarza v. Szalczyk*, 2012 WL 1080020, at *10, * 14 (E.D. Pa. Mar. 30, 2012) (detention pursuant to an immigration detainer is a seizure within the meaning of the Fourth Amendment), *rev'd in part on other grounds*, 745 F.3d 634 (3d Cir. 2013); *Mendia v. Garcia*, 2016 WL 2654327, at *5-6 (N.D. Cal. May 10, 2016) (immigration detainer triggers Fourth Amendment protections); *Miranda-Olivares v. Clackamas County*, 2014 WL 1414305, at * 9-10 (D. Or. Apr. 11, 2014) (the "continuation of [plaintiff's] detention based on the ICE detainer" constituted a "new arrest, and must be

analyzed under the Fourth Amendment"; awarding summary judgment to plaintiff detainee).

Under the Fourth Amendment, an arrest is not justified by mere allegations of probable cause; there must be a "fair and reliable" judicial determination of probable cause "either before or promptly after" an arrest. *Gerstein v. Pugh*, 420 U.S. 103, 114, 125 (1975) (prompt judicial determination of probable cause required after warrantless arrest).[3] The requirement for a prompt judicial determination of probable cause is not limited to criminal arrest and incarceration. It applies to "*any significant pretrial restraint of liberty*," 420 U.S. at 125 (emphasis added). Prolonged post-arrest detention implicates profound consequences for the arrested individual, including "imperil[ing] the suspect's job, interrupt[ing] his source of income, and impair[ing] his family relationships." *Id.* at 113-114 (explaining that once in custody the justifications for "dispensing with the magistrate's neutral judgment evaporate.").

A "prompt" judicial determination of probable cause must occur within 48 hours of a warrantless arrest. *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991); *United States v. Bueno-Vargas*, 383 F.3d 1104, 1107 (9th Cir. 2000). *Riverside* held that, absent an emergency or other extraordinary circumstance, a warrantless detention exceeding 48 hours prior to a judicial determination of probable cause presumptively violates the Fourth Amendment. Riverside's policy of providing a judicial probable cause determination "within two days, *exclusive of Saturdays, Sundays, or holidays* . . . exceeds the 48 hour period we deem constitutionally permissible." *Riverside*, 500 U.S. at 58-59 (emphasis added). Even

---

[3] As the Supreme Court has explained, review by a "detached and neutral" judicial officer is necessary because only such an individual possesses the necessary "independent judgment" to assess probable cause. *Shadwick v. City of Tampa*, 407 U.S. 345, 348-350 (1972) ("[S]omeone independent of the police and prosecution must determine probable cause.")

within the 48-hour period, a probable cause determination "may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably," such as "for the purpose of gathering additional evidence to justify the arrest…" *Id.* at 56-67.

Because immigration detainers are not approved by a neutral officer prior to the arrest (except some detainers supported by a final removal order), an arrest pursuant to an immigration detainer (unsupported by a final removal order) is the equivalent of a warrantless arrest. Federal courts have expressly recognized that arrests and detentions on immigration detainers must comply with *Riverside's* 48-hour limit for a judicial determination of probable cause. *Rivas v. Martin*, 781 F.Supp.2d 775, 780 (N.D. Ind. 2011) ("When a person is detained for more than 48 hours without a probable cause determination, the government has the burden to show that the delay was justified by an emergency or other extraordinary circumstance."); *Buquer v. City of Indianapolis,* 2013 WL 1332158, at *10 (S.D. Ind. Mar. 28, 2013) (permanently enjoining Indiana law that sought to permit LEAs to make arrests based on immigration detainers, holding that it violates the Fourth Amendment because, among other reasons, the law did not require a judicial determination of probable cause). *See also*, *Rhoden v. United States*, 55 F.3d 428, 432 (9th Cir. 1995) (holding plaintiff is entitled to Fourth Amendment protections based on his warrantless civil immigration arrest at the border, including a prompt probable cause hearing); *Rhoden v. Dep't of Justice*, 121 F.3d 716, 1997 WL 408786 (9th Cir. July 21, 1997) (unpubl.) (affirming district court determination that post-48 hour detention without hearing was unreasonable).

