PETER J. ELIASBERG, SBN 189110
 peliasberg@aclu-sc.org
AHILAN ARULANANTHAM, SBN 237841
PETER BIBRING, SBN 223981
JENNIFER PASQUARELLA, SBN 263241
 jpasquarella@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, California 90017
Phone:  (213) 977-9500
Facsimile:  (213) 977-5299

BARRETT S. LITT, SBN 45527
 blitt@kmbllaw.com
LINDSAY B. BATTLES, SBN 262862
 lbattles@kmbllaw.com
KAYE, MCLANE, BEDNARSKI & LITT
234 Colorado Boulevard, Suite. 230
Pasadena, California 91101
Telephone: (626) 844-7600 x112
Fax: (626) 844-7670

Attorneys for Plaintiffs
(continued on next page)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUNCAN ROY; *et al.*,<br><br>Plaintiffs,<br><br>        vs.<br><br>COUNTY OF LOS ANGELES; *et al.*,<br>Defendants.<br><br>─────────────────────────<br><br>GERARDO GONZALEZ, *et al.*,<br><br>Plaintiffs,<br><br>        vs.<br><br>IMMIGRATION AND CUSTOMS ENFORCEMENT, an entity; *et al.*,<br>Defendants. | Case No. CV 12-09012 BRO (FFMx)<br>Consolidated with:<br>Case No. CV 13-04416 BRO (FFMx)<br><br>[Honorable Beverly Reid O'Connell]<br><br>**Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law in Support of Plaintiffs' Motion for Summary Adjudication re Liability Issues**<br><br>[Memorandum of Points and Authorities, Declarations and Exhibits Filed Concurrently]<br><br>Date:  July 24, 2017<br>Time: 1:30 p.m.<br>Courtroom: 7C |

i

CHRIS NEWMAN, SBN 255616
 newman@ndlon.org
JESSICA KARP BANSAL, SBN 277347
 jbansal@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
675 South Park View Street, Suite B
Los Angeles, California 90057
Telephone: (213) 380-2214
Facsimile: (213) 380-2787

OMAR C. JADWAT (pro hac vice)
ojadwat@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th floor
New York, NY 10004
Telephone: (212) 549-2660

CECILLIA D. WANG, SBN 187782
cwang@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111

MARK M. FLEMING (pro hac vice)
mfleming@heartlandalliance.org
NATIONAL IMMIGRANT JUSTICE CENTER
208 S. LaSalle Street, Suite 1300
Chicago, IL 60604
Telephone: (312) 660-1628
Facsimile: (312) 660-1505

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3
4

*Barnes v. D.C.*,

5
   793 F. Supp. 2d 260 (D.D.C. 2011)....................................................17

6
*Brass v. County of Los Angeles*,

7
   328 F.3d 1192 (9th Cir.2003) ..........................................................17

8
*Buquer v. City of Indianapolis*,

9
   2013 WL 1332158 (S.D. Ind. Mar. 28, 2013) ................................15

10
*Campbell v. Johnson*,

11
   586 F.3d 835 (11th Cir.2009) ..........................................................17

12
*Celotex Corp. v. Catrett*,

13
   477 U.S. 317 (1986)..........................................................................14

14
*County of Riverside v. McLaughlin*,

15
   500 U.S. 44 (1991).............................................................................15

16
*Dennison v. Ryan*,

17
   522 F. App'x 414 (9th Cir. 2013).....................................................16

18
*Dodds v. Richardson*,

19
   614 F.3d 1185 (10th Cir.2010) ........................................................17

20
*Fermino v. Fedco, Inc.*,

21
   7 Cal. 4th 701, 30 Cal.Rptr.2d 18 (Cal. 1994)...............................16

22
*Galarza v. Szalczyk*,

23
   No. 10-cv-06815, 2012 WL 1080020 (E.D. Pa. Mar. 30, 2012).....................14

24
*Gerstein v. Pugh*,

25
   420 U.S. 103 (1975)..........................................................................15

26
*Ilae v. Tenn*,

27
   2013 WL 4499386 (D. Haw. Aug. 20, 2013) ..................................17

28

*Kanekoa v. City & County of Honolulu*,

    879 F.2d 607 (9th Cir. 1989) ...................................................................16

*Lopez-Valenzuela v. Arpaio*,

    770 F.3d 772 (9th Cir. 2014) .................................................................17

*Mendia v. Garcia*,

    Case No. 10-3910, 2016 WL 2654327 (N.D. Cal. May 10, 2016) ..................14

*Miranda-Olivares v. Clackamas County*,

    No. 12-cv-02317, 2014 WL 1414305 (D. Or. Apr. 11, 2014) .........................14

