PAUL B. BEACH, State Bar No. 166265
pbeach@lbaclaw.com
JIN S. CHOI, State Bar No. 180270
jchoi@lbaclaw.com
JUSTIN W. CLARK, State Bar No. 235477
jclark@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, California 91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendants
County of Los Angeles and Sheriff Leroy D. Baca

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUNCAN ROY; et al., | Case No. CV 12-09012 BRO (FFMx) |
| Plaintiffs, | Honorable Beverly Reid O'Connell |
| vs. | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| COUNTY OF LOS ANGELES; et al., | |
| Defendants. | |
| GERARDO GONZALEZ; et al., | [Local Rule 56-1] |
| Plaintiffs, | [*Separate Statement of Undisputed Facts and Conclusions of Law, Declarations and Exhibits, Application to File Under Seal, and [Proposed] Judgment filed concurrently herewith*] |
| vs. | |
| IMMIGRATION AND CUSTOMS ENFORCEMENT, an entity; et al., | Date: July 24, 2017 |
| Defendants | Time: 1:30 p.m. |
| | Crtm: 7C |

TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR

COUNSEL OF RECORD:

///

1

PLEASE TAKE NOTICE that on July 24, 2017 at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 7C before the Honorable Beverly Reid O'Connell, of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, CA 90012, Defendants County of Los Angeles and Sheriff Leroy D. Baca (collectively, "Defendants") will and hereby do move for summary judgment of the remaining claims of Plaintiffs Alain Martinez-Perez and Clemente De La Cerda — the only Plaintiffs remaining in this action — pursuant to Federal Rules of Civil Procedure Rule 56.

The grounds for Defendants' Motion are:

1)    Plaintiff Martinez-Perez does not have a cognizable claim based on the alleged refusal to allow him to post bail because (a) there is no admissible evidence of any attempt to post bail while in LASD custody; (b) at all relevant times, LASD policy has been to allow all inmates with bail, including those with immigration detainers, to post bail;

2)    Plaintiff Martinez-Perez's claims are barred because there was probable cause for his immigration detainer as established by the undisputed facts regarding his immigration history and the procedures by which ICE issues immigration detainers, such probable cause determinations impute to local law enforcement agencies, and his period of detention comported with federal regulations authorizing detentions of 48 hours excluding weekends;

3)    Plaintiffs' Fourth Amendment claim improperly relies on a rule exclusive to criminal proceedings for providing judicial probable cause determinations within 48 hours of a warrantless criminal arrest;

4)    Plaintiffs' California Civil Code § 52.1 claims fail as a matter of law due to the absence of any actionable coercion separate from the coercion inherent to their alleged over-detentions;

1        5)     Plaintiffs' state law claims are barred by California Government

2   Code § 820.2 because the challenged procedures regarding ICE detainers are not

3   ministerial but implemented through discretionary policy decisions;

4        6)     Plaintiffs' claims for injunctive and declaratory relief are moot

5   because inmates in County custody with immigration detainers are not held

6   beyond their release date.

7        In conjunction with the arguments for dismissal of Plaintiffs' remaining

8   claims, Defendants also seek summary judgment of discrete issues which bear

9   directly upon the proposed classes certified by the Court (Dkt No. 184).

10  Specifically: (1) the *Gerstein/Riverside* 48 hour rule applies to criminal

11  proceedings only, thereby mandating summary adjudication in Defendants' favor

12  on the issue of whether Plaintiffs and class members must be provided with a

13  judicial determination of probable cause within 48 hours after the beginning of

14  their detention based on an immigration detainer; (2) ICE detainers are and have

15  always been based on factual determinations of probable cause of removability

16  and the County's reliance on them and the attendant federal regulations (including

17  the provision for detaining subjects for 48 hours, excluding weekends, beyond

18  their release date) was legally valid, thereby mandating summary adjudication in

19  Defendants' favor on the issue of whether Plaintiffs and class members' rights

20  were violated when they were not released from custody on their release date; (3)

21  the County's policy has always been to allow all inmates, including those with

22  immigration holds, to post bail, thereby mandating summary adjudication in

23  Defendants' favor on the issue of whether Plaintiffs and class members were

24  allowed to post bail; and (4) for many potential class members, a lawful basis

25  existed for their detention in County jail, even beyond their expected release date,

26  because many inmates in County jail serve only a percentage of their criminal

27  sentence, and are released early under orders in *Rutherford v. Block*, U.S.D.C.

28

1    Case No. CV 75-0411 DDP, which require the Sheriff's Department to avoid

2    over-crowding in the County jail.

3           This Motion will be based on this Notice and Motion, the attached

4    Memorandum of Points and Authorities, the declarations and exhibits filed

5    concurrently herewith, and such further oral and documentary evidence as the

6    Court may consider at or prior to the hearing in this matter.

7           This Motion is made following an unsuccessful good faith attempt to

8    informally resolve issues pursuant to Local Rule 7-3.  (*See*, Declaration of Justin

9    W. Clark ["Clark Decl."], ¶2.)

10

11   Dated:  May 16, 2017                    LAWRENCE BEACH ALLEN & CHOI, PC

12

13                                            By _____/s/  Justin W. Clark_____

14                                                 Justin W. Clark
                                                   Attorneys for Defendants
15                                                 County of Los Angeles and
                                                   Sheriff Leroy D. Baca
16

17

18

19

20

21

22

23

24

25

26

27

28

4

# **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 1

I.      INTRODUCTION. ................................................................................... 1

II.     STATEMENT OF FACTS. ...................................................................... 3

        A.      Background Information Regarding The County Jail System. ........... 4

        B.      The Booking Process As It Relates To ICE Holds. ......................... 5

        C.      The Release Process And Transfer To ICE Custody. ....................... 6

        D.      Changes To Policy And Procedure Related To ICE Holds. ............... 7

        E.      Bail Processing. ................................................................................. 8

        F.      LASD's Relationship With ICE. ....................................................... 8

III.    SUMMARY JUDGMENT STANDARD. .............................................. 9

IV.     PLAINTIFFS' CAUSES OF ACTION. .................................................. 9

V.      PLAINTIFF MARTINEZ-PEREZ — THE ONLY PLAINTIFF
        SEEKING DAMAGES — DOES NOT HAVE A COGNIZABLE
        CLAIM AS A MATTER OF LAW. ........................................................ 10

        A.      Plaintiff Martinez-Perez's Denial Of The Right To Post Bail
                Claim Is Not Supported By Any Admissible Evidence. ................... 10

        B.      The ICE Detainer Issued Against Plaintiff Martinez-Perez
                Was Based On Probable Cause And Justified His Temporary
                Detention. ........................................................................................... 11

                1.      ICE Detainers Must Be Based On Probable Cause Of
                        An Individual's Removability. ............................................. 12

                        a.      ICE Agents Have Always Been Required To
                                Establish Probable Cause Of A Subject's
                                Removability Prior To The Issuance Of
                                Detainers. .................................................................... 12

                        b.      ICE's Probable Cause Determinations Impute To
                                Local Law Enforcement Agencies. ........................... 15

                        c.      Federal Regulations Explicitly Authorize The
                                Detentions Of 48 Hours Excluding Weekends. ........... 18

i

1
2
      2.    Plaintiffs' Fourth Amendment Claim Improperly Relies On A 48-Hour Rule Which Has No Applicability To Civil Proceedings Involving Persons Subject To Removal Proceedings. ........................................................19

