PETER J. ELIASBERG SBN 189110
  *peliasberg@aclusocal.org*
AHILAN ARULANANTHAM SBN 237841
  *aarulanantham@aclusocal.org*
PETER BIBRING SBN 223981
  *pbibring@aclusocal.org*
JENNIFER PASQUARELLA SBN 263241
  *jpasquarella@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
Phone: (213) 977-9500
Facsimile: (213) 977-5299

Attorneys for Plaintiffs
(continued on next page)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| DUNCAN ROY; et al.,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; et al.,<br><br>　　　　Defendants.<br>_____<br>GERARDO GONZALEZ; et al.,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>　　　　Defendants. | Case No. CV 12-09012 BRO (FFMx)<br>Consolidated with:<br>Case No. CV 13-04416 BRO (FFMx)<br><br>Honorable Beverly Reid O'Connell<br><br>**GONZALEZ PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF SECOND MOTION FOR PARTIAL SUMMARY JUDGEMENT**<br><br>Hearing Date: July 24, 2017<br>Hearing Time: 1:30 PM<br>Courtroom:　　7C<br><br>Oral Argument Requested |

1  BARRETT S. LITT SBN 45527
     blitt@kmbllaw.com
2  LINDSAY B. BATTLES SBN 262862
     lbattles@kmbllaw.com
3  KAYE, MCLANE, BEDNARSKI, & LITT
   234 E. Colorado Boulevard
4  Pasadena, California 91101
   Telephone: (626) 844-7660
5  Facsimile: (213) 844-7670

6  OMAR C. JADWAT
     ojadwat@aclu.org
7  AMERICAN CIVIL LIBERTIES UNION FOUNDATION
     IMMIGRANTS' RIGHTS PROJECT
8  125 Broad Street, 18th Floor
   New York, New York 10004
9  Telephone: (212) 549-2660

10 CECILLIA D. WANG SBN 187782
     cwang@aclu.org
11 AMERICAN CIVIL LIBERTIES UNION FOUNDATION
     IMMIGRANTS' RIGHTS PROJECT
12 39 Drumm Street
   San Francisco, California 94111
13 Telephone: (415) 343-0775

14 CHRIS NEWMAN SBN 255616
     newman@ndlon.org
15 JESSICA KARP BANSAL SBN 277347
     jbansal@ndlon.org
16 NATIONAL DAY LABOR ORGANIZING NETWORK
   675 S. Park View Street, Suite B
17 Los Angeles, California 90057
   Telephone: (213) 380-2785
18 Facsimile: (213) 380-2787

19 MARK M. FLEMING, pro hac vice
     mfleming@heartlandalliance.org
20 NATIONAL IMMIGRANT JUSTICE CENTER
   208 S. LaSalle Street, Suite 1300
21 Chicago, IL 60604
   Telephone: (312) 660-1628
22 Facsimile: (312) 660-1505

23

24

25

26

27

28

Pursuant to Federal Rule of Evidence 201, Plaintiffs Gerardo Gonzalez and Simon Chiniviziyan hereby request that the Court take judicial notice of the facts listed below. Under Rule 201, a judicially noticed fact must be one that is not subject to reasonable dispute because it is either (1) generally known within the trial court's territorial jurisdiction or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. FED. R. EVID. 201(b). A court shall take judicial notice of adjudicative facts when the court is requested to do so by a party and is supplied with the information necessary to make the determination that the adjudicative fact is not subject to reasonable dispute. FED. R. EVID. 201(d).

"Judicial notice is appropriate for records and 'reports of administrative bodies.'" *United States v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2008) (quoting *Interstate Natural Gas Co. v. S. Cal. Gas Co.,* 209 F.2d 380, 385 (9th Cir.1954)); *see also EduMoz, LLC v. Republic of Mozambique*, 968 F. Supp. 2d 1041, 1049 (C.D. Cal. 2013), aff'd 2017 WL 1314943 (9th Cir. Apr. 10, 2017) (citing cases); *Daghlian v. DeVry Univ., Inc.*, 461 F. Supp. 2d 1121, 1143-47 (C.D. Cal. 2006) (taking judicial notice of, among other things, administrative reports, and noting that, under Ninth Circuit precedent, "a court may judicially notice 'not only ... the existence of a particular document, but the substance of the document as well.'").

Accordingly, Plaintiffs request that the Court take judicial notice of the following:

1. On July 21, 2009, DHS and ICE released a report entitled Secure Communities: A Comprehensive Plan to Identify and Remove Criminal Aliens. The report stated that ICE's "traditional processes" for identifying removable non-citizens in the custody of state and local law enforcement agencies were "labor-intensive" and "time-consuming." The report described ICE's adoption of the Secure Communities program to address these limitations by "automatically

check[ing]" "the[] immigration status as well as prior criminal history" of any person booked into custody, which it promised would "lead to a substantial increase in the number of criminal aliens identified." In support of this fact, attached here as Exhibit A is the report, U.S. DEPARTMENT OF HOMELAND SECURITY AND IMMIGRATION AND CUSTOMS ENFORCEMENT, SECURE COMMUNITIES: A COMPREHENSIVE PLAN TO IDENTIFY AND REMOVE CRIMINAL ALIENS 2-3 (July 21, 2009), *available at* https://www.ice.gov/doclib/foia/secure_communities/securecommunitiesstrategicplan09.pdf (last visited May 15, 2017).

