1  PAUL B. BEACH, State Bar No. 166265
   pbeach@lbaclaw.com
2  JIN S. CHOI, State Bar No. 180270
   jchoi@lbaclaw.com
3  JUSTIN W. CLARK, State Bar No. 235477
   jclark@lbaclaw.com
4  LAWRENCE BEACH ALLEN & CHOI, PC
   100 West Broadway, Suite 1200
5  Glendale, California  91210-1219
   Telephone No. (818) 545-1925
6  Facsimile No. (818) 545-1937

7  Attorneys for Defendants and Third Parties
   County of Los Angeles and Sheriff Leroy D. Baca
8

9

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12  DUNCAN ROY; et al.,                        ) Case No. CV 12-09012 BRO (FFMx)
                                               )
13              Plaintiffs,                    )
                                               ) Consolidated with:
14      vs.                                    ) Case No. CV 13-04416 BRO (FFMx)
                                               )
15  COUNTY OF LOS ANGELES; et al.,             ) Honorable Beverly Reid O'Connell
                                               )
16              Defendants.                    ) **DEFENDANTS COUNTY OF LOS**
                                               ) **ANGELES AND LEROY D.**
17  _____        ) **BACA'S STATEMENT OF**
                                               ) **GENUINE ISSUES AND**
18  GERARDO GONZALEZ; et al.,                  ) **ADDITIONAL MATERIAL FACTS**
                                               ) **IN SUPPORT OF THEIR**
19              Plaintiffs,                    ) **OPPOSITION TO PLAINTIFFS'**
                                               ) **PLAINTIFFS' MOTION FOR**
20      vs.                                    ) **SUMMARY ADJUDICATION**
                                               ) **REGARDING LIABILITY**
21  IMMIGRATION AND CUSTOMS                    )
    ENFORCEMENT, an entity; et al.,            ) *[Opposition to Plaintiffs' Motion for*
22                                             ) *Summary Adjudication; Evidentiary*
                Defendants.                    ) *Objections and Request for Judicial*
23                                             ) *Notice filed concurrently herewith]*
                                               )
24                                             ) Date:   August 28, 2017
                                               ) Time:   1:30 p.m.
25                                             ) Crtm:   7C
                                               )
26                                             )
                                               )
27  _____        )

28

                              1

TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR COUNSEL OF RECORD:

Defendants County of Los Angeles and Leroy D. Baca (collectively, "Defendants") hereby submit the following Statement of Genuine Issues and Additional Materials Facts in support of their Opposition to Plaintiffs' Motion for Summary Adjudication Regarding Liability.

| PLAINTIFFS' ALLEGED UNCONTROVERTED MATERIAL FACTS AND EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| **ICE IMMIGRATION DETAINER PRACTICES** ||
| 1. Between October 1, 2010 and February 22, 2016, ICE issued 31,925 immigration detainers to the LASD.<br><br>Declaration of Lindsay Battles ("Battles Decl."), ¶2, Ex. A, p.3 (DHS Rog Resp., No. 11). | Undisputed. |
| 2. The 8/2010 version of the I-247 Form includes four checkboxes indicating the basis for issuing an immigration detainer; the first box states "Investigation has been initiated to determine whether this person is subject to removal from the United States."<br><br>Battles Decl., Ex. B. | Undisputed. |
| 3. The 6/2011 version of the I-247 Form includes four checkboxes indicating the basis for issuing an | Undisputed. |

| | | |
|---|---|---|
| | immigration detainer; the first box states "Initiated an investigation to determine whether this person is subject to removal from the United States."<br><br>Battles Decl., Ex. Z. | |
| 4. | The 12/2012 version of the I-247 Form includes four checkboxes indicating the basis for issuing an immigration detainer; the first box states "Determined that there is reason to believe the individual is an alien subject to removal from the United States…" (followed by subsidiary checkboxes indicating the subject's enforcement priority).<br><br>Battles Decl., Ex. C. | Undisputed. |
| 5. | During the class period, ICE issued 21,179 detainers to the LASD with the "initiated an investigation" or "investigation has been initiated" box checked, and 2,911 detainers with no detainer reason box checked.<br><br>Battles Decl., Ex. BB. | Undisputed. |
| 6. | ICE's 2010, 2011, and 2012 versions of the I-247 form requested that the LASD detain an individual beyond the time he or she would otherwise be eligible for release for 48 hours, excluding weekends and holidays.<br><br>Battles Decl., Exs. B, C, Z. | Undisputed. |
| 7. | In 2015, ICE revised its detainer form, creating two different detainer | Undisputed. |

| 1 2 3 4 5 | | forms—the I-247D, for individuals that meet a higher enforcement priority, and the I-247X, for lower enforcement priorities.<br><br>Battles Decl., Exs. D, E. | |
|---|---|---|---|
| 6 7 8 9 10 11 | 8. | The new (2015) forms replaced the checkbox option of "reason to believe" with the statement "probable cause exists that the subject is a removable alien."<br><br>Battles Decl., Exs. D, E. | Undisputed. |
| 12 13 14 15 16 | 9. | The new (2015) detainer form requests 48 hours of extended detention including weekends and holidays.<br><br>Battles Decl., Ex E. | Undisputed. |
| 17 18 19 20 21 22 | 10. | The 2010 – 2015 versions of the detainer forms requested that the local law enforcement agency maintain custody using the language "it is requested" or "DHS requests."<br><br>Battles Decl., Exs. B, C, E, Z. | Undisputed. |
| 23 24 25 26 27 28 | 11. | The 2010 – 2015 versions of the detainer forms contained a check box on the form indicating whether the detainer was supported by a final order of removal or by a Notice to Appear initiating removal proceedings.<br><br>Battles Decl., Exs. B, C, | Undisputed. |

| | | |
|---|---|---|
| | D, E, Z. | |
| 12. | Of detainers issued to LASD, more than 80 percent of the detainers had neither box checked: only 19 percent were supported by final orders of removal, signed by immigration judges; 0.5 percent were supported by the initiation of removal proceedings.<br><br>Battles Decl., ¶3 (ICE reported 170 detainers supported by an NTA and 5,937 detainers supported by a removal order; ICE data indicates that 25,818 detainers were not supported by a final order of removal or Notice to Appear.). | Undisputed. |
| 13. | No judge, magistrate, or immigration judge reviews ICE detainers either before or promptly after they are issued.<br><br>Battles Decl., Ex. Y (Defendants' Responses to Plaintiffs' RFA Nos. 1-8, admitting that ICE does not require that a judicial official or immigration judge make a determination of probable cause for an immigration detainer prior to issuing a detainer, within 48 hours after detainer issuance, within 48 hours after a detainer goes into effect, or within 48 hours after an individual is taken into ICE custody). | Defendants object on the grounds that this assertion is irrelevant as the Court has determined that immigration proceedings are civil, rather than criminal, in nature, and has held that "the Fourth Amendment does not require judicial review of ICE officers' probable cause determinations." *See*, Docket No. 264, Court's June 12, 2017 Order on Plaintiffs' Motion for Partial Summary Judgment, at p. 18-19. Defendants further object on the grounds that this assertion lacks foundation; calls for speculation. (Fed. R. Evid., Rules 401, 601, 602.)<br><br>Disputed to the extent this fact suggests that the ICE detainers were not supported by probable cause. Otherwise, undisputed. |

*See*, Docket No. 244-2, Exhibit "T" to Clark Decl., 12/2/15 DeMore Depo. at 203:2-204:17, 203:8-21 ("What hasn't changed is that **probable cause has always been applied** at the point that alien is arrested or picked up"), 207:8-13; Docket No. 244-3, Exhibit "W" to Clark Decl., 2/10/16 DeMore Depo. at 256:5-259:25 (**always required probable cause** for the issuance of detainers); Docket No. 244-3, Exhibit "X" to Clark Decl., 3/4/16 Schichel Depo. at 285:25-287:3 ("Our standard of … reviewing cases in determining if someone is amenable to removal **has always been the same**."); Docket No. 244-4, Exhibit "Y" to Clark Decl., 3/10/16 Rapp Depo. at 291:14-292:22 ("the level of information that was required for an officer to lodge a detainer … **has not changed**."), 295:13-297:19; Docket No. 244-4, Exhibit "Z" to Clark Decl., 3/11/16 Rapp Depo. at 320:4-16 (the process for investigating has not changed); Docket No. 244-5, Exhibit "AA" to Clark Decl., 3/16/16 Hamm Depo. at 332:6-333:12 ("The goal is to establish probable cause, and the elements that are needed in order to do that were the **same in 2010 to date**."); Docket No. 244-5, Exhibit "BB" to Clark Decl., 3/17/16 Hamm Depo. at 343:3-18 (the standard ICE uses to make a determination of probable cause **has not changed**), 350:11-25; Docket No. 244-5,

| | | | |
|---|---|---|---|
| 1 | | | Exhibit "DD" to Clark Decl., Dennis Depo. at 360:7-10 ("It's **always been probable cause**."); Docket No. 244-5, Exhibit "EE" to Clark Decl., Deposition of Vincent Benton ("Benton Depo.") at 364:5-13 (nothing different between "reason to believe" and "probable cause"). |
| 7 | 14. | ICE has never had a policy or practice of providing a prompt judicial review of probable cause (before or promptly after arrest caused by the detainer).<br><br>Battles Decl., Ex. Y (Defendants' Responses to Plaintiffs' RFA Nos. 1-8, admitting that ICE does not require that a judicial official or immigration judge make a determination of probable cause for an immigration detainer prior to issuing a detainer, within 48 hours after detainer issuance, within 48 hours after a detainer goes into effect, or within 48 hours after an individual is taken into ICE custody). | Defendants object on the grounds that this assertion is irrelevant as the Court has determined that immigration proceedings are civil, rather than criminal, in nature, and has held that "the Fourth Amendment does not require judicial review of ICE officers' probable cause determinations." *See*, Docket No. 264, Court's June 12, 2017 Order on Plaintiffs' Motion for Partial Summary Judgment, at p. 18-19. Defendants further object on the grounds that this assertion lacks foundation; calls for speculation. (Fed. R. Evid., Rules 401, 601, 602.)<br><br>Disputed to the extent this fact suggests that the ICE detainers were not supported by probable cause. Otherwise, undisputed.<br><br>*See*, Docket No. 244-2, Exhibit "T" to Clark Decl., 12/2/15 DeMore Depo. at 203:2-204:17, 203:8-21 ("What hasn't changed is that **probable cause has always been applied** at the point that alien is arrested or picked up"), 207:8-13; Docket No. 244-3, Exhibit "W" to Clark Decl., 2/10/16 DeMore Depo. |

| | | | at 256:5-259:25 (**always required probable cause** for the issuance of detainers); Docket No. 244-3, Exhibit "X" to Clark Decl., 3/4/16 Schichel Depo. at 285:25-287:3 ("Our standard of … reviewing cases in determining if someone is amenable to removal **has always been the same**."); Docket No. 244-4, Exhibit "Y" to Clark Decl., 3/10/16 Rapp Depo. at 291:14-292:22 ("the level of information that was required for an officer to lodge a detainer … **has not changed**."), 295:13-297:19; Docket No. 244-4, Exhibit "Z" to Clark Decl., 3/11/16 Rapp Depo. at 320:4-16 (the process for investigating has not changed); Docket No. 244-5, Exhibit "AA" to Clark Decl., 3/16/16 Hamm Depo. at 332:6-333:12 ("The goal is to establish probable cause, and the elements that are needed in order to do that were the **same in 2010 to date**."); Docket No. 244-5, Exhibit "BB" to Clark Decl., 3/17/16 Hamm Depo. at 343:3-18 (the standard ICE uses to make a determination of probable cause **has not changed**), 350:11-25; Docket No. 244-5, Exhibit "DD" to Clark Decl., Dennis Depo. at 360:7-10 ("It's **always been probable cause**."); Docket No. 244-5, Exhibit "EE" to Clark Decl., Deposition of Vincent Benton ("Benton Depo.") at 364:5-13 (nothing different between "reason to believe" and "probable cause"). |
|---|---|---|---|

| | | LASD ARREST AND DETENTION ON IMMIGRATION DETAINERS | |
|---|---|---|---|
| | 15. | From October 2010 until March 2014, LASD complied with all immigration detainers indiscriminately, treating them as mandatory.<br><br>Battles Decl., Ex. M ("the ICE detainer SHALL BE honored" if TRUST Act criteria met); Ex. DD p. 11:3 – 11:23, 30(b)(6) Dep. of LASD Lt. Tri Hoang. | Objection: vague and ambiguous as to "indiscriminately"; lacks foundation; calls for speculation; assumes facts not in evidence. (Fed. R. Evid., Rules 401, 601, 602.)<br><br>Defendants further object on the grounds that Plaintiffs misstate the evidence cited, as Lt. Tri Hoang's testimony was that from October 2012 to **January** 2014, the LASD complied with ICE holds.  *See*, Dkt. 240-30, Exhibit DD, Tri Hoang Depo., at 11:3-9.<br><br>Otherwise, undisputed. |
| | 16. | From October 2010 until June 2014, LASD's policy and practice was to detain individuals beyond the time they were eligible for release on the immigration detainer for up to 48 hours excluding weekends and holidays.<br><br>Battles Decl., Ex. F (LASD email to Lt. Tri Hoang enclosing detainer compliance timeline) ("inmates with a valid [ICE] hold… shall be held beyond their release date for interview… or transfer"); Ex. G (4/19/2013 Detainer Acceptance Policy); Ex. H (11/18/2013 Detainer Policy); Ex. I (IRC 1/2014 Detainer Acceptance Policy); Ex. J (6/6/2014 Policy); Ex. K (6/5/2014 | Undisputed. |

