CHAD A. READLER
Acting Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
COLIN A. KISOR
Deputy Director
J. MAX WEINTRAUB
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
Tel.: (202) 305-7551
Fax: (202) 305-7000
Email: jacob.weintraub@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERARDO GONZALEZ, *et al.*, | Case No. CV12-9012 BRO(FFMx) |
| Plaintiffs, | Consolidated with: No. 2:13-cv-4416-BRO (FFMx) |
| v. | **DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND PARTIAL SUMMARY JUDGMENT** |
| IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, | |
| Defendants. | |
| _____ | DATE: Monday, August 28, 2017<br>TIME: 1:30 p.m.<br>JUDGE: Beverly Reid O'Connell<br>Courtroom: 7C |

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

I.    The jurisdiction-channeling provisions of 8 U.S.C. § 1252 mandate dismissal of Plaintiffs' claims..................................................................2

II.   The Court should grant judgment in favor of Defendants as to the Statutory Subclass, because ICE issues warrants with each detainer......5

III.  ICE does not violate the Fourth Amendment by relying on database searches in connection with probable cause determinations.....................8

CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

## CASE LAW

*Aguilar v. ICE*,
  510 F. 3d 1 (1st Cir. 2007) .................................................................................2, 5

*Bivens v. Six Unknown Fed. Narcotics Agents*,
  403 U.S. 388 (1971) ..............................................................................................5

*Dukes v. Wal–Mart, Inc.*,
  509 F.3d 1168 (9th Cir. 2007) .............................................................................12

*In re Apple iPhone Antitrust Litig.*,
  846 F.3d 313 (9th Cir. 2017) .................................................................................3

*In Re Joseph*,
  22 I. & N. Dec. 799 (BIA 1999) ............................................................................4

*J.E.F.M. v. Lynch*,
  837 F.3d. 1026 (9th Cir. 2016) ..........................................................................1, 2

*Martinez v. United States*,
  No. CV1306844SJOSHX, 2014 WL 12607839 (C.D. Cal. Mar. 17, 2014) ...........3

*Moreno v. Napolitano*,
  213 F.Supp.3d 999 (N.D. Ill. 2016) ...................................................................2, 6

*Moreno v. Napolitano*,
  Case No. 11-cv-5254 (N.D. Ill.) ............................................................................8

*Nadarajah v. Gonzalez*,
  443 F.3d 1069 (9th Cir. 2006) ...............................................................................3

*Nome Eskimo Community v. Babbitt*,
  67 F.3d 813 (9th Cir. 1995) ...................................................................................7

*Norman-Bloodsaw v. Lawrence Berkeley Lab.*,
  135 F.3d 1260 (9th Cir. 1998) ...............................................................................6

*Pub. Utilities Comm'n of State of Cal. v. F.E.R.C.*,
  100 F.3d 1451 (9th Cir. 1996) ...................................................................................7

*Reno v. Am.-Arab Anti-Discrimination Com.*,
  525 U.S. 471 (1999) ...................................................................................................4

*Singh v. Gonzalez*,
  499 F.3d 969 (9th Cir. 2007) .....................................................................................3

*Singh v. Holder*,
  638 F.3d 1196 (9th Cir. 2011) ...................................................................................3

*Sissoko v. Mukasey*,
  509 F.3d 947 (9th Cir. 2007) .....................................................................................4

*U.S. E.E.O.C. v. Republic Servs., Inc.*,
  640 F. Supp. 2d 1267 (D. Nev. 2009) .....................................................................12

*United States ex rel. Touhy v. Ragen*,
  340 U.S. 462 *(1951)* ................................................................................................11

*United States v. Henson*,
  123 F.3d 1226 (9th Cir. 1997) .................................................................................11

*United States v. Hoyos*,
  892 F.2d 1387 (9th Cir.1989) ....................................................................................9

*United States v. Kessler*,
  497 F.2d 277 (9th Cir. 1974) ...................................................................................14

*United States v. Ortiz-Hernandez*,
  427 F.3d 567 (9th Cir. 2005) .....................................................................................9

