PETER J. ELIASBERG SBN 189110
  *peliasberg@aclusocal.org*
AHILAN ARULANANTHAM SBN 237841
  *aarulanantham@aclusocal.org*
PETER BIBRING SBN 223981
  *pbibring@aclusocal.org*
JENNIFER PASQUARELLA SBN 263241
  *jpasquarella@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
Phone:  (213) 977-9500
Facsimile:  (213) 977-5299

Attorneys for Plaintiffs
(continued on next page)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUNCAN ROY; et al.,<br>　　　　Plaintiffs,<br>　　vs.<br>LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; et al.,<br>　　　　Defendants.<br><br>GERARDO GONZALEZ; et al.,<br>　　　　Plaintiffs,<br>vs.<br>IMMIGRATION AND CUSTOMS ENFORCEMENT; et al.,<br>　　　　Defendants. | Case No. CV 12-09012 BRO (FFMx)<br>Consolidated with:<br>Case No. CV 13-04416 BRO (FFMx)<br><br>Honorable Beverly Reid O'Connell<br><br>**GONZALEZ PLAINTIFFS' REPLY IN SUPPORT OF THEIR SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>DATE: August 28, 2017<br>TIME:　1:30pm<br>Ctrm:　14<br><br>Oral Argument Requested |

BARRETT S. LITT SBN 45527
 blitt@kmbllaw.com
LINDSAY B. BATTLES SBN 262862
 lbattles@kmbllaw.com
KAYE, MCLANE, BEDNARSKI, & LITT
234 E. Colorado Boulevard
Pasadena, California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

OMAR C. JADWAT, *pro hac vice*   ojadwat@aclu.org
SPENCER E. W. AMDUR, *pro hac vice* samdur@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
 IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 549-2660

CECILLIA D. WANG SBN 187782
 cwang@aclu.org
CODY H. WOFSY, SBN 294179
 cwofsy@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 343-0775

CHRIS NEWMAN SBN 255616
 newman@ndlon.org
JESSICA KARP BANSAL SBN 277347
 jbansal@ndlon.org
NATIONAL DAY LABOR ORGANIZING NETWORK
675 S. Park View Street, Suite B
Los Angeles, California 90057
Telephone: (213) 380-2785
Facsimile: (213) 380-2787

MARK M. FLEMING, *pro hac vice*
 mfleming@heartlandalliance.org
NATIONAL IMMIGRANT JUSTICE CENTER
208 S. LaSalle Street, Suite 1300
Chicago, IL 60604
Telephone: (312) 660-1628
Facsimile: (312) 660-1505

## I. INTRODUCTION

Defendants have by turns conceded the key material facts in support of Plaintiffs' Probable Cause and Statutory Subclass claims and failed to provide any "significant probative evidence" to dispute them.[1] *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997), *as amended* (Apr. 11, 1997) ("Once the [moving party] has made a prima facie case for summary judgment, the defendant cannot rely on general denials; she must produce significant probative evidence that demonstrates that there is a genuine issue of material fact for trial."). Because there is no genuine dispute that ICE issues detainers based on grossly unreliable databases or that ICE issues detainers in excess of its statutory authority, this Court should grant Plaintiffs' Motion for Partial Summary Judgment.

## II. ARGUMENT

### A. The Probable Cause Subclass Is Entitled to Summary Judgment
#### 1. *ICE Admits "No Match" Detainers Lack Probable Cause*

There is no dispute that, when this lawsuit was filed, ICE's policy and practice was to issue detainers based on evidence of foreign birth and "no match," or no information, in federal immigration databases. *See* Pls' Reply to Defs' SGI ¶139. ICE admits it lacked probable cause when it issued detainers on this basis. *Id.* ¶141. Defendants' sole argument against summary judgment on this issue is that ICE changed its policy in June 2015 to no longer permit "foreign born no match" detainers. Dkt. 272 (Defs. Opp.) at 19-20. For reasons addressed by this Court on numerous occasions, however, Defendants' voluntary policy change does not moot this claim. *See, e.g.,* Dkt. 184 at 16-17, 41; *see also Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir. 1998). Accordingly, the Probable Cause Subclass is entitled to summary judgment on this issue.

