PAUL B. BEACH, State Bar No. 166265
pbeach@lbaclaw.com
JIN S. CHOI, State Bar No. 180270
jchoi@lbaclaw.com
JUSTIN W. CLARK, State Bar No. 235477
jclark@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, California  91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendants
County of Los Angeles and Sheriff Leroy D. Baca

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUNCAN ROY; et al., | Case No. CV 12-09012 BRO (FFMx) |
| Plaintiffs, | Honorable Beverly Reid O'Connell |
| vs. | **DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| COUNTY OF LOS ANGELES; et al., | |
| Defendants. | |
| GERARDO GONZALEZ; et al., | [*Supplemental Declaration of Greg Sivard, Request for Judicial Notice, and Evidentiary Objections filed concurrently herewith*] |
| Plaintiffs, | |
| vs. | |
| IMMIGRATION AND CUSTOMS ENFORCEMENT, an entity; et al., | Date:  August 28, 2017<br>Time:  1:30 p.m.<br>Crtm:  7C |
| Defendants. | |

TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR

COUNSEL OF RECORD:

///

1

1  Defendants County of Los Angeles Sheriff Leroy D. Baca hereby submit
2  the following Reply Memorandum of Points and Authorities, Supplemental
3  Declaration of Greg Sivard, Evidentiary Objections and Request for Judicial
4  Notice in support of Defendants' Motion for Summary Judgment.

5

6  Dated:  July 21, 2017                    LAWRENCE BEACH ALLEN & CHOI, PC

7

8                                    By _____/s/  Justin W. Clark_____
9                                        Justin W. Clark
10                                       Attorneys for Defendants
                                         County of Los Angeles and
11                                       Sheriff Leroy D. Baca
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES.........................................1

I.  THE ONLY DAMAGES CLASS REPRESENTATIVE HAS NO
ACTIONABLE CLAIMS. ..........................................................................1

II. THIS COURT'S RULING THAT "THE FOURTH AMENDMENT
DOES NOT REQUIRE JUDICIAL REVIEW OF ICE OFFICERS'
PROBABLE CAUSE DETERMINATIONS" BARS PLAINTIFFS'
FOURTH AMENDMENT CLAIM HERE. ...............................................1

III. PLAINTIFFS' STATE LAW CLAIMS ARE BARRED BECAUSE
THEY ADMIT THAT THE CHALLENGED LASD POLICIES
ARE DISCRETIONARY UNDER GOVERNMENT CODE § 820.2.........3

IV. PLAINTIFFS' STATE LAW CLAIMS ARE ALSO BARRED BY
THE UNDISPUTED FACT THAT ICE REQUIRES PROBABLE
CAUSE TO ISSUE DETAINERS. ...............................................................6

V.  PLAINTIFFS' RIGHT-TO-POST-BAIL CLAIMS ARE BARRED
BY THE INCONTROVERTIBLE EVIDENCE OF LASD
POLICIES WHICH PLAINTIFFS HAVE FAILED TO REFUTE. ..........10

VI. PLAINTIFFS' CIVIL CODE § 52.1 CAUSES OF ACTION FAIL
ARE BARRED BY THE ABSENCE OF ANY ACTIONABLE
VIOLATIONS AND CONTROLLING CALIFORNIA CASE LAW.......12

VII. PLAINTIFFS' INJUNCTIVE RELIEF CLAIM FAILS BECAUSE
THE UNDISPUTED EVIDENCE ESTABLISHES THAT
INMATES WITH IMMIGRATION DETAINERS ARE NO
LONGER DETAINED BEYOND THE EXPIRATION OF THEIR
CRIMINAL SENTENCE. ...........................................................................14

VIII. CONCLUSION. ........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. City of Sacramento*,
   234 Cal.App.4th 41 (2015)................................................................13

*Buzayan v. City of Davis*,
   927 F.Supp.2d 893 (E.D. Cal. 2013)...............................................4

*City of Oklahoma City v. Tuttle*,
   471 U.S. 808 (1985)........................................................................11

*County of Riverside v. McLaughlin*,
   500 U.S. 44 (1991) ......................................................................1, 2

*Doe 1 v. City of Murrieta*,
   102 Cal.App.4th 899 (2002)............................................................5

*Doran v. Eckhold*,
   409 F.3d 958.................................................................................7, 8

*Garcia v. Harris Cty.*,
   2017 WL 2405330 (S.D. Tex. June 2, 2017) ...................................11

*Gerstein v. Pugh*,
   420 U.S. 103 (1975) ....................................................................1, 2

*Guzman v. County of Alameda*,
   2010 WL 3702652 (N.D. Cal. Sept. 16, 2010) .................................4

