PETER J. ELIASBERG, SBN 189110
 peliasberg@aclu-sc.org
AHILAN ARULANANTHAM, SBN 237841
PETER BIBRING, SBN 223981
JENNIFER PASQUARELLA, SBN 263241
 jpasquarella@aclu-sc.org
KATHERINE TRAVERSO, SBN 290559
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, California 90017
Phone: (213) 977-9500
Facsimile: (213) 977-5299

BARRETT S. LITT, SBN 45527
 blitt@kmbllaw.com
LINDSAY BATTLES, SBN 262862
 lbattles@kmbllaw.com
KAYE, MCLANE, BEDNARSKI & LITT
234 Colorado Boulevard, Suite. 230
Pasadena, California 91101
Telephone: (626) 844-7600 x112
Fax: (626) 844-7670

Attorneys for Plaintiffs
(continued on next page)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUNCAN ROY; *et al.*,<br><br>Plaintiffs,<br><br> vs.<br>COUNTY OF LOS ANGELES; *et al.*,<br><br>Defendants. | Case No. CV 12-09012 BRO (FFMx)<br>Consolidated with:<br>Case No. CV 13-04416 BRO (FFMx)<br><br>[Honorable Beverly Reid O'Connell]<br><br>REPLY RE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT<br><br>Date: August 28, 2017<br>Time: 1:30 p.m.<br>Courtroom: 7C |
| GERARDO GONZALEZ, *et al.*,<br> Plaintiffs,<br><br> vs.<br>IMMIGRATION AND CUSTOMS ENFORCEMENT, an entity; *et al.*,<br>Defendants. | |

CHRIS NEWMAN, SBN 255616
 newman@ndlon.org
JESSICA KARP BANSAL, SBN 277347
 jbansal@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
675 South Park View Street, Suite B
Los Angeles, California 90057
Telephone: (213) 380-2214
Facsimile: (213) 380-2787

OMAR C. JADWAT (pro hac vice)
ojadwat@aclu.org
SPENCER E. W. AMDUR (pro hac vice)
samdur@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th floor
New York, NY 10004
Telephone: (212) 549-2660

CECILLIA D. WANG, SBN 187782
cwang@aclu.org
CODY H. WOFSY, SBN 294179
cwofsy@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111

MARK M. FLEMING (pro hac vice)
mfleming@heartlandalliance.org
NATIONAL IMMIGRANT JUSTICE CENTER
208 S. LaSalle Street, Suite 1300
Chicago, IL 60604
Telephone: (312) 660-1628
Facsimile: (312) 660-1505

# TABLE OF CONTENTS

I.      Introduction ..................................................................................................1

II.     Argument......................................................................................................2

   A.   ICE's Probable Cause Determination Cannot Justify An Arrest by
        the LASD .................................................................................................3

      1. *The LASD Has Not Established that the Collective Knowledge Doctrine
         Applies*.................................................................................................3

      2. *Under California Law, the LASD Has No Arrest Authority for Civil
         Immigration Violations* ......................................................................3

   B.   Detentions Longer Than 48-Hrs Require Probable Cause Review ......7

   C.   Plaintiffs Are Entitled to Summary Judgment Under California
        Civil Code § 52.1 ...................................................................................10

   D.   Bail & No Money Bail Class ..................................................................11

      1. *Undisputed Evidence Establishes that the LASD Designated Immigration
         Holds as No Bail Holds*.......................................................................11

      2. *All No Money Bail Class Members Had a Protected Liberty Interest in
         Release on Zero Dollars Bail*.............................................................12

