PETER J. ELIASBERG, SBN 189110
peliasberg@aclu-sc.org
AHILAN ARULANANTHAM, SBN 237841
aarulanantham@aclu-sc.org
PETER BIBRING, SBN 223981
pbibring@aclu-sc.org
JENNIFER PASQUARELLA, SBN 263241
jpasquarella@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, California 90017
Phone: (213) 977-9500
Facsimile: (213) 977-5299

BARRETT S. LITT, SBN 45527
blitt@kmbllaw.com
LINDSAY B. BATTLES, SBN 262862
lbattles@ kmbllaw.com
KAYE, MCLANE, BEDNARSKI & LITT
234 Colorado Boulevard, Suite 230
Pasadena, California 91101
Telephone: (626) 844-7600 x112
Facsimile: (626) 844-7670

Attorneys for Plaintiffs
(Other counsel not listed)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUNCAN ROY; *et al.*, <br> Plaintiffs, <br> vs. <br> COUNTY OF LOS ANGELES; *et al.*, <br> Defendants. <br><br> GERARDO GONZALEZ, *et al.*, <br> Plaintiffs, <br> vs. <br><br> IMMIGRATION AND CUSTOMS ENFORCEMENT, an entity; *et al.*, <br> Defendants. | Case No. CV 12-09012 BRO (FFMx) <br> Consolidated with: <br> Case No. CV 13-04416 BRO (FFMx) <br><br> [Honorable Beverly Reid O'Connell] <br><br> PLAINTIFFS' CONSOLIDATED OBJECTIONS TO DEFENDANTS' DECLARATIONS SUBMITTED IN SUPPORT OF CROSS SUMMARY JUDGMENT MOTIONS |

TO THE HONORABLE COURT, ALL INTERESTED PARTIES AND TO THEIR ATTORNEYS OF RECORD:

Plaintiffs hereby submit evidentiary objections to Defendants' Exhibit K and to the declaration of Ralph Feroli, Gregory Sivard, Joanne Sharp (Dkt. 244).

| **OBJECTIONS TO RALPH FEROLI DECLARATION** ||
|---|---|
| **Declaration Paragraph** | **Objections** |
| ¶23 "In fact, a prior version of the I-247 form used by ICE to issue detainers states: 'Federal regulations (8 CFR 287.7) **require** that you detain the alien for a period not to exceed 48 hours (excluding Saturdays, Sundays, and Federal holidays) to provide adequate time for INS to assume custody of the alien." | **FRE 401, 403**, relevance. The detainer form referenced in this paragraph is dated 4/1/1997 and was not used during the class period in this case, it is irrelevant and immaterial. To the extent this form reflects ICE's (prior) interpretation of 8 CFR 287.7, this interpretation is likewise irrelevant. ICE has admitted in this case that an immigration detainer does not purport to provide legal authority for an arrest. Dkt. 272-1, DHS Opp. to Gonzalez-Plaintiffs' SSUMF, ¶64 (undisputed that "ICE has argued in this case that a detainer only requests that a law enforcement agency maintain custody, but does not purport to provide legal authority for the arrest."); ¶162 (Defendants affirmatively state that "the detainer does not authorize, but merely requests, action by the LEA"). |
| ¶24 "First, while the LASD does not issue immigration detainers, the LASD has maintained a working relationship with ICE (and ICE's predecessor agency, the INS) for decades. Through this working relationship, which includes daily communication between ICE and the LASD, the LASD has developed a basic understanding of ICE's | **FRE 602**, lacks foundation, no personal knowledge; **FRE 401, 403**, relevance. LASD's purported understanding of ICE's requirements for issuing detainers is irrelevant and immaterial to any liability issue in this case.<br><br>Deputy Feroli has not demonstrated any personal knowledge or foundation necessary to support his vague and conclusory statement that the LASD has maintained a working |