It is undisputed that LASD held inmates for longer than 48 hours on the basis of ICE detainers not supported by judicial review, and likewise undisputed that the LASD implemented no procedures to present the detainer for review by a neutral magistrate within 48 hours. As a matter of law, this practice violated the requirement that a hearing be promptly held. Indeed, detaining an individual on an

ICE detainer violates *Gerstein* because ICE does not provide any hearing, much less a prompt one, in which a detainee could contest the detention.

### 2. Plaintiffs Are Entitled to Summary Adjudication on the "Investigative" Detainer Class

Undisputed evidence establishes that the LASD honored thousands of immigration detainers that requested detention on the sole grounds that *an investigation had been initiated*, facially communicating that ICE had not yet acquired evidence to support probable cause of removability. *See Morales*, 996 F.Supp.2d at 19, 29 (D.R.I. 2014) aff'd in part, dismissed in part, 793 F. 3d 208 (1st Cir. 2015) ("One needs to look no further than the detainer itself to determine that there was no probable cause to support its issuance" since it seeks a hold "solely because an investigation of her status…had been initiated."); *Miranda-Olivares*, 2014 WL 1414305, at *11 ("[T]he ICE detainer alone did not demonstrate probable cause to hold Miranda–Olivares. It stated only that an investigation 'has been initiated' to determine whether she was subject to removal from the United States.'"). *See also, Arizona v. United States,* 132 S.Ct. 2492, 2509 (2012) ("Detaining individuals solely to verify their immigration status would raise constitutional concerns."). LASD undisputedly honored investigation detainers, treating them like mandatory holds issued on different bases.

Because the investigative detainers expressly communicated the *absence* of probable cause, LASD cannot justify its compliance based on speculation that some detainers could have been supported by probable cause, nor may it invoke the collective knowledge doctrine to justify its compliance. The collective knowledge doctrine supports arrest or detention when one officer (or agency) knows facts constituting reasonable suspicion or probable cause sufficient to justify an action under an exception to the warrant requirement. *U.S. v. Ramirez*, 473 F.3d 1026,

1036 (9th Cir. 2007). It applies, however, only where the officer "communicates an appropriate order or request." *Id.* at 1037.

A request for detention that affirmatively abjures a sufficient legal basis for detention does not constitute an "appropriate request or order" sufficient to invoke the collective knowledge doctrine. *See Morales*, 996 F.Supp.2d at 29. Thus, the legality of the arrest depends solely on what information was known to LASD at the time it effected the warrantless arrest (i.e., that ICE was investigating removability). Initiation of an investigation "is not enough to establish probable cause because the Fourth Amendment does not permit seizures for mere investigations." *Id.* (citing *Arizona*, 132 S.Ct. at 2509). "[T]he fourth amendment does not permit the police to detain a suspect merely to investigate." *Kanekoa v. City & County of Honolulu*, 879 F.2d 607, 612 (9th Cir. 1989). "We allow our police to make arrests only on 'probable cause' . . . . Arresting a person on suspicion, like arresting a person for investigation, is foreign to our system." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 169 (1972); *See also, U.S. v. Sholola*, 124 F.3d 803 (7th 1997) ("*Gerstein* and its progeny . . . prohibit law enforcement from detaining a defendant to gather evidence to justify his arrest . . ."); *U.S. v. Davis*, 174 F.3d 941, 945 (8th Cir. 1999); *Willis v. City of Chicago, 999 F.2d 284, 288-289 (7th Cir. 1993)*; *Riverside*, 500 U.S. at 56.

### B.   PLAINTIFFS ARE ENTITLED TO SUMMARY ADJUDICATION ON LIABILITY FOR THE FALSE IMPRISONMENT CLASSES.

LASD's practice of intentionally detaining inmates solely on the basis of an immigration detainer constitutes unlawful imprisonment as matter of law. False imprisonment is the: (1) nonconsensual, intentional, confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time however brief. *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 716, 30 Cal.Rptr.2d 18 (Cal. 1994). There is no intent requirement. *Id.* ("The only mental state required to be shown to prove

false imprisonment is the intent to confine, or to create a similar intrusion). When a Plaintiff shows that he was arrested and imprisoned without a warrant, the burden is on Defendants to show that the arrest was lawful. *See Cervantez v. J. C. Penney Co.*, 595 P.2d 975, 982 (Cal. 1979); *see also* CACI 1401-02, Judicial Council of California Civil Jury Instructions for False Arrest Without Warrant and Affirmative Defense. False arrest is a species of false imprisonment; the elements are identical. *Collins v. City & County of San Francisco*, 50 Cal. App. 3d 671, 673, 123 Cal. Rptr. 525, 526 (1975) (A "[f]alse arrest is but "one way of committing a false imprisonment, and they are distinguishable only n terminology.").