*Moore v. City & Cnty of San Francisco*,

    5 Cal. App. 3d 728 (1970) .......................................................................17

*Morales v. Chadbourne*,

    793 F.3d 208 (1st Cir. 2015).....................................................................14

*Moreno v. Napolitano*,

    ---F.Supp.3d ---, 2016 WL 5720465 (N.D. Ill., Sept. 30, 2016) ......................14

*Nozzi v. Housing Authority of the City of Los Angeles*,

    806 F.3d 1178 (9th Cir. 2015) .................................................................17

*Rivas v. Martin*,

    781 F.Supp.2d 775 (N.D. Ind. 2011) .......................................................15

*Shakespeare v. City of Pasadena*,

    40 Cal. Rptr. 863 (Cal. App. 2d Dist. 1964)..........................................16

*U.S. v. Ramirez*,

    473 F.3d 1026 (9th Cir. 2007) .................................................................16

*United States v. Bueno-Vargas*,

    383 F.3d 1104 (9th Cir. 2000) .................................................................15

*Wilkinson v. Austin,*

    545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) ........................16

**Statutes**

Cal. Const., Art. 1, section 12 ................................................................. 16

Cal. Gov't Code, Section 7282.5(a) ........................................................... 5

Cal. Penal Code §§ 1268, 1269b, 1295(a) ................................................ 16

Civil Code § 52.1 ..................................................................................... 18

Civil Code § 815.6 ................................................................................... 17

Pen.Code, § 1295 .................................................................................... 17

Penal Code § 836(a) ................................................................................. 16

**Rules**

Fed.R.Civ.P. 56(c) ................................................................................... 14

**Other Authorities**

AB4 ......................................................................................................... 5

Plaintiffs hereby submit the following Separate Statement of Uncontroverted Material Facts and Conclusions of Law in support of their Motion for Summary Adjudication as to Liability Issues.

## I.   PLAINTIFFS' UNCONTROVERTED MATERIAL FACTS

| | Uncontroverted Material Fact | Supporting Evidence |
|---|---|---|
| | **ICE IMMIGRATION DETAINER PRACTICES** | |
| 1. | Between October 1, 2010 and February 22, 2016, ICE issued 31,925 immigration detainers to the LASD. | Declaration of Lindsay Battles ("Battles Decl."), ¶2, Ex. A, p.3 (DHS Rog Resp., No. 11). |
| 2. | The 8/2010 version of the I-247 Form includes four checkboxes indicating the basis for issuing an immigration detainer; the first box states "Investigation has been initiated to determine whether this person is subject to removal from the United States." | Battles Decl., Ex. B. |
| 3. | The 6/2011 version of the I-247 Form includes four checkboxes indicating the basis for issuing an immigration detainer; the first box states "Initiated an investigation to determine whether this person is subject to removal from the United States." | Battles Decl., Ex. Z. |
| 4. | The 12/2012 version of the I-247 Form includes four checkboxes indicating the basis for issuing an immigration detainer; the first box states "Determined that there is reason to believe the individual is an alien subject to removal from the United States…" (followed by subsidiary checkboxes indicating the subject's enforcement priority). | Battles Decl., Ex. C. |
| 5. | During the class period, ICE issued 21,179 detainers to the LASD with the "initiated an investigation" or "investigation has been | Battles Decl., Ex. BB. |

1

| | | | |
|---|---|---|---|
| | | initiated" box checked, and 2,911 detainers with no detainer reason box checked. | |
| | 6. | ICE's 2010, 2011, and 2012 versions of the I-247 form requested that the LASD detain an individual beyond the time he or she would otherwise be eligible for release for 48 hours, **excluding** weekends and holidays. | Battles Decl., Exs. B, C, Z. |
| | 7. | In 2015, ICE revised its detainer form, creating two different detainer forms—the I-247D, for individuals that meet a higher enforcement priority, and the I-247X, for lower enforcement priorities. | Battles Decl., Exs. D, E. |
| | 8. | The new (2015) forms replaced the checkbox option of "reason to believe" with the statement "probable cause exists that the subject is a removable alien." | Battles Decl., Exs. D, E. |
| | 9. | The new (2015) detainer form requests 48 hours of extended detention **including** weekends and holidays. | Battles Decl., Ex E. |
| | 10. | The 2010 – 2015 versions of the detainer forms requested that the local law enforcement agency maintain custody using the language "it is requested" or "DHS requests." | Battles Decl., Exs. B, C, E, Z. |
| | 11. | The 2010 – 2015 versions of the detainer forms contained a check box on the form indicating whether the detainer was supported by a final order of removal or by a Notice to Appear initiating removal proceedings. | Battles Decl., Exs. B, C, D, E, Z. |
| | 12. | Of detainers issued to LASD, more than 80 percent of the detainers had neither box checked: only 19 percent were supported by final orders of removal, signed by immigration judges; 0.5 percent were supported by the initiation of removal proceedings. | Battles Decl., ¶3 (ICE reported 170 detainers supported by an NTA and 5,937 detainers supported by a removal order; ICE data indicates that 25,818 detainers were not supported by a final order |