3
VI.  SEVERAL DISCRETE LEGAL ISSUES RELEVANT TO THE COURT'S CLASS CERTIFICATION ORDER SHOULD BE
4
SUMMARILY ADJUDICATED. ..............................................21

5
VII.  PLAINTIFFS' STATE LAW CLAIMS ARE SUBJECT TO SUMMARY JUDGMENT ON ADDITIONAL GROUNDS. ..................22
6

7
    A.    Because Departmental Policies As To How Ice Detainers Should Be Handled Are Inherently Discretionary, Plaintiffs'
8
State Law Claims Fail As A Matter Of Law. ...................................22

9
    B.    Plaintiffs' Two Civil Code § 52.1 Causes Of Action Are Not Cognizable As A Matter Of Law Due To Any Actionable
10
Coercion Separate From The Challenged Detentions Themselves. ........................................................23

11
VIII.  PLAINTIFFS' INJUNCTIVE RELIEF CLAIMS ARE MOOT AS A
12
MATTER OF LAW. ..............................................24

13
IX.  CONCLUSION. ........................................................25

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen v. City of Sacramento*,
   234 Cal.App.4th 41 (2015)................................................................23

*Barnes v. Healy*,
   980 F.2d 572 (9th Cir. 1992).............................................................24

*Bryant v. Ward*,
   2011 WL 2896015 (D. Conn. July 18, 2011)....................................13

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
   467 U.S. 837 (1984) ..........................................................................18

*Chuyon Yon Hong v. Mukasey*,
   518 F.3d 1030 (9th Cir. 2008)......................................................19, 20

*City of Oklahoma City v. Tuttle*,
   471 U.S. 808 (1985) ..........................................................................11

*County of Los Angeles v. Davis*,
   440 U.S. 625 (1979)...........................................................................24

*Doran v. Eckhold*,
   409 F.3d 958.......................................................................................17

*Dykstra v. Comm'r,*
   260 F.3d 1181 (9th Cir. 2001)...........................................................19

*Elton v. Cty. of Orange*,
   3 Cal.App.3d 1053 (1970)..................................................................22

*Friends of the Earth, Inc. v. Laidlaw Environmental Services,*
   528 U.S. 167 (2000) ..........................................................................24

*Gabrielle v. County of Orange*,
   2017 WL 1399763, 10 Cal.App.5th 1268 (March 24, 2017)............22

*Hendrickson v. eBay Inc.,*
    165 F. Supp.2d 1082 (C. D. Cal. 2001)...........................................................24

*Herring v. United States,*
    555 U.S. 135 (2009) ............................................................................................14

*Hughes v. McWilliams,*
    2009 WL 4823940 (S.D.N.Y. Dec. 15, 2009) ...........................................13

*Julian v. Mission Community Hospital,* __ Cal.Rptr.3d __,
    2017 WL 1709611 (May 2, 2017)..................................................................23

*Lewis v. Cont'l Bank Corp.,*
    494 U.S. 472 (1990) ............................................................................................24

*Malott v. Placer County,*
    2016 WL 538462 *(E.D. Cal. Feb. 11, 2016)* .......................................23

*Martin v. Rodriguez,*
    154 F.Supp.2d 306 (D. Conn. 2001) .........................................................14

*Mayer v. City of New Rochelle,*
    2003 WL 21222515 (S.D.N.Y. May 27, 2003).......................................14

*Mendoza v. United States Immigration & Customs, Enf't,*
    849 F.3d 408 (8th Cir. 2017)...................................................14, 15, 16, 17

*Mercado v. Dallas City, Texas,*
    2016 WL 3166306 (N.D. Tex. June 7, 2016) ........................................10

*Monell v. Dep't of Soc. Serv. of N.Y.,*
    436 U.S. 658 (1978) ...........................................................................................11

*Morales v. Chadbourne,* __ F.Supp.3d __,
    2017 WL 354292 (D. Rhode Island Jan. 24, 2017) ...........................17

*Parrilla v. Gonzales,*
    414 F.3d 1038 (9th Cir.2005).......................................................................19

*Pittman v. City of N.Y.,*
    2014 WL 7399308 (E.D.N.Y. Dec. 30, 2014) .......................................13

iv

*Quezada v. City of L.A.,*
   222 Cal.App.4th 993 (2014)..................................................................23
*Thomas v. Sacramento County,*
   2017 WL 550052 (E.D. Cal. Feb. 10, 2017)......................................23
*U.S.A. v. Grigsby,*
   2016 WL 3659170 (C.D. Cal. July 6, 2016).......................................14
*United States v. Carter,*
   573 F.3d 418 (7th Cir. 2009).................................................................13
*United States v. Garza,*
   980 F.2d 546 (9th Cir. 1992)................................................................13
*United States v. Geophysical Corp. of Alaska,*
   732 F.2d 693 (9th Cir. 1984)...............................................................24
*United States v. Santa,*
   180 F.3d 20 (2d Cir. 1999)..................................................................14
*United States v. Southerland,*
   486 F.3d 1355.......................................................................................13
*Van Ort v. Estate of Stanewich,*
   92 F.3d 831 (9th Cir. 1996).................................................................11
*Watkins v. City of San Jose,*
   2017 WL 1739159 (N.D. Cal. May 4, 2017).....................................22
*Wolfson v. Brammer,*
   616 F.3d 1045 (9th Cir. 2010)............................................................24
**Statutes**
42 U.S.C. § 1983..............................................................................1, 9, 11
8 U.S.C. § 1103(a)(3) ..............................................................................18
8 U.S.C. §§ 1101et.....................................................................................18
Article III of the United States Constitution........................................24
California Civil Code § 52.1...............................................................2, ii, 2

v

California Government Code § 820.2.................................................................3, 2

California Government Code §§ 815.2 and 815.6..............................................1

California Penal Code § 849.5...........................................................................3

**Rules**

Fed.R.Civ.Pro., Rule 56(b), (d) ........................................................................9

Federal Rules of Civil Procedure Rule 56 ........................................................2

Federal Rules of Civil Procedure, Rule 56(c) ..................................................9

**Regulations**

8 C.F.R. 287.7.............................................................................................7, 19

8 C.F.R. 287.7(d) ............................................................................................18

**Other Authorities**

AB4 ....................................................................................................................8

1                **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION.

Plaintiffs are former inmates of the Los Angeles County Jail ("County jail" or "LACJ") and claim that their rights were violated because they were temporarily detained due to the immigration detainers ("ICE holds" or "ICE detainers") issued against them by Immigration and Customs Enforcement ("ICE").  Of the claims that Plaintiffs originally brought when this action was filed, two 42 U.S.C. § 1983 causes of action and four state law causes of actions remain against Defendants County of Los Angeles and Sheriff Baca (in his official capacity) — (hereinafter "Defendants").  (*See,* Second Amended Complaint ["SAC"], Dkt No. 125.)[1]

The two remaining Plaintiffs are Alain Martinez-Perez and Clemente De La Cerda.[2]  Plaintiff Martinez-Perez is the only Plaintiff seeking damages.  (*See* Dkt No. 124, n. 1; SAC, ¶ 113.)  Undisputed material facts relating to both Plaintiffs mandate summary judgment in Defendants' favor as to all of their claims.  Specifically, Plaintiff Martinez-Perez was never personally aware of his bail amount, and there is no admissible evidence of any effort to post bail on his behalf prior to his transfer to ICE custody on December 20, 2011.  (Separate Statement of Undisputed Material Facts ["SS"] 31-38.)  Without any such evidence, any claim based on the allegation that he was not allowed to post bail is not cognizable as a matter of law.