2. On July 25, 2012, DHS released a Privacy Impact Assessment Update for the Enforcement Integrated Database (EID) – EAGLE 2. The report states that, through EAGLE, ICE may access "information related to the investigation, arrest, booking, detention, and removal of persons encountered during immigration and criminal law enforcement investigations and operations conducted by ICE and U.S. Customs and Border Protection (CBP)." In support of this fact, attached here as Exhibit C is the report, U.S. DEPARTMENT OF HOMELAND SECURITY, DHS/ICE/PIA-015(E), PRIVACY IMPACT ASSESSMENT UPDATE FOR THE ENFORCEMENT INTEGRATED DATABASE (EID) – EAGLE 2 (July 25, 2012), *available at* https://www.dhs.gov/sites/default/files/publications/privacy/privacy_piaupdate_ice_eid_07252012.pdf (last visited May 15, 2017).

3. In 2000, the U.S. Department of Justice Office of the Inspector General ("OIG") issued a report entitled The Rafael Resendez-Ramirez Case: A Review of the INS's Actions and the Operation of Its IDENT Automated Fingerprint Identification System. The report states that the "C[entral] I[ndex] S[ystem] is intended to be a 'pointer' system that will lead to the alien's A-file, which should contain complete information on the alien, or to other databases." In support of this fact, attached here as Exhibit E is Appendix C to the report, U.S. DEP'T OF JUSTICE OFFICE OF THE INSPECTOR GENERAL, THE RAFAEL RESENDEZ-RAMIREZ CASE: A REVIEW OF THE INS'S ACTIONS AND THE OPERATION OF ITS

IDENT AUTOMATED FINGERPRINT IDENTIFICATION SYSTEM Appendix C (2000), *available at* https://oig.justice.gov/special/0003/.

4. On September 8, 2016, the Department of Homeland Security Office of Inspector General issued a report entitled Potentially Ineligible Individuals Have Been Granted U.S. Citizenship Because of Incomplete Fingerprint Record.  The report states that "ICE investigators only began consistently uploading fingerprints taken from aliens during law enforcement encounters into the [IDENT] repository around 2010" and USCIS only began consistently uploading fingerprints of individuals who apply for immigration benefits in 2008.  It further states that "when INS initially developed and deployed IDENT in 1994, it did not digitize and upload the fingerprint records it had [previously] collected on paper cards" and describes some subsequent, incomplete efforts to digitize pre-1994 fingerprint records of non-citizens with final removal orders or who were categorized by the agency as fugitives or people convicted of crimes.  In support of this fact, attached here as Exhibit F is the report, U.S. DEPARTMENT OF HOMELAND SECURITY OFFICE OF INSPECTOR GENERAL, OIG-16-130, POTENTIALLY INELIGIBLE INDIVIDUALS HAVE BEEN GRANTED U.S. CITIZENSHIP BECAUSE OF INCOMPLETE FINGERPRINT RECORD 4 (September 8, 2016) *available at* https://www.oig.dhs.gov/assets/Mgmt/2016/OIG-16-130-Sep16.pdf (last visited May 15, 2017).

5. In 1995, the Government Accountability Office (a.k.a. the General Accounting Office) ("GAO") issued a report entitled Law Enforcement Support Center: Name-Based Systems Limit Ability to Identify Arrested Aliens. The Report described criminal alien information in Central Index System ("CIS") files as "incomplete and inaccurate" and stated that 22 percent of records "contained either misspelled names, incorrect name order, or incorrect nationality." In support of this fact, attached here as Exhibit G is the report, U.S. GOV'T ACCOUNTABILITY OFFICE, GAO/AIMD-95-147, NAME-BASED SYSTEMS LIMIT ABILITY TO IDENTIFY

ARRESTED ALIENS 3, 14-15 (1995) *available at* http://www.gao.gov/assets/230/221564.pdf (last visited May 15, 2017).

6. In 1989, the GAO issued a report entitled Immigration Reform: Alien Verification System Data Base Problems and Corrective Actions. The report discussed the Systematic Alien Verification for Entitlements (SAVE) database, which was made up of data pulled from the Central Index System. It stated that the database's class of admission codes—which it described as "a critical element because it denotes legal status conferred by immigration law"—were missing in 20 percent of sample records and incorrect in 11 percent of sample records, with the result that the database could "erroneously show an alien in a legal or illegal immigration status." In support of this fact, attached here as Exhibit H is an abstract of the report, U.S. GOV'T ACCOUNTABILITY OFFICE, GAO/IMTEC-89-52, IMMIGRATION REFORM: ALIEN VERIFICATION SYSTEM DATA BASE PROBLEMS AND CORRECTIVE ACTIONS (1989), abstract, at 1 n.3, 3, *available at* http://www.gao.gov/assets/220/211363.pdf (last visited May 15, 2017).