9

| | | | |
|---|---|---|---|
| | | email with attachment addressing change in policy); Ex. L, Sivard 5/28/15 Dep. Tr., pp. 66:13-66:18. | |
| | 17. | LASD inmate data shows that, between October 2010 and June 2014, approximately 7,197 inmates were held for more than 48 hours after they became due for release on criminal matters.<br><br>Under-seal Kriegler Decl., p. 16. | Objection: improper expert testimony.  (Fed. R. Evid., Rules 401, 601, 602, 702.) |
| | 18. | During this period, LASD recorded immigration detainers in its Automated Jail Information System ("AJIS"), making them visible to jail staff and the public through LASD's inmate locator.<br><br>See Ex. L, Sivard 5/28/15 Dep. Tr. 32:16-33:5 (before and immediately after TRUST Act detainers recorded in AJIS). | Objection: vague and ambiguous as to "this period;" lacks foundation; calls for speculation. (Fed. R. Evid., Rules 401, 601, 602.)  Defendants further object on the grounds that Plaintiffs do not cite the evidence they rely on for the assertion that the recordation of the immigration detainers in AJIS makes them visible to jail staff and the public through LASD's inmate locator.<br><br>Disputed to the extent this fact suggests that the LASD recorded all immigration detainers in AJIS.  All arresting agencies in Southern California can input information in AJIS, including the existence of an ICE detainer.  *See*, County Defendants' Separate Statement, Docket No. 243-1, Fact No. 71. |
| | 19. | Recording ICE detainers as "holds" excluded inmates from Alternatives to Custody Programs, including work release, electronic monitoring | Objection: vague and ambiguous as time; lacks foundation; calls for speculation. (Fed. R. Evid., Rules 401, 601, 602.) |

10

| | | |
|---|---|---|
| | release, mental health treatment centers and substance abuse treatment centers.<br><br>Ex. R, Lightel Dep. Tr., pp. 16:13 – 18:6, 161:14 –161:25 (beginning in 2006, inmates with immigration holds were not allowed to participate in alternatives to custody programs). | Undisputed. |
| 20. | All detainers uploaded into AJIS were detainers that the LASD intended to honor by detaining the inmate after they were due for release on criminal charges.<br><br>Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr, pp. 32:16-20; 33:7-33:14. | Objection: vague and ambiguous; lacks foundation; calls for speculation. (Fed. R. Evid., Rules 401, 601, 602.)<br><br>Undisputed. |
| 21. | In March 2014, the LASD initiated steps to comply with a California law, known as AB4 (The TRUST Act), Cal. Gov't Code, Section 7282.5(a), which limited the circumstances in which law enforcement agencies could honor immigration detainers.<br><br>Battles Decl., Ex. F (detainer compliance timeline, noting March 13, 2014 LASD began vetting detainers against TRUST Act); Ex. DD, p. 42:12 –43:23, 30(b)(6) Dep. Of LASD Lt. Tri Hoang (referencing detainer compliance timeline). | Objection: vague and ambiguous; lacks foundation; calls for speculation. (Fed. R. Evid., Rules 401, 601, 602.)<br><br>Undisputed. |
| 22. | Beginning in June 2014, LASD adopted policies and practices aimed at reducing the time that it detains an individual on an ICE detainer and | Objection: vague and ambiguous; lacks foundation; calls for speculation. (Fed. R. Evid., Rules 401, 601, 602.) |

| | | | |
|---|---|---|---|
| 1 2 3 4 5 6 7 | | enabling transfer to ICE without extending a person's detention beyond the time they are eligible for release.<br><br>Battles Decl., Exs. J, K; Ex. DD, p. 42:12 – 45:1, 30(b)(6) Dep. of LASD Lt. Tri Hoang (referencing detainer compliance timeline). | Undisputed. |
| 8 9 10 11 12 13 14 | 23. | In June 2014, LASD stopped recording immigration detainers in AJIS and began keeping only a paper copy of the detainer in the inmate's record jacket.<br><br>Battles Decl., J (6/6/2014 Detainer Policy), Ex. L, Sivard 5/28/15 Dep. Tr., pp. 29:3-29:15. | Undisputed. |
| 15 16 17 18 19 20 21 22 23 24 25 26 27 28 | 24. | During the class period, LASD has never had a policy or practice to bring people held on ICE detainers before a judge for a probable cause determination, despite maintaining procedures for ensuring other inmates held on warrantless arrests would be released within 48 hours.<br><br>Battles Decl., Ex. L, Sivard 5/28/15 Depo. Tr., pp. 159:13-160:6; Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 69:3–72:6; Ex. DD, p. 38:3 – 39:1, 30(b)(6) Dep. Of LASD Lt. Tri Hoang. | Defendants object on the grounds that this assertion is irrelevant as the Court has determined that immigration proceedings are civil, rather than criminal, in nature, and has held that "the Fourth Amendment does not require judicial review of ICE officers' probable cause determinations."  *See*, Docket No. 264, Court's June 12, 2017 Order on Plaintiffs' Motion for Partial Summary Judgment, at p. 18-19. Defendants further object on the grounds that this assertion lacks foundation; calls for speculation. (Fed. R. Evid., Rules 401, 601, 602.)<br><br>Disputed to the extent this fact suggests that the ICE detainers were |

not supported by probable cause. Otherwise, undisputed.

*See*, Docket No. 244-2, Exhibit "T" to Clark Decl., 12/2/15 DeMore Depo. at 203:2-204:17, 203:8-21 ("What hasn't changed is that **probable cause has always been applied** at the point that alien is arrested or picked up"), 207:8-13; Docket No. 244-3, Exhibit "W" to Clark Decl., 2/10/16 DeMore Depo. at 256:5-259:25 (**always required probable cause** for the issuance of detainers); Docket No. 244-3, Exhibit "X" to Clark Decl., 3/4/16 Schichel Depo. at 285:25-287:3 ("Our standard of … reviewing cases in determining if someone is amenable to removal **has always been the same**."); Docket No. 244-4, Exhibit "Y" to Clark Decl., 3/10/16 Rapp Depo. at 291:14-292:22 ("the level of information that was required for an officer to lodge a detainer … **has not changed**."), 295:13-297:19; Docket No. 244-4, Exhibit "Z" to Clark Decl., 3/11/16 Rapp Depo. at 320:4-16 (the process for investigating has not changed); Docket No. 244-5, Exhibit "AA" to Clark Decl., 3/16/16 Hamm Depo. at 332:6-333:12 ("The goal is to establish probable cause, and the elements that are needed in order to do that were the **same in 2010 to date**."); Docket No. 244-5, Exhibit "BB" to Clark Decl., 3/17/16 Hamm Depo. at 343:3-18 (the standard ICE uses to make a determination of

| | | | |
|---|---|---|---|
| 1 | | | probable cause **has not changed**), 350:11-25; Docket No. 244-5, Exhibit "DD" to Clark Decl., Dennis Depo. at 360:7-10 ("It's **always been probable cause**."); Docket No. 244-5, Exhibit "EE" to Clark Decl., Deposition of Vincent Benton ("Benton Depo.") at 364:5-13 (nothing different between "reason to believe" and "probable cause"). |
| 25. | LASD's failure to ensure that inmates held solely on ICE detainers were brought before a magistrate within 48 hours was not due to any emergency or the need to complete administrative tasks.<br><br>Ex. DD, p. 37:3 – 39:10, 30(b)(6) Dep. of LASD Lt. Tri Hoang. | | Defendants object on the grounds that this assertion is irrelevant as the Court has determined that immigration proceedings are civil, rather than criminal, in nature, and has held that "the Fourth Amendment does not require judicial review of ICE officers' probable cause determinations." *See*, Docket No. 264, Court's June 12, 2017 Order on Plaintiffs' Motion for Partial Summary Judgment, at p. 18-19. Defendants further object on the grounds that this assertion lacks foundation; calls for speculation. (Fed. R. Evid., Rules 401, 601, 602.)<br><br>Disputed to the extent this fact suggests that the ICE detainers were not supported by probable cause or that a judicial determination is required as asserted in this fact.  . Otherwise, undisputed.<br><br>*See*, Docket No. 244-2, Exhibit "T" to Clark Decl., 12/2/15 DeMore Depo. at 203:2-204:17, 203:8-21 ("What hasn't changed is that **probable cause has always been** |

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**applied** at the point that alien is arrested or picked up"), 207:8-13; Docket No. 244-3, Exhibit "W" to Clark Decl., 2/10/16 DeMore Depo. at 256:5-259:25 (**always required probable cause** for the issuance of detainers); Docket No. 244-3, Exhibit "X" to Clark Decl., 3/4/16 Schichel Depo. at 285:25-287:3 ("Our standard of … reviewing cases in determining if someone is amenable to removal **has always been the same**."); Docket No. 244-4, Exhibit "Y" to Clark Decl., 3/10/16 Rapp Depo. at 291:14-292:22 ("the level of information that was required for an officer to lodge a detainer … **has not changed**."), 295:13-297:19; Docket No. 244-4, Exhibit "Z" to Clark Decl., 3/11/16 Rapp Depo. at 320:4-16 (the process for investigating has not changed); Docket No. 244-5, Exhibit "AA" to Clark Decl., 3/16/16 Hamm Depo. at 332:6-333:12 ("The goal is to establish probable cause, and the elements that are needed in order to do that were the **same in 2010 to date**."); Docket No. 244-5, Exhibit "BB" to Clark Decl., 3/17/16 Hamm Depo. at 343:3-18 (the standard ICE uses to make a determination of probable cause **has not changed**), 350:11-25; Docket No. 244-5, Exhibit "DD" to Clark Decl., Dennis Depo. at 360:7-10 ("It's **always been probable cause**."); Docket No. 244-5, Exhibit "EE" to Clark Decl., Deposition of Vincent Benton ("Benton Depo.") at 364:5-13

| | | | |
|---|---|---|---|
| 1 2 | | | (nothing different between "reason to believe" and "probable cause"). |
| 3 4 5 6 7 8 | 26. | In LASD's view, it had no legal obligation to ensure that inmates held solely on ICE detainers were brought before a judge or magistrate within 48 hours.<br><br>Ex. DD, p. 37:3 – 37:9, 30(b)(6) Dep. of LASD Lt. Tri Hoang. | Defendants object on the grounds that this assertion is irrelevant as the Court has determined that immigration proceedings are civil, rather than criminal, in nature, and has held that "the Fourth Amendment does not require judicial review of ICE officers' probable cause determinations." *See*, Docket No. 264, Court's June 12, 2017 Order on Plaintiffs' Motion for Partial Summary Judgment, at p. 18-19. Defendants further object on the grounds that this assertion lacks foundation; calls for speculation, and constitutes a legal conclusion. (Fed. R. Evid., Rules 401, 601, 602.)<br><br>Disputed to the extent this fact suggests that the ICE detainers were not supported by probable cause or that a judicial determination is required as asserted in this fact.  . Otherwise, undisputed.<br><br>*See*, Docket No. 244-2, Exhibit "T" to Clark Decl., 12/2/15 DeMore Depo. at 203:2-204:17, 203:8-21 ("What hasn't changed is that **probable cause has always been applied** at the point that alien is arrested or picked up"), 207:8-13; Docket No. 244-3, Exhibit "W" to Clark Decl., 2/10/16 DeMore Depo. at 256:5-259:25 (**always required probable cause** for the issuance of detainers); Docket No. 244-3, |

| | | | Exhibit "X" to Clark Decl., 3/4/16 Schichel Depo. at 285:25-287:3 ("Our standard of … reviewing cases in determining if someone is amenable to removal **has always been the same**."); Docket No. 244-4, Exhibit "Y" to Clark Decl., 3/10/16 Rapp Depo. at 291:14-292:22 ("the level of information that was required for an officer to lodge a detainer … **has not changed**."), 295:13-297:19; Docket No. 244-4, Exhibit "Z" to Clark Decl., 3/11/16 Rapp Depo. at 320:4-16 (the process for investigating has not changed); Docket No. 244-5, Exhibit "AA" to Clark Decl., 3/16/16 Hamm Depo. at 332:6-333:12 ("The goal is to establish probable cause, and the elements that are needed in order to do that were the **same in 2010 to date**."); Docket No. 244-5, Exhibit "BB" to Clark Decl., 3/17/16 Hamm Depo. at 343:3-18 (the standard ICE uses to make a determination of probable cause **has not changed**), 350:11-25; Docket No. 244-5, Exhibit "DD" to Clark Decl., Dennis Depo. at 360:7-10 ("It's **always been probable cause**."); Docket No. 244-5, Exhibit "EE" to Clark Decl., Deposition of Vincent Benton ("Benton Depo.") at 364:5-13 (nothing different between "reason to believe" and "probable cause"). |
| 27. | LASD was aware that ICE did not provide a judicial determination of probable cause to those individuals | | Defendants object on the grounds that this assertion is irrelevant as the Court has determined that immigration proceedings are civil, |

within 48 hours of ICE taking custody of the individual.