*United States v. Urbina-Mejia*,
  450 F.3d 838 (8th Cir. 2006) ...................................................................................10

*Valencia-Mejia v. United States*,
  No. CV 08-2943 CAS PJWX, 2008 WL 4286979 (C.D. Cal. Sept. 15, 2008) ......4

*Wang v. United States*,
  No. CV 10-0389 SVW (RCX), 2010 WL 11463156 (C.D. Cal. Aug. 18, 2010) ...4

**FEDERAL STATUES**

8 U.S.C. § 1252 .................................................................................... 1, 2, 3, 5

8 U.S.C. § 1252(a)(5) .......................................................................................2

8 U.S.C. § 1252(b)(9) ............................................................................ 2, 4, 5

8 U.S.C. § 1252(g) .......................................................................................2, 3

8 U.S.C. § 1357(a)(2) ............................................................................ 5, 7, 8

**FEDERAL REGULATIONS**

6 C.F.R. § 5.44(a) ..........................................................................................11

8 C.F.R. § 236.1(c)(8) .....................................................................................4

8 C.F.R. § 236.1(d)(1) .....................................................................................4

8 C.F.R. § 287.3(d) ..........................................................................................4

**FEDERAL RULES FOR CIVIL PROCUDURE**

Fed. R. Civ. P. 12(b)(1) ....................................................................... 2, 5, 15

Fed. R. Civ. P. 30(b)(6) ................................................................ 5, 6, 8, 9, *passim*

Fed. R. Civ. P. 56 ..........................................................................................15

Fed. R. Civ. P. 56(c)(2) .................................................................................11

**INTRODUCTION**

Plaintiffs argue that the jurisdiction channeling provisions of 8 U.S.C. § 1252 do not apply to this suit challenging U.S. Immigration and Customs Enforcement (ICE) policies and practices relating to immigration detainers because detention issues fall outside the scope of those provisions. In so arguing, Plaintiffs proffer that the Ninth Circuit's recent holding in *J.E.F.M. v. Lynch*, 837 F.3d. 1026 (9th Cir. 2016), does not apply here. The Court should not be swayed and should, instead, dismiss this action for lack of subject-matter jurisdiction.

Further, Plaintiffs continue to argue that the Government may not rely on the multiple computer databases it uses to help determine whether there is probable cause that an individual is a removable alien. They completely ignore any independent judgment or discretion that ICE officers exercise, instead repeatedly misstating that it is undisputed that issuing detainers is essentially an automated process. Because the ICE officers' exercise of independent judgment and discretion, when used in connection with searching a combination of databases, overcomes any concern about the reliability or completeness of any individual database, Defendants are entitled to summary judgment of the Probable Cause Subclass claims.

Additionally, Plaintiffs attempt to misguide the Court into believing that the practice of attaching administrative arrest warrants to detainers does not entitle Defendants to an award of summary judgment as to the Statutory Subclass.[1]

---

[1] Plaintiffs assert that "there are still thousands of Statutory Subclass members subject to detainers," without any supporting evidence. To the contrary, there is significant evidence that local law enforcement agencies (LEAs) are not honoring detainers at all – in that they are simply treating detainers as requests for notification that an individual is scheduled for release, rather than holding an individual beyond his otherwise release date. *See, e.g.*, ECF No. 272 at 11 (citing Los Angeles County Sheriff John L. Scott letter explaining that the Sheriff's Department was "not detaining inmates based on ICE issued civil warrants" and

Contrary to Plaintiffs' description, however, this practice is not some "last minute policy change" designed to avoid liability of these claims, but, rather, follows an order of a district judge that the Government opted not to appeal. The Court should, therefore, find that the policy is not subject to the "inherently transitory" or "voluntary cessation" exception to the mootness doctrine. The decision to submit nationally to a decision of a district court judge is not simply a voluntary choice to change policy. The *Moreno* court's decision applied to detainers issued by the ICE Chicago Field Office nationwide necessitating a national response. *See Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1002 (N.D. Ill. 2016). Accordingly, the Court should award summary judgment in favor of Defendants as to the claims of the Statutory Subclass.