---

[1] Together with this Reply, Plaintiffs submit their Reply to Defendants' Statements of Genuine Issues (Dkt. 272-1) (hereinafter Pls' Reply to Defs SGI) to aid the Court in assessing which key material facts must be treated as established.

### 2. *There is No Genuine Dispute that Detainers Issued on the Basis of Electronic Database Checks Lack Probable Cause*

Defendants admit that ICE issues detainers for a substantial number of individuals without performing any investigation other than database checks. *See* Pls' Reply to Defs' SGI ¶45; *see also id.* ¶3, 27, 35. The Probable Cause Subclass consists *solely* of these individuals. Defendants repeatedly attempt to obfuscate this fact by pointing to other investigative steps ICE sometimes takes in other cases, *see* Dkt. 272 at 2, 4, 13, but this Court should not be led astray: The Probable Cause Subclass does not include anyone who ICE has interviewed or who is subject to a removal order or ongoing removal proceedings. Thus, whether interviews, removal orders, and pending removal proceedings establish probable cause of removability is entirely irrelevant to Plaintiffs' Probable Cause Claim.

The issue presented by Probable Cause Subclass members is simple and discrete: are detainers issued to subclass members without any investigation *other than* database checks supported by probable cause? The answer turns entirely on whether the databases ICE uses are complete and reliable. *See* Dkt. 247-1 (Pls' MSJ) at 21-28; Dkt. 280 (Pls' Opp.) at 27-33. Because Defendants have failed to provide *any* evidence, let alone significant, probative evidence to dispute Plaintiffs' extensive evidence that the databases are, instead, grossly *in*complete and *un*reliable, this Court should grant summary judgment for the Probable Cause Subclass. *See Publ'g Clearing House, Inc.*, 104 F.3d at 1170; Fed. R. Civ. P. 56(c)(1).

### a. CIS and CLAIMS are Riddled with Errors, a Problem Other Databases Available to ICE do not Cure

Plaintiffs have produced overwhelming evidence that CIS and CLAIMS—databases on which ICE relies to issue detainers—are riddled with errors. *See* Pls' Reply to Defs' SGI ¶¶93-110; *see also* Dkt. 281 (Pls' Statement of Genuine Issues of Material Fact, Additional Material Facts) ¶¶112, 163-70; Dkt. 287 (Expert Decl. of Roxana C. Bacon) ¶¶9, 42; Dkt. 286 (Expert Decl. of Patricia M. Corrales)

¶¶15-27; Dkt. 288 (Expert Decl. of Rachel Winkler) ¶¶13-14, 22-26; Dkt. 283-1 (Decl. of Jennifer Poon). Defendants have put forth literally *no* evidence to rebut this fact. *See* Pls' Reply to Defs' SGI ¶¶ 93-110. Instead, they question the sufficiency of Plaintiffs' evidence by attempting to disavow the testimony of their *own* 30(b)(6) witness, Agent James Hamm, on the sole ground that it was not based on "research." *Id.* This argument is spurious. Defendants may not like that Agent Hamm described CIS and CLAIMS as "outdated," "antiquated," and "not updated appropriately," or that he estimated a 30% error rate for each database. Pls' Reply to Defs' SGI ¶¶ 94, 101-02. But this does not change the fact that Agent Hamm's testimony—whether based on formal research and statistics or simply his own personal knowledge and preparation—is presumed to be "complete, knowledgeable, and binding" on the agency. *Nevada Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1418 (D. Nev. 1995) (internal quotation marks omitted); *see also In re Third Party Subpoenas Issued to Rambus, Inc.,* 2014 WL 12616734, at *2 (N.D. Cal. Dec. 5, 2014) (holding that 30(b)(6) testimony is binding).