*Henreid v. Superior Court*,
   59 Cal.App.3d 552 (1976)...............................................................4

*Ingle v. Circuit City*,
   408 F.3d 592 (9th Cir. 2005)...........................................................2

*Julian v. Mission Community Hospital*,
   11 Cal.App.5th 360 (2017)............................................................12

*Liberal v. Estrada*,
   632 F.3d 1064 (9th Cir. 2011).........................................................4

*Lopez v. Southern Cal. Rapid Transit Dist.*,
    40 Cal.3d 780 (1985)................................................................5

*Lyall v. City of Los Angeles*,
    807 F.3d 1178 (9th Cir. 2015)................................................13

*Ma v. Ashcroft*,
    361 F.3d 553 (9th Cir. 2004)....................................................4

*Malott v. Placer County,*
    2016 WL 538462 (E.D. Cal. Feb. 11, 2016)...........................13

*McIndoe v. Huntington Ingalls Inc.*,
    817 F.3d 1170 (9th Cir. 2016)................................................14

*Mendoza v. United States Immigration & Customs, Enf't,*
    *849 F.3d 408 (8th Cir. 2017)*..................................................7

*Miranda-Olivares v. Clackamas County*,
    2014 WL 1414305 (D. Or. Apr. 11, 2014)................................6

*Morales v. Chadbourne, __ F.Supp.3d __,*
    *2017 WL 354292 (D. Rhode Island Jan. 24, 2017)*................8

*O'Toole v. Superior Court*,
    140 Cal.App.4th 488 (2006)..................................................12

*Pineda v. City of Houston*,
    291 F.3d 325 (5th Cir. 2002)................................................11

*Quezada v. City of Los Angeles*,
    222 Cal.App.4th 993 (2014)..................................................13

*R.W. Beck & Assocs. v. City & Borough of Sitka*,
    27 F.3d 1475 (9th Cir. 1994)................................................14

*Ronald S. v. County of San Diego*,
    16 Cal.App.4th 887 (1993)......................................................4

*Shoyoye v. County of Los Angeles*,
    203 Cal.App.4th 947 (2012)..................................................12

*Silver v. Brown*,

  63 Cal.2d 841 (1966).......................................................................................4

*Thomas v. Sacramento County*,

  2017 WL 550052 (E.D. Cal. Feb. 10, 2017) ......................................13

*United States v. Mayo,*

  *394 F.3d 1271 (9th Cir. 2005)* ...........................................................9

*United States v. Sutton,*

  *794 F.2d 1415 (9th Cir. 1986)* ...........................................................9

**Statutes**

Civil Code § 52.1…………………………………………………12, 13

Government Code § 815.2 (b)…………………………………………5

Government Code § 820.2………………………………………..3, 4, 5

Government Code § 820.6………………………………………….5, 6

Government Code § 844.6…………………………………………..6

**Other Authorities**

18B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d §

  4478, at 637–38 (2002) .......................................................................2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     THE ONLY DAMAGES CLASS REPRESENTATIVE HAS NO ACTIONABLE CLAIMS.

Plaintiff Martinez-Perez's federal claims fail because he did not have a constitutional right to a judicial determination of probable cause with respect to his immigration detainer, and his immigration history established probable cause of his removability.  (Defendants' Separate Statement of Facts ["SS"; Dkt 243-1].) Plaintiff's denial of right to post bail claims fail because he had no knowledge of his bail status and made no effort to post bail.  (SS 31-38.)  Plaintiff also does not dispute that his immigration history established probable cause of his removability. (SS 20-23.)  The invalidity of Plaintiff Martinez-Perez's claims leaves Plaintiffs without any class representative for any of their proposed damages classes, thereby warranting the grant of summary judgment in Defendants' favor and decertification of the damages classes.

## II.    THIS COURT'S RULING THAT "THE FOURTH AMENDMENT DOES NOT REQUIRE JUDICIAL REVIEW OF ICE OFFICERS' PROBABLE CAUSE DETERMINATIONS" BARS PLAINTIFFS' FOURTH AMENDMENT CLAIM HERE.

Plaintiffs contend that "[t]he County's liability for detaining members of the Post-48 Hour Gerstein class turns on whether the Fourth and Fourteenth Amendments require some probable cause review—judicial or otherwise—within 48 hours of arrest on a detainer."  (Dkt 278 at p. 6:6-9.)  This Court, however, has already answered this legal question.  On June 12, 2017, this Court entered an order granting partial summary judgment in *favor of ICE* as to Plaintiffs' Fourth Amendment claim based on the failure to provide judicial probable cause determinations within 48 hours of detention.  (Dkt 264.)