   E.   California Law Does Not Immunize The LASD's Conduct .................12

III.    Conclusion..................................................................................................14

i

1

# TABLE OF AUTHORITIES

2

**Cases**

3

4

*Arizona v. United States*,

5

    567 U.S. 387 (2012)...................................................................................7

6

*County of Los Angeles v. Superior Court*,

7

    102 Cal. App. 4th 627 (Cal. Ct. App. 2002)...........................................13

8

*Doe 1 v. City of Murrieta*,

9

    102 Cal.App.4th 899 (Cal. Ct. App. 2002)............................................13

10

*Flores v. City of Baldwin Park*,

11

    No. CV 14-9290-MWF JCX, 2015 WL 756877 (C.D. Cal. Feb. 23, 2015).......5, 6

12

*Galarza v. Szalcyk*,

13

    745 F.3d 634 (3d Cir. 2014) .........................................................passim

14

*Garcia v. Taylor*,

15

    40 F.3d 299 (9th Cir. 1994) ............................................................6

16

*Gerstein v. Pugh*,

17

    420 U.S. 103 (1975)......................................................................9

18

*Giddings v. Chandler*,

19

    979 F.2d 1104 (5th Cir.1992) .........................................................6

20

*Gillian v. City of San Marino*,

21

    147 Cal.App.4th 1033......................................................................13, 14

22

*Gonzales v. City of Peoria*,

23

    722 F.2d 468 (9th Cir. 1983) .........................................................4

24

*Johnson v. State of California*,

25

    69 Cal. 2d 782 (Cal. 1968).............................................................13

26

*Julian v. Mission Community Hospital*,

27

    2017 WL 1709611 (Cal. App., May 2, 2017) ....................................10

28

*Ker v. California*,
   374 U.S. 23 (1963)...........................................................................................4

*Lopez v. Southern Cal. Rapid Transit Dist.*,
   40 Cal.3d 780 (Cal. 1985)..........................................................................13

*Ma v. City and County of San Francisco*,
   95 Cal. App. 4th 488 (Cal. Ct. App. 2002).............................................14

*Mendoza v. ICE*,
   849 F.3d 408 (8th Cir. 2017) ......................................................................3

*Mercado v. Dallas County, Texas*,
   ---F.Supp.3d ---, 2017 WL 169102 (N.D.Tex. Jan. 17, 2017) ....................5, 13, 14

*Michigan v. DeFillippo*,
   443 U.S. 31 (1979)........................................................................................4

*Moore v. City & Cnty of San Francisco*,
   5 Cal. App. 3d 728 (1970) ........................................................................12

*Moreno v. Napolitano*,
   213 F.Supp.3d 999,at ..................................................................................7

*Moreno v. Town of Los Gatos*,
   267 F.App'x 665 (9th Cir. 2008) ..............................................................10

*Ogborn v. City of Lancaster*,
   *101 Cal. App. 4th 448 (Cal. Ct. App. 2002)* ...........................................13

*Orellana v. Nobles Cty.*,
   No. CV 15-3852 ADM/SER, 2017 WL 72397 (D. Minn. Jan. 6, 2017)................7

*People ex rel. Swenson v. Ponte*,
   994 N.Y.S.2d 841 (Sup. Ct. 2014)..............................................................4

*Perez v. City of Huntington Park*,
   7 Cal.App.4th 817 (Cal. Ct. App. 1992)..................................................13

*Riverside v. McLaughlin*,
   500 U.S. 44 (1991)..................................................................................1, 8

iii

*Roy v. Cty. of Los Angeles*,

    2015 WL 12582637 (C.D. Cal. Nov. 20, 2015) ...................................................... 10

*Santoyo v. U.S.*,

    ---F.Supp.3d ---, 2017 WL 2896021 at pp.  (W.D. Tex., June 5, 2017) ................ 3

*Shakespeare v. City of Pasadena*,

    40 Cal. Rptr. 863 (Cal. App. 2d Dist. 1964) ...................................................... 12

*U.S. v. Ramirez*,

    473 F.3d 1026 (9th Cir. 2007) ...................................................... 3

*United States v. Female Juvenile, A.F.S.*,

    377 F.3d 27 (1st Cir.2004) ...................................................... 6

*United States v. Uribe–Rios*,

    558 F.3d 347 (4th Cir.2009) ...................................................... 6

*Venegas v. Cty. Of L.A.*,

    32 Cal. 4th 820 (Cal. 2004) ...................................................... 10

*Villars v. Kubiatowski*,

    45 F.Supp.3d 791 (N.D. Ill. 2014) ..................................................5, 13, 14

**Statutes**

8 U.S.C. §1357(d) ...................................................... 7

Cal. Const., Art. 1, section 12 ...................................................... 12

Cal. Gov't. Code §820.6 ......................................................1, 12, 14

Cal. Penal Code §§ 1268, 1269b, 1295(a) ...................................................... 12

California Civil Code §52.110 ......................................................i, 2, 10

*Government Code §820.2* ......................................................13, 14

*Government Code §844.6* ...................................................... 14

Govt. Code §815.2 ...................................................... 13

Govt. Code §§815.2(a), 820(a) ...................................................... 13