1

| | |
|---|---|
| requirements for issuing detainers, and the practices they follow for doing so. This includes a requirement that ICE agents must have probable cause to believe that a subject inmate is a removable alien." | relationship with ICE and developed a basic understanding of ICE's requirements for issuing detainers.<br><br>Deputy Feroli's statements regarding LASD employees' knowledge regarding ICE's practices is based entirely on hearsay and unsupported by personal knowledge. **FRE 602, 801, 802.** The LASD has submitted no evidence to support the contention that its personnel would decline to honor a detainer unsupported by probable cause. To the contrary, until approximately May 2014, it was LASD's practice and policy to honor *all* immigration detainers indiscriminately, including "investigative detainers" which expressly disclaimed the existence of probable cause on their face. Dkt. 240-1, Battles Decl., Ex. M ("the ICE detainer SHALL BE honored" if TRUST Act criteria met); Ex. DD p. 11:3 – 11:23, 30(b)(6) Dep. of LASD Lt. Tri Hoang. |
| ¶24 "If LASD personnel (including personnel assigned to IRC who liaison with ICE) believed that ICE lacked probable cause to issue a detainer, the LASD will not (and would not have) honor the detainer or allow ICE to take custody of the subject inmate." | **FRE 401, 403, 602, 801, 802.** Deputy Feroli's statement that LASD personnel would not honor a detainer they believed was unsupported by probable cause is based entirely on speculation and/or hearsay, and unsupported by personal knowledge. Mr. Feroli's declaration does not indicate any personal knowledge as to what information ICE officials have communicated to LASD personnel regarding requirements for issuing detainers. |

## OBJECTIONS TO GREGORY SIVARD DECLARATION

| Declaration Paragraph | Objections |
|---|---|
| ¶¶3-7 (all) | **FRE 401, 403**, relevance. Mr. Sivard's explanation of how sentenced inmates' expected release date fluctuated as a result of |

2

| | | |
|---|---|---|
| | | early release/population management policies is irrelevant to any issue in this case. Contrary to his assertions, Plaintiffs' calculations of over-detentions are based solely on the time inmates remained incarcerated after their sentence *expired* (i.e. after their statutory maximum release date), not their expected release date under early release policies. *See* Dkt. 258, Sealed Decl. of Brian Kriegler, p. 10 (scheduled release date refers to the statutory maximum release date). |
| | ¶10 (all) | **FRE 602, 701, 702.** Mr. Sivard's assertion that it is not possible to accurately determine whether an inmate's release was delayed due to an immigration detainer lacks foundation and constitutes inadmissible lay/expert opinion testimony. Mr. Sivard fails to provide any specific criticism of the methodology used by Dr. Brian Kriegler in calculating over-detentions.<br><br>Defendants previously submitted the Rebuttal Expert Report of statistician Mark A. Gustafson (Dkt. 167-2), which largely supported Dr. Kriegler's methodology in calculating over-detentions. *See* Dkt. 169-8, Rebuttal Report of Brian Kriegler, pp. 4-6 (noting areas of agreement/non-contention). |
| | ¶11 (all) | Mr. Sivard's declaration conflicts with previous deposition testimony in which he stated that there was confusion among LASD employees regarding the "No Bail" notation, and as a result, some employees had falsely advised that inmates with ICE holds could not post bail. Dkt. 240-1, Battles Decl., Ex. L, Sivard 5/28/15 Dep. Tr., pp. 116:21-118:14.<br><br>Because the testimony of a 30(b)(6) witness is binding, parties may not use affidavits with conflicting statements on summary judgment. |

3

| | |
|---|---|
| | *In re Third Party Subpoenas Issued to Rambus, Inc.*, 2014 WL 12616734, at *2 (N.D. Cal., Dec. 5, 2014) (30(b)(6) testimony is binding); *Rainey v. American Forest & Paper Ass'n, Inc.*, 26 F.Supp.2d 82, 95(D. DC 1998) (corporate party "bound" by positions taken by its Rule 30(b)(6) witnesses and could not use conflicting affidavits on summary judgment motion). |
| ¶12 (all) | **FRE 401, 403**, relevance. Plaintiffs have never asserted that the AJIS database reflects attempts to post bail. |