No lawful privilege existed for LASD's re-arrest of persons pursuant to immigration detainers. Whether an officer is authorized to make an arrest "…depends, in the first instance, on state law." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). The Ninth Circuit has held that, even where federal law authorizes local police to arrest for federal offenses—authorization that is absent here—the arrest is lawful only insofar as state law grants affirmative authority for the arrest. *Gonzales v. City of Peoria*, 722 F.2d 468, 475 (9th Cir. 1983) (even if federal law gives state LEAs discretion to arrest for a federal offense, the arrest is lawful only where state law actually authorizes the arrest) (citing *Ker v. California*, 374 U.S. 23, 37 (1963)) *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) . Accordingly, LASD must have some state law arrest authority for holding people on detainers. *Miller v. United States*, 357 U.S. 301, 305 (1958) (when enforcing federal criminal law, the lawfulness of an arrest by a state peace officer is determined by reference to state law); *People ex rel. Swenson v. Ponte*, 994 N.Y.S.2d 841 (N.Y. Sup. Ct. 2014) (holding that arrest on immigration detainer was unlawful because it exceeded arrest authority under state and local law).

The arrest power of California law enforcement officers is enumerated by state statute. The California Penal Code authorizes warrantless arrests only in specific, enumerated circumstances, which do not include civil immigration

purposes. Penal Code § 836(a) authorizes warrantless arrests where (1) "[t]he officer has probable cause to believe that the person to be arrested has committed a *public offense* in the officer's presence," (2) "[t]he person arrested has committed a felony, although not in the officer's presence," (3) "[t]he officer has probable cause to believe that person to be arrested has committed a felony, whether or not a felony, in fact, has been committed." Cal. Pen. Code § 836(a)(1)-(3). Violation of civil immigration laws does not constitute a "public offense" for the purpose of §836. The Penal Code defines "public offense" as including felonies, misdemeanors, and infractions, Cal. Pen. Code § 16, and as "an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments: 1. Death; 2. Imprisonment; 3. Fine; 4. Removal from office; or, 5. Disqualification to hold and enjoy any office of honor, trust or profit in this State." Cal. Pen. Code §15. Accordingly, the LASD does not and did not have authority under Cal. Penal Code § 836(a) to make warrantless arrests on immigration detainers for civil immigration violations, the punishment for which is civil removal from the United States. *See, e.g., Ponte*, 46 Misc. 3d at 278, 994 N.Y.S.2d at 844 (holding no state law authority for arrest on the civil immigration detainer) ("There is no allegation that the Department has actually obtained a removal order and, if in fact they had, there is still no authority for a local correction commissioner to detain someone based upon a civil determination, as immigration removal orders are civil, not criminal, in nature.").

California law authorizes civil arrests or (involuntary) detention only under specific, statutorily authorized circumstances, which do not include civil immigration violations. Law enforcement officers may execute civil arrest warrants for failure to appear as required by subpoena or court order. Cal. Civ. Proc. §1993(a)(1). California law also authorizes police officers to detain persons based on probable cause that, due to mental health disorder, they are a danger to others, themselves or are gravely disabled. Cal. Welfare and Institutions Code §5150

(person effectuating detention must advise subject that they are **not** under criminal arrest, but rather, being detained for mental health evaluation and treatment). Law enforcement officers may also place inebriated persons in civil protective custody for 72-hour treatment and evaluation, where appropriate facilities are available. Absent express authorization under state law, arrest for any other civil purpose is unlawful. Nor does the LASD have inherent authority to make arrests for civil immigration violations. *See United States v. Arizona, 641 F.3d 339, 362 (9th Cir. 2011),* a*ff'd in part, rev'd in part on other grounds, Arizona v. United States, 132 S. Ct. 2492, 567 U.S. 387 (2012).* detainers