| | | | |
|---|---|---|---|
| | | | of removal or Notice to Appear.). |
| 13. | | No judge, magistrate, or immigration judge reviews ICE detainers either before or promptly after they are issued. | Battles Decl., Ex. Y (Defendants' Responses to Plaintiffs' RFA Nos. 1-8, admitting that ICE does not require that a judicial official or immigration judge make a determination of probable cause for an immigration detainer prior to issuing a detainer, within 48 hours after detainer issuance, within 48 hours after a detainer goes into effect, or within 48 hours after an individual is taken into ICE custody). |
| 14. | | ICE has never had a policy or practice of providing a prompt judicial review of probable cause (before or promptly after arrest caused by the detainer). | Battles Decl., Ex. Y (Defendants' Responses to Plaintiffs' RFA Nos. 1-8, admitting that ICE does not require that a judicial official or immigration judge make a determination of probable cause for an immigration detainer prior to issuing a detainer, within 48 hours after detainer issuance, within 48 hours after a detainer goes into effect, or within 48 hours after an individual is taken into ICE custody). |
| **LASD ARREST AND DETENTION ON IMMIGRATION DETAINERS** | | | |
| 15. | | From October 2010 until March 2014, LASD complied with all immigration detainers indiscriminately, treating them as | Battles Decl., Ex. M ("the ICE detainer SHALL BE honored" if TRUST Act |

3

| | | | |
|---|---|---|---|
| | | mandatory. | criteria met); Ex. DD p. 11:3 – 11:23, 30(b)(6) Dep. of LASD Lt. Tri Hoang.. |
| 16. | | From October 2010 until June 2014, LASD's policy and practice was to detain individuals beyond the time they were eligible for release on the immigration detainer for up to 48 hours excluding weekends and holidays. | Battles Decl., Ex. F (LASD email to Lt. Tri Hoang enclosing detainer compliance timeline) ("inmates with a valid [ICE] hold… shall be held beyond their release date for interview… or transfer"); Ex. G (4/19/2013 Detainer Acceptance Policy); Ex. H (11/18/2013 Detainer Policy); Ex. I (IRC 1/2014 Detainer Acceptance Policy); Ex. J (6/6/2014 Policy); Ex. K (6/5/2014 email with attachment addressing change in policy); Ex. L, Sivard 5/28/15 Dep. Tr., pp. 66:13-66:18. |
| 17. | | LASD inmate data shows that, between October 2010 and June 2014, approximately 7,197 inmates were held for more than 48 hours after they became due for release on criminal matters. | Under-seal Kriegler Decl., p. 16. |
| 18. | | During this period, LASD recorded immigration detainers in its Automated Jail Information System ("AJIS"), making them visible to jail staff and the public through LASD's inmate locator. | See Ex. L, Sivard 5/28/15 Dep. Tr. 32:16-33:5 (before and immediately after TRUST Act detainers recorded in AJIS). |
| 19. | | Recording ICE detainers as "holds" excluded inmates from Alternatives to Custody Programs, including work release, electronic monitoring release, mental health treatment centers and substance abuse | Ex. R, Lightel Dep. Tr., pp. 16:13 – 18:6, 161:14 – 161:25 (beginning in 2006, inmates with immigration holds were |