---

[1] The SAC includes a Fifth Cause of Action under California Government Code §§ 815.2 and 815.6.  The Court, however, dismissed this cause of action with prejudice in ruling on Defendants'' motion to dismiss the First Amended Complaint.  (Dkt No. 124 at p. 10.)

[2] When the SAC was filed on December 7, 2015, three Plaintiffs remained.  (Dkt No. 125.)  The third Plaintiff, Annika Aliksoo, was dismissed from this action on January 26, 2017.  (Dkt No. 216.)

1

1   Moreover, Plaintiff Martinez-Perez (who was arrested on a domestic
2   violence charge on December 14, 2011 and provided with a clearance letter on
3   December 16, 2011) was not held more than 48 hours (excluding weekends)
4   beyond his "release date."  (SS 24-28.)  The timing of his release to ICE
5   comported with the explicit language and provisions of his ICE detainer — that
6   he not be held longer than 48 hours beyond his release date (excluding
7   weekends).  Thus, any claim based on the allegation that he was unlawfully held
8   beyond his release date on the basis of his detainer also fails based on the
9   undisputed evidence and controlling law.
10   Plaintiff Martinez-Perez's unlawful seizure-based claims are also barred by
11   the fact that the undisputed evidence establishes that ICE agents were required to
12   establish probable cause of a subject's removability prior to the issuance of a
13   detainer, and that these determinations were based on the review of a broad array
14   of databases containing information regarding criminal and immigration histories.
15   (SS 81-84.)  These probable cause determinations satisfied the applicable Fourth
16   Amendment requirements for not only the issuance of the detainers but the
17   County's reasonable reliance upon them.
18   Plaintiffs' state law claims are barred by the discretionary immunity
19   mandated under Government Code § 820.2, and their claims under Civil Code §
20   52.1 are barred by the absence of the violation of any rights, and the absence of
21   coercion separate from the coercion inherent to the challenged detentions.
22   Plaintiff De La Cerda seeks only class-wide injunctive and declaratory
23   relief on behalf of persons "held in LASD custody on the authority of the ICE
24   hold after they were eligible for release from LASD custody."  (SAC, ¶¶ 94, 95.)
25   Defendants are entitled to judgment in their favor as to Plaintiff De La Cerda's
26   claims because the undisputed evidence establishes that the County does not
27   detain any individual beyond his release date due to the existence of an
28   immigration detainer, thereby rendering moot the claims for injunctive and

2

declaratory relief.  (SS 163-164.)

## II.  **STATEMENT OF FACTS.**

Plaintiff Martinez-Perez is a 42-year-old Mexican citizen, who permanently moved to the United States in May of 2005 on a B-2 travel visa that had been issued to him in 2004. (SS 19-20.) The B-2 travel visa allowed Martinez-Perez to visit the United States as a tourist, but did not authorize him to live or work in the United States.  (SS 21.)  Nevertheless, Martinez-Perez has never since left the country and has maintained several jobs without having ever received a work permit authorizing him to work in the United States. (SS 22-23.)

On December 14, 2011, Martinez-Perez was arrested for domestic battery and booked at the City of Industry Station.  (SS 24.)  At the time of his booking, Martinez-Perez was fingerprinted and asked about his immigration status.  (SS 25.)  On Friday, December 16, 2011, Martinez-Perez was issued a Certificate of Release/Clearance Letter pursuant to California Penal Code § 849.5, informing him that no charges were filed against him. (SS 26.)  Martinez-Perez was transferred to ICE custody on December 20, 2011.  (SS 27.)  While he was in LASD custody, Martinez-Perez was not aware of the amount of his bail, or that bail had been set, and he made no effort to post bail. (SS 31-32.)

Martinez-Perez's cousin, Elizabeth Perez-LoPresti ("LoPresti") found out about his arrest on December 15, 2011. (SS 33.)  LoPresti called several bail companies but only communicated with one — the name of which she does not remember.  (SS 34.)  LoPresti was told by this unknown bail company that bail could not be posted for Martinez-Perez due to his immigration hold. (SS 36.)  LoPresti was not told whether the bail company actually communicated with LASD personnel or that any effort to post bail had been made. (SS 37-38.)

Plaintiff De La Cerda is a 41-year-old Mexican citizen.  (SS 39.)  De La Cerda moved to the United States when he was four years old. (SS 40.)  On October 5, 2012, De La Cerda was arrested by the Whittier Police Department for

a probation violation and misdemeanor violation. (SS 41.)  Shortly after arrest, De La Cerda was transferred to LASD custody where he remained until December 2012. (SS 44.)  While in LASD custody, De La Cerda was interviewed by ICE.  (SS 45.)  Thereafter, he was released to the custody of ICE, after which he voluntarily returned to Mexico. (SS 45-46.)

### A.    Background Information Regarding The County Jail System.

The Los Angeles County Jail ("LACJ") system is the largest county jail system in the country.  (SS 47.)  Between October 2010 to present, the LACJ system was averaging a daily population of approximately 18,000 inmates.  (SS 48.)  The LASD transports an average of 1,400 to 1,600 inmates from its jail facilities to courts every day, Monday through Friday.  (SS 49.)  In addition, the LASD and other agencies book anywhere between 160,000 to in excess of 180,000 new inmates into the LACJ system each year.  (SS 50.)  Similarly, the LASD releases approximately the same number of inmates (160,000 to 180,000) from the LACJ each year.

The Department maintains several jails in downtown Los Angeles, and the downtown jail complex includes the Inmate Reception Center, or "IRC".  (SS 51-52.)  IRC is the LASD facility that is primarily responsible for processing male inmates when they enter and exit the County Jail system, classifying them according to security risks, and acting as a hub for transporting inmates to and from court and other locations.  (SS 53.)  Processing inmates in IRC is a complex process that operates 24 hours a day, seven days a week.  (SS 54.)  The facility has numerous units and sections including, without limitation, the Records Unit, Property, Document Control, and Cashiering.  (SS 55.)  IRC processing approximately 120,000 inmates into and out of the County jail system each year, and is responsible for maintenance and storage of all inmate court records, inmate clothing, inmate property, inmate trust accounts, and receiving and processing incoming inmate mail. (SS 56.)

4

### B.     The Booking Process As It Relates To ICE Holds.[3]

When inmates arrive at the IRC (from any number of locations around Southern California), they go through the booking process.  The booking process involves many steps but the details of each step are not relevant to the claims in this case, with one exception.  One step in the booking process involves inputting an inmate's information into the Automated Justice Information System ("AJIS"), which is a computer data base.  (SS 57-59.)  AJIS (and its historical archive counterpart – RAJIS) is a set of propriety computer programs designed specifically to track booking records and related information regarding inmates in County jail.  (SS 60.) AJIS is more than 30 years old.  (SS 61.)  Information can be input into AJIS by most law enforcement agencies throughout Southern California (through a separate computer system called the Justice Department Information Computer, or "JDIC").  (SS 62.)  Accordingly, many inmates have had information about them inputted into AJIS by the arresting agencies, prior to the inmates' arrival at IRC.  (SS 63.)