7. In December 2012 the U.S. Department of Homeland Security Office of Inspector General issued a report entitled Improvements needed for SAVE to Accurately Determine Immigration Status of Individuals Ordered Deported. The report stated that CIS contained incorrect status information for 12% of individuals OIG had studied. In support of this fact, attached here as Exhibit I is the report, U.S. DEP'T OF HOMELAND SECURITY OFFICE OF THE INSPECTOR GENERAL, OIG-13-11 (REVISED), IMPROVEMENTS NEEDED FOR SAVE TO ACCURATELY DETERMINE IMMIGRATION STATUS OF INDIVIDUALS ORDERED DEPORTED (DEC. 2012), at 1, 3-5 *available at* https://www.oig.dhs.gov/assets/Mgmt/2013/OIG_13-11_Dec12.pdf.

8. On March 9, 2016, the Department of Homeland Security Office of Inspector General issued a report entitled Automation of Immigration Benefits Processing Remains Ineffective. The Report stated that, as a result of problems in implementing a new electronic benefits processing system (the "Electronic

1 Immigration System", or "ELIS"), CIS was failing to accurately reflect up-to-date
2 benefits processing information. As a result, "adjudicators could not determine an
3 applicant's status or received incorrect data from the Central Index System." In
4 support of this fact, attached here as Exhibit J is the report, U.S. DEPARTMENT OF
5 HOMELAND SECURITY OFFICE OF INSPECTOR GENERAL, OIG-16-48, Automation of
6 Immigration Benefits Processing Remains Ineffective 14 (March 9, 2016),
7 available at https://www.oig.dhs.gov/assets/Mgmt/2016/OIG-16-48-Mar16.pdf
8 (last visited May 15, 2017).

9. In December 2004, the Department of Justice released a report entitled Follow-up Review of the Status of IDENT/IAFIS Integration. The Report stated that US-VISIT Program Managers (employees of DHS's sub-agency of USCIS) had explained that "IDENT and US-VISIT databases cannot be relied upon to accurately determine immigration status because immigration status is dynamic. . . . For example, if an individual is apprehended along the border and naturalized two years later, IDENT would contain information on the apprehension but may not contain information on the subsequent naturalization." In support of this fact, attached here as Exhibit K is the report, U.S. DEP'T OF JUSTICE OFFICE OF INSPECTOR GENERAL, REPORT NUMBER I-2005-001, FOLLOW-UP REVIEW OF THE STATUS OF IDENT/IAFIS INTEGRATION 41 (Dec. 2004) *available at* https://oig.justice.gov/reports/plus/e0501/final.pdf (last visited May 15, 2017).

10. In 2012, the Census Bureau reported that, as of 2010, there were 17,476,000 U.S. citizens of foreign birth living in the United States. In support of this fact, attached here as Exhibit L is the report, U.S. CENSUS BUREAU, THE FOREIGN BORN POPULATION IN THE UNITED STATES: 2010 at 2 (issued May 2012), *available at* http://www.census.gov/prod/2012pubs/acs-19.pdf (last visited May 15, 2017).

11. In September 2014, the Department of Homeland Security Office of Immigration Statistics issued a report entitled Estimates of the Lawful Permanent

1. Resident Population in the United States. The report estimates that, since 1980, over 1.4 million minors automatically derived U.S. citizenship through a parent's naturalization. In support of this fact, attached here as Exhibit M is the report, U.S. DEPARTMENT OF HOMELAND SECURITY, OFFICE OF IMMIGRATION STATISTICS, ESTIMATES OF THE LAWFUL PERMANENT RESIDENT POPULATION IN THE UNITED STATES: JANUARY 2013 at 3 (Sept. 2014), *available at* https://www.dhs.gov/sites/default/files/publications/LPR%20Population%20Estimates%20January%202013.pdf (last visited May 15, 2017).

12. The U.S. Census Bureau estimates that, as of 2015, there were 2,765,824 U.S. citizens living in the United States who were born in a foreign country and acquired U.S. citizenship at birth through a U.S. citizen parent. In support of this fact, attached here as Exhibit N is U.S. CENSUS BUREAU, TABLE: PLACE OF BIRTH BY NATIVITY AND CITIZENSHIP STATUS, *available at* https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?pid=ACS_15_5YR_B05002&prodType=table (last visited May 2017).

For the foregoing reasons, Plaintiffs respectfully request that this Court take judicial notice of Exhibits A through N.

                          Respectfully submitted,

                          ACLU FOUNDATION OF SOUTHERN CALIFORNIA

Dated: May 16, 2017    /s/ Jennifer Pasquarella
                          JENNIFER PASQUARELLA
                          Counsel for Plaintiffs