See Battles Decl., Ex. O (document shared between LASD officers, which states "DHS doesn't provide [probable cause hearings before a magistrate judge]" and proposes that the Department "limit detention on the basis of an ICE hold to 48 hrs, including weekends and holidays" to account for DHS's failure to provide a hearing); Ex. P, p. 2 ("ICE Program Bullets 287(g)," stating, incorrectly, that "[o]nce inmates are turned over to ICE officials, they are. . . . required to appear before a Federal magistrate within 10 days"); see also, Ex. Q, p. 2 (LASD email stating "The ICE Warrant (I200) does not get any judicial review (think of a search warrant, arrest warrant, or Probable Cause Declaration (PCD)). The ACLU attorneys are saying this is a violation of the inmates rights...and our county counsel rep (custody) agrees with that assessment.").

rather than criminal, in nature, and has held that "the Fourth Amendment does not require judicial review of ICE officers' probable cause determinations."  *See*, Docket No. 264, Court's June 12, 2017 Order on Plaintiffs' Motion for Partial Summary Judgment, at p. 18-19. Defendants further object on the grounds that this assertion lacks foundation; calls for speculation. (Fed. R. Evid., Rules 401, 601, 602.)

Disputed to the extent this fact suggests that the ICE detainers were not supported by probable cause or that a judicial determination is required as asserted in this fact. Otherwise, undisputed.

*See*, Docket No. 244-2, Exhibit "T" to Clark Decl., 12/2/15 DeMore Depo. at 203:2-204:17, 203:8-21 ("What hasn't changed is that **probable cause has always been applied** at the point that alien is arrested or picked up"), 207:8-13; Docket No. 244-3, Exhibit "W" to Clark Decl., 2/10/16 DeMore Depo. at 256:5-259:25 (**always required probable cause** for the issuance of detainers); Docket No. 244-3, Exhibit "X" to Clark Decl., 3/4/16 Schichel Depo. at 285:25-287:3 ("Our standard of … reviewing cases in determining if someone is amenable to removal **has always been the same**."); Docket No. 244-4, Exhibit "Y" to Clark Decl., 3/10/16 Rapp Depo. at 291:14-292:22 ("the

| | | | |
|---|---|---|---|
| | | | level of information that was required for an officer to lodge a detainer … **has not changed**.”), 295:13-297:19; Docket No. 244-4, Exhibit “Z” to Clark Decl., 3/11/16 Rapp Depo. at 320:4-16 (the process for investigating has not changed); Docket No. 244-5, Exhibit “AA” to Clark Decl., 3/16/16 Hamm Depo. at 332:6-333:12 (“The goal is to establish probable cause, and the elements that are needed in order to do that were the **same in 2010 to date**.”); Docket No. 244-5, Exhibit “BB” to Clark Decl., 3/17/16 Hamm Depo. at 343:3-18 (the standard ICE uses to make a determination of probable cause **has not changed**), 350:11-25; Docket No. 244-5, Exhibit “DD” to Clark Decl., Dennis Depo. at 360:7-10 (“It’s **always been probable cause**.”); Docket No. 244-5, Exhibit “EE” to Clark Decl., Deposition of Vincent Benton (“Benton Depo.”) at 364:5-13 (nothing different between “reason to believe” and “probable cause”). |
| 28. | | Although the LASD has procedures to track the length of time a person subject to an out-of-county warrant is held before transfer to the requesting agency to ensure they are not over-detained, no such procedure exists for ICE Detainers.<br><br>Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 65:6 – 66:8; Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 76:24 – 77:16; Ex. R, Lightel | Defendants object on the grounds that this assertion is irrelevant. Defendants further object on the grounds that this assertion lacks foundation; calls for speculation, and constitutes a legal conclusion. (Fed. R. Evid., Rules 401, 601, 602.)<br><br>Disputed to the extent this fact implies that a tracking system is necessary or required, or that any over-detentions resulted from the |

| | | | |
|---|---|---|---|
| 1 | | Dep. Tr., pp. 138:16-139:22 (no tracking mechanism of time period; instead just put names on a transfer list), pp. 174:16-176:25 (same); 177:16-177:21 (no knowledge of way to track 48 hour period); see also, pp. 234:2-235:14 (no guidance on "standard release time"). | lack of such a system, whatever that might be. |
| | | **LASD BAIL POLICIES** | |
| | 29. | LASD entered immigration detainers into their data system as an additional "charge" on the inmate.<br><br>Battles Decl., Ex. DD, p. 17:1-17:10, 24:13 – 25:5, 30(b)(6) Dep. of LASD Lt. Tri Hoang. | Undisputed. |
| | 30. | Within LASD's database system, some charges or holds have specific bail amounts attached to them, while others do not have a specific dollar amount.<br><br>Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 116:15-117:1; see also Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 85:24 – 86:20. | Undisputed. |
| | 31. | Charges or holds that do not have a specific dollar amount are designated as "No Bail" holds.<br><br>Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 116:15-117:1; see also Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 85:24 – 86:20. | Undisputed. |

| 32. | Aside from ICE holds, the "No Bail" notation is used exclusively for holds for which the inmate cannot post bail, including state prison holds (indicating that the state prison has custody of the inmate), probation holds indicating that the person may not be released due to probation violation) and warrants for which there is no bail.<br><br>Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 96:9 – 97:23. | Objection: vague and ambiguous; lacks foundation; calls for speculation. (Fed. R. Evid., Rules 401, 601, 602.)  Defendants further object on the grounds that Plaintiff's misstate the testimony.  Sivard did not testify that the "No Bail" notation is used exclusively for holds for which the inmate **cannot post bail**, instead, he testified that it is used for holds where there is **no bail amount**. *See*, Docket No. 240-2, Ex. S, Sivard 4/21/16 Depo. at 85:24-86:20. |
| --- | --- | --- |
| 33. | Because immigration detainers do not have a specific dollar amount attached, they were displayed as "No Bail" holds within LASD's electronic data system.<br><br>Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 116:21-117:7, Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 85:22 – 86:6, 96:9 – 97:23 Ex. CC (Ex. 4 to Sivard 4/21/16 Dep., LASD Inmate Information Sheet). | Undisputed, except to clarify that when ICE holds were input into AJIS, they were classified as no bail holds, which simply means that the detainer does not have a dollar amount attributed to it, unlike most criminal charges which are assigned a specific dollar figure.<br><br>*See*, Docket No. 244, Feroli Decl., ¶ 21, 22. |
| 34. | LASD marked immigration detainers in the electronic booking system as "no bail" holds.<br><br>Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 116:15-116:20; Ex.U (Industry Station manual excerpt, stating all immigration detainers are "no bail"). | Undisputed, except to clarify that when ICE holds were input into AJIS, they were classified as no bail holds, which simply means that the detainer does not have a dollar amount attributed to it, unlike most criminal charges which are assigned a specific dollar figure.<br><br>*See*, Docket No. 244, Feroli Decl., ¶ 21, 22. |

| 35. | Inmate Information sheets contain basic inmate information including arrest information, booking information and bail information.<br><br>Ex. CC (Ex. 4 to Sivard 4/21/16 Dep., LASD Inmate Information Sheet). | Undisputed. |
|---|---|---|
| 36. | All LASD employees with access to the LASD intranet (LASD's internal network), can generate "Inmate Information" sheets.<br><br>Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 84:25 – 85:18 (referencing Deposition Ex. 4); Ex. CC (Ex. 4 to Sivard 4/21/16 Dep., LASD Inmate Information Sheet). | Undisputed. |
| 37. | Inmate information sheets contain fields for "Total Bail Amount," "Total Hold Bail Amount," and "Grand Total (Bail)."<br><br>Ex. CC (Ex. 4 to Sivard 4/21/16 Dep., LASD Inmate Information Sheet). | Undisputed. |
| 38. | On inmate information sheets, if an inmate has one "no bail" hold, such as an immigration hold, the "Total Hold Bail Amount" displays as "No Bail."<br><br>Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 85:22 – 86:6; Ex. CC (Ex. 4 to Sivard 4/21/16 Dep., LASD Inmate Information Sheet). | Undisputed, except to clarify that when ICE holds were input into AJIS, they were classified as no bail holds, which simply means that the detainer does not have a dollar amount attributed to it, unlike most criminal charges which are assigned a specific dollar figure. |

| | | | |
|---|---|---|---|
| | | | *See*, Docket No. 244, Feroli Decl., ¶ 21, 22. |
| 39. | On inmate information sheets, if an inmate has one "no bail" hold, such as an immigration hold, the "Grand Total Bail (amount)" displays as "No Bail."<br><br>Ex. CC (Ex. 4 to Sivard 4/21/16 Dep., LASD Inmate Information Sheet); see also, Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 85:22 – 86:6; | Undisputed, except to clarify that when ICE holds were input into AJIS, they were classified as no bail holds, which simply means that the detainer does not have a dollar amount attributed to it, unlike most criminal charges which are assigned a specific dollar figure.<br><br>*See*, Docket No. 244, Feroli Decl., ¶ 21, 22. |
| 40. | LASD's online inmate locator service allows members of the public to access inmate information including booking information, charges, court appearances and bail amount.<br><br>Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 116:7:116:14. | Undisputed. |
| 41. | LASD's online inmate locator service contains fields for "Total Bail Amount," "Total Hold Bail Amount," and "Grand Total (Bail)."<br><br>Ex. T (inmate booking screen shot showing "no bail" notation). | Undisputed. |
| 42. | On LASD's online inmate locator service, the booking information section displayed immigration holds as a "no bail" notation.<br><br>Ex. T (inmate booking screen shot showing "no bail" notation). | Undisputed, except to clarify that when ICE holds were input into AJIS, they were classified as no bail holds, which simply means that the detainer does not have a dollar amount attributed to it, unlike most |

| | | |
|---|---|---|
| | | criminal charges which are assigned a specific dollar figure.<br><br>*See*, Docket No. 244, Feroli Decl., ¶ 21, 22. |
| 43. | On LASD's online inmate locator service, the "Total Hold Bail Amount" would be displayed as "No Bail" for inmates with immigration detainers.<br><br>Ex. T (inmate booking screen shot showing "no bail" notation); Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 116:7-116:20. | Undisputed, except to clarify that when ICE holds were input into AJIS, they were classified as no bail holds, which simply means that the detainer does not have a dollar amount attributed to it, unlike most criminal charges which are assigned a specific dollar figure.<br><br>*See*, Docket No. 244, Feroli Decl., ¶ 21, 22. |
| 44. | On LASD's online inmate locator service, the "Grand Total (Bail Amount)" would be displayed as "No Bail" for inmates with immigration detainers.<br><br>Ex. T (inmate booking screen shot showing "no bail" notation). | Undisputed, except to clarify that when ICE holds were input into AJIS, they were classified as no bail holds, which simply means that the detainer does not have a dollar amount attributed to it, unlike most criminal charges which are assigned a specific dollar figure.<br><br>*See*, Docket No. 244, Feroli Decl., ¶ 21, 22. |
| 45. | LASD acknowledges that there was confusion among its personnel as to whether inmates with "no bail" immigration detainers were permitted to post bail.<br><br>Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 114:16-118:14; Ex. S, Sivard 4/21/16 Rule 30(b)(6) Dep. Tr., pp. 96:9 – 97:23.98:4-99:10. | Objection: vague and ambiguous as to "confusion" and "permitted"; lacks foundation; calls for speculation.  (Fed. R. Evid., Rules 401, 601, 602.)  Defendants also object on the grounds that Plaintiffs fail to include the pages from the deposition transcript of Sivard that they have cited in support of this fact.  *See*, Docket No. 240-13, |

Exhibit L, Sivard 5/28/15 Depo.
(missing pages 114, 115, 117, and
118).

Disputed.  The LASD's policy and
practice has always been to allow
inmates subject to immigration
detainers to post bail.  Sivard
testified that "[t]he MPP was **very
clear** to those who would read it that
said that bail can be accepted
regardless of what the offense was.
**If there's a bail attached to it, a
bond could be posted**." (emphasis
added).  Docket No. 274, Exhibit A,
Sivard 5/28/15 Depo. at 117:21-24.
Sivard further testified, "**There was
no confusion on our part**.  There
was confusion back in whatever
year… that some believed because it
said 'no bail' that no bail could be
posted.  However, **the Sheriff's
Department's assertion has always
been as it pertains to the MPP with
that, if you have a bailable amount
in L.A. County, then you can bail
out for that amount of money**."
(emphasis added).  Docket No. 240-
20, Exhibit S, Sivard 4/21/16 Depo.
at 98:12-19.  To the extent there may
have been some confusion, it was
limited to "certain individuals that
believed because there was a no
bail… they're saving themselves
because the inmate could not go out
onto the street to be released."
Docket No. 240-20, Exhibit S, Sivard
4/21/16 Depo. at 99:5-10.