## I. The jurisdiction-channeling provisions of 8 U.S.C. § 1252 mandate dismissal of Plaintiffs' claims.

In the face of congressional action to foreclose district court adjudication of claims that individuals could raise in removal proceedings through the jurisdiction channeling provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(a)(5), (b)(9), and (g), Plaintiffs argue that their "claims [] are independent of or collateral to the removal process" and that they "cannot be raised efficaciously within the administrative proceedings delineated in the INA." ECF No. 280 at 9 (citing *J.E.F.M.*, 837 F.3d at 1032; *Aguilar v. ICE*, 510 F. 3d 1, 11 (1st Cir. 2007)).[2] The arguments, however, fail to recognize the definitions that courts have applied to those terms.

---

not "detaining inmates up to 48 hours beyond their release date in order to facilitate transfer to ICE custody").

[2] Plaintiffs complain that "[f]our years into this litigation, and after partial summary adjudication on one claim, Defendants argue for the first time that this Court lacks subject matter jurisdiction under 8 U.S.C. § 1252." This concern is utterly meritless. As the Ninth Circuit has clarified, a "Rule 12(b)(1) motion to

2

In particular, the Ninth Circuit has defined "independent or collateral" claims very narrowly. As noted in Defendants' motion for summary judgment, the Ninth Circuit has excluded three categories of such claims: (i) a claim to ineffective assistance of counsel that "occurred *after* the issuance of the final order of removal," *Singh v. Gonzalez*, 499 F.3d 969, 979 (9th Cir. 2007) (explaining that such a claim necessarily could not have been brought before the IJ) (emphasis in original); (ii) a claim for unconstitutionally prolonged detention, *see Nadarajah v. Gonzalez*, 443 F.3d 1069, 1075-76 (9th Cir. 2006) (holding that challenge to five-year detention "without any established timeline for . . . when he may be released" following the grant of immigration relief could be brought in district court); and (iii) certain claims challenging bond determinations, *see Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("Although § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law").

Plaintiffs assert in their opposition that their claims are not barred by Section 1252 because the decision to detain an individual at issue here occurs *before* the decision to initiate removal proceedings. ECF No. 280 at 10-11. Moreover, without any support, they argue that it "makes no sense" that "a claim for unconstitutionally prolonged detention" should be independent of the removal process and may be raised in district court, but a claim stemming from "detention prior to the initiation of removal proceedings is not." *Id.* Courts, however, have not struggled with this distinction. *See, e.g.*, *Martinez v. United States,* No. CV1306844SJOSHX, 2014 WL 12607839, at *3 (C.D. Cal. Mar. 17, 2014) ("The Court is not persuaded by Plaintiff's argument that [8 U.S.C. § 1252(g)] only means 'commence' when the decision to commence proceedings is proven to have

---

dismiss for lack of subject matter jurisdiction . . . may be made at any time." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 319 (9th Cir. 2017).

been providently exercised.") (citing *Reno v. Am.-Arab Anti-Discrimination Com.*, 525 U.S. 471, 483-85 & n. 9 (1999)); *Wang v. United States*, No. CV 10-0389 SVW (RCX), 2010 WL 11463156, at *5 (C.D. Cal. Aug. 18, 2010) (detention "arises from" a decision to "commence proceedings, adjudicate cases, or execute removal proceedings") (citing *Sissoko v. Mukasey*, 509 F.3d 947 (9th Cir. 2007) ("Sissoko III") as "directly on point" for the principle that "plaintiff's detention clearly arose from the defendant's decision to commence expedited removal proceedings"); *Valencia-Mejia v. United States*, No. CV 08-2943 CAS PJWX, 2008 WL 4286979, at *4 (C.D. Cal. Sept. 15, 2008) ("the decision to detain plaintiff until his hearing before the Immigration Judge arose from this decision to commence proceedings").