Agent Hamm's testimony would be devastating to Defendants' opposition even standing alone. But the record demonstrates that his assessment is corroborated by numerous government reports finding rampant errors in CIS and CLAIMS,[2] *see* Pls' Reply to Defs' SGI, ¶¶ 96-99; by complaints from a senior ICE official that CIS "frequently" contained outdated information that resulted in the

---

[2] Defendants question the significance of some of these reports based on their age. Pls' Reply to Defs' SGI at ¶¶96-97. But Defendants offer no *evidence* to dispute the continuing probative value of the reports. Indeed, as documented by their own discovery responses, neither ICE nor CIS has taken any steps to improve the databases' accuracy or perform regular quality control. *Id.* at ¶109. Given this, evidence of the databases' historical flaws is highly probative of their current reliability. Speculation that the databases could have magically improved cannot defeat summary judgment. *See, e.g., Nat'l Indus., Inc. v. Republic Nat. Life Ins. Co.,* 677 F.2d 1258, 1267 (9th Cir. 1982) (holding that "speculation and guesswork" are insufficient to defeat summary judgment).

placement of detainers on U.S. citizens, *id.* ¶¶105-06; by extensive examples of such erroneous detainers, Dkt. 283-1 (Decl. of Jennifer Poon); and by expert declarations explaining that, as a result of the inaccuracies and omissions in CIS and CLAIMS, DHS does not rely on them alone to determine immigration status when assessing eligibility for work or benefits, but instead combines them with other, more reliable sources of information like paper files and information obtained directly from individuals. Dkt. 281 (AMF) ¶112; Dkt. 288 (Winkler Decl.) ¶¶15-24. *At the very least*, this evidence makes out a prima facie case that CIS and CLAIMS are inaccurate. Because Defendants provide no evidence to dispute this fact, there is no genuine issue regarding the reliability of CIS and CLAIMS. See *Publ'g Clearing House, Inc.*, 104 F.3d at 1170; Fed. R. Civ. P. 56(c)(1).

      Faced with no way to dispute the rampant errors in CIS and CLAIMS, Defendants pin their opposition to Plaintiffs' Motion for Partial Summary Judgment on the assertion that those errors can be overcome by searching other databases.[3] The *only* evidence Defendants cite for this assertion are Agent Hamm's one-word, affirmative answers to two vague and leading questions posed by counsel for Los Angeles County. The questions, posed the day *after* Agent Hamm testified unequivocally that the only way to overcome errors in CIS and CLAIMS "is by looking at the [paper] alien file", Pls' Reply to Defs' SGI ¶103,[4] asked generally whether "it [is] accurate to say that that [errors in one database] can be overcome by the totality of the searches that are run before a detainer is issued?"

---

[3] Defendants also suggest that ICE does not issue detainers based on database searches if the databases return insufficient information. Dkt. 272 at 4, 13. But the only situation Defendants identify where ICE deems database information to be insufficient is in the case of foreign-born no matches. *See supra*, Pt. II.A.1. In other circumstances, ICE policy specifically provides that information in the databases it accesses *is* sufficient to issue a detainer. *See* Pls' Reply to Defs' SGI ¶¶70-71.

[4] The alien file is a paper file that is not reviewed by ICE agents issuing detainers based on electronic database searches. Pls' Reply to Defs' SGI ¶¶103-04.