Specifically, this Court correctly rejected Plaintiffs' reliance on *Gerstein v. Pugh*, 420 U.S. 103 (1975) and *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) in contending that their Fourth Amendment rights had been violated by the absence of any judicial determination of probable cause for the ICE detainer-based

detainers, "thereby violating *County of Riverside*'s forty-eight hour judicial determination requirement." (Dkt 264 at p. 8.)  This Court further explained that the Supreme Court in *Gerstein* and *County of Riverside* did not address "the difference between the Fourth Amendment's requirements in a civil immigration proceeding compared to a criminal proceeding" and both cases "addressed whether third-party review of probable cause was required and the **timing of any such review in criminal cases**." *Id.* (emphasis added).  Ultimately, this Court held that the delegation of probable cause determinations (without corresponding judicial review) to ICE officers is not unconstitutional under the Fourth Amendment, in light of the deference which must be afforded the executive and legislative branches in the immigration arena and "the distinctions between the protections afforded in criminal cases rather than civil immigration proceedings". *Id.* at p. 18.  Because the facts were "entirely undisputed and the dispute is purely one of legal interpretation", this Court granted summary judgment in favor of ICE. *Id.* at p. 20.

This Court's recent order constitutes law of the case and necessarily trumps Plaintiffs' argument in opposing the instant motion as to Plaintiffs' claim that their Fourth Amendment rights were violated because they were held on immigration detainers for more than 48 hours without probable cause determinations.[1] *See Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (law of the case maintains "'consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'") (quoting 18B Wright, Miller & Cooper, Federal

---

[1] Plaintiffs' due process argument does not comport with their own allegations. (Dkt 278 at pp. 20:7-21:20.)  In their Second Amended Complaint (Dkt 125), Plaintiffs based their due process claim on the Defendants' refusal to allow them to post bail and detentions beyond their release dates "on the basis of the immigration hold" — these allegations mirror the allegations in support of their Fourth Amendment claim. (Dkt 125, ¶¶ 143-145.)  Therefore, Plaintiffs' due process claim is just as flawed as their Fourth Amendment claim, and raising arguments unrelated to their due process allegations do not help them avoid summary judgment.

1   *Practice and Procedure: Jurisdiction 2d § 4478, at 637–38 (2002)*); Dkt 278 at pp.

2   18:5-21:20.)  Accordingly, summary judgment should be entered in favor of the

3   County, as it was in favor of ICE.

### III.   PLAINTIFFS' STATE LAW CLAIMS ARE BARRED BECAUSE THEY ADMIT THAT THE CHALLENGED LASD POLICIES ARE DISCRETIONARY UNDER GOVERNMENT CODE § 820.2.

Plaintiffs do ***not*** dispute that LASD policies pertaining to immigration detainers are discretionary, within the meaning of Government Code § 820.2.  (Dkt 278 at pp. 24:4-25:4.)  While acknowledging that LASD supervisors "have discretionary immunity for promulgating unconstitutional policies concerning ICE detainers", they argue that "***jail staff implementing those same policy decisions*** is not entitled to such immunity."  (*Id.* at pp. 24:11-12, 25:3-4 (emphasis added).)[2]  Plaintiffs' fundamentally flawed argument grossly distorts the case law relating to ministerial and discretionary acts.  To avoid the consequences of the discretionary nature of the challenged LASD policies, Plaintiffs argue that any LASD employee assigned to perform purely administrative tasks related to the release of inmates with immigration detainers should be held personally liable (even though no such individuals are named in the operative pleading); and that the County should then be held liable for these employees' actions.  This approach would frankly lead to absurd results, while eviscerating the immunity provided by Government Code § 820.2.  In virtually every instance where an alleged violation arises from the implementation of a discretionary (and immune) policy, the subject entity would still be subject to civil liability (and related litigation) simply by the implementation of the discretionary

---

[2] In the opposition to Plaintiffs' motion for summary judgment, Defendants addressed the applicability of Government Code § 820.2, based on the discretionary decision-making processes attendant to the LASD's relationship with ICE and the handling of immigration detainers.  (*See* Dkt 273 at pp. 19:11-21:25; Dkt 277-1.) Those arguments and related evidence are incorporated herein by reference.

policy.  The immunity afforded to the underlying discretionary policy would, therefore, be rendered completely useless, and the statute itself meaningless.  *See Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004) ("statutory interpretations which would produce absurd results are to be avoided"); *Henreid v. Superior Court*, 59 Cal.App.3d 552, 558 (1976) (statutes must be interpreted "'to avoid absurd results or to give effect to manifest purposes that, in light of the statute's legislative history, appear from its provisions considered as a whole.'") (quoting *Silver v. Brown*, 63 Cal.2d 841, 845-46 (1966)).