Penal Code §847(b)(2) ...................................................... 4

§ 1357(d)§ 1357(d) ........................................................................7

**Regulations**

8 C.F.R. § 287.128 ........................................................................6

8 C.F.R. § 287.7 ..............................................................1, 6, 12, 14

8 C.F.R. § 287.7(a) ........................................................................6

8 C.F.R. § 287.12 ..........................................................................6

§ 287.7(d)§ 287.7(d) .......................................................5, 6, 12, 14

§287.7(d) .............................................................................1, 4, 5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The LASD does not dispute that it treated immigration detainers as mandatory holds, but insists the detentions were legal because ICE issued detainers based on probable cause of removability. This argument does not withstand scrutiny. It makes no difference whether ICE had probable cause of removability unless the LASD had affirmative authorization under California law to make warrantless arrests for civil immigration violations (as opposed to crimes). Because no such authority exists, arrests on immigration detainers were unlawful. Despite the County's contentions, 8 C.F.R. § 287.7 does not change this analysis. ICE **admits** that this regulation does not purport to authorize arrests by local law enforcement. Dkt. 272-1, DHS Opp. to Gonzalez-Plaintiffs' SSUMF, ¶64 (undisputed that "ICE has argued in this case that a detainer only requests that a law enforcement agency maintain custody, but does not purport to provide legal authority for the arrest."). At most, §287.7(d) authorizes ICE to *request* local law enforcement to hold persons. (And because § 287.7(d) does not purport to authorize arrests by local law enforcement, it cannot support immunity under Cal. Gov't. Code §820.6. Even if the LASD may rely on the apparent authority of a regulation, the regulation must at least purport to authorize the conduct at issue, which, in this case, it does not.)

The County acknowledges that it routinely held persons for more than 48 hours without a probable cause review, judicial or otherwise, even though it was aware that these persons received no probable cause review while in the LASD's custody and, in fact, did not receive a probable cause determination until 48 hours *after* ICE took custody. Such detentions were unconstitutionally lengthy under *Riverside v. McLaughlin*, 500 U.S. 44, 56, 57 (1991), which establishes an outer limit of 48 hours including weekends and holidays. There is no logical reason why this limit would be longer in the immigration detainer context, particularly because

1

probable cause review can almost always be conducted *before* the detainer even takes effect. Although the County insists otherwise, the Court's 6/12/17 decision in *Gonzalez* did not decide whether *Riverside*'s 48-hour rule applies to this context and does not dictate the outcome of the claims in this case.

Plaintiffs are entitled to summary judgment on their bail class claims and §52.1 claims. There is also no dispute that LASD personnel entered immigration detainers in AJIS as mandatory holds, excluding ICE-hold inmates from Alternatives to Custody Programs, including work release, electronic monitoring release, substance abuse treatment and mental health treatment. LASD's false characterization of ICE holds as mandatory holds within its electronic database systems constitutes independent coercion sufficient to establish liability under Civ. Code §52.1.  LASD personnel not only entered them as mandatory holds, but also assigned a "no bail" notation. This designation was otherwise used exclusively for warrants and holds that would actually preclude an inmate from posting bail. The no-bail notation communicated to LASD personnel and the public that arrestees with immigration detainers could not post-bail.

## II.  ARGUMENT

Defendants oppose summary judgment on the basis that immigration detainers were supported by probable cause of removability. This position reflects a significant mischaracterization of the evidence in this case. As explained in the *Gonzalez*-Plaintiffs' Motion for Partial Summary Adjudication against DHS (Dkt. 247-1), ICE routinely issues detainers that were unsupported by probable cause. *See also*, Dkt. 278 (Plaintiffs' Opposition to Defendants' Motion for Summary Judgment), pp. 15-17.

Regardless, the presence or absence of probable cause is not material to the liability issues in this case. Another agency's probable cause determination imputes to the LASD only where: (1) the collective knowledge doctrine applies; and (2) where the LASD has independent authority to make the arrest. Here, the LASD fails

2

to establish that the collective knowledge doctrine applied. Even if the doctrine could be applied, the arrests would be unlawful because the LASD lacks any state law authority to arrest persons for civil immigration violations.