## OBJECTIONS TO JOANNE SHARP DECLARATION

| Declaration Paragraph | Objections |
|---|---|
| ¶5 "I am further informed and believe that Plaintiffs contend that the LASD should entirely ignore ICE holds, and are seeking an injunction that would limit the LASD's ability to cooperate with ICE, including, without limitation, precluding the LASD from honoring ICE detainers in any respect, precluding the transfer of County jail inmates to ICE custody (on the basis of an ICE hold), and prohibiting the LASD from grating ICE agents access to County jail inmates." | **FRE 602**, lacks foundation, no personal knowledge; **FRE 401, 403**, relevance.<br><br>Chief Sharp's belief regarding the scope of injunctive relief sought in this case is unsupported by personal knowledge and irrelevant to the claims in this case. |
| ¶5 "As explained below, I strongly disagree with Plaintiffs' claims and I believe that the injunctive relief Plaintiffs seek, if granted would frustrate the LASD's ability to provide safe and effective law enforcement services to the County of Los Angeles and its residents." | Chief Sharp's opinion that she "strongly disagree[s] with Plaintiffs' claims" is vague, conclusory and irrelevant. It constitutes inadmissible lay/expert opinion as it does not explain the specific claims with which she disagrees, the reason for her disagreement or the facts informing her opinion. **FRE 701, 702, 401, 403.** |

4

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20 | | Chief Sharp's opinion that Plaintiffs' requested injunctive relief would "frustrate the LASD's ability to provide safe and effective law enforcement services…" rests entirely on speculation regarding the scope of Plaintiffs' requested injunctive relief. Plaintiffs have never requested injunctive relief prohibiting all cooperation between the LASD and ICE. **FRE 602**.<br><br>Chief Sharp's opinion that the requested injunctive relief would undermine law enforcement objectives constitutes irrelevant and inadmissible lay/expert opinion as it does not explain how injunctive relief would "frustrate" the LASD's ability to provide law enforcement services or what specific law enforcement objectives would be undermined. **FRE 701, 702, 401, 403.**<br><br>Injunctive relief in this case would solely preclude the LASD from detaining persons on immigration detainers – consistent with the LASD's policy and purported practice since approximately June 2014. The LASD has never asserted that failure to detain persons on immigration detainers beyond their release date has in any way frustrated its ability to provide effective law enforcement services. |
| 21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | ¶6 "…I believe existing California law – namely, the TRUST and TRUTH Acts, already provide significant protections to persons subject to immigration detainers. Specifically, it is my understanding that the TRUST Act allows local law enforcement agencies (including the LASD) to transfer custody of an individual subject to an immigration detainer | Chief Sharp's believe that existing laws provide significant protections to persons with immigration detainers is irrelevant and inadmissible. **FRE 401, 403**. Any protections provided by the TRUST and TRUTH Act are irrelevant to: (1) whether the LASD lacks legal authority to arrest persons on immigration detainers in the first instance; and, (2) whether the LASD must release persons who have not received a probable cause review within 48 hours. |