## C.   Plaintiffs Are Entitled To Summary Adjudication Under California Civil Code §52.1

The undisputed evidence also establishes that Plaintiffs are entitled to summary adjudication under California Civil Code §52.1 (Tom Bane Civil Rights Act ("Bane Act"). The Bane Act creates a cause of action where, "by threat, intimidation, or coercion," a person interferes or attempts to interfere with rights secured by the United States or California Constitution, or by federal or state law. Cal. Civ. Code §51.2 (a). Here Plaintiffs allege that Defendants interfered with their Fourth Amendment Rights (as explained in § III (A) above), violated their rights under California's bail and false imprisonment laws, and violated their right to equal protection (see §§ III B, (D)(2), (D)(3)), all of which were separate from the coercive no bail computer entries (and, in the cases of equal protection, no bail and false imprisonment were separate from the Fourth Amendment violation as well), See below and discussion in §§ III(D)(2), (D)(3).

Undisputed evidence shows that Defendants falsely communicated to employees and agents that immigration holds authorized and required class members to be detained through entry of the hold in their computer system. UMFs UMFs 18-20. LASD objectively should have known that the immigration detainers were not mandatory holds, as characterized in their database, but were instead

voluntary requests. Language on the face of the form clearly indicated that the document represented a request, not a mandatory detainer or warrant, thus qualifying as a separate coercive act from the later continuing detention. See *Roy v. Cty. of Los Angeles*, 2015 WL 12582637, at *6-8 (C.D. Cal. Nov. 20, 2015) (granting motion to amend complaint); discussion in § III(D)(3).  Moreover, as LASD should have been aware, language in the relevant federal regulations characterized the detainers as "request[s]." Public statements from ICE also repeatedly confirmed the voluntary nature of detainers. *See Galarza*, 745 F.3d 640; *Flores*, 2015 WL 756877, at *4 ("[F]ederal law leaves compliance with immigration holds wholly within the discretion of states and localities."). As this Court previously recognized, these factual allegations, if proven, are sufficient to establish that the LASD acted coercively by knowingly interfering with Plaintiffs' constitutional rights. Dkt. 107, 9/17/15 Order, p. 12.

> **D.    PLAINTIFFS ARE ENTITLED TO SUMMARY ADJUDICATION ON LIABILITY FOR THE BAIL CLASS AND "NO MONEY" BAIL SUBCLASS**

It is undisputed that, until October 2012, LASD characterized immigration detainers as "No Bail" holds, communicating to its employees and to the public that inmates were ineligible to post bail, particularly given that the "No Bail" designation is otherwise used only for holds that preclude the posting of bail. It is likewise undisputed that LASD exempted inmates with immigration detainers from its written policy requiring certain inmates with bail of less than $25.000 to be released without posting bail (i.e. to be released on their own recognizance).

> ***1.    LASD's Classification of Immigration Detainers as No Bail Holds and Policy Of Denying Own-Recognizance Release To ICE Detainees Deprived Plaintiffs Of Due Process Or Alternatively Violated The Fourth Amendment.***

"The Due Process Clause provides procedural protections to inmates who can establish that a liberty interest is at stake." *Dennison v. Ryan*, 522 F. App'x 414, 416 (9th Cir. 2013) (citing *Wilkinson v. Austin,* 545 U.S. 209, 221, 125 S.Ct. 2384, 162

L.Ed.2d 174 (2005)). Thus, "[t]o establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles,* 147 F.3d 867, 871 (9th Cir.1998).