4

| | | |
|---|---|---|
| | treatment centers. | not allowed to participate in alternatives to custody programs). |
| 20. | All detainers uploaded into AJIS were detainers that the LASD intended to honor by detaining the inmate after they were due for release on criminal charges. | Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr, pp. 32:16-20; 33:7-33:14. |
| 21. | In March 2014, the LASD initiated steps to comply with a California law, known as AB4 (The TRUST Act), Cal. Gov't Code, Section 7282.5(a), which limited the circumstances in which law enforcement agencies could honor immigration detainers. | Battles Decl., Ex. F (detainer compliance timeline, noting March 13, 2014 LASD began vetting detainers against TRUST Act); Ex. DD, p. 42:12 – 43:23, 30(b)(6) Dep. of LASD Lt. Tri Hoang (referencing detainer compliance timeline). |
| 22. | Beginning in June 2014, LASD adopted policies and practices aimed at reducing the time that it detains an individual on an ICE detainer and enabling transfer to ICE without extending a person's detention beyond the time they are eligible for release. | Battles Decl., Exs. J, K; Ex. DD, p. 42:12 – 45:1, 30(b)(6) Dep. of LASD Lt. Tri Hoang (referencing detainer compliance timeline). |
| 23. | In June 2014, LASD stopped recording immigration detainers in AJIS and began keeping only a paper copy of the detainer in the inmate's record jacket. | Battles Decl., J (6/6/2014 Detainer Policy), Ex. L, Sivard 5/28/15 Dep. Tr., pp. 29:3-29:15. |
| 24. | During the class period, LASD has never had a policy or practice to bring people held on ICE detainers before a judge for a probable cause determination, despite maintaining procedures for ensuring other inmates held on warrantless arrests would be released within 48 hours. | Battles Decl., Ex. L, Sivard 5/28/15 Depo. Tr., pp. 159:13-160:6; Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 69:3 – 72:6; Ex. DD, p. 38:3 – 39:1, 30(b)(6) Dep. of LASD Lt. Tri Hoang. |
| 25. | LASD's failure to ensure that inmates held solely on ICE detainers were brought before a magistrate within 48 hours was not due to | Ex. DD, p. 37:3 – 39:10, 30(b)(6) Dep. of LASD Lt. Tri Hoang. |

| | | any emergency or the need to complete administrative tasks. | |
|---|---|---|---|
| | 26. | In LASD's view, it had no legal obligation to ensure that inmates held solely on ICE detainers were brought before a judge or magistrate within 48 hours. | Ex. DD, p. 37:3 – 37:9, 30(b)(6) Dep. of LASD Lt. Tri Hoang. |
| | 27. | LASD was aware that ICE did not provide a judicial determination of probable cause to those individuals within 48 hours of ICE taking custody of the individual. | *See* Battles Decl., Ex. O (document shared between LASD officers, which states "DHS doesn't provide [probable cause hearings before a magistrate judge]" and proposes that the Department "limit detention on the basis of an ICE hold to 48 hrs, including weekends and holidays" to account for DHS's failure to provide a hearing); Ex. P, p. 2 ("ICE Program Bullets 287(g)," stating, incorrectly, that "[o]nce inmates are turned over to ICE officials, they are. . . . required to appear before a Federal magistrate within 10 days")*; see also,* Ex. Q, p. 2 (LASD email stating "The ICE Warrant (I200) does not get any judicial review (think of a search warrant, arrest warrant, or Probable Cause Declaration (PCD)). The ACLU attorneys are saying this is a violation of the inmates rights...and our county counsel rep |

| | | |
|---|---|---|
| | | (custody) agrees with that assessment."). |
| 28. | Although the LASD has procedures to track the length of time a person subject to an out-of-county warrant is held before transfer to the requesting agency to ensure they are not over-detained, no such procedure exists for ICE Detainers. | Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 65:6 – 66:8; Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 76:24 – 77:16; Ex. R, Lightel Dep. Tr., pp. 138:16-139:22 (no tracking mechanism of time period; instead just put names on a transfer list), pp. 174:16-176:25 (same); 177:16-177:21 (no knowledge of way to track 48 hour period); *see also,* pp. 234:2-235:14 (no guidance on "standard release time"). |
| **LASD BAIL POLICIES** | | |
| 29. | LASD entered immigration detainers into their data system as an additional "charge" on the inmate. | Battles Decl., Ex. DD, p. 17:1-17:10, 24:13 – 25:5, 30(b)(6) Dep. of LASD Lt. Tri Hoang. |
| 30. | Within LASD's database system, some charges or holds have specific bail amounts attached to them, while others do not have a specific dollar amount. | Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 116:15-117:1; *see also* Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 85:24 – 86:20. |
| 31. | Charges or holds that do not have a specific dollar amount are designated as "No Bail" holds. | Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 116:15-117:1; *see also* Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 85:24 – 86:20. |
| 32. | Aside from ICE holds, the "No Bail" notation is used exclusively for holds for | Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. |