In the course of booking an inmate into County jail, a variety of information is input into, and stored in AJIS.  (SS 64-75.)  During the booking process, inmates are live-scanned, which involves fingerprinting them and sending their biometric information to the California Department of Justice ("Cal DOJ") to confirm the individual's identity, and to obtain information on the subject's criminal history.  (SS 77.)  The information sent to Cal DOJ is automatically shared with the Federal Bureau of Investigation ("FBI"), to check nation-wide databases for criminal history.  (SS 78.)  The FBI, in turn, automatically shares the information it receives with various federal agencies

---

[3] For the Court's convenience, a flowchart outlining the steps in the release process, including the steps taken when an inmate is being transferred to ICE custody, is filed concurrently herewith as Exhibit "I".

5

including, without limitation, the Department of Homeland Security ("DHS") and within DHS, the information is shared with ICE.  (SS 78.)

ICE uses the information it receives to determine whether ICE has had any prior contacts with the subject arrestee as part of their efforts to identify removable aliens.  (SS 79.)  If ICE has had a prior contacts with the subject arrestee and determines that there is probable cause to believe that the subject is removable from the United States, they will issue a detainer for the subject.  (SS 80-83.)  The detainer is sent by the Pacific Enforcement Resource Center ("PERC") directly to the arresting agency.  (SS 85.)  PERC is the ICE facility responsible for issuing detainers to law enforcement agencies in Southern California.  (SS 86.)  Upon receipt, the arresting agency prints the detainer (which is usually received by either fax or email) and includes the detainer in the subject's booking packet, which is a collection of paperwork that includes information such as the arresting charge, the arresting agency, and other information relevant to booking the individual into County custody.  (SS 87.)  If ICE has not had any prior contacts with the subject, then no detainer will be issued at the time of booking; however, as explained below, a detainer can be issued at the time of release.  (SS 88.)

### C.    The Release Process And Transfer To ICE Custody.

The release process for inmates at County jail can vary depending on numerous factors, but there are several common elements and steps.  (SS 97.) There are two main components to the release process:  processing of paperwork and processing of people.  (SS 103.)  With respect to processing of people, the release process begins when the LASD becomes aware that an inmate is eligible for release.  Inmates become eligible for release in a number of ways including but not limited to the expiration of their criminal sentence, if they are ordered released by a court, or if the District Attorney declines to pursue criminal charges against them.  (SS 104-105.)  Depending on the specific circumstances of each

individual case, the LASD may or may not have advance notice of an inmate's eligibility for release of the exact date therefor.  (SS 106.)

Once an inmate is eligible for release, a release pass is generated by IRC and transmitted to the housing module where the inmate is located.  (SS 107.) The generation of the release pass begins the release process, although the paperwork component of the release process can begin several days before an inmate's actual release date (assuming the LASD has advance notice of an inmate's release date, which is not always the case).  (SS 108.)  The release process is a multi-step process, (SS 109-125), and includes procedures that apply when inmates are released to ICE custody, including notifications under the TRUST and TRUTH Acts, as well as policies and procedures that dictate under what circumstances ICE and assume custody of a County jail inmate.  (SS 126-136.)

### D.    Changes To Policy And Procedure Related To ICE Holds.

Between October 2010 to the present, a number of changes to the policies, procedures, and practices that govern how the LASD handles immigration detainers and interact with ICE.  These changes include the following:

• After May 2014, the LASD no longer held inmates beyond their expected release date due to outstanding immigration detainers.  (SS 137.)  Before that time, as stated on the various versions of the detainer form that have been used by ICE since 2010, the LASD would maintain custody of the subject for up to 48 hours, excluding weekends and holidays pursuant to 8 C.F.R. 287.7.  (SS 138.)

• The TRUST Act became effective on January 1, 2014.  (SS 139.)  Before that time, there was no limitation with respect qualifying criminal convictions as a prerequisite for transfer to ICE custody.  (SS 139.)  All procedures related to vetting an inmate's TRUST Act qualification, including the creation of the ICE / AB4 desk in the release hallway at IRC, were implemented after January 1, 2014. (SS 140.)

1    • Until approximately June, 2014, the LASD (and other arresting agencies in

2   Southern California), input the existence of an ICE detainer into the LASD's

3   computer systems (into AJIS, through JDIC).  (SS 141.)  Since this date, the

4   existence of an ICE detainer was no longer input into AJIS, and instead, a

5   physical copy of the detainer was placed in the inmate's booking jacket.  (SS

6   142.)

7    • The TRUTH Act became effective in January 2017.  (SS 143.)  Before that

8   time, there was no obligation to provide TRUTH Act notices to inmates.  (SS

9   143.)  All procedures related to the TRUTH Act were implemented after January

10   2017.  (SS 143.)

11        **E.     Bail Processing.**

12        The LASD's policy and practice has always been to allow inmates subject

13   to immigration detainers to post bail.  (SS 144.)  When the existence of an ICE

14   detainer was input into AJIS, it is accurate that it was coded as a "No Bail" hold;

15   however, that does not mean that the inmate could not post any bail at all.  (SS

16   145.)  Instead, the "No Bail" designation for immigration detainers simply means

17   that the detainer does not have a dollar amount attributed to it, unlike most

18   criminal charges which are assigned a specific bail amount.  (SS 145.)

19        **F.     LASD's Relationship With ICE.**

20        The LASD has maintained a working relationship with ICE (and ICE's

21   predecessor agency, the INS) for decades.  (SS 151.)  Through this working

22   relationship, which includes daily communication between ICE and the LASD,

23   the LASD has developed a basic understanding of ICE's requirements for issuing

24   detainers, and the practices they follow for doing so.  (SS 152.)  This includes the

25   requirement that ICE agents must have probable cause to believe that a subject

26   inmate is a removable alien.  (SS 153.)  If LASD personnel (including the

27   personnel assigned to IRC who liaison with ICE) believed that ICE lacked

28   probable cause to issue a detainer, the LASD will not (and would not have) honor

8

the detainer or allow ICE to take custody of the subject inmate.  (SS 154.)

## III.    SUMMARY JUDGMENT STANDARD.

Summary judgment must be rendered when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Federal Rules of Civil Procedure, Rule 56(c).  If summary judgment is not granted on the entire action, a court may render partial summary judgment on individual issues as to which there remains no genuine issue of material fact. Fed.R.Civ.Pro., Rule 56(b), (d).

## IV.    PLAINTIFFS' CAUSES OF ACTION.

Plaintiffs allege two 42 U.S.C. § 1983 *Monell* causes of action and four state law causes of action.

First Cause of action: alleged Fourteenth Amendment due process violation based on the (1) refusal to allow Plaintiffs to post bail (pursuant to the County's bail schedule or bail set by the courts); and (2) continued detention, on the basis of immigration detainers, after the expiration of the grounds for state law custody (SAC, ¶¶ 143-145);

Second Cause of Action: alleged Fourth Amendment violation based on the (1) refusal to allow Plaintiffs to post bail pursuant to the County's bail schedule; (2) continued detention after state law custody expired "solely on the basis that ICE issued a Form I-247, and without probable cause to believe that Plaintiffs were removable"; and (3) detention for more than 48 hours after release date on the basis of I-247 Form without providing a judicial determination of probable cause on any immigration charges (SAC, ¶¶ 147-150);

Fourth Cause of Action: alleged false imprisonment for having precluded Plaintiffs from posting bail and not releasing them on their release date (SAC, ¶¶ 152-158);

Sixth Cause of Action: alleged negligence per se for having been precluded Plaintiffs from posting bail and not releasing them on their release date (SAC, ¶¶

168-171);

Eighth and Ninth Causes of Action: alleged violations of Civil Code § 52.1 for alleged violations of Plaintiffs' right to timely release and to post bail (SAC, ¶¶ 194-210).