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7 | | | Defendants further object because the only Plaintiff seeking damages is Martinez-Perez, who has not presented any admissible evidence to show that he made an attempt to post bail. *See*, Docket No. 243-1, Defendants' Separate Statement in Support of Motion for Summary Judgment, Nos. 19-38. |
| 8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 46. | LASD acknowledges that "there was some misinterpretation of the MPP with regards to posting of bail when a no-bail hold was also placed on the inmate."<br><br>Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 114:16-118:14. | Objection: vague and ambiguous as to "misinterpretation"; lacks foundation; calls for speculation. (Fed. R. Evid., Rules 401, 601, 602.) Defendants also object on the grounds that Plaintiffs fail to include the pages from the deposition transcript of Sivard that they have cited in support of this fact. *See*, Docket No. 240-13, Exhibit L, Sivard 5/28/15 Depo. (missing pages 114-115 and 117-118).<br><br>Disputed. The LASD's policy and practice has always been to allow inmates subject to immigration detainers to post bail. Sivard testified that "[t]he MPP was **very clear** to those who would read it that said that bail can be accepted regardless of what the offense was. **If there's a bail attached to it, a bond could be posted**." (emphasis added). Docket No. 274, Exhibit A, Sivard 5/28/15 Depo. at 117:21-24. Sivard further testified, "**There was no confusion on our part**. There was confusion back in whatever year… that some believed because it said 'no bail' that no bail could be |

| | | | |
|---|---|---|---|
| 1 | | | posted.  However, **the Sheriff's Department's assertion has always been as it pertains to the MPP with that, if you have a bailable amount in L.A. County, then you can bail out for that amount of money**." (emphasis added).  Docket No. 240-20, Exhibit S, Sivard 4/21/16 Depo. at 98:12-19.  To the extent there may have been some confusion, it was limited to "certain individuals that believed because there was a no bail… they're saving themselves because the inmate could not go out onto the street to be released." Docket No. 240-20, Exhibit S, Sivard 4/21/16 Depo. at 99:5-10. |
| | | | Defendants further object because the only Plaintiff seeking damages is Martinez-Perez, who has not presented any admissible evidence to show that he made an attempt to post bail.  *See*, Docket No. 243-1, Defendants' Separate Statement in Support of Motion for Summary Judgment, Nos. 19-38. |
| 47. | LASD acknowledges that, due to this confusion, some LASD personnel advised inmates (or persons calling on their behalf) that they were not permitted to post bail.<br><br>Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 116:21-118:14. | | Objection: vague and ambiguous as to "confusion" and "advised"; lacks foundation; calls for speculation. (Fed. R. Evid., Rules 401, 601, 602.) Defendants also object on the grounds that Plaintiffs fail to include the pages from the deposition transcript of Sivard that they have cited in support of this fact.  *See*, Docket No. 240-13, Exhibit L, Sivard 5/28/15 Depo. (missing pages 117, and 118). |

| | | | |
|---|---|---|---|
| 1 | | | Disputed.  The LASD's policy and practice has always been to allow inmates subject to immigration detainers to post bail.  Sivard testified that "[t]he MPP was **very clear** to those who would read it that said that bail can be accepted regardless of what the offense was. **If there's a bail attached to it, a bond could be posted**." (emphasis added).  Docket No. 274, Exhibit A, Sivard 5/28/15 Depo. at 117:21-24.  Sivard further testified, "**There was no confusion on our part**.  There was confusion back in whatever year… that some believed because it said 'no bail' that no bail could be posted.  However, **the Sheriff's Department's assertion has always been as it pertains to the MPP with that, if you have a bailable amount in L.A. County, then you can bail out for that amount of money**." (emphasis added).  Docket No. 240-20, Exhibit S, Sivard 4/21/16 Depo. at 98:12-19.

Defendants further object because the only Plaintiff seeking damages is Martinez-Perez, who has not presented any admissible evidence to show that he made an attempt to post bail.  *See*, Docket No. 243-1, Defendants' Separate Statement in Support of Motion for Summary Judgment, Nos. 19-38. |
| 48. | On October 18, 2012, days before this case was filed, LASD changed | | Disputed.  The LASD's policy and practice has always been to allow |

28

| | |
|---|---|
| its policy to allow ICE Detainer inmates to post bail.<br><br>Battles Decl., Ex. V (10/18/12 JDIC Msg, Acceptance of Cash Bails and Bonds); see also Ex.<br>W (demonstrating LASD did not change bail policy to reflect acceptance of bail for people with ICE detainers until 12/2013). | inmates subject to immigration detainers to post bail.  As such, this was simply a reiteration of the LASD's policy, not a change in its policy.<br><br>*See*, Docket No. 240-23, Exhibit V, 10/18/12 JDIC Message ("The Los Angeles County Sheriff's Department Policy **is** to accept bail… This policy applies to any person being held on a United States immigration (ICE) detainer."); *see also*, Docket No. 274, Exhibit A, Sivard 5/28/15 Depo., at 114:16-23 ("**It reiterated policy**" when discussing the notation that bond or bail on behalf of an inmate being held on an ICE detainer shall be accepted); Docket No., 240-20, Exhibit S, Sivard 4/21/16 Depo. at 99:17-23 ("**Not a change… Just a clarification of policy**." (emphasis added).);  Docket No. 244, Feroli Decl., ¶ 21, 22; Docket No. 244-1, Exhibit J, LASD's bail policy, which clearly indicates that bail shall be accepted, even if an inmate is subject to an immigration detainer.<br><br>Defendants further object because the only Plaintiff seeking damages is Martinez-Perez, who has not presented any admissible evidence to show that he made an attempt to post bail.  *See*, Docket No. 243-1, Defendants' Separate Statement in Support of Motion for Summary Judgment, Nos. 19-38. |

| 49. | In December 2013, LASD changed the Manual of Policy and Procedure to make clear that bail must be accepted on behalf of inmates with ICE detainers.<br><br>Ex. W (demonstrating LASD did not change bail policy to reflect acceptance of bail for people with ICE detainers until 12/2013). | Disputed that this was a "change" in policy.  Rather, the LASD's policy and practice has always been to allow inmates subject to immigration detainers to post bail.  As such, this was simply a reiteration of the LASD's policy, not a change in its policy.<br><br>*See*, Docket No. 240-23, Exhibit V, 10/18/12 JDIC Message ("The Los Angeles County Sheriff's Department Policy **is** to accept bail… This policy applies to any person being held on a United States immigration (ICE) detainer."); *see also*, Docket No. 274, Exhibit A, Sivard 5/28/15 Depo., at 114:16-23 ("**It reiterated policy**" when discussing the notation that bond or bail on behalf of an inmate being held on an ICE detainer shall be accepted); Docket No., 240-20, Exhibit S, Sivard 4/21/16 Depo. at 99:17-23 ("**Not a change… Just a clarification of policy**." (emphasis added).);  Docket No. 244, Feroli Decl., ¶ 21, 22; Docket No. 244-1, Exhibit J, LASD's bail policy, which clearly indicates that bail shall be accepted, even if an inmate is subject to an immigration detainer.<br><br>Defendants further object because the only Plaintiff seeking damages is Martinez-Perez, who has not presented any admissible evidence to show that he made an attempt to post bail.  *See*, Docket No. 243-1, Defendants' Separate Statement in |

| | | | |
|---|---|---|---|
| 1 | | | Support of Motion for Summary Judgment, Nos. 19-38. |
| 2 | | | |
| 3 | 50. | Before October 2012, LASD routinely informed inmates, attorneys and bail bondsmen that inmates with ICE holds were not permitted to post bail. | Objection: vague and ambiguous as to "routinely" and "informed"; lacks foundation; calls for speculation; inadmissible hearsay.  (Fed. R. Evid., Rules 401, 601, 602, 801, 802.) |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | Decl. of James Kallas (bail agent repeatedly advised by LASD that inmates with immigration holds were ineligible to post bail); Decl. of Lauro Jimenez (bail agent never permitted to post bail on behalf of inmates with immigration detainers); Decl. of Morris Demayo (bail bondsmen attempted to post bail on behalf of 12 inmates with immigration detainers; LASD refused to accept bail each time); Decl. of Alec Rose (advised by LASD personnel that his client could not post bail due to an immigration hold); Decl. of Alejandro Delgado (advised by LASD personnel, Dep. Lopez, that inmates with immigration holds are not permitted to post bail); Decl. of Brendan Hamme (advised by multiple LASD personnel that inmates with ICE holds are not eligible to post bail); Decl. of Rocio Ramirez (advised by LASD officer that inmates with immigration detainers are not permitted to post bail); Decl. of Xanadu Copo (advised by LASD jail deputy that he could not post bail due to immigration detainer). | Disputed.  The LASD's policy and practice has always been to allow inmates subject to immigration detainers to post bail.  Sivard testified that "[t]he MPP was **very clear** to those who would read it that said that bail can be accepted regardless of what the offense was.  **If there's a bail attached to it, a bond could be posted**." (emphasis added).  Docket No. 274, Exhibit A, Sivard 5/28/15 Depo. at 117:21-24.  Sivard further testified, "**There was no confusion on our part**.  There was confusion back in whatever year… that some believed because it said 'no bail' that no bail could be posted.  However, **the Sheriff's Department's assertion has always been as it pertains to the MPP with that, if you have a bailable amount in L.A. County, then you can bail out for that amount of money**." (emphasis added).  Docket No. 240-20, Exhibit S, Sivard 4/21/16 Depo. at 98:12-19. |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | Defendants further object because the only Plaintiff seeking damages is Martinez-Perez, who has not presented any admissible evidence to |
| 27 | | | |
| 28 | | | |

| | | | |
|---|---|---|---|
| | | | show that he made an attempt to post bail. *See*, Docket No. 243-1, Defendants' Separate Statement in Support of Motion for Summary Judgment, Nos. 19-38. |
| 51. | Before October 2012, it was widely understood among the public and inmates that LASD did not accept bail on behalf of inmates with immigration detainers.<br><br>Decl. of James Kallas (bail agent repeatedly advised by LASD that inmates with immigration holds were ineligible to post bail); Decl. of Lauro Jimenez (bail agent never permitted to post bail on behalf of inmates with immigration detainers); Decl. of Morris Demayo (bail bondsmen attempted to post bail on behalf of 12 inmates with immigration detainers; LASD refused to accept bail each time); Decl. of Alec Rose (advised by LASD personnel that his client could not post bail due to an immigration hold); Decl. of Alejandro Delgado (advised by LASD personnel, Dep. Lopez, that inmates with immigration holds are not permitted to post bail); Decl. of Brendan Hamme (advised by multiple LASD personnel that inmates with ICE holds are not eligible to post bail); Decl. of Rocio Ramirez (advised by LASD officer that inmates with immigration detainers are not permitted to post bail); Decl. of Aurelio Lopez Rodriguez (advised by bail bondman | | Objection: vague and ambiguous as to "widely understood" and "public"; lacks foundation; calls for speculation; inadmissible hearsay. (Fed. R. Evid., Rules 401, 601, 602, 801, 802.)<br><br>Disputed. The LASD's policy and practice has always been to allow inmates subject to immigration detainers to post bail. Sivard testified that "[t]he MPP was **very clear** to those who would read it that said that bail can be accepted regardless of what the offense was. **If there's a bail attached to it, a bond could be posted**." (emphasis added). Docket No. 274, Exhibit A, Sivard 5/28/15 Depo. at 117:21-24. Sivard further testified, "**There was no confusion on our part**. There was confusion back in whatever year… that some believed because it said 'no bail' that no bail could be posted. However, **the Sheriff's Department's assertion has always been as it pertains to the MPP with that, if you have a bailable amount in L.A. County, then you can bail out for that amount of money**." (emphasis added). Docket No. 240-20, Exhibit S, Sivard 4/21/16 Depo. at 98:12-19. |

| | | |
|---|---|---|
| | that inmates with immigration detainers could not post bail); Decl. of Xanadu Copo (advised by LASD jail deputy that he could not post bail due to immigration detainer); Decl. of Emilia Flores (advised by bail bondman that inmates with immigration detainers could not post bail); Decl. of Elizabeth Lopresti (advised by bail bondman that inmates with immigration detainers could not post bail). | Defendants further object because the only Plaintiff seeking damages is Martinez-Perez, who has not presented any admissible evidence to show that he made an attempt to post bail. *See*, Docket No. 243-1, Defendants' Separate Statement in Support of Motion for Summary Judgment, Nos. 19-38. |
| 52. | Between October 19, 2010 and March 20, 2015, 71 individuals with ICE holds were released on bail or bond of 13,794 of releases with an ICE Hold). Bail/bond releases comprise only 0.5 percent of all releases among inmates with ICE holds.<br><br>Under-seal declaration of Dr. Brian Kriegler, Ex. 2 (pp. 38). | Objection: improper expert testimony.  (Fed. R. Evid., Rules 401, 601, 602, 702.)  Defendants further object on the grounds that this information is irrelevant, as this does not document the amount of inmates that were able to post bail or bond, but were nonetheless released for other reasons.<br><br>Undisputed. |
| 53. | Between October 19, 2010 and March 20, 2015, 33,711 inmates with no holds were released on bail or bond (of 400,973 of releases with no holds). Bail/bond releases comprise (8.4 percent) of releases among inmates with no holds.<br><br>Under-seal declaration of Dr. Brian Kriegler, Ex. 2 (pp. 38). | Objection: irrelevant; improper expert testimony.  (Fed. R. Evid., Rules 401, 601, 602, 702.)<br><br>Undisputed. |
| 54. | Between October 19, 2010 and March 20, 2015, 102 inmates with ICE holds were released on their own recognizance. | Objection: irrelevant; improper expert testimony.  (Fed. R. Evid., Rules 401, 601, 602, 702.) |

| | | | |
|---|---|---|---|
| | | Under-seal declaration of Dr. Brian Kriegler, Ex. 2 (pp. 38). | Undisputed. |
| | 55. | Between October 19, 2010 and March 20, 2015, 28,972 inmates with no holds were released on their own recognizance.<br><br>Under-seal declaration of Dr. Brian Kriegler, Ex. 2 (pp. 38). | Objection: irrelevant; improper expert testimony.  (Fed. R. Evid., Rules 401, 601, 602, 702.)<br><br>Undisputed. |
| | 56. | It is LASD policy not to book anyone into its jails for whom bail is set at $25,000 or less unless they refused to sign the citation, demanded to appear before a magistrate, were charged with a probation violation, or were charged with a disqualifying, enumerated charge (e.g. escape from custody, child abuse, domestic violence, etc.)<br><br>Battles Decl., Ex. N, p.1-2 (July 2012 IRC Policy on Bail Acceptance and Misdemeanor Arrests) (IRC will not accept inmates with $25,000 bail or less, unless inmate has an immigration detainer); Ex. S, Sivard 30(b)(6) Dep. Tr., pp. 77:17 – 79:7 | Undisputed. |
| | 57. | Pursuant to LASD's Policy of Bail Acceptance, where an individual with bail of less than $25,000 qualified for release without posting bail, watch commanders had discretion to book the person where they could not produce sufficient ID or were intoxicated. | Undisputed. |