 Moreover, in light of the provisions of 8 C.F.R. §§ 236.1(c)(8), (d)(1) and 287.3(d), especially when further viewing *In Re Joseph*, 22 I. & N. Dec. 799, 799 (BIA 1999), it is clear that detained individuals can request review of their custody even before the initiation of removal proceedings. Accordingly, Plaintiffs' argument that "the detention of class members – who, by definition, are not currently and, in many cases, will never be in removal proceedings – is more independent of the removal process than the detention of individuals who are being held pending removal proceedings or pursuant to a final removal order" (*see* ECF No. 280 at 11) must necessarily fail. Even those individuals whom ICE decides not to place into removal proceedings, Plaintiffs cannot plausibly dispute, are issued detainers *pursuant to the process* to determine whether to commence proceedings.

 Moreover, as the Supreme Court held in *Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 483-85, 8 U.S.C. § 1252(b)(9) channels "judicial review of all . . . decision and *actions leading up to or consequent upon final orders of deportation*," including "*non-final order[s],*" into one proceeding exclusively before a court of

4

appeals) (emphasis added).  Therefore, section 1252(b)(9) requires that this Court lacks subject-matter jurisdiction over an individual's detainer-related claims.  *See Aguilar*, 510 F.3d at 9, 11 ("[S]ection 1252(b)(9) is not limited to singular orders of removal," but "consolidate[s] 'all questions of law and act' that 'arise from' either an 'action' or a 'proceeding' brought in connection with the removal of an alien," and "channels federal court jurisdiction over 'such questions[]' to the courts of appeals" following "exhaustion of administrative procedures and the consolidation of claims for judicial review.").[3]

Because the various congressionally-mandated provisions of 8 U.S.C. § 1252 foreclose subject-matter jurisdiction over Plaintiffs' claims in this Court, Federal Rule of Civil Procedure 12(b)(1) mandates dismissal of the third amended complaint in its entirety.

## II. The Court should grant judgment in favor of Defendants as to the Statutory Subclass, because ICE issues warrants with each detainer.

Plaintiffs' Statutory Subclass seeks a declaration that their detainers were issued in violation of ICE's own statutory authority to make a warrantless arrest under 8 U.S.C. § 1357(a)(2), because ICE does not make an individualized determination that the individual is likely to escape before a warrant can be obtained.  ECF No. 247-1 at 25.  The undisputed evidence does not support this argument.  ICE 30(b)(6) designee James Hamm testified, for instance, that ICE officers engaged in an individualized flight risk assessment during the following exchange:

> Q. I want to know if a CAP officer at any point makes an assessment whether an individual who's going to be subject to a detainer presents a flight risk, whether the person is likely to escape?

---

[3] Individuals whom ICE releases without initiating removal proceedings are not stripped of any opportunity to seek redress for their claims of constitutional violations.  Such individuals have sought damages under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

5

|   |   |
|---|---|
| 1 | A Yes. |
| 2 | Q. Okay. How does the CAP officer make that determination? |
| 3 | A. It would depend. It would depend on the set of facts that are acquired |
| 4 | during the investigative – the electronic investigative process. You look |
| 5 | at the criminal history printout. The criminal history printout can |
| 6 | communicate there's a probability of this individual being a flight risk. |

Weintraub Decl., Ex. D, excerpts from the ICE Los Angeles Field Office 30(b)(6) deposition of James Anthony Hamm, taken on March 16, 2016, at 57-58.

Second, although they concede that ICE's nationwide policy requires that all detainers must now be accompanied by an administrative arrest warrant, Plaintiffs assert that their claims represent a live case or controversy because the new policy did not vacate or rescind the existing detainers. ECF No. 280 at 16. Plaintiffs further assert that the relevant mootness exception is "voluntary cessation," rather than "inherently transitory." *Id.* Regardless, neither exception applies.