4

*See id*. ¶¶94-99, 101-03, 109 (also citing Agent Hamm's affirmative response when asked, "an error in one of these systems would not prevent additional searches to be run in other systems to complete an investigation into whether or not probable cause exists as to an individual's removability from the United States; is that right?"). Los Angeles County Counsel abruptly ended the line of questioning after receiving affirmative responses and never sought (or was provided) any factual basis for Agent Hamm's answers. This vague, speculative and conclusory testimony, given following the opportunity to consult overnight with counsel, is patently insufficient to create a genuine dispute.[5] *See Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922, 934 (N.D. Cal. 2015) (holding that assertion that some of Defendants' stores "may not have in fact charged a markup" was "speculation" that did not create a disputed fact); *Nat'l Indus., Inc,* 677 F.2d at 1267 ("speculation and guesswork" insufficient to defeat summary judgment); *see also Publ'g Clearing House, Inc.*, 104 F.3d at 1171 ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

To the contrary, overwhelming evidence establishes that the errors in CIS and CLAIMS *are* not and *can*not be overcome by searching other databases. *See* Pls' Reply to Defs' SGI ¶103-04; *id*. ¶ 105-06 (describing CIS errors that resulted in

---

[5] To the extent Agent Hamm's testimony is understood to suggest that errors in CIS and CLAIMS are *actually* overcome by searching other databases, rather than simply to agree it is theoretically possible that errors in one database could be overcome by searching another, it directly contradicts his prior testimony as well as extensive documentary evidence, *see infra,* and is insufficient to create a genuine issue for that reason also. *See Vinewood Capital v. Dar Al-Maal Al-Islami Tr.*, 541 F. App'x 443, 447-48 (5th Cir. 2013) (unpublished) ("[U]ncorroborated self-serving testimony cannot prevent summary judgment, particularly if the overwhelming documentary evidence supports the opposite scenario."). *Cf. Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.") (internal quotation marks omitted).

5

erroneous placement of detainers); Dkt. 283-1 (Poon Decl.) (same); Dkt. 281 (AMF) ¶¶163-70 (expert opinion of former ICE and USCIS officials that, to reliably establish immigration status, electronic database checks must be combined with other sources of information, such as an interview or a review of the paper alien file). Indeed, ICE admits that agents are required to check only four databases before issuing detainers and, as illustrated by the following chart, CIS and CLAIMS are the only databases of those four—or indeed of any databases available to ICE—that provide information regarding current immigration status, naturalization or immigration benefits applications. *See* Pls' Reply to Defs' SGI ¶¶ 70-72, 82.

| Database | Must be Checked Before Issuing a Detainer? | Description | Includes Records of Current Immigration Status, Applications for Naturalization and/or Applications for Immigration Benefits? |
| --- | --- | --- | --- |
| CIS | Yes. *See* Pls' Reply to Defs' SGI ¶¶70-71. | USCIS database. Tracks location of paper case files and maintains information on immigration status, including the status of applications for immigration benefits. *See* Pls' Reply to Defs' SGI ¶74. | Yes, but inaccurate and incomplete. *See* Pls' Reply to Defs' SGI ¶¶83-138; Dkt. 281 (AMF) ¶¶ 112, 166-70; Dkt 286 (Corrales Decl.) ¶¶13-27; Dkt. 287 (Bacon Decl.) ¶8-42); Dkt. 288 (Winkler Decl.) ¶¶9-26; Dkt 283-1 (Poon Decl.). |
| CLAIMS | Yes. *See* Pls' Reply to Defs' SGI ¶¶70-71. | USCIS case management system. Contains information about applications for naturalization and immigration benefits. *See* Pls' Reply to Defs' SGI ¶¶76, 87. | Yes, but inaccurate and incomplete. *See* Pls' Reply to Defs' SGI ¶¶83-138; Dkt. 281 (AMF) ¶¶ 112, 166-70; Dkt 286 (Corrales Decl.) ¶¶13-27; Dkt. 287 (Bacon Decl.) ¶8- |