Indeed, the fact that ministerial acts are necessary to implement a discretionary policy decision does not allow a plaintiff to circumvent § 820.2 immunity.  *See Buzayan v. City of Davis*, 927 F.Supp.2d 893, 906 (E.D. Cal. 2013) ("Therefore, the decision whether to perform an optional act like releasing the audiotapes is discretionary, even though the means by which to implement that decision may well be ministerial."); *see also Guzman v. County of Alameda*, 2010 WL 3702652, at *8 (N.D. Cal. Sept. 16, 2010) ("discretionary acts under section 820.2 are considered those acts which encompass basic policy decisions 'expressly entrusted' with the government entity") (citing *Ronald S. v. County of San Diego,* 16 Cal.App.4th 887, 897 (1993) ("imposing civil liability upon public servants when the decision turns out to be wrong [ ] would severely interfere with and surely impede the proper workings of the responsible social service department.").

Plaintiffs' reliance on cases where a police officer is denied § 820.2 immunity for false arrests is also entirely misplaced.  In those cases, an officer's decision to arrest (as opposed to any discretionary departmental policy) is the proximate cause for the alleged violation.  *See Liberal v. Estrada*, 632 F.3d 1064, 1085 (9th Cir. 2011) (§ 820.2 does not apply to false arrest claims "predicated on an officer's detaining a suspect without reasonable suspicion or probable cause").  Here, Plaintiffs' state law claims are necessarily predicated upon alleged illegality of the discretionary departmental policy of honoring ICE-issued immigration detainers, and

1   this policy alone.  The proximate cause of the alleged wrong is the discretionary

2   policy — not the jail staff member who happened to have been administratively

3   involved in the release process of a particular inmate with an immigration detainer.

4          Not surprisingly, Plaintiffs cite no authority for their flawed and

5   unprecedented interpretation of § 820.2.  The reason is simple - no such case law

6   exists.  Instead, they cite cases which are entirely inapposite.  *Lopez v. Southern Cal.*

7   *Rapid Transit Dist.*, 40 Cal.3d 780, 793-94 (1985) (§ 820.2 not applied to a bus

8   driver's failure to protect a passenger from a third party assault); *Doe 1 v. City of*

9   *Murrieta*, 102 Cal.App.4th 899, 912 (2002) (officers failed "to take protective

10  measure to deter sexual exploitation of plaintiffs").  Plaintiffs do not discuss the facts

11  of these cited cases because they clearly demonstrate the untenable nature of their

12  argument.  The low level County employees, upon whose shoulders Plaintiffs are

13  seeking to hang their state law claims, were simply carrying out the requirements of

14  the discretionary departmental policy enacted by their supervisors — a policy

15  consisting of measured decisions and deliberation which is immune from civil

16  liability under California law.  Moreover, the notion of subjecting the employees of a

17  paramilitary organization to civil liability for having carried out the requirements of a

18  discretionary departmental policy is in direct conflict with the important public

19  policy concerns served by § 820.2 immunity.

20         Plaintiffs' argument is also barred by Government Code § 820.6 which

21  provides in pertinent part:

22
23         "If a public employee acts in good faith, without malice, and
           under the apparent authority of an enactment that is
24         unconstitutional, invalid or inapplicable, he is not liable for an
           injury caused thereby except to the extent that he would have been
25         liable had the enactment been constitutional, valid and applicable."

26  Government Code § 820.6 provides immunity as described above to "public

27  employees," which is imputed to the entity employing that individual under

28  Government Code § 815.2(b) ("unless provided by statute, a public entity is not

5

liable for such injury if the employee is immune from liability").  Section 820.6, therefore, immunizes jail employees whose involvement is limited to the processing of releases of inmates with immigration detainers.  As in *Miranda-Olivares v. Clackamas County*, 2014 WL 1414305 at *7-8 (D. Or. Apr. 11, 2014) (granting summary judgment in favor of the county on the plaintiff's state law false imprisonment claim pursuant to an Oregon statute analogous to Government Code § 820.6), any such claims would be barred as a matter of law.[3]

## IV.   PLAINTIFFS' STATE LAW CLAIMS ARE ALSO BARRED BY THE UNDISPUTED FACT THAT ICE REQUIRES PROBABLE CAUSE TO ISSUE DETAINERS.

Plaintiffs have not and cannot dispute that throughout the relevant time period, ICE agents were required to establish probable cause of removability prior to issuing detainers to local law enforcement agencies, regardless of which version of the I-247 form was in use at the time.  (SS 84.)  Plaintiffs contend that this undisputed, material fact should be ignored because (1) the County was not authorized under state law to detain anyone on the basis of immigration detainers; and (2) ICE's probable cause determinations do not impute to the County.  Plaintiffs are wrong on both counts.