### A. ICE'S PROBABLE CAUSE DETERMINATION CANNOT JUSTIFY AN ARREST BY THE LASD

#### 1. The LASD Has Not Established that the Collective Knowledge Doctrine Applies

As a preliminary matter, the collective knowledge doctrine requires *communication* or *cooperation* between the ICE personnel who issue the detainer and the LASD personnel who make the arrest. *Santoyo v. U.S.*, ---F.Supp.3d ---, 2017 WL 2896021 at pp. 12-13 (W.D. Tex., June 5, 2017) (emphasizing the absence of any evidence indicating the "identity of any individual within ICE [who] reached the probable cause determination, the information that formed the basis for that determination, or when it was reached"). No such cooperation or communication occurred in this case.[1] The collective knowledge doctrine also requires an "appropriate request or order," *U.S. v. Ramirez*, 473 F.3d 1026, 1037 (9th Cir. 2007), which did not exist in the case of investigative detainers, which facially disclaimed that ICE had acquired evidence to support probable cause of removability. *See* Plaintiffs' Motion for Summary Judgment, Dkt. 240, pp. 24, 25.

#### 2. Under California Law, the LASD Has No Arrest Authority for Civil Immigration Violations

---

[1] The lack of any communication between LASD and ICE distinguishes this case from *Mendoza v. ICE*, 849 F.3d 408 (8th Cir. 2017), on which the County relies heavily. *Mendoza*, 849 F.3d at 413–14 (describing communication between local officers and ICE and investigation by local officers). Instead, LASD's cooperation with ICE is more akin to that described in *Santoyo*, where the Court found the collective knowledge doctrine did not apply. *Santoyo v. U.S.*, ---F.Supp.3d ---, 2017 WL 2896021

1    Even if the collective knowledge doctrine applied, ICE's probable cause

2    determination cannot support an arrest that the LASD otherwise lacks authority to

3    make. There is no dispute that the LASD's authority to make warrantless arrests for

4    civil immigration violations hinges on state law. *Michigan v. DeFillipo*, 443 U.S.

5    31, 36 (1979); *Gonzales v. City of Peoria*, 722 F.2d 468, 475 (9th Cir. 1983) (even

6    where federal law authorizes local police to arrest for federal offense, the arrest is

7    lawful only insofar as state law grants affirmative authority for the arrest) (citing

8    *Ker v. California*, 374 U.S. 23, 37 (1963)) *overruled on other grounds by Hodgers-*

9    *Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999); *see also*, *People ex rel.*

10   *Swenson v. Ponte*, 994 N.Y.S.2d 841 (Sup. Ct. 2014) (holding that local police

11   cannot arrest defendant on immigration detainer because it exceeded arrest authority

12   under state law).

13   The County identifies no state law authorization to arrest persons for civil

14   immigration violations because no such authority exists. Instead, the County insists

15   that the detentions were "lawful *under state law*" because they were supported by

16   ICE's probable cause determination.  Dkt. 273, p. 13 (emphasis supplied). This

17   argument has no merit. Because arrest authority hinges on state law, ICE's probable

18   cause determinations could support an arrest by the LASD **only** if California law

19   provided LASD with authority to arrest for civil immigration violations, as opposed

20   to crimes.[2]

21   In the absence of state law authority, the County relies on 8 C.F.R. § 287.7(d).

22   Section 287.7(d), however, does not authorize detention under federal law. ICE has

23

24   _____

     [2] Defendants cursorily assert that Penal Code §847(b)(2) immunizes the LASD from

25   arrests supported by ICE's determination of probable cause of immunity. This argument

     lacks merit. Notwithstanding their assertion, §847(b)(2) immunizes arrests made pursuant

26   to "charge[s] made, upon reasonable cause, **of** the commission of a felony." Under

     California law, Defendants lack authority to make arrests based on suspected civil

27   immigration violations; California law requires probable cause of a crime.

28

admitted in this case that an immigration detainer does not purport to provide legal authority for an arrest. Dkt. 272-1, DHS Opp. to Gonzalez-Plaintiffs' SSUMF, ¶64 (undisputed that "ICE has argued in this case that a detainer only requests that a law enforcement agency maintain custody, but does not purport to provide legal authority for the arrest."); ¶162 (Defendants affirmatively state that "the detainer does not authorize, but merely requests, action by the LEA").[3] ICE's 30(b)(6) testified in this case that an immigration detainer issued pursuant to 287.7(d) does not authorize a law enforcement agency to continue to detain a person; rather, "that would be up to the individual law enforcement agency to determine what authority or right they have to hold an individual . . .". Dkt. 279, *Roy*-Plaintiffs' St. Genuine Disputes, AMF 103.