5

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9 | to federal authorities only if that individual has been convicted of certain qualifying offenses. It is also my understanding and belief that the TRUST Act imposes further regulations on local law enforcement including, for example, a requirement that persons subject to immigration detainers be provided with notice of the existence of the detainer, and their right to decline to be interviewed by ICE." | |
| 10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | ¶7 "It is my understanding that Plaintiffs in this matter seek an order from the Court that would prohibit the LASD from cooperating in any respect with ICE. I believe strongly that such an order, if entered, would be detrimental to public safety and would erode the public's trust and confidence in the LASD. A blanket prohibition of any cooperation between the LASD and ICE would increase the likelihood of a significant expansion of the tracking and enforcement activities of ICE agents throughout the County. Such enforcement activities would lead to ICE's casting of a wide net over the County of Los Angeles and surrounding communities, which would, in turn, lead to ICE apprehending and detaining those not originally the target of enforcement priorities. The likely result of these activities will be the significant and appreciable loss of | Chief Sharp's belief regarding the injunctive relief requested in this case lacks foundation and is unsupported by personal knowledge. **FRE 602.** At no time have Plaintiffs requested an order prohibiting the LASD from "cooperating in any respect with ICE." Plaintiffs do, however, seek injunctive relief prohibiting the LASD from detaining persons on immigration detainers without lawful authority. Since June 2014, the LASD has not detained persons beyond their release date, meaning that the injunctive relief requested in this case would be consistent with the LASD's current practices.<br><br>Chief Sharp's opinion that the injunctive relief requested in this case would be detrimental to public safety constitutes irrelevant and inadmissible lay/expert opinion testimony, which is unsupported by facts and evidence in this case. **FRE 602, 701, 702, 401, 403.** There is no factual basis for her opinion that a "prohibition of any cooperation" would increase the enforcement activities of ICE, causing ICE to cast an even wider net over Los Angeles County, and in turn, eroding the public's trust in the LASD. Chief Sharp's opinion is entirely unfounded in fact and logic. |

6

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8 | trust and cooperation with local enforcement by law-abiding members of the local community." | Her opinion is directly contrary to the position of the California Attorney General. As the California Attorney General has asserted, local law enforcement's entanglement with federal immigration enforcement destroys trust with immigrant communities and discourages their cooperation with police. Battles 7/7/17 Declaration, Ex. GG, pp. 2-6, Amicus Curiae Brief of California, *et al.*, *City and County of San Francisco v. Trump*, cv-00574-WHO, 6/28/17). |
| 9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | ¶8 "The prohibition of cooperation by the LASD with ICE will also prevent custody transfers between the LASD and ICE of persons subject to immigration detainers. Custody transfers allow for a safe, efficient, and controlled process by which ICE takes custody of a person subject to an immigration detainer. The absence of any such cooperation will only increase the scope and breadth of ICE's field activities as ICE agents attempt to bring subjects (who could have been transferred within a custodial setting) into federal custody for removal proceedings. Such activities, carried out in far less controlled environments, will invariably result in incidents where subjects attempt to flee or physically resist apprehension, and ICE agents' responsible uses of force. While these incidents may occur despite limited cooperation between the LASD and ICE, the wholesale elimination of such cooperation | **FRE 602**, Chief Sharp's opinion that a "prohibition of cooperation" will "prevent custody transfers" causing ICE to increase the scope and breadth of field activities, resulting in volatile situations requiring the use of force is based on sheer speculation. This statement constitutes irrelevant and inadmissible lay opinion testimony and is unsupported by sufficient facts for admission as expert testimony. **FRE 701, 702.** Chief Sharp has demonstrated no knowledge of ICE's enforcement operations and the various factors that could result in a decrease or increase of field activities; her opinion that increased field activities would result more frequent uses of force is likewise unsupported by facts or data. |

7

| | |
|---|---|
| can only increase the number of such potentially volatile incidents." | |
| ¶9 "The County has no plans or intention to revert back to the prior practice of detaining inmates beyond the expiration of their criminal sentence…" | **FRE 602**, lacks foundation, no personal knowledge. Chief Sharp has not demonstrated any basis for her statement that the County has no plans to revert to prior practices. |

**Defendants' Exhibit K:**

Exhibit K is an version of the I-247 detainer form, dated **April 1, 1997**. Because this form was not used during any class period, this is exhibit is irrelevant and immaterial to the legal issues in this case. **FRE 401, 403.**

Dated: July 21, 2017     KAYE, McLANE, BEDNARSKI & LITT, LLP

By ___/s/ Lindsay Battles___
Lindsay Battles
Attorney for Plaintiffs

8