"A protected liberty or property interest 'arises from legitimate claim(s) of entitlement ... defined by existing rules or understandings that stem from an independent source such as state law.'" *Carson Harbor Vill., Ltd. v. City of Carson,* 86 F. App'x 274, 276 (9th Cir. 2004) (quoting *Erdelyi v. O'Brien,* 680 F.2d 61, 63 (9th Cir.1982) (per curiam). A liberty interest does not arise only from laws or formal regulations. It "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'..., or it may arise from an *expectation or interest created by state* laws or *policies, see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 556-558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)." *Wilkinson,* 545 U.S. at 221 (2005) (emphasis supplied).[4]

Substantive due process forbids governmental infringement of fundamental liberty interests, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. *Reno v. Flores,* 507 U.S. 292, 301–02, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). When a detainee is not confined as a result of a criminal conviction, the due process clause requires the nature and duration of confinement to bear a reasonable relation to the purpose for which the individual has been committed. *Youngberg v. Romeo,* 457 U.S. 307, 320–21, 102

---

[4] *Wilkinson* is a conditions of confinement case. It and *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) have made clear that, in the conditions of confinement context, the liberty deprivation must be based not on mandatory language of the rule, regulation, policy or statute but on "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin.,* 515 U.S. at 483-484. Here, because the rule entitles one to release, refusing to release them violates their rights.

S.Ct. 2452, 73 L.Ed.2d 28 (1982). *See also, e.g., Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir.1992) ("[an individual has a liberty interest in being free from incarceration absent a criminal conviction") (citation omitted).

Here, both the Bail Class plaintiffs and No-Money Bail plaintiffs had a protected liberty interest. The Bail Class plaintiffs had an interest in release upon posting bail. Such a liberty interest was established and reinforced by the mandatory provisions of California law imposing a mandatory duty on LASD to release on bail any arrestee or inmate who meets the statutory conditions for bail. *See, e.g.*, Cal. Const., Art. 1, section 12; Cal. Penal Code §§ 1268, 1269b, 1295(a); *Shakespeare v. City of Pasadena*, 40 Cal. Rptr. 863, 869 (Cal. App. 2d Dist. 1964) ("The duty to release, the statutory conditions having been met, is mandatory (Pen.Code, § 1295), and detention thereafter unlawful."); *Moore v. City & Cnty of San Francisco*, 5 Cal. App. 3d 728, 736-37 (1970) (same). In any event, preventing individuals from posting bail based on immigration status violates substantive due process. *See Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 775 (9th Cir. 2014) (Arizona law denying all undocumented immigrants the right to post bail violated substantive due process) (*en banc*).

The No-Money bail plaintiffs had a protected liberty interest in being released without having to post bail (i.e. on their own recognizance) by virtue of the LASD policy of releasing those who would have been released without posting bail. Because the "no money bail" plaintiffs would have been automatically released but for their ICE detainers, Defendants effectively prevented them from posting bail of $0 in violation of their right to post bail and attendant due process rights. Only if the immigration detainer provided an independent legal justification for holding inmates otherwise entitled to post bail or be released would Defendants' bail practices have been consistent with Plaintiffs' substantive due process rights. However, because immigration detainers do not otherwise provide legal authority to deprive a pretrial detainee of their right to post bail, this justification is not available to Defendants.

20

Nothing in ICE regulations purports to prohibit law enforcement agencies from allowing the subject of detainers to post bail or otherwise provides any legal right for LASD to hold the Bail and No-Money bail class members. Indeed, the I-247 form expressly states: "This detainer arises from DHS authorities and should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters." Release on bail is a form of release from criminal custody clearly contemplated by the federal detainer regulations. *See, e.g., Rivas*, 781 F.Supp.2d at 781 (N.D. Ind. 2011) ("the language of the detainer and of 8 C.F.R. § 287.7 made it clear that defendants could only hold Rivas for an additional 48 hours under the detainer" after she posted bond); *Galarza*, 2012 WL 1080020 at*20 ("Plaintiff became a person 'not otherwise detained by a criminal justice agency' when his bail was posted."). The County's practice of rejecting bail on behalf of inmates with ICE detainers was without lawful basis. *Miranda-Olivares*, 2014 WL 1414305, at *10.[5]

Accordingly, LASD's policy and practice of denying release on bail to inmates with immigration holds (including the practice of denying release to inmates with bail of less than $25,000) violated due process. *See, e.g., Ilae v. Tenn*, 2013 WL 4499386, at *8 (D. Haw. Aug. 20, 2013) (claim that delay in admission to bail after bail was set violates the due process clause of the Fourteenth Amendment, citing *Dodds v. Richardson*, 614 F.3d 1185, 1190 (10th Cir.2010) and *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir.2009)); *Brass v. County of Los Angeles*, 328 F.3d 1192, 1202 (9th Cir.2003) (due process claim for failure to timely release but issue not reached because it was not established that the County's custom and

---

[5] *Miranda-Olivares* rejected Plaintiffs' claim that the denial of bail violated due process, instead resolving the case on Fourth Amendment grounds. However, *Miranda-Olivares* did not address the line of cases, including in the Ninth Circuit, finding unreasonable over-detentions to violate due process.