| | | which the inmate **cannot** post bail, including state prison holds (indicating that the state prison has custody of the inmate), probation holds (indicating that the person may not be released due to probation violation) and warrants for which there is no bail. | 96:9 – 97:23. |
|---|---|---|---|
| | 33. | Because immigration detainers do not have a specific dollar amount attached, they were displayed as "No Bail" holds within LASD's electronic data system. | Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 116:21-117:7, Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 85:22 – 86:6, 96:9 – 97:23 Ex. CC (Ex. 4 to Sivard 4/21/16 Dep., LASD Inmate Information Sheet). |
| | 34. | LASD marked immigration detainers in the electronic booking system as "no bail" holds. | Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 116:15-116:20; Ex.U (Industry Station manual excerpt, stating all immigration detainers are "no bail"). |
| | 35. | Inmate Information sheets contain basic inmate information including arrest information, booking information and bail information. | Ex. CC (Ex. 4 to Sivard 4/21/16 Dep., LASD Inmate Information Sheet). |
| | 36. | All LASD employees with access to the LASD intranet (LASD's internal network), can generate "Inmate Information" sheets. | Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 84:25 – 85:18 (referencing Deposition Ex. 4); Ex. CC (Ex. 4 to Sivard 4/21/16 Dep., LASD Inmate Information Sheet). |
| | 37. | Inmate information sheets contain fields for "Total Bail Amount," "Total Hold Bail Amount," and "Grand Total (Bail)." | Ex. CC (Ex. 4 to Sivard 4/21/16 Dep., LASD Inmate Information Sheet). |

| 38. | On inmate information sheets, if an inmate has one "no bail" hold, such as an immigration hold, the "Total Hold Bail Amount" displays as "No Bail." | Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 85:22 – 86:6; Ex. CC (Ex. 4 to Sivard 4/21/16 Dep., LASD Inmate Information Sheet). |
|---|---|---|
| 39. | On inmate information sheets, if an inmate has one "no bail" hold, such as an immigration hold, the "Grand Total Bail (amount)" displays as "No Bail." | Ex. CC (Ex. 4 to Sivard 4/21/16 Dep., LASD Inmate Information Sheet); *see also*, Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 85:22 – 86:6; |
| 40. | LASD's online inmate locator service allows members of the public to access inmate information including booking information, charges, court appearances and bail amount. | Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 116:7:116:14. |
| 41. | LASD's online inmate locator service contains fields for "Total Bail Amount," "Total Hold Bail Amount," and "Grand Total (Bail)." | Ex. T (inmate booking screen shot showing "no bail" notation). |
| 42. | On LASD's online inmate locator service, the booking information section displayed immigration holds as a "no bail" notation. | Ex. T (inmate booking screen shot showing "no bail" notation). |
| 43. | On LASD's online inmate locator service, the "Total Hold Bail Amount" would be displayed as "No Bail" for inmates with immigration detainers. | Ex. T (inmate booking screen shot showing "no bail" notation); Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 116:7-116:20. |
| 44. | On LASD's online inmate locator service, the "Grand Total (Bail Amount)" would be displayed as "No Bail" for inmates with immigration detainers. | Ex. T (inmate booking screen shot showing "no bail" notation). |
| 45. | LASD acknowledges that there was confusion among its personnel as to whether inmates with "no bail" immigration detainers were permitted to post bail. | Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 114:16-118:14; Ex. S, Sivard 4/21/16 Rule |

| | | 30(b)(6) Dep. Tr., pp. 96:9 – 97:23.98:4-99:10. |
|---|---|---|
| 46. | LASD acknowledges that "there was some misinterpretation of the MPP with regards to posting of bail when a no-bail hold was also placed on the inmate." | Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 114:16-118:14 |
| 47. | LASD acknowledges that, due to this confusion, some LASD personnel advised inmates (or persons calling on their behalf) that they were not permitted to post bail. | Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 116:21-118:14. |
| 48. | On October 18, 2012, days before this case was filed, LASD changed its policy to allow ICE Detainer inmates to post bail. | Battles Decl., Ex. V (10/18/12 JDIC Msg, Acceptance of Cash Bails and Bonds); *see also* Ex. W (demonstrating LASD did not change bail policy to reflect acceptance of bail for people with ICE detainers until 12/2013). |
| 49. | In December 2013, LASD changed the Manual of Policy and Procedure to make clear that bail must be accepted on behalf of inmates with ICE detainers. | Ex. W (demonstrating LASD did not change bail policy to reflect acceptance of bail for people with ICE detainers until 12/2013). |
| 50. | Before October 2012, LASD routinely informed inmates, attorneys and bail bondsmen that inmates with ICE holds were not permitted to post bail. | Decl. of James Kallas (bail agent repeatedly advised by LASD that inmates with immigration holds were ineligible to post bail); Decl. of Lauro Jimenez (bail agent never permitted to post bail on behalf of inmates with immigration detainers); Decl. of Morris Demayo (bail bondsmen attempted to post bail on behalf of 12 inmates with immigration |