## V.   PLAINTIFF MARTINEZ-PEREZ — THE ONLY PLAINTIFF SEEKING DAMAGES — DOES NOT HAVE A COGNIZABLE CLAIM AS A MATTER OF LAW.

Because Plaintiff Martinez-Perez has no cognizable claim, Defendants are entitled to summary judgment as to all alleged damages claims.

### A.   Plaintiff Martinez-Perez's Denial Of The Right To Post Bail Claim Is Not Supported By Any Admissible Evidence.

The alleged refusal to allow Plaintiff to post bail is an element of each remaining claim.  However, there is no evidence to support Plaintiff's contention that he was not allowed to post bail, let alone an attempt to post bail was ever made.  Plaintiff Martinez-Perez testified that he was never aware of the amount of his bail while in LASD custody, and he never made any effort to post bail while in County custody.  (SS 31-32.)

Moreover, his allegation that a bail bondsman, at the request of his cousin, "attempted to post bail for him" is refuted by his cousin's testimony.  (SS 33-38; *see* SAC, ¶ 77.)  His cousin testified that she contacted an unknown bail bond company and was allegedly told that bail could not be posted for Plaintiff.  (SS 34-36.)  She also was not told that the bail bond company had any direct communications about the posting of Plaintiff's bail.  (SS 37.)  She further testified that she made no effort to post bail for Plaintiff.  (SS 38.)  Thus, Plaintiff's reliance on inadmissible hearsay about what an unknown bail bond company purportedly told his cousin (which did not include any assertion that an attempt to post bail was actually made) is entirely insufficient as a matter of law to support any claim on the contention that he had been unlawfully precluded

from posting bail.  *See, Mercado v. Dallas City, Texas*, 2016 WL 3166306, at *4 (N.D. Tex. June 7, 2016) (dismissing Fourth Amendment claim due to absence of any allegation that the plaintiffs tendered bond to become eligible for release).

Even if this fundamental evidentiary defect is overlooked, Plaintiff's § 1983 claims under *Monell v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. 658 (1978) are barred by the indisputable fact that throughout the relevant time period, LASD policy was to allow all inmates, including those with ICE detainers, to post bail. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (*Monell* liability requires more than evidence isolated incidents of misconduct); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) (without proximate cause, there can be no *Monell* liability).  (*See* SS 144.)

Since Plaintiff Martinez-Perez is the only Plaintiff with a denial of bail-based damages claim, any and all damages claims based on the alleged preclusion of inmates with ICE detainers from posting bail fail as a matter of law.  Summary judgment should therefore be entered in Defendants' favor as to all of Plaintiffs' claims based on an alleged denial of the right to post bail — including those alleged on behalf of the putative class members.

**B.**      **The ICE Detainer Issued Against Plaintiff Martinez-Perez Was Based On Probable Cause And Justified His Temporary Detention.**

Plaintiff Martinez-Perez immigrated to the United States in 2005 on a temporary travel visa.  (SS 20.)  At the time of his arrest in December 2011, Plaintiff Martinez-Perez was not a United States citizen, and he had been living and working in the United States unlawfully, without obtaining any other visa or permit to allow him to do so.  (SS 21-23.)  The dates of Plaintiff Martinez-Perez's LASD custody are also not in dispute.  Plaintiff was arrested on December 14, 2011, received a clearance letter on December 16 (a Friday), and was transferred to ICE custody on December 20 (a Tuesday).  (SS 24-27.); SAC, ¶¶ 74, 78-

11

1    79.)  Plaintiff Martinez-Perez's unlawful detention claims are based on the

2    assertion that he was held for "approximately four additional days beyond his

3    release date solely on the immigration hold."  (SAC, ¶ 81.)  **Plaintiff's count of**

4    **"four additional days" includes a Saturday and Sunday.**

5         Plaintiff Martinez-Perez, therefore, cannot directly challenge the legal

6    validity of his detainer — that it was based on probable cause to believe he was

7    removable from the United States.  Instead, Plaintiff claims that the detainer did

8    not authorize any detention by the LASD beyond his release date and that a

9    judicial determination of probable cause was required within 48 hours of the

10   release date.  Both of these contentions are unavailing as a matter of law.[4]

11        **1.   ICE Detainers Must Be Based On Probable Cause Of An**

12             **Individual's Removability.**

13        Plaintiffs contend that Defendants violated their rights by not releasing them

14   on their expected release dates on the basis of their immigration detainers.

15   Plaintiffs' contention cannot be reconciled by the fact that probable cause of

16   removability has been a consistent requirement for ICE detainers, and federal

17   regulations explicitly provide for the detention of subjects for 48 hours excluding

18   weekends beyond their underlying release date.

19        **a.   ICE Agents Have Always Been Required To Establish**

20             **Probable Cause Of A Subject's Removability Prior To The**

21             **Issuance Of Detainers.**

22        There is no dispute that the language used in ICE's detainer forms has been

23   modified several times during the period of time relevant to this case – October,

24

25   _____

26   [4] All of Plaintiffs' claims are based in part on the allegation that they were held
     beyond their release date on the basis of the ICE detainers.  Plaintiffs' Fourth

27   Amendment claim is based on the additional allegation that they were detained
     for more than 48 hours after their release date without being provided a

28   determination of probable cause on the immigration charges.  (SAC, ¶¶ 147-150.)

                                    12

2010 to present.  Presently, the forms make specific reference to the determination of the "probable cause" of removability; some of the earlier forms did not.  This distinction, however, is not material in the instant case because it is undisputed that ICE agents have ***always*** been required to establish, through the review of many, constantly updated databases and other investigative methods, the existence of probable cause of a subject's removability from the United States, prior to the issuance of a detainer.  (SS 81-85.)  Basically, while the ICE detainer forms have changed slightly over time, the process by which they are issued, and the standard governing their issuance, has not.  (SS 85.)

For example, various ICE personnel testified that the standard for issuing a detainer has always been probable cause.  Daniel Schichel, the Deputy Director for PERC, designated as one of ICE's PMKs testified that the issuance of an immigration detainer requires "… a determination that there's probable cause to believe that someone is amenable to removal from the United States…."  (SS 83.)  James Anthony Hamm, a Supervisory Detention and Deportation Officer and also a designated PMK, testified that, with respect to ICE detainers "[t]he goal is to establish probable cause, and the elements that are needed in order to do that were the same in 2010 to date."  (SS 84.)  Furthermore, Brian DeMore, the director of PERC, testified at length that the evidence must support a finding of probable cause for removability. (SS 83-84.)

Probable cause to arrest without a warrant "exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." *United States v. Garza*, 980 F.2d 546, 550 (9th Cir. 1992) (citation and quotation marks omitted).  Courts have consistently held that warrantless arrests based on information obtained by the accessing of databases containing criminal history records satisfy the probable cause requirement.  *See, e.g.*, *United States v. Southerland*, 486 F.3d 1355, 1360 ("it was objectively reasonable for the officers

13

1  to rely on the information received from WALES and to believe that [the subject]'s

2  license had been suspended"); *United States v. Carter*, 573 F.3d 418, 427 (7th Cir.