| | | | |
|---|---|---|---|
| | | Battles Decl., Ex. N, p.1-2 (July 2012 IRC Policy on Bail Acceptance and Misdemeanor Arrests). | |
| | 58. | Until June 2014, LASD's policy of not booking arrestees with bail of less than $25,000 did not apply to those with ICE Detainers.<br><br>Battles Decl., Ex. N, p.1-2 (July 2012 IRC Policy) (IRC will not accept inmates with $25,000 bail or less, unless inmate has an immigration detainer). | Undisputed. |
| | 59. | LASD data shows that an estimated 9,197 inmates with ICE detainers within the federal class period, and 6,052 within the state period, would have been eligible for release without posting bail.<br><br>Under-seal Kriegler Decl., ¶28, pp. 16. | Objection: irrelevant; improper expert testimony.  (Fed. R. Evid., Rules 401, 601, 602, 702.) Defendants further object on the grounds that this fact is vague and ambiguous; lacks foundation; and calls for speculation. (Fed. R. Evid., Rules 401, 601, 602.) |

| DEFENDANTS' ADDITIONAL MATERIAL FACTS | DEFENDANTS' SUPPORTING EVIDENCE |
|---|---|
| **INTRODUCTION** | |
| 1.  Plaintiffs in this matter, on behalf of themselves and a class of similarly situated individuals, claim that their civil rights were violated due to the Los Angeles County Sheriff's Department's ("LASD") alleged denial of bail to inmates who were subject to an | 1.  *See*, Docket No. 125 – Second Amended Complaint ["SAC"], ¶ 1. |

| | |
|---|---|
| immigration hold, and the alleged denial of the release of inmates for 48 hours or more on the basis of the immigration hold. | |
| 2.  On October 19, 2012, Plaintiffs Duncan Roy ("Roy"), Annika Alliksoo ("Alliksoo"), Clemente De La Cerda ("De La Cerda") and Christian Michel Varela ("Varela") (collectively, "Plaintiffs") initiated their class action lawsuit against the County of Los Angeles (the "County") and Sheriff Leroy D. Baca (collectively, "Defendants"). | 2.  *See*, Docket No. 1 – Complaint. |
| 3.  On October 2, 2015, Plaintiffs Roy, Alliksoo, and De La Cerda filed their First Amended Complaint, which no longer included Plaintiff Varela (after his previous dismissal) but now included Alain Martinez-Perez as an additional Plaintiff. | 3.  *See*, Docket No. 109 – First Amended Complaint; *see also*, Docket No. 69 – Order on Motion to Dismiss Varela, at p. 7. |
| 4.  On December 7, 2015, Plaintiffs Roy, Alliksoo, Cerda and Martinez-Perez filed their Second Amended Complaint, which is currently the operative complaint at issue. | 4.  *See*, Docket No. 125 – SAC, ¶ 1. |
| 5.  On January 25, 2016, the Court issued an Order granting the Parties' Joint Request for Dismissal of Plaintiff Duncan Roy's Claims after a settlement had been reached between Defendants and Plaintiff Roy regarding his claims. | 5.  *See*, Docket No. 134 – Order Granting Parties' Joint Request For Dismissal Of Plaintiff Duncan Roy's Claims. |
| 6.  On January 26, 2017, the Court issued an Order Re Stipulation and | 6.  *See*, Docket No. 216 – Order Re Stipulation And Request For Dismissal |

36

| | |
|---|---|
| Request For Dismissal Without Prejudice As To Plaintiff Annika Alliksoo. | Without Prejudice As To Plaintiff Annika Alliksoo. |
| 7.  The only two remaining Plaintiffs are Plaintiffs Martinez-Perez and De La Cerda. | 7.  *See*, Docket No. 125 – SAC; *see also*, Docket No. 134 – Order Granting Parties' Joint Request For Dismissal Of Plaintiff Duncan Roy's Claims; Docket No. 216 – Order Re Stipulation And Request For Dismissal Without Prejudice As To Plaintiff Annika Alliksoo. |
| 8.  On September 9, 2016, the Court granted, in part, Plaintiffs' Motion for Class Certification. | 8.  *See*, Docket No. 184 – Court's Order on Plaintiffs' Motion for Class Certification. |
| 9.  Plaintiff Martinez-Perez seeks only damages, not equitable relief. | 9.  *See*, Docket No. 125 – SAC, ¶ 113; *see also*, Exhibit "Q" to Declaration of Justin W. Clark ["Clark Decl."], Deposition of Alain Martinez-Perez ("Martinez-Perez Depo.") at 120:9-121:13. |
| 10.  Plaintiff De La Cerda only seeks class-wide injunctive and declaratory relief. | 10.  *See*, Docket No. 125 – SAC, ¶ 94, 113; *see also*, Exhibit "R" to Clark Decl., Deposition of Clemente De La Cerda ("De La Cerda Depo.") at 159:20-160:7. |
| 11.  In granting class certification, the Court certified seven classes. | 11.  *See*, Docket No. 184 – Court's Order on Plaintiffs' Motion for Class Certification. |
| 12.  The first class – the False Imprisonment Equitable Relief Class – includes "[a]ll LASD inmates detained beyond the time they are due for release from criminal custody, solely on the | 12.  *See*, Docket No. 184 – Court's Order on Plaintiffs' Motion for Class Certification, at p. 41. |

| | |
|---|---|
| basis of immigration detainers, excluding inmates who have a final order of removal as indicated on the face of the detainer." | |
| 13.  The second class – the *Gerstein* Equitable Relief Class – includes "[a]ll LASD inmates detained beyond the time they are due for release from criminal custody, solely on the basis of immigration detainers, excluding inmates who have a final order of removal or ongoing removal proceedings as indicated on the face of the detainer." | 13.  *See*, Docket No. 184 – Court's Order on Plaintiffs' Motion for Class Certification, at p. 41. |
| 14.  The third class – the False Imprisonment Damages Class – includes "[a]ll LASD inmates who were detained beyond the time they are due for release from criminal custody, solely on the basis of immigration detainers, excluding inmates who had a final order of removal as indicated on the face of the detainer" and covers those inmates who were detained from November 7, 2011 to the present. | 14.  *See*, Docket No. 184 – Court's Order on Plaintiffs' Motion for Class Certification, at p. 41. |
| 15.  The fourth class – the Post-48 Hour *Gerstein* SubClass – includes "[a]ll LASD inmates who were detained for more than forty-eight hours beyond the time they were due for release from criminal custody, based solely on immigration detainers, excluding inmates who had a final order of removal or were subject to ongoing removal proceedings as indicated on the face of the immigration detainer" and covers those inmates who were detained | 15.  *See*, Docket No. 184 – Court's Order on Plaintiffs' Motion for Class Certification, at p. 41. |

| | |
|---|---|
| from October 19, 2010 to the present (federal claims), and from November 7, 2011 to June 5, 2014 (California state law claims). | |
| 16. The fifth class – the Investigative Detainer Class – includes "[a]ll LASD inmates who were detained beyond the time they were due for release from criminal custody based solely on 'investigative detainers'" and covers those inmates who were detained from October 19, 2010 to the present (federal claims), and from November 7, 2011 to June 5, 2014 (California state law claims). | 16. *See*, Docket No. 184 – Court's Order on Plaintiffs' Motion for Class Certification, at p. 41. |
| 17. The sixth class – the No Bail Notation Class – includes "[a]ll LASD inmates on whom an immigration detainer had been lodged and recorded in LASD's AJIS database, and who were held on charges for which they would have been eligible to post bail" and covers those inmates who were detained from October 19, 2010 to October 18, 2012 (federal claims), and from November 7, 2011 to October 18, 2012 (California state law claims). | 17. *See*, Docket No. 184 – Court's Order on Plaintiffs' Motion for Class Certification, at p. 41. |
| 18. The seventh class – the No-Money Bail Subclass – includes "[a]ll LASD inmates on whom an immigration detainer had been lodged, who would otherwise have been subject to LASD's policy of rejecting for booking misdemeanor defendants with a bail amount of less than $25,000 (including Order of Own Recognizance)" and | 18. *See*, Docket No. 184 – Court's Order on Plaintiffs' Motion for Class Certification, at p. 41. |

| | |
|---|---|
| covers those inmates who were detained from October 19, 2010 to October 18, 2012 (federal claims), and from November 7, 2011 to October 18, 2012 (California state law claims). | |
| **FACTS REGARDING PLAINTIFFS.** ||
| 19.  Plaintiff Martinez-Perez is a 42-year-old Mexican citizen. | 19.  *See*, Docket No. 125 – SAC, ¶ 10; *see also*, Exhibit "Q" to Clark Decl., Martinez-Perez Depo. at 109:23-110:5. |
| 20.  In May of 2005, Martinez-Perez permanently moved to the United States using a B-2 travel visa that had been issued to him by the United States in 2004. | 20.  *See*, Docket No. 244-2, Exhibit "Q" to Clark Decl., Martinez-Perez Depo. at 111:12-19, 115:21-117:5. |
| 21.  The B-2 travel visa allowed Martinez-Perez to visit the United States as a tourist, but did not authorize him to live or work in the United States. | 21.  *See*, Docket No. 244-2, Exhibit "Q" to Clark Decl., Martinez-Perez Depo. at 118:1-24. |
| 22.  Since entering the United States in May of 2005, Martinez-Perez has never left the country. | 22.  *See*, Docket No. 244-2, Exhibit "Q" to Clark Decl., Martinez-Perez Depo. at 111:17-19. |
| 23.  After entering the United States in May of 2005, and since then, Martinez-Perez maintained several jobs without having ever received a work permit authorizing him to work in the United States. | 23.  *See*, Docket No. 244-2, Exhibit "Q" to Clark Decl., Martinez-Perez Depo. at 111:17-19, 111:23-112:1, 119:5-11, 121:14-131:24, 153:18-23. |

| | |
|---|---|
| 24.  On December 14, 2011, Martinez-Perez was arrested by the LASD for domestic battery, and booked in the LASD's City of Industry Station. | 24.  *See*, Docket No. 125 – SAC, ¶¶ 10, 74-75; *see also*, Exhibit "Q" to Clark Decl., Martinez-Perez Depo. at 132:19-139:23. |
| 25.  At the time of his booking, Martinez-Perez was fingerprinted, asked various personal information, and questioned about his immigration status, including where he was born and how long he had been living in the country. Martinez-Perez provided accurate and truthful information in response to these questions. | 25.  *See*, Docket No. 244-2, Exhibit "Q" to Clark Decl., Martinez-Perez Depo. at 140:7-141:7. |
| 26.  On Friday, December 16, 2011, Martinez-Perez was issued a Certificate of Release/Clearance Letter pursuant to California Penal Code § 849.5, informing him that no charges were filed against him. | 26.  *See*, Docket No. 125 – SAC, ¶ 78; *see also*, Exhibit "Q" to Clark Decl., Martinez-Perez Depo. at 142:8-12, 143:15-145:25. |
| 27.  However, due to the issuance of an immigration detainer by ICE, Martinez-Perez was not released from LASD custody until Tuesday, December 20, 2011, at which time he was released to ICE custody. | 27.  *See*, Docket No. 125 – SAC, ¶ 79-80; *see also*, Exhibit "Q" to Clark Decl., Martinez-Perez Depo. at 142:8-12, 143:15-145:25. |

| | |
|---|---|
| 28.  Martinez-Perez remained in LASD custody no more than 48 hours after he received the Certificate of Release/Clearance Letter, excluding the weekend. | 28.  *See*, Docket No. 244-2, Exhibit "Q" to Clark Decl., Martinez-Perez Depo. at 142:8-12, 143:15-145:25. |
| 29.  Martinez-Perez stayed in ICE custody until January 2012, at which point he was released on an immigration bond. | 29.  *See*, Docket No. 244-2, Exhibit "Q" to Clark Decl., Martinez-Perez Depo. at 148:7-151:15. |
| 30.  After his release from ICE custody, Martinez-Perez had two more court hearings before the immigration court, at which point all immigration proceedings were canceled against him. | 30.  *See*, Docket No. 244-2, Exhibit "Q" to Clark Decl., Martinez-Perez Depo. at 152:10-20. |
| 31.  During his detention in LASD custody, Martinez-Perez never personally contacted any bail bonds company to attempt to post bail. | 31.  *See*, Docket No. 244-2, Exhibit "Q" to Clark Decl., Martinez-Perez Depo. at 147:4-8. |
| 32.  During his detention in LASD custody, Martinez-Perez was never aware of the amount of his bail or that bail had been set. | 32.  *See*, Docket No. 244-2, Exhibit "Q" to Clark Decl., Martinez-Perez Depo. at 146:8-15. |
| 33.  Martinez-Perez's cousin, Elizabeth Perez-LoPresti ("LoPresti") found out about his arrest on December 15, 2011. | 33.  *See*, Docket No. 244-2, Exhibit "S" to Clark Decl., Deposition of Elizabeth Perez-LoPresti ("LoPresti Depo.") at 180:1-184:24. |