According to Plaintiffs, only if government action "has made it absolutely clear that the wrongful behavior cannot reasonably be expected to recur and all the effects of the violation have been completely undone, is an equitable claim moot." ECF No. 280 at 17 (citing *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir. 1998)). Plaintiffs claim the policy does not meet the "cannot reasonably be expected to recur" prong because the policy states that it "may be modified, rescinded, or superseded at any time." *Id*. (citing AMF ¶154.) This argument, however, first ignores the fact that ICE developed the policy to comply with a district court decision the Government has not appealed. *See Moreno*, 213 F. Supp. 3d at 1002. In light of the Government's recognition of the significance of the district court decision, Plaintiffs stretch the definition of "reasonably be expected" when they argue that the voluntary cessation exception applies.

6

Moreover, the Ninth Circuit has clarified that for the exception to apply, "the defendant's voluntary cessation must have arisen because of the litigation." *Pub. Utilities Comm'n of State of Cal. v. F.E.R.C.*, 100 F.3d 1451, 1460 (9th Cir. 1996) (citing *Nome Eskimo Community v. Babbitt*, 67 F.3d 813, 816 (9th Cir. 1995)). It is beyond dispute that the *Moreno* litigation – and not this one – is the basis for the new policy. Accordingly, the Court cannot apply the voluntary cessation exception and should, instead, find Plaintiffs' Statutory Subclass claims moot. Accordingly, the Court should award summary judgment in favor of Defendants as to the Statutory Subclass claims.

Finally, Plaintiffs assert that the Statutory Subclass seeks "rescission of Subclass members' detainers and a declaration that Defendants' issuance of detainers against Subclass members without making an individualized determination that the individual is likely to escape before a warrant can be obtained for his arrest violates 8 U.S.C. § 1357(a)(2)." ECF No. 280 at 17 (citing ECF No. 96 at 13). They argue, consequently, that class members "remain subject to detainers issued without an administrative warrant, their claim for relief is as alive as it was the day this lawsuit was filed," because the new policy does not rescind the prior detainers. *Id.* While a class member remains in LEA custody, however, or, at least until the LEA holds him or her beyond his or her release date pursuant to an immigration detainer, Plaintiffs have conceded that ICE has not arrested that individual. *See*, ECF No. 219-1, Plaintiffs' Motion for Partial Summary Judgment, at 4 ("Being incarcerated based on an immigration detainer is a new seizure to which Fourth Amendment rights unquestionably apply.") (citations omitted). Rather, those individuals remain in LEA custody pursuant to their original arrest. Accordingly, the warrantless arrest provisions of 8 U.S.C. § 1357(a)(2) do not apply to the simple issuance of a detainer, but, instead, come into play when ICE takes custody of an individual pursuant to a detainer. And

7

when ICE assumes custody – as was the case prior to the implementation of the new policy – it presents the arrested individual with a warrant, such that, again, 8 U.S.C. § 1357(a)(2) is not applicable. *See* Weintraub Decl., Ex. A, excerpts of the deposition of ICE 30(b)(6) Witness Kerry Kaufman Dep. Tr. 118:13-120:5, *Moreno v. Napolitano*, Case No. 11-cv-5452 (N.D. Ill.) (noting, in particular, "One of the documents that is given to the individual upon him entering – he or she entering ICE custody is they will get a copy of a 200 and a 286. A 200 is an arrest warrant, a 286 is custody conditions. Everybody who comes into custody gets those two documents.").

Under the new policy, the evidence clarifies, every detainer is issued with an arrest warrant, and it is not reasonable to expect ICE to change that decision. Moreover, the evidence indicates that individuals issued detainers under the old policy are issued warrants upon their arrest by ICE. The Court should find, therefore, that Defendants are entitled to an award of summary judgment as to the Statutory Subclass claims.

### III. ICE does not violate the Fourth Amendment by relying on database searches in connection with probable cause determinations.