| | | | |
|---|---|---|---|
| | | | 42); Dkt. 288 (Winkler Decl.) ¶¶9-26; Dkt 283-1 (Poon Decl.). |
| Enforce/ Eagle/ EARM | Yes. *See* Pls' Reply to Defs' SGI ¶¶70-71. | ICE's electronic booking application. Contains records related to previous encounters, arrests, detentions, and removals carried out by ICE or CBP. *See* Pls' Reply to Defs' SGI ¶¶77-78. | No. Contains only records related to enforcement actions, not immigration benefits or naturalization applications. *See* Pls' Reply to Defs' SGI ¶¶ 77-78. |
| TECS | Yes. *See* Pls' Reply to Defs' SGI ¶¶70-71. | Contains criminal history information and information on non-immigrant admissions. *See* Pls' Reply to Defs' SGI ¶79; Dkt. 286 (Corrales Decl.) ¶8; Dkt. 288 (Winkler Decl.) ¶9. | No. Cannot be used to determine current immigration status. Contains no information about naturalization or benefits applications. *See* Pls' Reply to Defs' SGI ¶79; Dkt. 286 (Corrales Decl.) ¶8; Dkt. 288 (Winkler Decl.) ¶9. |
| IDENT | No. *See* Pls' Reply to Defs' SGI ¶¶70-71. | DHS's fingerprint repository. Contains fingerprints and limited biographic information for individuals previously fingerprinted by DHS. *See* Pls' Reply to Defs' SGI ¶23. | No. Contains no information on applications for naturalization or other immigration benefits. *See* Pls' Reply to Defs' SGI ¶23. Does not reliably contain fingerprints for individuals encountered by ICE, CBP, or USCIS prior to 2010. *See* Pls' Reply to Defs' SGI ¶91-92. |
| NCIC | No. (*See* Pls' Reply to Defs' | National criminal records data system administered by the Federal Bureau of Investigation. | No. Contains criminal history information, not immigration status |

7

| | | | |
|---|---|---|---|
| | SGI ¶¶70-71.) | Contains criminal history information, including outstanding warrants. *See Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 923 (9th Cir.2001) (citation omitted). | information. |
| CLETS | No. (*See* Pls' Reply to Defs' SGI ¶¶70-71.) | Law enforcement telecommunications system for the State of California. Reports criminal history information. *See People v. McBride*, No. B230044, 2012 WL 1499318, at *1 n.4 (Cal. Ct. App. Apr. 30, 2012). | No. Contains criminal history information, not immigration status information. |

Without accurate information regarding whether a person has naturalized, been granted an immigrant visa, or otherwise obtained lawful immigration status, it is simply impossible to assess whether he or she may be removable. Because there is no genuine dispute that the databases on which ICE relies either fail to provide this information at all or (in the case of CIS and CLAIMS) are riddled with errors, this Court should grant summary judgment for the Probable Cause Subclass.

          a.  <u>The Databases Fail to Capture Whole Categories of Necessary Information</u>

To be reliable, the information in a database must be not only accurate, but also complete in relevant respects. For example, it would be unreasonable to assume an individual was on parole based on a database that accurately identified one-time parolees by name, but failed to state the duration of their parole terms. *See Willis v. Mullins*, 517 F. Supp. 2d 1206, 1226 (E.D. Cal. 2007), *aff'd sub nom. Willis v. Mora*, 314 F. App'x 68 (9th Cir. 2009). There is no genuine dispute that the databases ICE uses to issue detainers contain equally significant gaps in information.

Defendants admit that no database contains complete information about whether a foreign-born U.S. citizen has derived citizenship—a situation that applies to over four million people. Pls' Reply to Defs' SGI ¶¶126-27. Defendants

further admit that the government did not begin electronically uploading naturalization information into any database until the mid-1990s and that digitization of fingerprints and applications for naturalization and other immigration benefits did not become consistent until 2010. *Id.* ¶¶91-92. As a result, people who had contact with the immigration system before the mid-1990s, including people who became citizens, do not appear in any electronic database and pre-2010 records cannot be reliably located based on fingerprints. *Id.* Defendants also fail to provide any significant probative evidence to dispute that numerous indicia of citizenship are not contained in its databases or that its records of individuals who became naturalized citizens in the 1990s and before are woefully incomplete. *Id.* ¶¶89-90, 135-36. Further, "there are entire categories of immigration status that cannot be detected through electronic database checks." Dkt. 287 (Bacon Decl.) ¶¶15-40. These gaps in the databases mean that, by design, the databases "generate[] false positives of a specific category"—that is, false findings of removability for derivative and naturalized citizens, as well as numerous categories of non-removable non-citizens. *Willis*, 517 F. Supp. 2d at 1225-26. As such, they "may not be reasonably relied upon [to establish probable cause]." *Id.* The databases' missing information provides an additional reason, entirely separate from the inaccuracies of the information they *do* contain, to grant summary judgment for the Probable Cause Subclass.