First, Plaintiffs' state law false imprisonment argument is based on a fundamentally flawed premise — that individuals with ICE-issued immigration detainers are subject to new arrests when they are detained for up to 48 hours.  Just as they do with their Fourth Amendment claim, Plaintiffs improperly conflate rules regarding criminal proceedings with immigration proceedings which are not criminal in nature.  Indeed, Plaintiffs argue and discuss at length as to how these detentions should be treated no differently from warrantless criminal arrests, subject to the requirements and restrictions imposed by state law on such criminal arrests.

---

[3] As argued in Defendants' opposition to Plaintiffs' motion for summary judgment, Plaintiffs' state law claims are also barred by Government Code §844.6.

6

This Court, however, has already ruled against the blanket application of criminal procedural rules to detentions arising from the issuance of immigration detainers.

Even if the detentions are treated as "new arrests" somehow subject to state rules governing criminal arrests, they are still lawful under state law because ICE has always required the attendant detainers to be issued only after the establishment of the probable cause of each person's removability. Moreover, the detentions were specifically authorized by 8 C.F.R. § 287.7. Indeed, if Plaintiffs' argument were adopted, the detention by any local enforcement agency of any individual, pursuant to an ICE-issued immigration detainer, would automatically constitute false imprisonment under state law. Plaintiffs are, therefore, improperly treating the subject detentions in County custody as if they involved the warrantless arrests of individuals outside of custody, i.e., in-the-field arrests. Such arrests are subject certain statutory requirements applicable to the warrantless arrests of persons who have committed public offenses. But such requirements are not triggered by the detentions of County Jail inmates whose releases are temporarily delayed because they are subject to ICE detainers based on probable cause of removability. Plaintiffs' argument is simply another variation of the same theme — their attempt to insert the square (criminal) peg into the civil immigration hole.[4]

Second, in arguing that ICE's probable cause determinations do not impute to the County, Plaintiffs virtually ignore the facts and holding in *Mendoza v. United States Immigration & Customs Enf't*, 849 F.3d 408 (8th Cir. 2017), where the Eighth Circuit affirmed the district court's granting of summary judgment in the defendants' favor because the **"County employees were entitled to rely on [the ICE agent]'s probable cause determination."** *Id.* at 419 (citing *Doran v.*

---

[4] ICE detainers are analogous to wants and holds issued by law enforcement agencies, which are not judicially reviewed, but do result in temporary detentions to allow for the transfer of an inmate into the custody of another agency. (*See* Suppl. Sivard Decl., ¶¶ 5-7.)

7

*Eckhold,* 409 F.3d 958, 965 ("the settled principle that law enforcement officers may rely on information provided by others in the law enforcement community, so long as the reliance is reasonable")) (emphasis added).  The Eighth Circuit held further that the County employees "reasonably relied" on the probable cause determination of the ICE agent, and therefore did not violate the plaintiff's constitutional rights.  *Id.* at 142-144*; see also Morales v. Chadbourne,* __ F.Supp.3d __, 2017 WL 354292, *15 (D. Rhode Island Jan. 24, 2017) (in 2009, the Rhode Island Department of Corrections and its Director reasonably concluded that ICE detainers were "valid, supported by probable cause and mandatory").

Moreover, Plaintiffs' argument that the collective information doctrine is inapplicable (with respect to ICE agents' probable cause determinations and the corresponding detainers sent to LASD personnel), cannot be reconciled with the fact that there has been, and continues to be, a daily working relationship and face-to-face interaction and communication between LASD and ICE personnel.  (SS 150 – 152; *see also,* Feroli Decl. ¶ 24.)  Plaintiffs seek to avoid the undisputed facts regarding the continuing working relationship between the LASD and ICE personnel (including those who have been and continue to work inside IRC on a daily basis, SS 118, 126, 131) by asserting that "custodial personnel who effectuated warrantless arrests pursuant to ICE detainers" did not communicate with the ICE agents who issued those detainers.[5](Dkt 278 at p. 16:9-11.)  This assertion has no merit since the undisputed evidence establishes the existence of daily interaction between LASD personnel and ICE personnel with respect to inmates that ICE intends to take into their custody.  Indeed, ICE agents working in IRC "inform the LASD that they intend to take an inmate into ICE custody," (SS 127-

---

[5] These "custodial personnel" are the same people who Plaintiffs improperly argue should be subject to civil liability for carrying out the tasks mandated by the discretionary LASD policies.

129) which triggers additional steps in the release process.  The suggestion that there is no communication between ICE and the LASD with respect detainers is simply false, and that the fact that a specific officer who issued a detainer may not be involved in that communication is irrelevant as discussed below.