Federal courts have rejected the idea that § 287.7(d) authorizes detentions of any duration beyond the time an individual would otherwise be released. *See Villars v. Kubiatowski*, 45 F.Supp.3d 791, 807 (N.D. Ill. 2014) ("[N]owhere does [§ 287.7(d)] authorize the detention of an alien for 48 hours *after local custody over the detainee would otherwise end.*") (emphasis in original). Section 287.7(d) merely authorizes *ICE* to *request* detention on a detainer, leaving it up to the receiving agency to determine whether it has authority to detain the individual as a matter of discretion. *See, e.g.,* Galarza, 745 F.3d 634, 639–640 (3rd Cir. 2014) (holding that the plain language of § 287.7(d) "merely authorizes the issuance of detainers as *requests.*"); *see also, Mercado v. Dallas County, Texas*, ---F.Supp.3d ---, 2017 WL 169102, *6-9 (N.D.Tex. Jan. 17, 2017) (warrantless arrest by local law enforcement must be supported by probable cause of a *criminal* offense, not a civil immigration

---

[3] *Flores v. City of Baldwin Park*, No. CV 14-9290-MWF JCX, 2015 WL 756877, at *4 (C.D. Cal. Feb. 23, 2015) ("[F]ederal law leaves compliance with immigration holds wholly within the discretion of states and localities."); *Galarza v. Szalcyk*, 745 F.3d 634,

violation, absent direction or authorization by a federal statute or federal officials; no such authorization arose from detainer, which is a voluntary request under § 287.7).[4] Consistent with this interpretation, all versions of the I-247 form used since 2010 indicate that compliance is "requested," not mandatory, stating that "It is [] **requested** that you maintain custody of him/her…". Dkt. 275, p. 4, UMF 10 (2010 – 2015 forms state "it is requested"). The regulations themselves make clear that § 287.7(d) is intended only to provide "internal guidance" to DHS and "do[es] not, and [is] not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal"—including, necessarily, the right to make an arrest. 8 C.F.R. § 287.12.

Any other interpretation of § 287.7(d) is untenable. Interpreting § 287.7(d) to authorize detention on detainers would be inconsistent with the Immigration and Nationality Act (INA), which treats detainers not as requests for detention, but rather as mechanisms by which "[s]tate officials can . . . assist the Federal Government by responding to requests for information about when an alien will be

_____

640 (3d Cir. 2014) (discussing ICE policy statements and litigation statements dating back to 1994 construing ICE detainers as requests rather than mandatory).

[4] *See also, United States v. Uribe–Rios,* 558 F.3d 347, 350 n. 1 (4th Cir.2009) (defining detainers as a "request that another law enforcement agency temporarily detain an alien" to permit immigration officials to assume custody (citing 8 C.F.R. § 287.7)); *United States v. Female Juvenile, A.F.S.,* 377 F.3d 27, 35 (1st Cir.2004) (noting that a "detainer ... serves as a request that another law enforcement agency notify the INS before releasing an alien from detention" (citing 8 C.F.R. § 287.7(a))); *Giddings v. Chandler,* 979 F.2d 1104, 1105 n. 3 (5th Cir.1992) (describing the procedure under § 287.7 as "an informal [one] in which the INS informs prison officials that a person is subject to deportation and requests that officials give the INS notice of the person's death, impending release, or transfer to another institution")); *see also, Miranda-Olivares,* 2014 WL 141305, at *7 (quoting approvingly the legal analysis in *Garcia v. Taylor,* 40 F.3d 299, 303 (9th Cir. 1994), "We see nothing in the detainer [] that would allow, much less compel, the warden to do anything but release [a detainee] at the end of his term of imprisonment.").

released from their custody. *Arizona v. United States*, 567 U.S. 387, 410 (2012) (citing 8 U.S.C. §1357(d), the only provision of the INA that mentions detainers); *see also Galarza*, 745 F.3d at 641 ("[T]he Supreme Court has noted that § 1357(d) is a request for notice of a prisoner's release, not a command (or even a request) to LEAs to detain suspects on behalf of the federal government."); *Moreno v. Napolitano*, 213 F.Supp.3d 999, 1005 n.3 (explaining that "detainer' in the [Immigration and Nationality Act] simply means a request to a local law enforcement agency for information about an inmate's release date").