21

practice caused plaintiff unreasonable delay in release); *Barnes v. D.C.*, 793 F. Supp. 2d 260, 278 (D.D.C. 2011) (enforcement of ordinance requiring that inmates not be released between 10:00 p.m. and the next morning violated due process rights of persons otherwise entitled to release).

Some courts have alternatively analyzed failures to release inmates after they became entitled to release under the Fourth Amendment. *See, e.g., Arline v. City of Jacksonville,* 359 F.Supp.2d 1300, 1310 (M.D.Fla.2005); *Powell v. Barrett*, 376 F.Supp.2d 1340, 1352 (N.D.Ga. 2005); *Miranda-Olivares* 2014 WL 1414305 at **9-11 (failure to release ICE detainees on bail violated the Fourth Amendment; ICE detainer was "a subsequent and new 'prolonged warrantless, post-arrest, pre-arraignment custody'"). Whether under the due process clause or the Fourth Amendment, LASD's bail policies and practices were unconstitutional.

### 2. *LASD's Bail Policy and Practices Deprived Plaintiffs Of Equal Protection.*

It is undisputed that LASD accepted bail on behalf of bail-eligible inmates who were similarly situated to Plaintiffs. It is likewise undisputed that LASD released arrestees whose bail amounts were $25,000 or less and who were otherwise similarly situated to Plaintiffs (i.e., those charged with crimes not within the enumerated exceptions of LASD policy). The sole distinction between the two is that Plaintiffs had immigration holds. Thus, the two were treated differently on the face of the policy, thereby establishing the predicate requirement "that a class that is similarly situated has been treated disparately." *Christian Gospel Church, Inc. v. City and Cnty. of San Francisco,* 896 F.2d 1221, 1225 (9th Cir.1990). Once that is established, the central inquiry where the group at issue is not entitled to heightened scrutiny is that the differential treatment must be "rationally related to a legitimate state interest." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S. Ct. 3249, (1985). For the state action "to be legitimate, it must be 'properly cognizable' by the government asserting it and 'relevant to interests' it 'has the

authority to implement.'" *Golinski v. U.S. Office of Pers. Mgmt.*, 824 F. Supp. 2d 968, 996 (N.D. Cal. 2012) (quoting *City of Cleburne,* 473 U.S. at 441). Even when the review is a rational basis one, it "is more searching when a classification adversely affects unpopular groups." *Diaz v. Brewer*, 656 F.3d 1008, 1012 (9th Cir. 2011).

Here, there is no dispute that those with an ICE detainer are singled out. We argue elsewhere in this Memorandum that, as a general proposition, the existence of an ICE detainer does not indicate even probable cause that a person is removable (see §§III, B), which itself vitiates the rationality of reliance on the detainer. Further, as we explained in the foregoing discussion, there is no lawful government purpose for this distinction because local law enforcement agencies have no authorization to detain people on the basis of an immigration hold. *See* §III, C. [6]Accordingly, LASD was asserting and relying on "interests" it lacked "the authority to implement." (See *Cleburne* quote, *infra*.), rendering the distinctions on which it relies violative of equal protection.