| | | | |
|---|---|---|---|
| | | | detainers; LASD refused to accept bail each time); Decl. of Alec Rose (advised by LASD personnel that his client could not post bail due to an immigration hold); Decl. of Alejandro Delgado (advised by LASD personnel, Dep. Lopez, that inmates with immigration holds are not permitted to post bail); Decl. of Brendan Hamme (advised by <u>multiple LASD</u> personnel that inmates with ICE holds are not eligible to post bail); Decl. of Rocio Ramirez (advised by LASD officer that inmates with immigration detainers are not permitted to post bail); Decl. of Xanadu Copo (advised by LASD jail deputy that he could not post bail due to immigration detainer). |
| 51. | Before October 2012, it was widely understood among the public and inmates that LASD did not accept bail on behalf of inmates with immigration detainers. | | Decl. of James Kallas (bail agent repeatedly advised by LASD that inmates with immigration holds were ineligible to post bail); Decl. of Lauro Jimenez (bail agent never permitted to post bail on behalf of inmates with immigration detainers); Decl. of Morris Demayo (bail bondsmen attempted |

to post bail on behalf of 12 inmates with immigration detainers; LASD refused to accept bail each time); Decl. of Alec Rose (advised by LASD personnel that his client could not post bail due to an immigration hold); Decl. of Alejandro Delgado (advised by LASD personnel, Dep. Lopez, that inmates with immigration holds are not permitted to post bail); Decl. of Brendan Hamme (advised by <u>multiple LASD</u> personnel that inmates with ICE holds are not eligible to post bail); Decl. of Rocio Ramirez (advised by LASD officer that inmates with immigration detainers are not permitted to post bail); Decl. of Aurelio Lopez Rodriguez (advised by bail bondman that inmates with immigration detainers could not post bail); Decl. of Xanadu Copo (advised by LASD jail deputy that he could not post bail due to immigration detainer); Decl. of Emilia Flores (advised by bail bondman that inmates with immigration detainers could not post bail); Decl.

| | | |
|---|---|---|
| | | of Elizabeth Lopresti (advised by bail bondman that inmates with immigration detainers could not post bail). |
| 52. | Between October 19, 2010 and March 20, 2015, 71 individuals with ICE holds were released on bail or bond of 13,794 of releases with an ICE Hold). Bail/bond releases comprise only 0.5 percent of all releases among inmates with ICE holds. | Under-seal declaration of Dr. Brian Kriegler, Ex. 2 (pp. 38). |
| 53. | Between October 19, 2010 and March 20, 2015, 33,711 inmates with **no** holds were released on bail or bond (of 400,973 of releases with no holds). Bail/bond releases comprise (8.4 percent) of releases among inmates with no holds. | Under-seal declaration of Dr. Brian Kriegler, Ex. 2 (pp. 38). |
| 54. | Between October 19, 2010 and March 20, 2015, 102 inmates with ICE holds were released on their own recognizance. | Under-seal declaration of Dr. Brian Kriegler, Ex. 2 (pp. 38). |
| 55. | Between October 19, 2010 and March 20, 2015, 28,972 inmates with **no** holds were released on their own recognizance. | Under-seal declaration of Dr. Brian Kriegler, Ex. 2 (pp. 38). |
| 56. | It is LASD policy not to book anyone into its jails for whom bail is set at $25,000 or less unless they refused to sign the citation, demanded to appear before a magistrate, were charged with a probation violation, or were charged with a disqualifying, enumerated charge (e.g. escape from custody, child abuse, domestic violence, etc.) | Battles Decl., Ex. N, p.1-2 (July 2012 IRC Policy on Bail Acceptance and Misdemeanor Arrests) (IRC will not accept inmates with $25,000 bail or less, unless inmate has an immigration detainer); Ex. S, Sivard 30(b)(6) Dep. Tr., pp. 77:17 – 79:7. |
| 57. | Pursuant to LASD's Policy of Bail Acceptance, where an individual with bail of less than $25,000 qualified for release without posting bail, watch commanders had discretion to book the person where they could not produce sufficient ID or | Battles Decl., Ex. N, p.1-2 (July 2012 IRC Policy on Bail Acceptance and Misdemeanor Arrests). |