3  2009) (information obtained from database gave officer probable cause for arrest);

4  *Hughes v. McWilliams*, 2009 WL 4823940, at *3 (S.D.N.Y. Dec. 15, 2009) ("In

5  general, a police officer can rely on information obtained from a police computer

6  databases in order to establish probable cause."); *Bryant v. Ward*, 2011 WL

7  2896015, at *4 (D. Conn. July 18, 2011) (officer had probable cause to arrest the

8  plaintiff for driving with a suspended license after review of information on

9  database); *Pittman v. City of N.Y.*, 2014 WL 7399308, at *3 (E.D.N.Y. Dec. 30,

10  2014) ("Reliance on commonly used electronic databases is generally reasonable

11  and sufficient to establish probable cause."); *U.S.A. v. Grigsby*, 2016 WL 3659170,

12  at *5 (C.D. Cal. July 6, 2016) (officer had probable cause "based only upon the

13  information gleaned from two EMPD database reports").

14      In *Herring v. United States*, 555 U.S. 135 (2009), the Supreme Court even

15  held that the exclusionary rule did not apply even where the police officer relied on

16  erroneous information because the officer did not have a reason to know that that

17  the information was unreliable.  *Id.* at 142-147; *see also*, *United States v. Santa,*

18  180 F.3d 20, 27 (2d Cir. 1999) (holding that arresting officer's reliance on a

19  computer database record was objectively reasonable, as officers "did not know,

20  and had no reason to know," that the information was incorrect, and "had no

21  reason to doubt the accuracy of the [electronic records] system generally"); *Martin*

22  *v. Rodriguez*, 154 F.Supp.2d 306, 313 (D. Conn. 2001) (officers had probable

23  cause when relying on a criminal history database which contained erroneous

24  information due to clerical error); *Mayer v. City of New Rochelle,* 2003 WL

25  21222515, at * 6 (S.D.N.Y. May 27, 2003) (an officer's reliance on a statewide

26  database report indicating a driver's registration was suspended was objectively

27  reasonable even if the officer had knowledge of a prior error with the system).

28

1        Thus, the undisputed evidence regarding ICE detainers clearly establishes

2   ICE's present and past policy and practice of mandating probable cause of

3   removability for each detainer.  This indisputable material fact fundamentally

4   undermines Plaintiffs' claims against the County.

5           **b.**   **ICE's Probable Cause Determinations Impute To Local**

6                **Law Enforcement Agencies.**

7        A recent Eighth Circuit case demonstrates the constitutionality and

8   reasonableness of Defendants' reliance upon ICE detainers.  In *Mendoza v.*

9   *United States Immigration & Customs Enf't*, 849 F.3d 408 (8th Cir. 2017), the

10   plaintiff (Ramon Mendoza), a United States citizen, was arrested on March 5,

11   2010 for driving with a revoked license.  *Id.* at 412.  During the intake process at

12   the Sarpy County Jail, he misstated the last digit of his social security number.

13   He also stated that he did not know his city of birth. *Id.*  Although the plaintiff

14   communicated in English, the intake form indicated that the plaintiff was not a

15   United States citizen and that his language was Spanish.  *Id.*  The plaintiff did not

16   disclose his United States citizenship during the intake process, and he signed the

17   completed intake form.  He also signed a 48-hour waiver form, "waiving his right

18   to appear before a judge expeditiously." *Id.*

19        The information on the intake form was inputted into the jail's booking

20   software, and pursuant to the jail's policy, the plaintiff's records from prior

21   periods of incarceration were updated.  One of the prior records indicated a social

22   security number that differed in four digits from his actual number and the

23   records also indicated that he was a United States Citizen and his language was

24   English.  *Id.* at 413.  One of the booking notes also indicated that ICE had

25   confirmed that the plaintiff was a United States citizen in 2008.  *Id.*  Based on the

26   perceived possibility that the plaintiff was not a citizen, a booking clerk called

27   ICE pursuant to ICE's request that "booking clerks call ICE on its toll-free phone

28   number whenever the jail received an inmate with a foreign birth place or any

other reason that made the clerk uncertain of the arrestee's citizenship status." *Id.* This call was made pursuant to the following process:

> In November 2009, … [an] ICE agent determined whether to place an immigration detainer on any individual in custody. An immigration detainer is a notice to law enforcement that ICE seeks custody of an alien not legally in the United States. **The detainer tells law enforcement that ICE intends to assume custody of the alien, requests information from law enforcement about the alien's impending release, and requests that law enforcement maintain custody of an alien who would otherwise be released for up to 48 hours, not including weekends or holidays. When determining whether to issue a detainer, ICE agents weigh evidence received from law enforcement and the individual, paying special attention to the person's social security number, place of birth, date of birth, and other identifying information. The ICE agent is also able to contact the Law Enforcement Service Center (LESC) to run database checks if the agent does not have access to the necessary databases.**

*Id.* at 413.

At 6:08 p.m. on March 5, 2010 (a Friday), an ICE agent, working at his home in Iowa, received the booking clerk's call. *Id.* at 413. The agent spoke with the booking clerk and the plaintiff, and the agent testified that he was never told that the plaintiff was claiming citizenship, and the plaintiff told him that he was born in Mexico. *Id.* at 413-14. The agent then asked LESC to search their databases which resulted in two files, with different Alien File numbers, with one number linked to a Ramon-Mendoza-Gutierrez, an aggravated felon who had previously been deported. *Id.* at 414. The agent was unable to access the A-Files because he was working from home on the weekend. Nevertheless, the agent "concluded that he had probable cause to believe that the Sarpy County Jail had Ramon Mendoza-Gutierrez, an aggravated felon subject to removal." *Id.* The agent then requested LESC to issue a detainer to the Sarpy County Jail, and at 8:00 pm., the jail staff entered data from the ICE detainer and a separate National

16

Crime Information Center report, into the booking system.  The plaintiff was then fingerprinted, and the accompanying form had the name "Ramon Mendoza-Gutierrez" but the plaintiff signed it "Ramon Mendoza".  The ICE agent did not obtain the fingerprints.  ICE was informed that the plaintiff was ready to be picked up, and the ICE agent had no further communications with the jail staff that weekend.  *Id.* at 414-15.

After he learned about the detainer, the plaintiff told jail staff that he was a United States citizen, and so did his son.  His wife asserted that she went to the jail's 24-hour entrance at least three times with the plaintiff's citizenship certificate, passport and marriage license.  *Id.* at 415.  They, however, did not contact ICE, and the ICE agent never knew that anyone was claiming that the plaintiff was a United States citizen.  *Id.*

On March 8, 2010, the ICE agent went to his office and requested a copy of the plaintiff's fingerprints and ran them through the IDENT system.  This check revealed that the plaintiff's fingerprints did not match those of Ramon Mendoza-Gutierrez, and did match the prints of the person associated with the second A-File.  The ICE agent then canceled the detainer by faxing a document to the county jail.  The plaintiff was released that day.  *Id.*

On summary judgment, the district court ruled that the plaintiff's substantive due process claim was covered under the Fourth Amendment and that there had been no violation of a constitutional right.  *Id.* at 415-6.  The Eighth Circuit affirmed the rulings in favor of Sarpy County because the "**County employees were entitled to rely on [the ICE agent]'s probable cause determination.**"  *Id.* at 419 (citing *Doran v. Eckhold*, 409 F.3d 958, 965 ("the settled principle that law enforcement officers may rely on information provided by others in the law enforcement community, so long as the reliance is reasonable")) (emphasis added).  The Eighth Circuit held further that the County employees "reasonably relied" on the probable cause determination of the ICE

agent, and therefore did not violate the plaintiff's constitutional rights. *Id.* at 142-144; *see also Morales v. Chadbourne*, __ F.Supp.3d __, 2017 WL 354292, *15 (D. Rhode Island Jan. 24, 2017) (in 2009, the Rhode Island Department of Corrections and its Director reasonably concluded that ICE detainers were "valid, supported by probable cause and mandatory").