| | |
|---|---|
| 34.  After finding out about his arrest, LoPresti called several bail companies, but was only able to communicate with one immediately.  She does not recall the name of the bail company she spoke with. | 34.  *See*, Docket No. 244-2, Exhibit "S" to Clark Decl., LoPresti Depo. at 185:20-24, 186:19-187:3. |
| 35.  LoPresti provided the unknown bail company with her credit card information and information about Plaintiff Martinez-Perez, including his name and potential location. | 35.  *See*, Docket No. 244-2, Exhibit "S" to Clark Decl., LoPresti Depo. at 188:22-25. |
| 36.  That same day, LoPresti received a call back from the unknown bail company and was told that bail could not be posted for Plaintiff Martinez-Perez due to his immigration hold. | 36.  *See*, Docket No. 244-2, Exhibit "S" to Clark Decl., LoPresti Depo. at 189:6-13, 190:3-9. |
| 37.  LoPresti was not told whether the bail company actually communicated with LASD personnel regarding Martinez-Perez, went to station to inquire as to his bail, or made an attempt to post bail. | 37.  *See*, Docket No. 244-2, Exhibit "S" to Clark Decl., LoPresti Depo. at 190:10-24. |
| 38.  LoPresti does not recall having any other conversations with any other bail company as to whether or not bail could be posted for Martinez-Perez. | 38.  *See*, Docket No. 244-2, Exhibit "S" to Clark Decl., LoPresti Depo. at 191:3-192:7. |
| 39.  Plaintiff De La Cerda is a 41-year-old Mexican citizen. | 39.  *See*, Docket No. 125 – SAC, ¶ 12; *see also*, Exhibit "R" to Clark Decl., De La Cerda Depo. at 158:8-11. |

| | |
|---|---|
| 40.  De La Cerda moved to the United States when he was four years old. | 40.  *See*, Docket No. 125 – SAC, ¶ 12; *see also*, Exhibit "R" to Clark Decl., De La Cerda Depo. at 163:19-164:8. |
| 41.  On October 5, 2012, De La Cerda was arrested by the Whittier Police Department for a probation violation and misdemeanor possession of nunchucks. | 41.  *See*, Docket No. 125 – SAC, ¶ 91; *see also*, Exhibit "R" to Clark Decl., De La Cerda Depo. at 166:21-167:9. |
| 42.  De La Cerda's probation stemmed from a prior conviction of possession of a controlled substance. | 42.  *See*, Docket No. 244-2, Exhibit "R" to Clark Decl., De La Cerda Depo. at 165:21-25. |
| 43.  At the time of arrest, De La Cerda was a lawful permanent resident of the United States. | 43.  *See*, Docket No. 125 – SAC, ¶ 12; *see also*, Exhibit "R" to Clark Decl., De La Cerda Depo. at 162:15-23. |
| 44.  Shortly after arrest, De La Cerda was transferred to LASD custody where he remained until December 2012. | 44.  *See*, Docket No. 244-2, Exhibit "R" to Clark Decl., De La Cerda Depo. at 168:5-19, 171:1-6. |
| 45.  While in LASD custody, De La Cerda was interviewed by ICE. Thereafter, he was released to the custody of ICE where he was immediately placed on the ISAP program and allowed to return home. | 45.  *See*, Docket No. 244-2, Exhibit "R" to Clark Decl., De La Cerda Depo. at 172:1-9, 173:7-14; 174:9-175:18. |
| 46.  On February 14, 2013, De La Cerda voluntarily left the United States to Mexico. | 46.  *See*, Docket No. 244-2, Exhibit "R" to Clark Decl., De La Cerda Depo. at 161:9-162:3, 176:5-16 |
| **BACKGROUND INFORMATION REGARDING THE COUNTY JAIL SYSTEM** | |
| 47.  The Los Angeles County jail system ("LACJ" or "County jail") is the largest county jail system in the country. | 47.  Docket No. 244, Declaration of Ralph Feroli ["Feroli Decl."], ¶ 5. |

| | |
|---|---|
| 48.  From October, 2010 to present, the Los Angeles County Jail system was averaging a daily population of approximately 18,000 inmates. | 48.  *Id*. |
| 49.  The LASD transports an average of 1,400 to 1,600 inmates from its jail facilities to courts every day, Monday through Friday. | 49.  *Id*. |
| 50.  The LASD releases approximately the same number of inmates (160,000 to 180,000) from the LACJ each year. | 50.  *Id*. |
| 51.  The Department maintains several jails in the downtown Los Angeles and Lynwood areas, as well as several more jails located on a large piece of land in the northern Los Angeles County (Castaic) area. | 51.  *Id*. |
| 52.  The downtown jail complex includes the IRC. | 52.  *Id*. |
| 53.  IRC is the LASD facility that is primarily responsible for processing male inmates when they enter and exit the County Jail system, classifying them according to security risks, and acting as a hub for transporting inmates to and from court and other locations. | 53.  *Id*. |
| 54.  Processing inmates in IRC is a complex process that operates 24 hours a day, seven days a week. | 54.  *Id*. |
| 55.  The facility has numerous units and sections including, without limitation, the Records Unit, Property, Document Control, and Cashiering. | 55.  *Id*. |

| | |
|---|---|
| 56.  IRC processing approximately 120,000 inmates into and out of the County jail system each year, and is responsible for maintenance and storage of all inmate court records, inmate clothing, inmate property, inmate trust accounts, and receiving and processing incoming inmate mail. | 56.  *Id.* |
| **THE BOOKING PROCESS AS IT RELATES TO ICE HOLDS.** | |
| 57.  When inmates arrive at the IRC (from any number of locations around Southern California), they go through the booking process. | 57.  *Id.* at ¶ 7. |
| 58.  The booking process involves many steps but the details of each step are not relevant to the claims in this case, with one exception. | 58.  *Id.* at ¶ 7. |
| 59.  One step in the booking process involves inputting an inmate's information into the Automated Justice Information System ("AJIS"), which is a computer data base. | 59.  *Id.* at ¶ 7; *see also*, Declaration of Greg Sivard ["Sivard Decl."], ¶ 8. |
| 60.  AJIS (and its historical archive counterpart – RAJIS) is a set of propriety computer programs designed specifically to track booking records and related information regarding inmates in County jail. | 60.  *Id.* |
| 61.  AJIS is more than 30 years old. | 61.  *Id.* |
| 62.  Information can be input into AJIS by most law enforcement agencies throughout Southern California (through a separate computer system called the | 62.  *Id.* |

| | |
|---|---|
| Justice Department Information Computer, or "JDIC"). | |
| 63.  Because most law enforcement agencies can input information into AJIS (through JDIC), many inmates have had information about them inputted into AJIS by the arresting agencies, prior to their arrival at IRC. | 63. *Id.* |
| 64.  In the course of booking an inmate into County jail, a variety of information is input into, and stored in AJIS. | 64. *Id.* |
| 65.  AJIS includes inmate identification information, such as the inmate's name, date of birth, social security number, address, identifying marks, aliases, etc. | 65. *Id.* at ¶ 8; *see also*, Sivard Decl. ¶ 8. |
| 66.  AJIS also includes other personal information, such as an inmate's sexual preference and family information, such as the inmate's designated contact person. | 66. *Id.* |
| 67.  AJIS also includes information regarding the inmate's arrest, including the inmate booking number, charges, arrest date, arresting agency, arresting officer's name, etc.  Information regarding the inmate's criminal history and any gang affiliations is also input into the system. | 67. *Id.* |
| 68.  AJIS includes some information regarding the amounts set for an inmate's bail, bail, and other release information. | 68. *Id.* |

47

| | |
|---|---|
| 69.  AJIS does not include information regarding attempts to post bail. | 69.  *See*, Sivard Decl. ¶ 12. |
| 70.  None of the LASD's computer systems contain any information related to attempts to post bail. | 70.  *Id*. |
| 71.  Until approximately June, 2014, part of the booking process involved the arresting agencies inputting the existence of the ICE hold into AJIS (through JDIC), in similar fashion to a warrant from another jurisdiction. | 71.  *See*, Feroli Decl., ¶ 13, footnote 1. |
| 72.  AJIS also includes information related to an inmate's security classifications and special handle codes (which are used to assign appropriate housing). | 72.  *See*, Feroli Decl., ¶ 8. |
| 73.  AJIS also includes information related to an inmate's medical history and disability accommodation needs, if any. | 73.  *Id*. |
| 74.  Finally, AJIS includes information about an inmate's court cases, such as the assigned Department, case number, and next hearing date. | 74.  *Id*. |
| 75.  Because AJIS is used by virtually all law enforcement agencies in Los Angeles County (such as the Los Angeles Police Department), most inmates who arrive at IRC have already been booked into AJIS and received a wristband bearing their inmate information, such as name and booking number encoded on it. | 75.  *Id*. at ¶ 9. |

| | |
|---|---|
| 76.  These inmates will bypass the initial steps of the booking process, and proceed directly to the classification area of IRC. | 76.  *Id*. |
| 77.  During the booking process (which again, very often takes place before an inmate even arrives at IRC), inmates are live-scanned, which involves fingerprinting them and sending their biometric information to the California Department of Justice ("Cal DOJ") to confirm the individual's identity, and to obtain information on the subject's criminal history. | 77.  *Id*. at ¶ 10; *see also*, ¶ 19(G); Exhibit "I" – Flowchart outlining the booking and release process for County jail inmates, including the process for releasing inmates to ICE custody. |
| 78.  The information sent to Cal DOJ is automatically shared with the Federal Bureau of Investigation ("FBI"), to check nation-wide databases for criminal history. | 78.  *Id*. |
| 79.  Through the interoperability system, the information that is shared with the FBI is also automatically shared with the Department of Homeland Security ("DHS") to determine if the subject has a preexisting immigration record within DHS databases. | 79.  *Id*.; *see also*, Exhibit "T" to Clark Decl., 12/2/15 Deposition of Brian DeMore ("12/2/15 DeMore Depo.") at 198:8-16; Exhibit "U" to Clark Decl., 12/9/15 Deposition of David Marin ("12/9/15 Marin Depo.") at 217:20-219:2; 2/9/16 Deposition of David Marin ("2/9/16 Marin Depo.") at 69:19-71:16; Exhibit "W" to Clark Decl., 2/10/16 Deposition of Brian DeMore ("2/10/16 DeMore Depo.") at 244:19-245:11, 260:23-261:12; Exhibit "X" to Clark Decl., 3/4/16 Deposition of Daniel Schichel ("3/4/16 Schichel Depo.") at 268:9-17, 269:19-272:12; Exhibit "Y" to Clark Decl., 3/10/16 Deposition of Marc Rapp ("3/10/16 Rapp Depo.") at 294:5-18, 300:10- |

| | |
|---|---|
| | 302:8; Exhibit "Z" to Clark Decl., 3/11/16 Deposition of Marc Rapp ("3/11/16 Rapp Depo.") at 307:6-310:13; Exhibit "BB" to Clark Decl., 3/17/16 Deposition of James Anthony Hamm ("3/17/16 Hamm Depo.") at 339:16-25. |
| 80.  If it is determined through a search of the DHS databases that the subject has an immigration record, an Immigration Alien Response for that individual is generated so that ICE can conduct further investigation. | 80.  *Id*. at ¶ 11; *see also*, Exhibit "T" to Clark Decl., 12/2/15 DeMore Depo. at 199:4-24; Exhibit "U" to Clark Decl., 12/9/15 Marin Depo. at 218:5-219:2; Exhibit "V" to Clark Decl., 2/9/16 Marin Depo. at 224:17-225:4, 237:7-16; Exhibit "W" to Clark Decl., 2/10/16 DeMore Depo. at 243:18-22, 253:7-19, 256:5-16, 257:19-22; Exhibit "X" to Clark Decl., 3/4/16 Schichel Depo. at 269:19-272:12, 273:14-274:11; Exhibit "Y" to Clark Decl., 3/10/16 Rapp Depo. at 300:10-302:8; Exhibit "Z" to Clark Decl., 3/11/16 Rapp Depo. at 306:7-21, 311:6-25 |
| 81.  ICE's investigation into whether there is probable cause to believe that the subject is removable requires a determination of the subject's identity, alienage, prior immigration history, and criminal history. | 81.  *Id*. at ¶ 11; Exhibit "W" to Clark Decl., 2/10/16 DeMore Depo. at 252:7-19; Exhibit "X" to Clark Decl., 3/4/16 Schichel Depo. at 274:12-25, 279:13-22 (the determination of whether someone is removable is "[b]ased on their immigration history, their status, as well as their criminal history."); Exhibit "AA" to Clark Decl., 3/16/16 Hamm Depo. at 323:16-21 ("…prior to issuing a detainer, we establish identity.  And once we establish identity, we establish alienage.  Subsequent to alienage, we establish removability.  And currently we would also consider the civil enforcement priorities."), 331:2-11; |