Responding to Defendants' argument that their use of database searches in connection with probable case determinations complies with the Fourth Amendment, Plaintiffs argue that "on their own, the specific electronic databases on which ICE relies are too incomplete and inaccurate to establish probable cause." ECF No. 280 at 18. This statement – true or not – imposes a greater burden on the Government than the Fourth Amendment assigns and ignores the fact that ICE officers do not base probable cause determinations solely on a search of a specific database. First, Plaintiffs would have this Court redefine the probable cause requirements to require more certainty than the Ninth Circuit has described. Law enforcement officers "may rely on the totality of facts available to them when determining whether probable cause exists to make an arrest." *United States v.*

8

1. *Ortiz-Hernandez*, 427 F.3d 567, 573 (9th Cir. 2005). The Ninth Circuit continued, recognizing a law enforcement tenet that Plaintiffs further ignore, that "[t]he experience and expertise of the officers involved in the investigation and arrest may be considered." *Id.* (citing *United States v. Hoyos*, 892 F.2d 1387, 1392 (9th Cir.1989), *overruled on other grounds by United States v. Ruiz*, 257 F.3d 1030 (9th Cir. 2001)). Plaintiffs consistently reject this aspect of the probable cause determination process, or, examined another way, they limit their Probable Cause Subclass claims to situations in which an ICE officer issues a detainer based solely on database searches, without exercising any discretion or judgment. This, as Defendants note in their Opposition to Plaintiffs' motion for partial summary judgment, is the "myth of an automated system." ECF No. 272 at 1.

    Instead, the evidence clarifies that ICE officers routinely use their law enforcement skills when issuing detainers. *See, e.g.*, Weintraub Decl., Ex. A, excerpts from the ICE Los Angeles Field Office 30(b)(6) deposition of James Anthony Hamm, taken on March 16, 2016, at 49-50 ("Every detainer that is issued by the PERC and if they're – those detainers that are issued by the PERC and they're on that seven-day list, they are vetted by the CAP officers that are at the Los Angeles County jail to make sure that it is a good detainer."); Weintraub Decl., Ex. C, excerpts from the ICE Headquarters 30(b)(6) deposition of Marc Rapp, taken on March 10, 2016, 187:14-188:1 (ICE officers "need to check the systems to gain the information that they need. So, for example, if they are going through their search protocol and they notice that the person has a naturalization certificate in CIS or in CLAIMS, they would then use that to determine that the person is a U.S. citizen. They would not then check necessarily CCDI to determine whether or not they have a passport. They've already – once they've made the determination as far as what their status is, they will not necessarily have to proceed on to check databases to confirm or reconfirm essentially what they've already gathered from

the systems."); Weintraub Decl., Ex. F, excerpts from the ICE PERC 30(b)(6) deposition of Daniel Schichel, taken March 4, 2016, 146:7-10 (an ICE officer "might check other databases. If – if they're looking in these databases and there's certain information, sure, they want – they want to go deeper and look at some other databases.").

    Second, even if there were a situation in which an ICE officer essentially turned off his or her discretion or judgment and relied solely on a search of the relevant databases, which the Defendants do not concede, the evidence does not support a finding that the databases are so inaccurate or incomplete that their use would preclude a determination of probable cause. ICE HQ 30(b)(6) designee Mark Rapp testified, for example, that he had no significant concern that the databases and the information that ICE officers relied upon was unreliable. *See* Weintraub Decl., Ex. B, excerpts from the ICE Headquarters 30(b)(6) deposition of Marc Rapp, taken on March 11, 2016, 105:11-22 (Q. I'm saying, do you have any significant concern that the databases and the information that that law enforcement specialist rely upon is unreliable? A. We rely on that information to conduct our job and go to great lengths to ensure that data is accurate and that the data causing concerns are identified and are addressed. Q. If you had concerns about that reliability you would not rely on the information, right? A. Correct.)

    Moreover, there is no undisputed statistical evidence suggesting that the databases lack reliability, on which the Court might base a finding for Plaintiffs. For example, the Eighth Circuit refused to invalidate an NCIC database search, despite evidence that over a five year period, the database was incorrect .5% of the time. *United States v. Urbina-Mejia*, 450 F.3d 838, 839 (8th Cir. 2006) ("the probabilities of a mistake in the Court's view are low here, with one instance out of two hundred, and that being not a fingerprint error, but a coming from some sort of an encoding or administrative error, so the Court is satisfied by more than a