### B. The Statutory Subclass Is Entitled to Summary Judgment

Defendants oppose Plaintiffs' Motion for Partial Summary Judgment on their Statutory Claim solely on the ground that the claim is moot but they fail to meet their "heavy burden" to establish mootness.[6] *Norman-Bloodsaw*, 135 F.3d at 1274. As an initial matter, Defendants have not shown that the new policy has

---

[6] Defendants also apply the wrong legal doctrine in asserting mootness. *See* Dkt. 272 at 11-12 (discussing inherently transitory mootness doctrine); Dkt. 280 at 24-25 (explaining that it is the voluntary cessation doctrine that governs here).

9

"completely and irrevocably eradicated the effects" of their previous policy, because detainers issued under the previous policy remain in effect. *Id.* at 1275. *See also* Dkt. 247-1 at 31.[7] Defendants' only argument for why their last-minute policy change is sufficiently binding to moot Plaintiffs' claims is that it is "based on a judicial decision [in *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1007 (N.D. Ill. 2016)] that the Government has accepted as binding, *at least in one district*." Dkt. 272 at 11 (emphasis added). This is meaningless, because the instant litigation is not in the "one district" where Defendants purportedly accept the authority of *Moreno*. Moreover, the language of the policy itself expressly belies any suggestion that it is binding. *See* Dkt. 247-1 at 30-32. And even under the new detainer policy, ICE concedes that the local law enforcement's arrest is not, and cannot be, based on the administrative warrant. Pls' Reply to Defs' SGI ¶160. Accordingly there is nothing to distinguish this latest policy change from the numerous previous policy changes that this Court has already determined do not

---

[7] Contrary to Defendants assertion, Dkt. 272 at 11-12, it is Defendants' burden to prove their implausible suggestion that no detainers issued under the previous policy remain in effect, not Plaintiffs' burden to disprove it. *Norman-Bloodsaw*, 135 F.3d at 1274. In any event, evidence in this case shows that class members are often subject to detainers for months or even years. *See* Dkt. 173, Exh. A (email stating that, as of May 2014, there were over 100 inmates in LASD custody who were still subject to detainers issued prior to November 2012). Defendants' new policy went into effect only in April 2017, so there are clearly still class members subject to detainers issued under the old policy. Further, Defendants' suggestion that no detainers have been honored since the effective date of the California TRUST Act, *see* Dkt. 272 at 12—which limits, rather than prohibits, compliance with detainers, *see* Cal. Gov. Code § 7282.5, and which applies only in California, not in any of the other dozens of states where class members are detained, *see* Pls' Reply to Defs' SGI ¶34—is flatly contradicted by the evidence and represents a disingenuous attempt to resurrect mootness arguments that this Court previously rejected. *See* Dkt. 173 (Pasquarella Declaration) ¶4 (of the 1,697 detainers issued by ICE agents in the Central District of California in January 2016, ICE identified only 14 as being declined by law enforcement agencies); Dkt. 172 at 6-7; Dkt. 184 at 16-17, 41.

moot Plaintiffs' claims. *See* Dkt. 184 at 16-17, 41.

## III. CONCLUSION

For the reasons described above, this Court should grant summary judgment for the Probable Cause and Statutory Subclasses.

Dated: July 21, 2017     ACLU OF SOUTHERN CALIFORNIA

By    /s/ Jennifer Pasquarella
       Jennifer Pasquarella
       Attorney for Plaintiffs