Finally, the law is abundantly clear that that collective information doctrine clearly allows for multiple links in the chain of information leading to a subject action, meaning, even if the ICE agents in IRC did not physically issue a detainer for a particular inmate, but instead, only delivered it to LASD personnel, that fact would not defeat the knowledge imputed to the LASD of the existence of probable cause as to that individual's removability.[6]  *United States v. Sutton*, 794 F.2d 1415, 1426 (9th Cir. 1986) ("We look to the collective knowledge of all the officers involved in the criminal investigation although all of the information known to the law enforcement officers involved in the investigation is not communicated to the officer who actually makes the stop."); *United States v. Mayo*, 394 F.3d 1271, 1275 n. 7 (9th Cir. 2005) (collective knowledge of non-arresting officers justified arrest of suspect by another officer).

Thus, ICE's reliance on information contained in databases to establish probable cause of removability is constitutionally sound, and the Sheriff's Department's reliance upon ICE's procedures, in turn, is constitutionally sound. Moreover, the Sheriff's Department did not blindly rely upon ICE's detainers since the Sheriff's Department became familiar with the processes by which ICE agents established probable cause for a subject's removability prior to the issuance of detainers.  (SS 151-153.)  Indeed, ICE detainers believed to be lacking probable cause

---

[6] Plaintiffs have also made no effort to show, because they cannot, that the collective information doctrine would have no applicability, to all of the challenged detentions in their proposed classes.  Such incident-specific determinations cannot be made without examining the facts of each individual detention — which is yet another reason for decertification.

would not have been honored.  (SS 154.)  The undisputed evidence clearly establishes ICE's present and past policy and practice of mandating probable cause of removability for each detainer, thereby warranting summary judgment in favor of the County as to Plaintiffs' claims..[7]

## V.   PLAINTIFFS' RIGHT-TO-POST-BAIL CLAIMS ARE BARRED BY THE INCONTROVERTIBLE EVIDENCE OF LASD POLICIES WHICH PLAINTIFFS HAVE FAILED TO REFUTE.

Plaintiffs contend their right-to-post-bail claims are based on the bail class plaintiffs' "interest in release upon posting bail".  (Dkt 278 at p. 22:3-4.)  Yet, Plaintiffs do not dispute that Plaintiff Martinez-Perez never made any attempt to post bail.  (*See* SS 31-38.)  Plaintiffs also do not dispute, because they cannot, that LASD policy has always been to allow all inmates, including those with ICE detainers, to post bail.  (*See* SS 144.)  In support of their argument that there was a purported practice of prohibiting inmates with detainers from posting bail, Plaintiffs rely on a handful of declarations which are replete with evidentiary problems that strip them of any probative value.[8]

_____

[7] The undisputed facts regarding the consistent probable cause requirement for ICE's immigration detainers also bar the Fourth Amendment claim of the Investigative Detainer class.  Plaintiffs rely on two district court cases which are factually distinguishable.  Both *Morales v. Chadbourne*, 996 F.Supp.2d 19 (D.R.I. Feb. 12, 2014) and *Miranda-Olivares*, 2014 WL 1414305 (D. Oregon April 11, 2014) were individual 42 U.S.C. § 1983 actions, where the courts examined the facts specific to each plaintiff's immigration detainer and related local detention.  In neither case, did the court articulate a bright-line rule that a constitutional violation occurred every time that a local enforcement agency detained an individual due to an "investigative" immigration detainer.  Neither case involved class claims; nor was there evidence regarding ICE's long-established procedures and requirements for probable cause of removability for each detainer issued.  These cases, therefore, do not support Plaintiffs' overbroad argument that all local detentions pursuant to such detainers are necessarily unconstitutional.

[8] Not only are these declarations rife with evidentiary defects, they also only address the purported bail-related issues of individuals arrested between November 2011 and

In addition, Plaintiffs, themselves, point to evidence in the record that actually proves that numerous inmates subject to immigration detainers were able to post bail, and were released from County custody after doing so.  The actual number of inmates with detainers who posted bail (as compared to the total number of releases) is irrelevant, especially considering the unavoidable reality that inmates with detainers who elected to post bail would not have been released to the streets.  Instead, they would have been transferred to ICE custody before the expiration of their sentence on their state criminal charge(s).  This is a fact that Plaintiffs conveniently ignore, and yet it creates a plausible and indeed, logical reason why someone who was subject to a detainer would choose not to post bail, or why a bail bondsmen would refuse to post bail on their behalf.