If the regulation were interpreted as an affirmative source of authority for detention on detainers, it would expand state and local civil immigration arrest authority well beyond the "limited circumstances in which [Congress has provided that] state officers may perform the functions of an immigration officer," and even beyond the arrest authority of ICE itself. *Arizona*, 567 U.S. at 408–09 (listing statutes authorizing state and local arrests for civil immigration offenses, none of which permit detaining a person on an immigration detainer); *id.* at 408 (holding unconstitutional state law that would "provide state officers even greater authority to arrest aliens on the basis of possible removability than Congress has given to trained federal immigration officers").[5]

### B. DETENTIONS LONGER THAN 48-HRS REQUIRE PROBABLE CAUSE REVIEW

---

[5] Indeed, federal courts have previously held counties liable for detaining individuals on immigration detainers because the detention was outside the limits of ICE's own statutory arrest authority. *See Orellana v. Nobles Cty.*, No. CV 15-3852 ADM/SER, 2017 WL 72397, at *9 (D. Minn. Jan. 6, 2017) (holding that County's arrest of Plaintiffs' on an immigration detainer was unauthorized in part because it exceeded the limits of ICE's own warrantless arrest authority); *see also Gonzalez* Pltffs. Motion for Summary Judgment, Doc. 247-1 at 21-25 (arguing that arrests on detainers exceed ICE's warrantless arrest authority).

The County acknowledges that it held inmates for 48 hours *plus* weekends and holidays,[6] resulting in detentions of up to 5 days, and sometimes longer, with no probable cause review until two days *after* ICE assumed custody (often resulting in detentions of 7 days before a probable cause review took place). *See* Dkt. 275, Defs' Statement of Genuine Disputes, pp. 12 – 19, Fact Nos 24-27.[7]

There can be no dispute that the Fourth Amendment requires some review of the probable cause determination (even if not by a judicial officer). *See* Dkt. 273, pp. 2-3; *see also,* Dkt. 96, 9/9/16 Class Cert. Order (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991)) ("Under the Supreme Court's direction in *McLaughlin*, generally a probable cause determination made within forty-eight hours is reasonable."). Nor can there be any dispute that *Riverside*'s 48-hour rule represents the <u>outer limit</u> of permissible warrantless detentions in the criminal context. *Riverside v. McLaughlin*, 500 U.S. 44, 56, 57 (1991) (warrantless arrest of longer than 48 hours is presumptively unconstitutional; in such a case "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance."). The only question is whether the 48-hour rule applies to immigration detainers.

---

[6] ICE acknowledges that no probable cause review occurs until it takes custody, and often does not occur for up to 48 hours <u>after ICE takes custody</u>, in addition to the time (if any) that the LEA detained the individual based on the detainer. Dkt. 225, DHS Opp. to *Gonzalez*-Plaintiffs' MSJ, p. 4:2-4:18; *see also*, Dkt. 275, pp. 12-18, UMFs 24-28 (the LASD was aware that no probable cause determination occurred within 48 hours).

[7] The County admits that the LASD's failure to ensure inmates held on ICE detainers were brought before a magistrate within 48 hours was not due to an emergency or need to complete administrative tasks, Dkt. 275, p. 14, Fact. No. 25. LASD also admits that, in its view, "it had no legal obligation to ensure that inmates held solely on ICE detainers were brought before a judge or magistrate within 48 hours. *Ibid* at p. 16, Fact No. 26. The LASD was aware that ICE did not provide a judicial determination of probable cause to inmate with immigration detainers within 48 hours of taking custody.

There is no logical reason why a detention of longer than 48 hours would be permissible in the immigration detainer context. Delay is reasonable **only** insofar as it is necessary to complete administrative tasks associated with the arrest and/or determination of probable cause. *Riverside*, 500 U.S. at 56-57. Delay for "delay's sake" or to investigate for the purpose of "gathering additional evidence to justify the arrest" is never reasonable, regardless of duration. Id. at 56. Here, the LASD has never asserted that probable cause determinations were delayed to perform necessary administrative tasks. To the contrary, the LASD acknowledges that did not intend to provide any probable cause review, and therefore never even implemented a mechanism to ensure that inmates promptly received probable cause determinations. Dkt. 275, Defs' Statement of Genuine Disputes, pp. 12 – 19, Fact Nos 24-27. Remarkably, neither the LASD nor ICE has explained why probable cause reviews could not be completed within 48 hours. According to the County, most detainers are issued when a person is first booked into custody and do not take effect until all criminal matters are resolved and the person is due for release. Under these circumstances, there is ample time for a probable cause review *before* the detainer takes effect.