---

[6] *See also, e.g., Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1065 (9th Cir. 2014) (Arizona's denial of driver's licenses to DACA recipients but allowance of it for those with adjustment of status applications pending violated equal protections); *Armendariz v. Penman*, 75 F.3d 1311, 1326–27 (9th Cir. 1996) (*en banc*) (city's selective enforcement of slum housing laws for alleged purpose of deflating the value of the plaintiffs' buildings, purchase them, and replace them with a shopping center stated an equal protection violation even though the underlying laws being enforced were not discriminatory); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564–65, 120 S. Ct. 1073, 1074–75, 145 L. Ed. 2d 1060 (2000) (complaint that homeowner was selectively treated in required size of easement from those who lived within village limits stated equal protection violation). The situation here is more egregious than these cases because in all those cases there was at least a law on which the government entity relied to justify its actions. Here, it is undisputed that neither federal nor state law authorized local law enforcement to hold those with ICE detainers who were otherwise entitled to release under jail policy. And there were additionally substantive protections to be released from custody without a lawful basis to hold Plaintiffs and to post bail (here zero $).

### 3. *LASD's Bail Practices Violated California Law.*

California law imposes a mandatory duty on LASD to release on bail any arrestee or inmate who meets the statutory conditions for bail. *See, e.g.*, Cal. Const., Art. 1, section 12; Cal. Penal Code §§ 1268, 1269b, 1295(a). "The duty to release, the statutory conditions having been met, is mandatory (Pen.Code, § 1295), and detention thereafter unlawful." *Shakespeare*, 40 Cal. Rptr. At 869 (Cal. App. 2d Dist. 1964); *Moore*, 5 Cal. App. 3d at 736-37 (1970) (same). Defendants prevented the Bail Class members from posting bail (and in the case of the No-Money Bail subclass, prevented release upon posting bail of $0 money, just a signature, a form of own recognizance release) in violation of their right to post bail. This constituted a violation of Civil Code § 815.6. See, e.g., *Nozzi v. Housing Authority of the City of Los Angeles*, 806 F.3d 1178, 1201-03 (9th Cir. 2015) ("a public entity will be liable to a plaintiff for injury when (1) a mandatory duty is imposed [on the public entity] by enactment, (2) the duty was designed to protect against the kind of injury allegedly suffered, and (3) breach of the duty proximately caused injury, unless the public entity can establish that it exercised reasonable diligence in discharging this mandatory duty") (internal quotation marks and citations omitted). The bail provision was mandatory, and there was absolutely no authority for LASD to hold Plaintiffs otherwise entitled to release.

Similarly, the undisputed facts establish that Defendants' bail practices violated Civil Code § 52.1. Plaintiffs alleged, and it is undisputed, that Defendants "falsely communicated to employees and agents that ICE holds authorized and required class members to be detained" through entry of the hold in their computer system. (SAC ¶¶ 197, 205.) The coercive nature of the LASD's data entries is reinforced by the use of the "No Bail" designation within LASD's internal data systems and on LASD's public portal, both of which communicated (incorrectly) that inmates with immigration detainers were not entitled to post bail, resulting in their over-detention. Because no facts are in dispute, this court's prior ruling on this

claim requires the grant of summary judgment. *See Roy v. Cty. of Los Angeles*, 2015 WL 12582637, at *6-8 (C.D. Cal. Nov. 20, 2015).

Similarly, although the Court did not address the equal protection claim as it relates to § 52.1 in that opinion, Plaintiffs have established their entitlement to summary judgment under § 52.1 on the equal protection claim as well. This is because that claim is cognizable (see § B), it demonstrates that Plaintiffs were "treated differently than other inmates who were lawfully incarcerated," *id.* at 7 (quoting *Shoyoye v. Cty. of L.A.*, 203 Cal. App. 4th 947, 961 (2012), and the coercion of the differential treatment was separate from the coercion inherent in the over-detention. *See, e.g., McKibben v. McMahon*, 2015 WL 10382396, at *4-5 (C.D. Cal. Apr. 17, 2015) ("forcing Plaintiffs into an untenable choice [between safety and equal treatment] is conceptually distinguishable from the underlying …disparate treatment).

## IV.   CONCLUSION

For the forgoing reasons, Plaintiffs' motion should be granted

Dated: May 16, 2017      ACLU of SOUTHERN CALIFORNIA
                         KAYE, McLANE, BEDNARSKI & LITT, LLP
                         NATIONAL DAY LABORER ORGANIZING NETWORK
                         NATIONAL IMMIGRANT JUSTICE CENTER

                         By /s/ *Lindsay Battles*

                         Attorney for Plaintiffs

25