13

| | | were intoxicated. | |
|---|---|---|---|
| | 58. | Until June 2014, LASD's policy of not booking arrestees with bail of less than $25,000 did not apply to those with ICE Detainers. | Battles Decl., Ex. N, p.1-2 (July 2012 IRC Policy) (IRC will not accept inmates with $25,000 bail or less, unless inmate has an immigration detainer). |
| | 59. | LASD data shows that an estimated 9,197 inmates with ICE detainers within the federal class period, and 6,052 within the state period, would have been eligible for release without posting bail. | Under-seal Kriegler Decl., ¶28, pp. 16. |

## II.    Plaintiffs' Conclusions of Law

1.    Summary adjudication is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

2.    The moving party satisfies its initial burden by showing "that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

3.    Incarceration on an immigration detainer is a **new** seizure to which Fourth Amendment rights unquestionably apply. *Morales v. Chadbourne*, 793 F.3d 208, 215-218 (1st Cir. 2015) (under "clearly established" law, the Fourth Amendment applies to immigration detainers); *Moreno v. Napolitano*, --- F.Supp.3d ---, 2016 WL 5720465 (N.D. Ill., Sept. 30, 2016) (DHS concedes "…that being detained pursuant to an ICE immigration detainer constitutes a warrantless arrest."); *Galarza v. Szalczyk*, No. 10-cv-06815, 2012 WL 1080020, at *10, * 14 (E.D. Pa. Mar. 30, 2012) (detention pursuant to an immigration detainer is a seizure within the meaning of the Fourth Amendment), *rev'd in part on other grounds*, 745 F.3d 634 (3d Cir. 2013); *Mendia v. Garcia*, Case No. 10-3910, 2016 WL 2654327, at *5-6 (N.D. Cal. May 10, 2016) (immigration detainer triggers Fourth Amendment protections); *Miranda-Olivares v.*

14

*Clackamas County*, No. 12-cv-02317, 2014 WL 1414305, at * 9-10 (D. Or. Apr. 11, 2014) (the "continuation of [plaintiff's] detention based on the ICE detainer" constituted a "new arrest, and must be analyzed under the Fourth Amendment.") (awarding summary judgment to plaintiff detainee).

4.     Under the Fourth Amendment, an arrest requires a "fair and reliable" judicial determination of probable cause "either before or promptly after" an arrest. *Gerstein v. Pugh*, 420 U.S. 103, 114, 125 (1975) (prompt judicial determination of probable cause required after warrantless arrest).

5.     The requirement for a prompt judicial determination of probable cause applies to "*any* significant pretrial restraint of liberty," 420 U.S. at 125 (emphasis added).

6.     To be considered "prompt," a judicial determination of probable cause must take place within 48 hours of a warrantless arrest. *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991); *United States v. Bueno-Vargas*, 383 F.3d 1104, 1107 (9th Cir. 2000).

7.     Arrests and detentions on immigration detainers must comply with *Riverside's* 48-hour limit for a judicial determination of probable cause. *Rivas v. Martin*, 781 F.Supp.2d 775, 780 (N.D. Ind. 2011) ("When a person is detained for more than 48 hours without a probable cause determination, the government has the burden to show that the delay was justified by an emergency or other extraordinary circumstance."); *Buquer v. City of Indianapolis,* 2013 WL 1332158, at *10 (S.D. Ind. Mar. 28, 2013) (permanently enjoining Indiana law that sought to permit LEAs to make arrests based on immigration detainers, holding that it violates the Fourth Amendment because, among other reasons, the law did not require a judicial determination of probable cause).

8.     The collective knowledge doctrine supports arrest or detention when one officer (or agency) knows facts constituting reasonable suspicion or probable

1    cause sufficient to justify an action under an exception to the warrant

2    requirement. *U.S. v. Ramirez*, 473 F.3d 1026, 1036 (9th Cir. 2007).

3        9.    The collective knowledge doctrine applies only where the officer

4    "communicates an appropriate order or request." *Id.* at 1037.

5        10.    A request for detention that affirmatively abjures a sufficient legal

6    basis for detention does not constitute an "appropriate request or order" sufficient

7    to invoke the collective knowledge doctrine. *See Morales*, 996 F.Supp.2d at 29

8    (D.R.I. 2014).