Here, there is no dispute that Defendants relied upon the probable cause determinations of removability — established prior to the issuance of ICE's detainers. The law is clear that the effect of these probable cause determinations impute to the Sheriff's Department and the actions which Plaintiffs contend violated their rights under federal and state law. To the extent that Plaintiffs contend that the Sheriff's Department should have ignored the detainers entirely and that any period of detention beyond their release date violated their rights, Plaintiffs' contention cannot be reconciled with the cases above. Specifically, ICE's reliance on information contained in databases to establish probable cause of removability is constitutionally sound, and the Sheriff's Department's reliance upon ICE's procedures, in turn, is constitutionally sound. Moreover, the Sheriff's Department did not blindly rely upon ICE's detainers since the Sheriff's Department became familiar with the processes by which ICE agents established probable cause for a subject's removability prior to the issuance of detainers. (SS 151-153.) Indeed, ICE detainers believed to be lacking probable cause would not have been (and would not be) honored. (SS 154.)

### c.   Federal Regulations Explicitly Authorize The Detentions Of 48 Hours Excluding Weekends.

Until May 2014, the LASD detained persons subject to ICE detainers up to 48 hours, excluding weekends and holidays, after their expected release date to effectuate the transfer of the subject to ICE custody. (SS 137-138.) It is undisputed that the basis for these detentions was the ICE detainer issued pursuant to 8 C.F.R. 287.7(d), which states that the LASD "shall maintain

1   custody of the alien for a period not to exceed 48 hours, excluding Saturdays,

2   Sundays, and holidays in order to permit assumption of custody by the

3   Department." This regulation, and ICE's authority to issue detainers in the first

4   place, come directly from the Immigration and Nationality Act of 1952 ("INA"),

5   8 U.S.C. §§ 1101et seq. Specifically, ICE was expressly granted authority to

6   implement regulations to effectuate the requirements of the INA. 8 U.S.C. §

7   1103(a)(3).

8        When reviewing regulations, where "there is an express delegation of

9   authority to the agency to elucidate a specific provision of the statute by

10  regulation ... [s]uch legislative regulations are given ***controlling weight*** unless

11  they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*

12  *U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843-44 (1984)

13  (emphasis added); *see also, Dykstra v. Comm'r,* 260 F.3d 1181, 1182 (9th Cir.

14  2001) per curiam) (applying the *Chevron* standard in the context of tax

15  regulations); *see also, Parrilla v. Gonzales,* 414 F.3d 1038, 1041 (9th Cir.2005)

16  (deference to interpretations of the INA); *Chuyon Yon Hong v. Mukasey*, 518 F.3d

17  1030, 1034 (9th Cir. 2008) (same).

18       Here, it is undisputed that Plaintiff Martinez-Perez's detention was based

19  on an immigration detainer issued by ICE under 8 C.F.R. §287.7. (SS 138.)

20  Under *Chevron*, the LASD's compliance with this controlling federal regulation,

21  and the detention of Plaintiff Martinez-Perez based thereon, demonstrate the

22  invalidity of Plaintiffs' contention that any detention beyond a subject's release

23  date violates their rights. Accordingly, summary judgment in the Defendants'

24  favor must be entered as to any claim associated with any detention within the

25  parameters of the authority provided by 8 C.F.R. § 287.7.

26   **2.    <u>Plaintiffs' Fourth Amendment Claim Improperly Relies On A 48-**

27   **Hour Rule Which Has No Applicability To Civil Proceedings**

28   **Involving Persons Subject To Removal Proceedings.</u>**

19

1    As argued by the United States in their opposition to Plaintiffs' motion for

2    partial summary judgment in the related case, *Gonzalez v. ICE*, Case No. 12-9012

3    BRO(FFMx), the most relevant statutes, regulations and case law refute

4    Plaintiffs' contention that individuals cannot be detained for more than 48 hours

5    without obtaining a judicial determination of probable cause for the underlying

6    detainer.  (Dkt No. 225 at 11:2-22:13.)  While the Court has not yet ruled on the

7    *Gonzalez* motion, this key issue was discussed at length at the April 24, 2017

8    hearing.

9    The Court noted that "the case law is legion about **immigration's**

10   **proceedings being civil in nature** and vesting great discretion with the executive

11   and legislative branch."  (Exhibit "P" at p. 5:13-15; emphasis added.)  The Court

12   also stated that Plaintiffs were "importing this criminal *Riverside v. McLaughlin*

13   issue into the immigration context".  (*Id.* at p. 7:8-9.)  Moreover, the United

14   States did not argue that immigration detentions did not require probable cause;

15   rather, they argued that the criminal law requirement for a probable cause

16   determination by a neutral and detached magistrate could not be shoehorned into

17   immigration (civil) proceedings.  (*Id.* at p. 8:19-9:4.)

18   This Court also addressed the significant implications of the fact that under

19   Title 8 of the United States Code, ICE agents are authorized to make and review

20   their own probable cause determinations.  (*Id.* at 8:19-9:15.)  Plaintiffs also did

21   not challenge the constitutionality of this important aspect of Title 8.  (*Id.* at 9:16-

22   11:15.)  Plaintiffs also continued to maintain that subjects taken into custody

23   pursuant to an immigration detainer must be taken in front of a neutral and

24   detached magistrate within 48 hours.  (*Id.* at 11:21-12:24.)

25   These same statutory and case authorities relied upon the United States in

26   *Gonzalez* — which are incorporated herein by reference — fundamentally

27   undermine Plaintiffs' contention that the County's procedures violated Plaintiffs'

28   Fourth Amendment rights by detaining persons against whom detainers had been

20

issued for more than 48 hours beyond the release date without providing for a judicial determination of probable cause on the underlying immigration charge. This 48-hour requirement has no applicability to detentions arising from ICE detainers which trigger purely civil proceedings.  Accordingly, Plaintiff Martinez-Perez's Fourth Amendment claim fails as a matter of law, to the extent that it is based on the fact that he was held in County custody for more than 48 hours before being provided with a probable cause determination on his immigration charge.

## VI.   SEVERAL DISCRETE LEGAL ISSUES RELEVANT TO THE COURT'S CLASS CERTIFICATION ORDER SHOULD BE SUMMARILY ADJUDICATED.

In conjunction with the arguments for dismissal of Plaintiffs' remaining claims, Defendants seek summary adjudication of discrete issues which bear directly upon the Court's class certification order.  (*See* Dkt No. 184.)