| | |
|---|---|
| | Exhibit "BB" to Clark Decl., 3/17/16 Hamm Depo. at 340:1-15 |
| 82.  ICE investigates the subject's identity, alienage, prior immigration history, and criminal history through a comprehensive search of various federal, state and local databases, including, but not limited to the following: Central Index System (CIS), Computer Linked Application Information Management Systems (CLAIMS), Treasury Enforcement Communication System (TECS); California Law Enforcement Telecommunications System (CLETS) JDIC; Bureau of Prisons; EAGLE, ENFORCE, IDENT, IAFIS, ADIS, EARM, EADM, NCIC, and CCHRS. | 82.  *Id*. at ¶ 11; *see also*, Exhibit "T" to Clark Decl., 12/2/15 DeMore Depo. at 199:18-24, 200:13-24, 208:5-209:2; Exhibit "V" to Clark Decl., 2/9/16 Marin Depo. at 224:17-225:4, 226:20-234:13, 238:13-239:18; Exhibit "W" to Clark Decl., 2/10/16 DeMore Depo. at 245:23-249:15; Exhibit "X" to Clark Decl., 3/4/16 Schichel Depo. at 274:12-275:11, 278:12-16, 282:14-18; Exhibit "AA" to Clark Decl., 3/16/16 Hamm Depo. at 325:8-16, 326:25-330:9; Exhibit "BB" to Clark Decl., 3/17/16 Hamm Depo. at 340:1-15, 343:19-348:23 |
| 83.  If there is enough information to establish probable cause of the subject's alienage and removability, and if the subject meets the current civil enforcement priorities for removability, ICE will issue an immigration detainer as to that individual. | 83.  *Id*. at ¶ 11; *see also*, Exhibit "T" to Clark Decl., 12/2/15 DeMore Depo. at 201:11-17; Exhibit "W" to Clark Decl., 2/10/16 DeMore Depo. at 253:7-254:17, 255:6-13 (the evidence must support a finding of **probable cause** for removability), 256:5-16, 256:25-257:22; Exhibit "X" to Clark Decl., 3/4/16 Schichel Depo. at 265:11-19, 276:18-277:19, 279:9-281:22 (requires "…a determination that there's **probable cause** to believe that someone is amenable to removal from the United States…"); Exhibit "Y" to Clark Decl., 3/10/16 Rapp Depo. at 293:12-24; Exhibit "Z" to Clark Decl., 3/11/16 Rapp Depo. at 312:2-23, 314:3-23, 315:22-320:16; Exhibit "AA" to Clark Decl., 3/16/16 Hamm Depo. at 331:2-11 ("…we have to establish **probable cause**…"), 332:10-21 ("…**probable** |

| | | |
|---|---|---|
| 1 | | **cause** in order to issue a detainer…"); Exhibit "BB" to Clark Decl., 3/17/16 |
| 2 | | Hamm Depo. at 339:4-17 (the goal of |
| 3 | | the investigative process is to establish probable cause), 341:4-342:16 |
| 4 | | ("…**probable cause** would be the result |
| 5 | | of that process because all the elements have been reached."), 349:4-18, 351:15- |
| 6 | | 352:3 (the basis for ICE taking a person |
| 7 | | into custody is the **probable cause** determination that was made when the |
| 8 | | immigration detainer was lodged); |
| 9 | | Exhibit "CC" to Clark Decl., Deposition of Celia Cano ("Cano Depo.") at 356:1- |
| 10 | | 12; Exhibit "DD" to Clark Decl., |
| 11 | | Deposition of Bruce Dennis ("Dennis Depo") at 359:24-360:10 ("The |
| 12 | | standard we're held to is **probable** |
| 13 | | **cause**.") |
| 14 | | |
| 15 | 84.  At all times relevant to this case, ICE has always required that agents | 84.  *Id*. at ¶ 11; *see also*, Exhibit "T" to Clark Decl., 12/2/15 DeMore Depo. at |
| 16 | have probable cause to believe that an | 203:2-204:17, 203:8-21 ("What hasn't |
| 17 | inmate is removable from the United States in order to issue a detainer as to | changed is that **probable cause has always been applied** at the point that |
| 18 | that individual. | alien is arrested or picked up"), 207:8- |
| 19 | | 13; Exhibit "W" to Clark Decl., 2/10/16 DeMore Depo. at 256:5-259:25 (**always** |
| 20 | | **required probable cause** for the |
| 21 | | issuance of detainers); Exhibit "X" to Clark Decl., 3/4/16 Schichel Depo. at |
| 22 | | 285:25-287:3 ("Our standard of … |
| 23 | | reviewing cases in determining if someone is amenable to removal **has** |
| 24 | | **always been the same**."); Exhibit "Y" |
| 25 | | to Clark Decl., 3/10/16 Rapp Depo. at 291:14-292:22 ("the level of |
| 26 | | information that was required for an |
| 27 | | officer to lodge a detainer … **has not changed**."), 295:13-297:19; Exhibit "Z" |
| 28 | | |

| | |
|---|---|
| | to Clark Decl., 3/11/16 Rapp Depo. at 320:4-16 (the process for investigating has not changed); Exhibit "AA" to Clark Decl., 3/16/16 Hamm Depo. at 332:6-333:12 ("The goal is to establish probable cause, and the elements that are needed in order to do that were the **same in 2010 to date**."); Exhibit "BB" to Clark Decl., 3/17/16 Hamm Depo. at 343:3-18 (the standard ICE uses to make a determination of probable cause **has not changed**), 350:11-25; Exhibit "DD" to Clark Decl., Dennis Depo. at 360:7-10 ("It's **always been probable cause**."); Exhibit "EE" to Clark Decl., Deposition of Vincent Benton ("Benton Depo.") at 364:5-13 (nothing different between "reason to believe" and "probable cause") |
| 85.  Detainers are sent to the LASD and other arresting agencies in Southern California from the Pacific Enforcement Resource Center ("PERC"). | 85.  *Id*. at ¶ 11; *see also*, Exhibit "T" to Clark Decl., 12/2/15 DeMore Depo. at 196:7-10, 197:20-23, 202:1-3; Exhibit "U" to Clark Decl., 12/9/15 Marin Depo. at 213:25-215:10; Exhibit "V" to Clark Decl., 2/9/16 Marin Depo. at 223:4-6; Exhibit "W" to Clark Decl., 2/10/16 DeMore Depo. at 250:12-252:6, 256:25-257:17, 260:6-22; Exhibit "BB" to Clark Decl., 3/17/16 Hamm Depo. at 337:20-338:24 |
| 86.  PERC is the ICE facility responsible for issuing detainers to law enforcement agencies in Southern California. | 86.  *Id*. at ¶ 11; *see also*, Exhibit "T" to Clark Decl., 12/2/15 DeMore Depo. at 197:20-23, 202:1-3; Exhibit "U" to Clark Decl., 12/9/15 Marin Depo. at 213:25-215:10; Exhibit "V" to Clark Decl., 2/9/16 Marin Depo. at 223:4-6; Exhibit "W" to Clark Decl., 2/10/16 DeMore Depo. at 250:12-252:6, 256:25- |

| | |
|---|---|
| | 257:17, 260:6-22; Exhibit "X" to Clark Decl., 3/4/16 Schichel Depo. at 267:23-268:3, 275:6-11; Exhibit "BB" to Clark Decl., 3/17/16 Hamm Depo. at 337:20-338:24 |
| 87.  When a detainer is received from PERC, the arresting agency will print the detainer (which is usually received by either fax or email) and include the detainer in the subject's booking packet, which is a collection of paperwork that includes information such as the arresting charge, the arresting agency, and other information relevant to booking the individual into County custody. | 87.  *Id.* at ¶ 11; *see also*, Exhibit "T" to Clark Decl., 12/2/15 DeMore Depo. at 202:1-10; Exhibit "W" to Clark Decl., 2/10/16 DeMore Depo. at 250:12-252:6; Exhibit "X" to Clark Decl., 3/4/16 Schichel Depo. at 266:12-267:4 |
| 88.  If ICE has not had any prior contacts with the subject no detainer will be issued at the time of booking. Detainers can, however, be issued at the time of an inmate's release after further investigation. | 88.  *Id.* at ¶ 11; *see also*, Exhibit "T" to Clark Decl., 12/2/15 DeMore Depo. at 206:8-19; Exhibit "U" to Clark Decl., 12/9/15 Marin Depo. at 216:2-8; Exhibit "X" to Clark Decl., 3/4/16 Schichel Depo. at 283:19-284:2; Exhibit "Y" to Clark Decl., 3/10/16 Rapp Depo. at 298:8-299:21 |
| 89.  Most inmates have already been live-scanned prior to their arrival at IRC.  Accordingly, inmates coming into County custody who have had detainers issued against them by ICE, generally will have had them issued while they were still in the custody of their arresting agencies. | 89.  *See*, Feroli Decl. ¶ 12. |
| 90.  Those arresting agencies include the ICE detainers in the inmates' booking packets. | 90.  *Id.* |

| | |
|---|---|
| 91.  But for the arresting agency including the ICE detainer with the booking packet, the LASD would have no knowledge of the existence of the detainer. | 91.  *Id*. |
| 92.  Only when an inmate is an "over the counter booking" does PERC send the ICE detainer directly to the LASD. | 92.  *Id*. |
| 93.  "Over the counter bookings" (which again, are only a small fraction of total bookings into County jail), only take place when an individual is arrested by the LASD, when the arresting agency is the California Highway Patrol, or for prisoners who are returned to County jail from the California state prison system. | 93.  *Id*. |
| 94.  As part of processing the booking packet, the Records Unit of IRC will take the ICE detainer and put a copy of it in the inmate's booking jacket (which is the file maintained by IRC with the inmate's booking information). | 94.  *Id*. |
| 95.  Prior to June, 2014, the placement of the ICE detainer was recorded in AJIS by the arresting agency. | 95.  *Id*. at footnote 1. |
| 96.  Pursuant to the TRUST Act, California Government Code § 7282.5, all inmates are personally notified of the fact that ICE has issued a detainer for them.  Specifically, the subject inmate is given a copy of the detainer along with a "Los Angeles County Sheriff's Department Notification to Inmates of Immigration Interview Form." | 96.  *Id*.; *see also*, Exhibit "__" – "Los Angeles County Sheriff's Department Notification to Inmates of Immigration Interview Form." |

| THE RELEASE PROCESS AND TRANSFER TO ICE CUSTODY | |
|---|---|
| 97. The release process for inmates at County jail can vary depending on numerous factors, but there are several common elements and steps which are articulated below. | 97. *See*, Feroli Decl., ¶ 14. |
| 98. While the process involves some common steps, each release is unique and involves different facts and circumstances that impact how the release process is effectuated. | 98. *Id.*; *see also*, Sivard Decl., ¶ 10. |
| 99. Each weekday, IRC receives an average of 3,000 to 5,000 pieces of paper from the 10 superior court districts and 32 municipal court districts throughout Los Angeles County. | 99. *Id.* |
| 100. This paperwork includes a variety of miscellaneous forms and transmittals, some of which are uniform among the courts and some of which are not. | 100. *Id.* |
| 101. These documents are sometimes indecipherable or difficult to interpret. | 101. *Id.* |
| 102. Because of the number of courts and the lack of uniformity as to how each courtroom conducts its business— all of which is outside the control of the LASD—completion of the paper process takes IRC a significant amount of time. | 102. *Id.* |
| 103. There are two main components to the release process: processing of paperwork and processing of people. | 103. *Id.* at ¶ 15. |

| | |
|---|---|
| 104.  With respect to processing of people, the release process begins when the LASD becomes aware that an inmate is eligible for release. | 104. *Id.* |
| 105.  Inmates become eligible for release in a number of ways including but not limited to the expiration of their criminal sentence, if they are ordered released by a court, or if the District Attorney declines to pursue criminal charges against them. | 105. *Id.* |
| 106.  Depending on the specific circumstances of each individual case, the LASD may or may not have advance notice of an inmate's eligibility for release of the exact date therefor. | 106. *Id.* |
| 107.  Once an inmate is eligible for release, a release pass is generated by IRC and transmitted to the housing module where the inmate is located. | 107. *Id.* at ¶ 16. |
| 108.  The generation of the release pass begins the release process, although the paperwork component of the release process can begin several days before an inmate's actual release date. | 108. *Id.* |
| 109.  Once a release pass is generated by IRC, it is sent to the inmate's housing location so that the inmate can be directed to come to the release hallway of IRC. | 109. *Id.* at ¶ 16. |
| 110.  If an inmate was housed at an outlying facility (such as the facilities in Castaic), then that inmate will be transported to IRC for further release | 110. *Id.* |

| | |
|---|---|
| processing, usually the day before that inmate's release date. | |
| 111.  Inmates are provided with their Jail Records Card ("JRC"), to bring with them to the release hallway where the release process proceeds. | 111.  *Id*. at ¶ 18; Exhibit "C" – example of a JRC. |
| 112.  Inmates first stop at a desk in the release hallway and give their JRC to IRC personnel. | 112.  *Id*. at ¶ 18(A); *see also*, Exhibit "B" - photograph showing the release hallway. |
| 113.  After giving their JRC to IRC personnel, inmates are provided with a notice pursuant to the TRUTH Act, which notifies them that ICE has been advised of their release date. | 113.  *See,* Feroli Decl. ¶ 18(B); *see also*, Exhibit "D" – TRUTH Act Notice; Exhibits "E" and "F" – Photographs of the tables in the release hallway at IRC. |
| 114.   This notice is provided to all inmates being released from County custody, whether or not they have been issued an ICE detainer. | 114.  *Id*. |
| 115.  The TRUTH Act notification procedure has been in place since January 2017, following the enactment of the TRUTH Act. | 115.  *See*, Feroli Decl. ¶ 18(B), footnote 2. |
| 116.  The inmate's release pass is placed in a basket, which is just outside an office that is known as the "AB4 Desk" or "ICE Desk". | 116.  *See*, Feroli Decl., ¶ 18(C). |
| 117.  The personnel assigned to this office are responsible for interfacing with ICE and running the checks necessary for compliance with the TRUST Act, which allows California law enforcement agencies to transfer custody of an individual to ICE if that | 117.  *Id*. |