10

preponderance of the evidence that this conviction applies to this defendant"). As Defendants note in their Opposition to Plaintiffs' motion for partial summary judgment, USCIS maintains more than 60 million A-files. ECF No. 272 at 14. To show an error rate of even .5%, therefore, Plaintiffs would need to demonstrate that CLAIMS or CIS contain errors relating to 300,000 A-files. Plaintiffs have proffered declarations[4] purporting to report that the systems are replete with errors (*See* ECF Nos. 286, 287, 288), but anecdotal evidence cannot serve to support such

---

[4] Defendants note that the Court should afford little weight to these Declarations and should, in fact, strike them in their entirety under Federal Rule of Civil Procedure 56(c)(2), which states that "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." First, Plaintiffs failed to follow the regulations in acquiring testimony from former employees of the Department of Homeland Security. *See* 6 C.F.R. § 5.44(a) ("No employee, or former employee, of the Department shall, in response to a demand or request, including in connection with any litigation, provide oral or written testimony by deposition, declaration, affidavit, or otherwise concerning any information acquired while such person is or was an employee of the Department as part of the performance of that person's official duties or by virtue of that person's official status, unless authorized to do so by the Office of the General Counsel, or as authorized in § 5.44(b)."); *see also United States v. Henson*, 123 F.3d 1226, 1237 (9th Cir. 1997) ("The Supreme Court has stated that a similar statute does not allow an agency to refuse to disclose information, it does allow an agency to choose who may disclose the information and the procedure to be followed for such disclosure.") (citing *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 469-70 (1951)), *overruling on other grounds recognized by United States v. Foster*, 165 F.3d 689, 692 n.5 (9th Cir. 1999). Second, not only did Plaintiffs fail to obtain the requisite authorization, but they failed to inform Defendants whatsoever that they intended to seek testimony of any former Government employee. Defendants complied with every discovery request and provided witnesses, including those whose testimony Plaintiffs sought under Federal Rule of Civil Procedure 30(b)(6). Plaintiffs, nonetheless, without any advance notice, and in violation of the Department's *Touhy* Regulations, proffer former Department counsel testimony in the form of Declarations. The Court should not permit Plaintiffs to flout federal regulations and the Federal Rules of Civil Procedure. See, further, Defendants' Objections, filed concurrently.

a finding.  See *U.S. E.E.O.C. v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267, 1319 (D. Nev. 2009) ("the Ninth Circuit considered the anecdotal and circumstantial evidence set forth in 120 declarations, *in addition* to the statistical evidence presented by the plaintiffs.  Indeed, the Ninth Circuit stated that '[c]ircumstantial and anecdotal evidence of discrimination is commonly used. . . to *bolster* statistical proof by bringing 'the cold numbers convincingly to life.'").  Neither of these cases represented a situation where no statistical evidence was presented and the anecdotal evidence alone was sufficient to withstand summary judgment.") (emphasis in the original, internal citations omitted) (citing *Dukes v. Wal–Mart, Inc.*, 509 F.3d 1168, 1182 (9th Cir. 2007)).

   The Court, further, should not be convinced by Plaintiffs' suggestion that the CIS and CLAIMS databases "are not designed to be comprehensive sources of immigration status information, rather they are meant to be pointer systems and case management systems that lead government users to a physical 'A-File,' a person's complete immigration file."  ECF No. 280 at 19-20.  The fact remains that ICE officers know how to access those databases, and the numerous other databases also searched, and how to use the information they contain "to provide the identity and the immigration status of that individual."  Weintraub Decl., Ex. B, excerpts from the ICE Headquarters 30(b)(6) deposition of Marc Rapp, taken on March 11, 2016, 75:8-77:8 (noting, for instance that an ICE officer would use CIS "[t]o determine whether or not the subject of the query has any applications pending or has been granted such as lawful permanent residency, U.S. Citizenship" and would use CLAIMS to search for "applications for benefits similar to the Central Index System," and explaining that "information there could indicate whether a person is a U.S. citizen, has a pending application for citizenship, and the same thing as far as lawful permanent residency or a pending application for lawful permanent residence or whether that person has actually applied to be a

sponsor for somebody else"). It should not matter whether the systems were designed with ICE detainers in mind – the fact remains they are useful tools to assist in the determination of probable cause of removability.