The fact that inmates subject to detainers would not be released to the streets even if they posted bail is hardly the only factor that would lower the number of inmates with detainers posting bail.  Another reason is that inmates facing deportation proceedings often do not have the financial ability to post bail, and their family and associates may also be hesitant to interact with law enforcement, due to their own possible undocumented status.  Simply put, inmates with detainers are in a fundamentally different position, with respect to the actual benefits of posting bail, from inmates without detainers.  Plaintiffs completely ignore this undeniable

---

October 2012.  This small set of declarations from this narrow time period is insufficient, as a matter of law, to avoid summary judgment on the issue of whether the County had an actionable policy or practice of prohibiting inmates with detainers from posting bail.  *See, City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (*Monell* liability requires more than evidence isolated incidents of misconduct); *Garcia v. Harris Cty.*, 2017 WL 2405330, at *9 (S.D. Tex. June 2, 2017) ("the plaintiff must establish a widespread practice or custom by providing evidence of numerous similar incidents") (citing *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) ("Eleven incidents each ultimately offering equivocal evidence of compliance with the Fourth Amendment cannot support a pattern of illegality in one of the Nation's largest cities and police forces.")).

dichotomy in proffering an argument which is in direct conflict with the admissible evidence.  (Supp. Sivard Decl., 8.)

Finally, in addition to the fact that the record proves that inmates subject to immigration detainers were permitted to post bail (as dictated by LASD policy), Plaintiffs' arguments regarding how immigration detainers were coded in the LASD's computer systems miss the point entirely.  As explained in the Declaration of Greg Sivard, Plaintiffs have repeatedly conflated the "No Bail" designation associated with an immigration detainer to mean, essentially, that the inmate cannot post any bail at all.  This is simply not accurate.  In fact, as the evidence in the record proves, the "No Bail" designation for immigration detainers simply means that the detainer does not have a dollar amount attributed to it, unlike most criminal charges which are assigned a specific bail amount.  (SS 145; *see also*, Supp Sivard Decl. ¶ 9.)

## VI.   **PLAINTIFFS' CIVIL CODE § 52.1 CAUSES OF ACTION FAIL ARE BARRED BY THE ABSENCE OF ANY ACTIONABLE VIOLATIONS AND CONTROLLING CALIFORNIA CASE LAW.**

The statutory immunities discussed above necessarily bar Plaintiffs' claims under Civil Code § 52.1.  *O'Toole v. Superior Court*, 140 Cal.App.4th 488, 504 (2006) (claims brought under Civil Code § 52.1 are subject to statutory immunities from civil liability).  Moreover, Plaintiffs' continued reliance on the allegation that "Defendants falsely communicated to employees and agents that immigration holds authorized and required class members to be detained through entry of the hold in their computer system", in support of their Civil Code § 52.1 claims, cannot be reconciled with the most relevant and controlling California case law.

Recently, in *Julian v. Mission Community Hospital*, 11 Cal.App.5th 360 (2017), *as modified on denial of reh'g* (May 23, 2017), the California Court of Appeal reiterated the basic elements for Civil Code § 52.1 relief.

First, "'[a] defendant is liable [under the Bane Act] if he or she interfered with or attempted to interfere with the plaintiff's constitutional rights by the requisite

threats, intimidation, or coercion.'" *Id.* at 395 (quoting *Shoyoye v. County of Los Angeles*, 203 Cal.App.4th 947, 956 (2012)).

Second, the interference with the constitutional right must be "deliberate or spiteful" and the statute "'was intended to address only **egregious interferences with constitutional rights, not just any tort**.'" *Id.* at 395 (quoting *Shoyoye v. County of Los Angeles*, 203 Cal.App.4th at 959) (emphasis added).

Third, "where the plaintiff alleges wrongful detention, the statute requires a showing of ***threatening* conduct *independent* from the alleged wrongful detention**." *Id.* at 395 (emphasis added).  In *Julian*, the plaintiff alleged that the police had "'engaged in tactics to scare her'", in addition to alleging "actions necessary to detain [the plaintiff]". *Id.*  The Court of Appeal affirmed the granting of summary adjudication on this § 52.1 claim due to the plaintiff's failure to meet the pleading and evidentiary threshold established by *Allen v. City of Sacramento*, 234 Cal.App.4th 41, 69 (2015) ("we conclude a wrongful arrest or detention, without more, does not satisfy both elements of section 52.1"); *see also Thomas v. Sacramento County*, 2017 WL 550052, at *10 (E.D. Cal. Feb. 10, 2017) (plaintiff must allege "threats, intimidation, or coercion separate and apart from that which is inherent in a detention"); *Quezada v. City of Los Angeles*, 222 Cal.App.4th 993, 1008 (2014)) ("The coercion inherent in detention is insufficient to show a 52.1 violation.")); *Malott v. Placer County,* 2016 WL 538462 (E.D. Cal. Feb. 11, 2016)) (under *Lyall v. City of Los Angeles*, 807 F.3d 1178 (9th Cir. 2015) and *Allen*, "[a] plaintiff cannot attempt to satisfy two distinct elements by establishing only one, e.g., an unlawful or unconstitutional act.").