Detentions of longer than 48 hours also violated due process. As the Supreme Court has explained, "[t]he consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). Despite the seriousness of the interest at stake, the procedures used to hold individuals on immigration detainers entail a high risk of erroneous deprivation. The government's interest in detaining class members for civil immigration violations would not be substantially burdened by requiring basic procedural safeguards. LASD already maintains procedures for ensuring that other inmates held on warrantless arrests are either provided a probable cause review or released within 48 hours. Dkt. 275, p. 19, Fact

9

28. It has pointed to no reason why the burden of providing such procedures to individuals held on ICE detainers would be prohibitive, or why its interest in detaining persons for civil immigration violations somehow outweighs its interests in detaining persons for criminal offenses such that providing comparable procedural protections would be overly onerous.

## C.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT UNDER CALIFORNIA CIVIL CODE § 52.1

This Court has previously ruled that the County's undisputed  practice of falsely characterizing immigration detainers as mandatory holds within its electronic databases, which initiated various consequences independent from over-detention, is sufficient to establish coercion for the purpose of section §52.1. *See Roy v. Cty. of Los Angeles*, 2015 WL 12582637, at *6-8 (C.D. Cal. Nov. 20, 2015). The County does not dispute that this characterization rendered class members ineligible to participate in various Alternatives to Custody Programs, including work release, electronic monitoring release, mental health treatment centers and substance abuse treatment centers. Should the Court find that Defendants immigration detainer practices violated class members' rights under the Constitution or California law, there is no dispute that Plaintiffs have satisfied the additional element necessary for liability under California Civ. Code §52.1.

The County's reliance on *Julian v. Mission Community Hospital* is misplaced. *Julian v. Mission Community Hospital*, 2017 WL 1709611 (Cal. App., May 2, 2017) stands for the uncontroversial proposition that a § 52.1 claim requires evidence of threats, coercion or intimidation, independent from the challenged constitutional violation. The Ninth Circuit has explicitly held that "section 52.1 does not require violence or threat of violence." *Moreno v. Town of Los Gatos*, 267 F.App'x 665, 666 (9th Cir. 2008); *see also Venegas v. Cty. Of L.A.,* 32 Cal. 4th 820, 843 (Cal. 2004) (§ 52.1 claim does not require allegation of violence).

10

### D.    BAIL & NO MONEY BAIL CLASS

#### 1.    *Undisputed Evidence Establishes that the LASD Designated Immigration Holds as No Bail Holds*

The County does not deny that ICE holds were entered into AJIS as "No Bail" holds, nor does it deny that the "no bail" designation was communicated to LASD employees and the public, creating the widespread understanding that inmates with ICE holds could *not* post bail. LASD in fact acknowledges confusion among its employees, admitting that at least some employees believed that immigration detainers barred inmates from posting bail.

The only reasonable interpretation of the "no bail" designation was that an inmate was ineligible for release on bail. Aside from immigration holds, the "No Bail" designation was used only for holds for which an inmate could *not* post bail (e.g. state prison, parole, warrants). The LASD does not point to a single type of hold, other than immigration holds, that were assigned the "No Bail" designation yet actually permitted the posting of bail. Nor does the LASD point to any evidence to dispute that persons with immigration detainers were, in practice, denied the opportunity to post bail. The County merely references database information reflecting that insignificant number of people posted bail. The database information does not negate the fact that the LASD communicated to its personnel and the public that immigration detainers were "no bail" holds.

The LASD speculates – without evidence – that arrestees with ICE holds would likely choose not to post bail because posting bail would result in transfer to immigration custody instead of release. There is no basis for this assertion. Arrestees with immigration detainers would not necessarily opt against posting bail because of the likelihood they would be transferred to ICE custody. Once transferred to ICE custody, many detainees would be able to secure release by posting bail in immigration proceedings or challenging the basis for their detainer.