9        11.    "[T]he fourth amendment does not permit the police to detain a

10   suspect merely to investigate." *Kanekoa v. City & County of Honolulu*, 879 F.2d

11   607, 612 (9th Cir. 1989).

12       12.    False imprisonment is the: (1) nonconsensual, intentional,

13   confinement of a person, (2) without lawful privilege, and (3) for an appreciable

14   period of time however brief. *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 716, 30

15   Cal.Rptr.2d 18 (Cal. 1994).

16       13.    The California Penal Code authorizes warrantless arrests only in

17   specific, enumerated circumstances, which do not include civil immigration

18   purposes. Penal Code § 836(a).

19       14.    "The Due Process Clause provides procedural protections to inmates

20   who can establish that a liberty interest is at stake." *Dennison v. Ryan*, 522 F.

21   App'x 414, 416 (9th Cir. 2013) (citing *Wilkinson v. Austin,* 545 U.S. 209, 221,

22   125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)).

23       15.    The Bail Class and No-Money Bail Subclasses had a protected

24   liberty interest in being released upon posting bail (including bail of zero $) that

25   was established and reinforced by the mandatory provisions of California law

26   imposing a mandatory duty on LASD to release on bail any arrestee or inmate

27   who meets the statutory conditions for bail. *See, e.g.*, Cal. Const., Art. 1, section

28   12; Cal. Penal Code §§ 1268, 1269b, 1295(a); *Shakespeare v. City of Pasadena,*

40 Cal. Rptr. 863, 869 (Cal. App. 2d Dist. 1964) ("The duty to release, the statutory conditions having been met, is mandatory (Pen.Code, § 1295), and detention thereafter unlawful."); *Moore v. City & Cnty of San Francisco*, 5 Cal. App. 3d 728, 736-37 (1970) (same).  In any event, preventing individuals from posting bail based on immigration status violates substantive due process. *See Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 775 (9th Cir. 2014) (Arizona law denying all undocumented immigrants the right to post bail violated substantive due process) (*en banc*).

16.    LASD's policy and practice of denying release on bail to inmates with immigration holds (including the practice of denying release to inmates with bail of less than $25,000)  violated due process. *See, e.g., Ilae v. Tenn*, 2013 WL 4499386, at *8 (D. Haw. Aug. 20, 2013) (claim that delay in admission to bail after bail was set violates the due process clause of the Fourteenth Amendment, citing *Dodds v. Richardson,* 614 F.3d 1185, 1190 (10th Cir.2010) and *Campbell v. Johnson,* 586 F.3d 835, 840 (11th Cir.2009)); *Brass v. County of Los Angeles,* 328 F.3d 1192, 1202 (9th Cir.2003) (due process claim for failure to timely release but issue not reached because it was not established that the County's custom and practice caused plaintiff unreasonable delay in release); *Barnes v. D.C.*, 793 F. Supp. 2d 260, 278 (D.D.C. 2011) (enforcement of ordinance requiring that inmates not be released after 10:00 p.m. violated due process rights of persons otherwise entitled to release).

17.    LASD's policy and practice of denying release on bail to inmates with immigration detainers violated equal protection.

18.    LASD's policy and practice of denying release on bail to inmates with immigration detainers violated Civil Code § 815.6. See, e.g., *Nozzi v. Housing Authority of the City of Los Angeles*, 806 F.3d 1178, 1201-03 (9th Cir. 2015) ("a public entity will be liable to a plaintiff for injury when (1) a mandatory duty is imposed [on the public entity] by enactment, (2) the duty was designed to

17

1   protect against the kind of injury allegedly suffered, and (3) breach of the duty

2   proximately caused injury, unless the public entity can establish that it exercised

3   reasonable diligence in discharging this mandatory duty") (internal quotation

4   marks and citations omitted). The bail provision was mandatory, and there was

5   absolutely no authority for LASD to hold Plaintiffs otherwise entitled to release.

6          19.    LASD's policy and practice of denying release on bail to inmates

7   with immigration detainers violated violated Civil Code § 52.1.

8

9   Dated: May 16, 2017    ACLU of SOUTHERN CALIFORNIA
                            KAYE, McLANE, BEDNARSKI & LITT, LLP
10                          NATIONAL DAY LABORER ORGANIZING
                            NETWORK
11                          NATIONAL IMMIGRANT JUSTICE CENTER

12

13                             By _____/s/_Lindsay Battles_____

14                                    Attorney for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28