Specifically: (1) the 48 hour rule under *Gernstein/Riverside* applies to criminal proceedings only, thereby mandating summary adjudication on the issue of whether Plaintiffs must be provided with a judicial determination of probable cause within 48 hours after the beginning of their detention based on an immigration detainer; (2) ICE detainers have always been based on probable cause of removability and the County's reliance on them and the attendant federal regulations (including the provision for detaining subjects for 48 hours, excluding weekends, beyond their release date) was legally valid, thereby mandating summary adjudication on the issue of whether Plaintiffs' rights were violated when they were not released from custody on their release date; (3) the County's policy has always been to allow all inmates, including those with immigration holds, to post bail, thereby mandating summary adjudication on the issue of whether Plaintiffs were allowed to post bail; and (4) for many potential class members, a lawful basis existed for their detention in County jail, even beyond their expected release date, because many inmates in County jail serve only a

percentage of their criminal sentence, and are released early under orders in *Rutherford v. Block*, U.S.D.C. Case No. CV 75-0411 DDP, which require the Sheriff's Department to avoid over-crowding in the County jail.  (*See*, Declaration of Greg Sivard, ¶¶ 4-7; SS 165-176.)

**VII.**   **PLAINTIFFS' STATE LAW CLAIMS ARE SUBJECT TO SUMMARY JUDGMENT ON ADDITIONAL GROUNDS.**

**A.**   **Because Departmental Policies As To How Ice Detainers Should Be Handled Are Inherently Discretionary, Plaintiffs' State Law Claims Fail As A Matter Of Law.**

Government Code § 820.2 states: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  Government Code § 815.2, subdivision (b), provides: "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."  These statutes bar Plaintiffs' state law claims because the policies with respect to ICE detainers issued as to individuals in County custody are discretionary as a matter of law.

Unquestionably, Plaintiffs' allegations attack "basic policy decisions" as opposed to purely ministerial acts. *See*, *Elton v. Cty. of Orange*, 3 Cal.App.3d 1053, 1057 (1970); *Gabrielle v. County of Orange*, 2017 WL 1399763, *11, 10 Cal.App.5th 1268 (March 24, 2017) (§ 820.2 immunity is "broad" and includes "immunity for social workers' removal and placement decisions.").  The fact that the challenged decisions were not purely ministerial is evidenced by the evolution of the working relationship between the LASD and ICE, and modifications to LASD policies with respect to the detainers.  (SS 148-154.)  Accordingly, Plaintiffs' state law claims are necessarily barred under Government Code § 820.2.

22

**B.** **Plaintiffs' Two Civil Code § 52.1 Causes Of Action Are Not Cognizable As A Matter Of Law Due To Any Actionable Coercion Separate From The Challenged Detentions Themselves.**

Without an underlying violation of an actionable right, relief under Civil Code § 52.1 is barred.[5]  *See Watkins v. City of San Jose*, 2017 WL 1739159, *17 (N.D. Cal. May 4, 2017) (because the officers did not violate the Fourth Amendment, the plaintiffs' § 52.1 claim fails as a matter of law).  Therefore, because Plaintiffs' rights were not violated, their § 52.1 claims also fail.

Moreover, recently in *Julian v. Mission Community Hospital*, __ Cal.Rptr.3d __, 2017 WL 1709611 (May 2, 2017), the California Court of Appeal reiterated that "where the plaintiff alleges wrongful detention, the statute requires a showing of **threatening conduct independent from the alleged wrongful detention**."  *Id.* at *19 (emphasis added).  In *Julian*, the plaintiff alleged that the police had "'engaged in tactics to scare her'", in addition to alleging "actions necessary to detain [the plaintiff]".  *Id.*  The Court of Appeal affirmed the granting of summary adjudication on this § 52.1 claim due to the plaintiff's failure to meet the pleading and evidentiary threshold established by *Allen v. City of Sacramento*, 234 Cal.App.4th 41, __ (2015) ("we conclude a wrongful arrest or detention, without more, does not satisfy both elements of section 52.1"); *see also*

---

[5] Civil Code § 52.1(a) provides in pertinent part:
"(a) If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured...."

23

1   *Thomas v. Sacramento County*, 2017 WL 550052, at *10 (E.D. Cal. Feb. 10,
2   2017) (plaintiff must allege "threats, intimidation, or coercion separate and apart
3   from that which is inherent in a detention"); *Quezada v. City of L.A., 222*
4   *Cal.App.4th 993, 1008 (2014))* ("The coercion inherent in detention is insufficient
5   to show a 52.1] violation.")); *Malott v. Placer County, 2016 WL 538462 (E.D.*
6   *Cal. Feb. 11, 2016))* (under *Lyall* and *Allen*, "[a] plaintiff cannot attempt to
7   satisfy two distinct elements by establishing only one, e.g., an unlawful or
8   unconstitutional act.").

9        Here, similarly, Plaintiffs seek § 52.1 relief in conjunction with their claims
10   for alleged untimely release and denial of their right to post bail.  Plaintiffs allege
11   that the allegedly "coercive" record-keeping practices regarding ICE holds
12   satisfies the required pleading and proof of coercion separate from the coercion
13   inherent to the alleged wrongful detentions.  This argument cannot be reconciled
14   with *Julian* in which the California Court of Appeal made clear that the separate
15   coercion or threatening conduct cannot be actions which are "necessary" to the
16   detention.  Fundamentally, the alleged manner in which ICE holds were recorded
17   were a necessary element of Plaintiffs' detention in LASD custody.  Therefore,
18   Plaintiffs have not and cannot allege an independent, coercive act separate from
19   the coercion inherent to their detentions.

20   **VIII.   PLAINTIFFS' INJUNCTIVE RELIEF CLAIMS ARE MOOT AS A**
21   **MATTER OF LAW.**

22        Article III of the United States Constitution limits federal court jurisdiction
23   to "actual, ongoing cases or controversies."  *Lewis v. Cont'l Bank Corp.*, 494 U.S.
24   472, 477 (1990).  "A case or controversy must exist at all stages of review, not
25   just at the time the action is filed."  *Wolfson v. Brammer*, 616 F.3d 1045, 1053
26   (9th Cir. 2010).  If "the issues presented are no longer 'live' or the parties lack a
27   legally cognizable interest in the outcome", the case is moot.  *County of Los*
28   *Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citation omitted); *see also United*

24

*States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 698 (9th Cir. 1984) ("[a] claim is moot if it has lost its character as a present, live controversy.")

With respect to a claim for injunctive relief, a defendant's voluntary cessation of an alleged wrongful activity will moot a claim for an injunction against that activity if "(1) there is no reasonable expectation that the [alleged] wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992).  In other words, a claim becomes moot when it is clear that the allegedly wrongful behavior could not reasonably be expected to recur. *Friends of the Earth, Inc. v. Laidlaw Environmental Services,* 528 U.S. 167, 190 (2000); *see e.g., Hendrickson v. eBay Inc.,* 165 F. Supp.2d 1082, 1095 (C. D. Cal. 2001) (summary judgment on Lanham Act claim for injunctive relief where defendant ceased running allegedly infringing advertisements and had no intention of running the advertisements in the future).

Where, as here, the undisputed material facts establish that the inmates with immigration holds are not held beyond their release date, and there is no evidence that the previous procedures will be reinstated, Plaintiffs' injunctive and declaratory relief claims are moot and should be dismissed.

## IX.    CONCLUSION.

For the forgoing reasons, Defendants respectfully submit that summary judgment should be entered in their favor on Plaintiffs' remaining claims and issues relevant to the Court's class certification order.


Dated:  May 16, 2017                        LAWRENCE BEACH ALLEN & CHOI, PC



                                        By _____/s/  Justin W. Clark_____
                                                Justin W. Clark
                                                Attorneys for Defendants

25