| | |
|---|---|
| person has been convicted of certain qualifying offenses. | |
| 118.  ICE has access to the release passes in the basket, which can be used to identify the inmates in the release area and to determine whether ICE intends to take the inmate into ICE custody. | 118.  *Id.* |
| 119.  IRC personnel scan the inmate's fingerprints to verify the inmate's identity, and simultaneously run a check for outstanding wants and warrants. | 119.  See, Feroli Decl. ¶ 18(D); *see also*, Exhibit "G" – photograph of the handheld device used to complete this step in the release process. |
| 120.  While inmate's identity is being verified, IRC personnel provide the inmate's JRC to the Records Unit (through a window adjacent to the release hallway), so that the inmate's JRC can be matched up with his booking jacket, after which both the booking jacket and the JRC are given back to deputies in the release hallway to continue the release process.  During this time, inmates are placed in holding cells in the release hallway. | 120.  *See*, Feroli Decl., ¶ 18(E). |
| 121.  The JRC is given to personnel that work in the property section of IRC, to locate the inmate's clothing, which was stored when the inmate was first booked into County custody.  The inmate's clothes are returned to the inmate who then is able to get dressed in the holding cell. | 121.  *Id.* |

| | |
|---|---|
| 122.  As the above processes are being completed, inmates are placed in holding cells in the release hallway. | 122. *Id.* |
| 123.  Next, the JRC is given to personnel that work in the property section of IRC, to locate the inmate's clothing, which was stored when the inmate was first booked into County custody.  The inmate's clothes are returned to the inmate who then is able to get dressed in the holding cell. | 123. *Id.* at ¶ 18(F). |
| 124.  The inmate is then escorted out of the holding cell, and into the next area of release hallway, which is a separate area where the final steps of the release process are completed. | 124.  *Id.* at ¶18(G); *see also*, Exhibit "H" – photograph of the final stage of the release area in IRC. |
| 125.  In this final area of the release hallway, a final identify check is completed, and the inmate is given back his secured personal property (such as cell phones, keys, and wallets). | 125. *Id.* at ¶ (H). |
| 126.  ICE cannot take custody of an inmate who has entered this area of the release hallway, even if they want to. | 126. *Id.* |
| 127.  Up until the inmates enter the final area of the release hallway (described in Paragraph 18-H), ICE can inform the LASD that they intend to take an inmate into ICE custody. | 127. *Id.* at ¶ 19. |
| 128.  This means that ICE intends to follow through with an ICE detainer that was issued at the time of booking, or that ICE intends to place a detainer | 128. *Id.* |

60

| | |
|---|---|
| on the subject inmate (if they have had no prior contacts with that individual). | |
| 129.  Once ICE informs the LASD that they intend to take an inmate into ICE custody, additional steps are completed to effectuate a custody release (meaning, a release to ICE custody). | 129.  *Id*. |
| 130.  Once ICE notifies the LASD of their intention to take an inmate into ICE custody, the LASD verifies that the requirements of the TRUST Act are met. | 130.  *Id*. at ¶ 19(A). |
| 131.  ICE is denied access to any inmate who does not meet TRUST Act requirements.  The inmate cannot be interviewed by ICE, and will not be released to ICE custody.  The inmate will proceed with the normal release process. | 131.  *Id*. at ¶ 19(B). |
| 132.  Inmates who meet TRUST Act requirements are provided with a "Los Angeles County Sheriff's Department Notification to Inmate of Immigration Detainer Interview" Form. | 132.  *Id*. at ¶ 19(C); *see also*, Exhibit "D" – TRUST Act Notice. |
| 133.  Under the TRUST Act, an inmate can consent to an ICE interview, decline to be interviewed by ICE, or choose to have an attorney present for the interview. | 133.  *Id*. at ¶ 19(D). |
| 134.  If ICE elects not to take the inmate into ICE custody, then the inmate will proceed with the normal release process. | 134.  *Id*. at ¶ 19(E). |

| | |
|---|---|
| 135.  If ICE elects to take the inmate into ICE custody, all of the documentation necessary to effectuate a custody release is prepared (including a medical discharge summary), and the inmate will be released to ICE custody. | 135.  *Id*. at ¶ 19(F). |
| 136.  Under no circumstances will an inmate's release date be delayed by the transfer of custody to ICE. | 136.  *Id*. at ¶ 19(G); *see also*, Exhibit "I" – Flowchart of the release process. |

| **CHANGES TO POLICY AND PROCEDURE RELATED TO ICE HOLDS.** | |
|---|---|
| 137.  After May 2014, the LASD no longer held inmates beyond their expected release date due to outstanding immigration detainers.  Before that time, as stated on the various versions of the detainer form that have been used by ICE since 2010, the LASD would maintain custody of the subject for up to 48 hours, excluding weekends and holidays pursuant to 8 C.F.R. 287.7. | 137.  Id. at ¶ 20(A). |
| 138.  Before May, 2014, , pursuant to 8 C.F.R. 287.7 and ICE's issuance of an ICE detainer, the LASD would maintain custody of an inmate for up to 48 hours, excluding weekends and holidays. | 138.  *Id*. |
| 139.  The TRUST Act became effective on January 1, 2014.  Before that time, there was no limitation with respect qualifying criminal convictions as a prerequisite for transfer to ICE custody. | 139.  *Id*. at ¶ 20(B). |
| 140.  All procedures related to vetting an inmate's TRUST Act qualification, including the creation of the ICE / AB4 | 140.  *Id*. |

| | |
|---|---|
| desk in the release hallway at IRC, were implemented after January 1, 2014. | |
| 141.  Until June 2014, the LASD (and other arresting agencies in Southern California), input the existence of an ICE detainer into the LASD's computer systems (into AJIS, through JDIC). | 141.  *Id*. ¶ 20(C). |
| 142.  Since June 2014, the existence of an ICE detainer was no longer input into AJIS, and instead, a physical copy of the detainer was placed in the inmate's booking jacket. | 142.  *Id*. |
| 143.  The TRUTH Act became effective in January 2017.  Before that time, there was no obligation to provide TRUTH Act notices to inmates.  All procedures related to the TRUTH Act were implemented after January 2017. | 143.  *Id*. at ¶20(D). |
| **BAIL PROCESSING** ||
| 144.  The LASD's policy and practice has always been to allow inmates subject to immigration detainers to post bail. | 144.  *See*, Feroli Decl., ¶ 21, 22; *see also*, Exhibit "J" – LASD's bail policy, which clearly indicates that bail shall be accepted, even if an inmate is subject to an immigration detainer. |
| 145.  When ICE holds were input into AJIS (by the arresting agency), they classified as no bail holds, which simply means that the detainer does not have a dollar amount attributed to it, unlike most criminal charges which are assigned a specific dollar figure. | 145.  *Id*. |

| | |
|---|---|
| 146.  The LASD's bail policy clearly indicates that bail shall be accepted, even if an inmate is subject to an immigration detainer. | 146. *Id.* |
| 147.  The LASD's policy has always been to accept bail on an inmate's state criminal charges (even if they are subject to an immigration detainer). | 147. *Id.* |
| **OTHER INFORMATION RELATED TO POLICIES REGARDING ICE HOLDS.** | |
| 148.  ICE holds were never treated as "voluntary" by the LASD. | 148. *See*, Feroli Decl. ¶ 23; *see also*, Exhibit "K" - I-247 ICE Detainer Form, which states "Federal regulations (8 CFR 287.7) **require** that you detain the alien for a period not to exceed 48 hours (excluding Saturdays, Sundays and Federal holidays) to provide adequate time for INS to assume custody of the alien." (Emphasis added.) |
| 149.  ICE holds were, in fact, treated by the LASD as mandatory holds similar to criminal warrants from another jurisdiction. | 149. *Id.* |
| 150.  The LASD does not issue immigration detainers. | 150. *Id.* at ¶ 24. |
| 151.  The LASD has maintained a working relationship with ICE (and ICE's predecessor agency, the INS) for decades. | 151. *Id.* |
| 152.  Through the working relationship between the LASD and ICE, which includes daily communication, the LASD has a basic understanding of | 152. *Id.* |

| | |
|---|---|
| ICE's requirements for issuing detainers, and the practices they follow for doing so. | |
| 153. The LASD's knowledge of ICE processes and requirements for issuing immigration detainers includes a requirement that ICE agents must have probable cause to believe that a subject inmate is a removable alien. | 153. *Id.* |
| 154. If LASD personnel (including the personnel assigned to IRC who liaison with ICE) believed that ICE lacked probable cause to issue a detainer, the LASD will not (and would not have) honor the detainer or allow ICE to take custody of the subject inmate. | 154. *Id.* |
| **IMPACT OF PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF.** | |
| 155. Injunctive relief would frustrate the LASD's ability to provide safe and effective law enforcement services to the County of Los Angeles and its residents. | 155. *See*, Declaration of Chief Joanne Sharp, ¶ 5. |
| 156. Existing California law – namely, the TRUST and TRUTH Acts, already provide significant protections to persons subject to immigration detainers. | 156. *Id.* at ¶ 6. |
| 157. Prohibiting cooperation between ICE and LASD would be detrimental to public safety and would erode the public's trust and confidence in the LASD. | 157. *Id.* at ¶ 7. |
| 158. A blanket prohibition of any cooperation between the LASD and ICE would increase the likelihood of a significant expansion of the tracking | 158. *Id.* |

| | |
|---|---|
| and enforcement activities of ICE agents throughout the County. | |
| 159.  Such enforcement activities would lead to ICE's casting of a wide net over the County of Los Angeles and surrounding communities, which would, in turn, lead to ICE apprehending and detaining those not originally the target of enforcement priorities. | 159.  *Id.* |
| 160.  The likely result of these activities will be the significant and appreciable loss of trust and cooperation with local law enforcement by law-abiding members of the local community. | 160.  *Id.* |
| 161.  Prohibition of cooperation by the LASD with ICE will also prevent custody transfers between the LASD and ICE of persons subject to immigration detainers. | 161.  *Id.* at ¶ 8. |
| 162.  Custody transfers allow for a safe, efficient, and controlled process by which ICE takes custody of a person subject to an immigration detainer. | 162.  *Id.* |
| 163.  The LASD has no plans or intention to revert back to prior practices of holding inmates beyond their expected release date based on ICE holds. | 163.  *Id.* at ¶ 9. |
| 164.  The LASD has instituted policies and procedures that prohibit holding an inmate beyond their release date because of an immigration detainer. | 164.  *Id.* |

| THE EARLY RELEASE PROGRAM. | |
|---|---|
| 165.  Pursuant to an existing Court order in *Rutherford*, the Sheriff's Department is required to manage the jail system within court approved maximum population limits by discharging inmates according to priorities the Sheriff shall establish. | 165.  *See*, Sivard Decl., ¶ 4; see also, Exhibit "O" – May 24, 1988 Jail Management Plan and Order. |
| 166.  In order to comply with the Jail Management Plan and Order, and to alleviate over-crowding in the Los Angeles County jail system, the Sheriff's Department has implemented a variety of measures, one of which is a program wherein inmates are released before they have served 100% of the statutory sentence associated with their criminal conviction. | 166.  *Id*. |
| 167.  The so-called "Early Release Program" or "Percentage Release Program" has been in place since 2001. | 167.  *Id*. |
| 168.  Depending on inmate population levels, to alleviate over-crowding, the percentage of time that an inmate may serve has fluctuated over the years between as little as 10% to as high as 80%. | 168.  *Id*. |
| 169.  Inmate release dates are calculated by IRC personnel utilizing this percentage (and taking into account an inmate's good time/work time credits under California Penal Code § 4019). | 169.  *Id*. |

| | |
|---|---|
| 170.  All inmates, except inmates serving a state prison sentence under AB 109 (Public Safety Realignment), inmates classified as "M7"[1], or parole violators, are eligible for early release under *Rutherford*. | 170.  *Id*. |
| 171.  During the First Quarter of 2016 (covering April – June), inmates serving traditional county sentences (as opposed AB 109, M7, and parole violators) completed 70% of their court ordered sentences prior to release. | 171.  *Id*. at ¶6. |
| 172.  Due to conditions of overcrowding within the jail system, the percentage of time served was reduced incrementally to 30% by the end of the Second Quarter of 2016. | 172.  *Id*. |
| 173.  Inmates who were serving sentences for designated serious and/or violent offences (M7 charges) and those sentenced under Penal Code § 1170 (parole violators) served 100% of their sentences, minus any good time or work time credits earned. | 173.  *Id*. |
| 174.  At no time since October 2010 has the early release percentage ever been 100%. | 174.  *Id*. at ¶ 7. |
| 175.  For all inmates eligible for early release, even if they were detained beyond their expected release date because of an ICE detainer, a lawful basis to hold them in Los Angeles County jail still existed. | 175.  *Id*. |

---

[1] M7s are inmates who have designated serious and/or violent offenses or have notoriety in the community.

68

| 176. The expected release date for each inmate could have fluctuated during that inmate's incarceration based on the population levels in the jail and the adjustment of the percentage of time being served. | 176. *Id.* |
| --- | --- |

Dated: July 7, 2017

LAWRENCE BEACH ALLEN & CHOI, PC

By _____/s/  Justin W. Clark_____
     Justin W. Clark
     Attorneys for Defendants and
     Third Parties County of Los Angeles
     and Sheriff Leroy D. Baca