Moreover, the undisputed facts demonstrate – despite Plaintiffs' efforts to convince this Court to the contrary (*see* ECF No. 280 at 19-20 n.8) – that CIS and CLAIMS are not the only relevant databases ICE officers search in connection with their probable cause determinations. Plaintiffs posit, for instance, that NCIC and CLETS "cannot supply probable cause of alienage and removability" because they "are criminal databases, containing information about a person's arrests and convictions." *Id*. There is evidence, however, that NCIC, for instance, contains information on ICE's criminal warrants, which – even Plaintiffs cannot dispute – could supply probable cause. Weintraub Decl., Ex. C, excerpts from the ICE Headquarters 30(b)(6) deposition of Marc Rapp, taken on March 10, 2016, 185:11-16 ("essentially what ICE maintains in NCIC is criminal warrants for its criminal cases as well as cases on what's known as the immigration violator file, which is a file within NCIC that contains information on deported felons and immigration fugitives").

The Court should further reject Plaintiffs' efforts to negate the usefulness of the other databases ICE officers search. They dismiss out of hand the IDENT information and the TECS data, suggesting that IDENT cannot be a source of immigration status information and that TECS cannot assist because "[w]hether a person entered the country at one point on a visa, for example, does not convey what the person's immigration status is now." ECF No. 290 at 20 n.8. TECS, however, could, in fact, contain "information on entry and exit as well as other information as it relates to any potential ongoing criminal case with ICE or other federal law enforcement agencies." Weintraub Decl., Ex. C, excerpts from the ICE Headquarters 30(b)(6) deposition of Marc Rapp, taken on March 10, 2016, 187:6-

10. If TECS indicates a criminal prosecution for illegally entry, for instance, that information would properly form the basis for a determination of probable cause of removability.

Finally, Plaintiffs acknowledge that "ENFORCE (also known as EARM and EAGLE) is ICE's electronic booking application and only contains information about any ICE encounters with an individual, such as arrests, detentions, and apprehensions." ECF No. 280 at 20 n.8. Plaintiffs utterly ignore, however, the value such information can provide during the probable cause determination. An ICE officer gleaning from EARM that an individual had been arrested or apprehended for violating immigration laws would have probable cause to issue a detainer.

The officer need not acquire reasonable certainty of removability before issuing a detainer – the Constitution requires only probable cause. *See United States v. Kessler*, 497 F.2d 277, 278 (9th Cir. 1974) (noting that probable cause is a lesser standard for law enforcement activity, applied when reasonable certainty is not required). The Court should find that searching the relevant databases can form the basis for the determination of probable cause. Plaintiffs cannot show that it is undisputed that ICE officers base their probable cause determinations *solely* on database searches, and the evidence demonstrates time and again that, instead, officers rely on the databases in connection with their experience, judgment, and discretion. Moreover, the undisputed facts support a finding that ICE officers can overcome discreet errors in database searches by searching multiple databases for each individual's information, and where conflicting information remains, ICE officers conduct an in-person interview. Accordingly, the Court should award summary judgment in favor of Defendants on Plaintiffs' Probable Cause Subclass claims.

## CONCLUSION

This Court should dismiss Plaintiffs' third amended complaint in its entirety under Federal Rule of Civil Procedure 12(b)(1), because it lacks subject-matter jurisdiction to review Plaintiffs' claims.  In the alternative, the Court should grant Defendants' motion for summary judgment on Plaintiffs' Statutory Subclass and Probable Cause Subclass claims under Federal Rule of Civil Procedure 56.

DATED:  July 21, 2017                    Respectfully Submitted,

CHAD A. READLER
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director

COLIN A. KISOR
Deputy Director

*/s/ J. Max Weintraub*
J. MAX WEINTRAUB, VSB 36188
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 305-7551, Fax: (202) 305-7000
Email: jacob.weintraub@usdoj.gov

Counsel for Defendants

15