Here, Plaintiffs seek § 52.1 relief in conjunction with their claims for alleged untimely release and denial of their right to post bail.  Plaintiffs argue that "the LASD falsely recorded immigration detainers in its databases as mandatory holds" and these "data entries" constitute coercive acts required for § 52.1 relief.  (Dkt 278 at p. 25:6-12.)  Plaintiffs' argument fails because the "data entries" and the

13

1   challenged detentions are inextricably related, and anything but separate and

2   independent from each other.  This argument also cannot be reconciled with *Julian* in

3   which the California Court of Appeal made clear that the separate coercion or

4   threatening conduct cannot be actions which are "necessary" to the detention.  And

5   here, the alleged manner in which immigration detainers were recorded was an

6   integral component of the detentions (the alleged constitutional violation).  Thus, the

7   alleged "data entries" do not constitute any probative proof of threats, intimidation or

8   coercion with the required independence from the subject detentions.  Plaintiffs' § 52.1

9   52.1 claim, therefore, cannot survive summary judgment.

10  **VII.   PLAINTIFFS' INJUNCTIVE RELIEF CLAIM FAILS BECAUSE THE**
      **UNDISPUTED EVIDENCE ESTABLISHES THAT INMATES WITH**
11    **IMMIGRATION DETAINERS ARE NO LONGER DETAINED**
      **BEYOND THE EXPIRATION OF THEIR CRIMINAL SENTENCE.**
12

13         The undisputed evidence in the record establishes that since 2014, for more

14  than three (3) years, the Sheriff's Department has not detained inmates subject to

15  immigration detainers beyond the expiration of their criminal history.  (SS 137.)

16  Plaintiffs admit this fact is undisputed, and they do not cite any evidence to

17  controvert it. (*See*, Dkt 278 at p. 27:9 ["the LASD's policy did not change until

18  2014…"].)  Given this lack of any evidence to controvert this fact, Plaintiffs offer

19  only speculation and conjecture, and attempt to distract the Court by referencing the

20  current political climate surrounding immigration issues generally.

21         First, with respect to Plaintiffs' speculation that the Sheriff's Department

22  "could" revert back to prior practices, such speculation and conjecture is insufficient

23  as a matter of law to create a triable issue of fact.  *McIndoe v. Huntington Ingalls*

24  *Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) ("arguments based on conjecture or

25  speculation are insufficient...." to defeat summary judgment); *R.W. Beck & Assocs. v.*

26  *City & Borough of Sitka*, 27 F.3d 1475, 1481 (9th Cir. 1994) (arguments based on

27  conjecture or speculation are insufficient to raise a genuine issue of material fact).

28

Second, Plaintiffs' references to the current political climate surrounding immigration issues generally are a red herring. There is nothing in the record to even remotely suggest that the Sheriff's Department intends to revert back to prior practices, and in fact, there is ample evidence in the record to support a conclusion that reversion to prior practices is very unlikely. Indeed, the Sheriff's Department has instituted policies and procedures which ensure that inmates will not be detained beyond the expiration of their criminal sentence, as well as to ensure compliance with the TRUST and TRUTH Acts. (SS 130-133, 140, 143.)

Finally, Defendants' entitlement to summary judgment on Plaintiffs' claims for injunctive relief is supported by a recent decision by another Court in the Central District in *Amador v. Baca*, U.S.D.C. Case No. CV 10-1649 SVW (JEMx). In *Amador*, the Court found that plaintiffs claim for injunctive relief regarding strip search practices for post-arraignment female inmates in County jail was moot. *Amador*, Dkt. No. 311 – July 7, 2016 Order Granting Summary Judgment re Injunctive Relief Claims. The plaintiffs in *Amador* asserted the same arguments that Plaintiffs make here — that summary judgment should be denied because there is a *chance* the Sheriff's Department *could*, in the future, decide to revert to prior practices. The Court rejected their argument in granting summary judgment to the Sheriff's Department, and this Court should do the same.

Plaintiffs' speculation and conjecture do not preclude the dismissal of their injunctive relief claim which should not survive summary judgment.

## VIII. <u>CONCLUSION.</u>

For the forgoing reasons, Defendants respectfully submit that summary judgment be entered in favor of Defendant County of Los Angeles.

Dated: July 21, 2017                    LAWRENCE BEACH ALLEN & CHOI, PC


                                        By _____/s/  Justin W. Clark_____
                                             Justin W. Clark
                                             Attorneys for Defendants

15