11

### 2.     *All No Money Bail Class Members Had a Protected Liberty Interest in Release on Zero Dollars Bail*

Defendants argue that *convicted* prisoners have no right to release before expiration of their sentence. This argument incorrectly assumes that class members were convicted. The class is entirely comprised of (pretrial) arrestees whose charges corresponded to bail amounts of less than $25,000; no member of this class was incarcerated based on a conviction.[8] All members of this class were entitled to release on zero dollars bail pursuant to LASD's low-bail policy. Their right to release derives not only from the policy but also from the statutory right to be released on bail. *See, e.g.*, Cal. Const., Art. 1, section 12; Cal. Penal Code §§ 1268, 1269b, 1295(a); *Shakespeare v. City of Pasadena*, 40 Cal. Rptr. 863, 869 (Cal. App. 2d Dist. 1964); *Moore v. City & Cnty. of San Francisco*, 5 Cal. App. 3d 728, 736-37 (1970) (same).

### E.     CALIFORNIA LAW DOES NOT IMMUNIZE THE LASD'S CONDUCT

The County asserts immunity under several provisions of the California Government Code, none of which apply. These arguments have no impact on Plaintiffs' equitable relief claims.

*Government Code §820.6 – Apparent Authority of a Statute*: The County's reliance on Gov't Code §820.6 is misplaced. Because 8 CFR 287.7 does not even purport to authorize local law enforcement agencies to arrest persons on immigration detainers, it cannot provide the "apparent authority" necessary to establish immunity under §820.6. *Galarza*, 745 F.3d 634, 639–640 (3rd Cir. 2014) (holding that the plain language of § 287.7(d) "merely authorizes the issuance of

---

[8] The class specifically excludes arrestees who would have been exempted from this policy for other reasons (e.g. inmates with probation violation charges, state prisoners, persons with mental health holds, etc.).

1
2

detainers as *requests*."); Villars, 45 F.Supp.3d at 807; *Mercado v. Dallas County, Texas*, 2017 WL 169102, *6-9 (N.D.Tex. Jan. 17, 2017).

3
4
5
6
7
8
9
10
11
12
13
14
15

***Government Code §820.2 - Discretionary Immunity:*** Plaintiffs' state law claims are not predicated on LASD's detainer acceptance policies, but rather, on the LASD's thousands of unlawful arrests and over-detentions of persons with immigration detainers. Liability arises directly from the unlawful arrest and detention, neither of which constitute discretionary acts. California courts have expressly recognized that unlawful arrest does not constitute a "basic policy decision," but rather, an operational decision, to which Government Code 820.2 does not apply. *Gillian v. City of San Marino*, 147 Cal.App.4th 1033, 1051, *as modified on denial of reh'g* (Cal. Ct. App. 2007) (discretionary immunity does not apply to warrantless arrest unsupported by probable cause); *Liberal v. Estrada*, 632 F.3d 1064, 1085 (9th Cir. 2011 (§820.2 does not apply to false arrest claims "predicated on an officer's detaining a suspect without reasonable suspicion or probable cause").[9]

16
17
18

***Government Code §844.6 – Immunity for Injuries to Prisoners:*** The Court has already determined that §844.6 does not bar Plaintiffs' state law claims provided that class members were unlawfully detained or that their detention

19
20
21

22
23
24
25
26
27

9 See also, *Ogborn v. City of Lancaster,* 101 Cal. App. 4th 448, 461-62 (Cal. Ct. App. 2002) ("city code enforcement officer performed ministerial action in entering tenants' rented home and removing them before demolition, and thus did not have immunity from their claims for trespass and conversion."; because the code enforcement officer was merely implementing the nuisance abatement program, his presence at the property and order to demolish were "subsequent ministerial actions in the implementation of the basic decision."); *Ma v. City and County of San Francisco*, 95 Cal. App. 4th 488, 492 (Cal. Ct. App. 2002) (§820.2 did not immunize the county from its duty of care for the "manner in which [] 911 emergency service procedures were implemented," even if its basic design and content of were immunized).

28

13

continued beyond  the legally authorized time. Dkt. 88, pp. 9-12, Order re Defendants' MJP.

**III.    CONCLUSION**

For the forgoing reasons, Plaintiffs' Motion for Summary Judgment should be granted.

Dated: July 21, 2017        ACLU of SOUTHERN CALIFORNIA
                            KAYE, McLANE, BEDNARSKI & LITT, LLP
                            NATIONAL DAY LABORER ORGANIZING NETWORK
                            NATIONAL IMMIGRANT JUSTICE CENTER

                                By */s/ Lindsay Battles*_____

                                    Attorney for Plaintiffs

14