CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director
COLIN A. KISOR
Deputy Director
EREZ REUVENI
Assistant Director
J. MAX WEINTRAUB
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
Washington, D.C. 20044
Tel.: (202) 305-7551
Fax: (202) 305-7000
Email: jacob.weintraub@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GERARDO GONZALEZ, *et al.*, | ) | Case No. CV12-9012 BRO(FFMx) |
| | ) | Consolidated with: |
| Plaintiffs, | ) | No. 2:13-cv-4416-BRO (FFMx) |
| | ) | |
| v. | ) | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION UNDER LR 7-18 AND NOTICE OF MOTION TO RECONSIDER THE COURT'S FEBRUARY 7, 2018 ORDER** |
| IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, | ) | |
| Defendants. | ) | DATE: Friday, April 13, 2018 |
| | ) | TIME: 1:30 p.m. |
| _____ | ) | JUDGE: Hon. André Birotte, Jr. |
| | | Courtroom: 7B |

1

# Table of Contents

***TABLE OF CONTENTS*** ............................................................................ *I*

***TABLE OF AUTHORITIES*** ..................... *ERROR! BOOKMARK NOT DEFINED.*

***I. INTRODUCTION*** ..................................................... *Error! Bookmark not defined.*

***II. LEGAL STANDARD*** .............................................. *Error! Bookmark not defined.*

***III. ARGUMENT*** ........................................................................................... *3*

    *A.*    *The Court should consider whether the Supreme Court's recent decision in Jennings mandates a different conclusion as to Federal Defendants' motion to dismiss under 8 U.S.C. § 1252(b)(9).* ................ *3*

    *B.*    *The Court should reconsider its conclusion that ICE violates 8 U.S.C. § 1357(a)(2) by issuing a detainer to aliens in Los Angeles County's custody because Los Angeles County cannot, as a matter of state law, in fact seize aliens subject to a detainer* ***Error! Bookmark not defined.***

        *1. The INA authorizes ICE to issue detainers* ......................................... *7*

            *a.*  *The bare issuance of a detainer alone does not violate the INA or the Fourth Amendment just because ICE does not make a finding of flight risk prior to issuing a detainer* ....... *9*

            *b. Because a warrantless arrest or seizure does not occur until Los Angeles County in fact arrests an alien subject to a detainer, and because Los Angeles cannot in fact arrest aliens subject to detainers, no seizure or warrantless arrest can occur* ........................................................................... *14*

        *2. Even if some statutory subclass members might be detained in jurisdictions that do cooperate with detainers, that is no basis to facially invalidate ICE's issuance of detainers based on section 1357(a)(2)* ........................................................................................ *16*

***IV. CONCLUSION*** ...................................................................................... *17*

# *TABLE OF AUTHORITIES*

## *<u>Cases</u>*

*Abel v. United States,*
  *362 U.S. 217 (1960)* ................................................................ *10*

*Akande v. U.S. Marshals Serv.,*
  *659 Fed. App'x 681 (2d Cir. 2016)* ..................................... *8*

*Arias v. ICE,*
  *2008 U.S. Dist. LEXIS 34072, *18-20 (D. Minn. 2008)* .............................. *5, 12*

*Arizona v. U.S,*
  *567 U.S. 387 (2012)* ................................................. *13*

*Brower v. Cty. of Inyo,*
  *489 U.S. 593 (1989)* ..................................................... *10, 11*

*Campos v. INS*
  *62 F.3d 311 (9th Cir. 1995)* ............................................ *12*

*Castellar v. Nielsen,*
  *2018 WL 786742 (S.D. Ca. Feb. 8, 2018)* ........................... *5*

*Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma,*
  *644 F. Supp. 2d 1177 (N.D. Cal. 2009)* ........................... *8*

*Daghlian v. DeVry Univ., Inc.,*
  *582 F. Supp. 2d 1231 (C.D. Cal. 2007)* ............................ *3*

*El Cenizo v. Texas,*
  *2017 WL 4250186 (5th Cir. Sept. 25, 2017)* ........................... *passim*

*Escobar v. Holder*,
  *2010 U.S. Dist. LEXIS 31875, *8-9 (D. Minn. March 9, 2010)* ........................ *5*

*J.E.F.M. v. Lynch,*
  *837 F.3d 1026, 1031-35 (9th Cir. 2016)* ...........................................*1*

*Jennings v. Rodriguez,*
*No. 15-1204, - --U.S. ---,138 S. Ct.* ........................................... *passim*

*Galarza v. Szalczyk*,
   2012 U.S. Dist. LEXIS 47023,*38 (D.N.J. 2012) ............................... 8

*Garcia v. Taylor*,
   40 F.3d 299 (9th Cir. 1994) ....................................... 12, 13

*Gangstee v. Cty of Sacramento*,
   567 F. App'x 500 (9th Cir. 2014) .................................... 11

*Hendrickson v. Thurston Cty.*,
   2008 U.S. Dist. LEXIS 100465, *32 (W.D. Wash. 2008) ................... 12

*Keil v. Spinella*,
   2011 U.S. Dist. LEXIS 1075, *8-9 (W.D. Mo. Jan. 6, 2011) ..................... 12, 16

*Los Angeles v. Lyons*,
   461 U.S. 95 (1983) .................................................... 7

*Martinez v. Holder*,
   2014 WL 351906, *2 (D.N.J. July 16, 2014) ............................ 5

*McLean v. Crabtree*,
   173 F.3d 1176 n.12 (9th Cir.1998) ..................................... 7

*Mendez v. Feather*,
   2016 WL 1618098, *2 (D. Or. March, 29, 2016) ......................... 5

*Mendez v. United States*,
   2009 U.S. Dist. LEXIS 116522, at *2 n.2 (S.D.N.Y 2009) ............... 8

*Mendia v. Garcia*,
   768 F. 3d 1011 (9th Cir. 2014) ...................................... 12

*Mendoza v. U.S. ICE*,
   849 F. 3d 408 (8th Cir. 2017) ........................................ 8

*Morales v. Chadbourne*,
   793 F. 3d 208  (1st Cir. 2015) ................................ 2, 8, 16, 17

*Nasious v. Two Unknown B.I.C.E. Agents*,
   657 F. Supp. 2d 1218, 1225 (D. Colo. 2009) ......................... 12

*Rosario v. New York City*,
   2013 U.S. Dist. LEXIS 69410 (S.D.N.Y. 2013) ........................ 8

iii

*Santos v. Frederick Cnty. Bd. of Comm'rs,*
    725 F. 3d 451 (4th Cir. 2013) ................................................................. 9

*Santoyo v. United States,*
    No. 16-855, 2017 WL 6033861 (W.D. Tex. Oct. 18, 2017) ....................... 7

*Sherman v. U.S. Parole Comm'n,*
    502 F.3d 869 (9th Cir. 2007) ................................................................. 10

*Tejeda-Mata v. INS,*
    626 F.2d 721, 725 (9th Cir. 1980) ......................................................... 10

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.,*
    709 F. Supp. 2d 821 (C.D. Cal. 2010) .................................................... 3

*United States v. Al Nasser,*
    555 F.3d 722 (9th Cir. 2009) ................................................... 10, 11, 12

*United States v. Carlos Gomez-Robles,*
    No. 17-730, 2017 WL 6558595 (D. Ariz. Nov. 28, 2017) ......................... 8

*United States v. Juarez-Velasquez,*
    763 F.3d 430 (5th Cir. 2014) ................................................................. 13

*United States v. Lucas,*
    499 F.3d 769 (8th Cir. 2007) ................................................................. 10

*United States v. Ovando-Garzo,*
    752 F.3d 1161 (8th Cir. 2014) ................................................................. 9

*United States v. Salerno,*
    481 U.S. 739 (1987) ............................................................................ 16

*Zolicoffer v. United States Dep't of Justice,*
    315 F.3d 538 (5th Cir. 2003) ................................................................ 12

## Federal Statutes

8 U.S.C. § 1103(a)(3) ............................................................................................... 7

8 U.S.C. § 1225(b) ................................................................................................... 3

8 U.S.C. § 1226(a) ................................................................................................ 3, 7

8 U.S.C. § 1226(c) ................................................................................................ 3, 7

8 U.S.C. § 1231(a) ................................................................................................... 7

8 U.S.C. § 1252(a)(1) ............................................................................................... 4

8 U.S.C. § 1252(b)(9) ....................................................................................... passim

8 U.S.C. § 1357(a)(2) ....................................................................................... passim

8 U.S.C. § 1357(d)(1) ............................................................................................... 8

28 U.S.C. § 2241 ................................................................................................... 13

## Federal Regulations

8 C.F.R. § 287.7 ................................................................................................. 5, 7

## State Regulations

Cal. Gov't Code § 7282.5(a) ........................................................................ 2, 14, 15

Cal. Gov't Code § 7284.6(a)(1)(B) ....................................................................... 14

# I.    **INTRODUCTION**

On February 7, 2018, this Court denied Federal Defendants' motion to dismiss Plaintiffs' action for lack of subject-matter jurisdiction, finding that 8 U.S.C. § 1252(b)(9) did not apply here because the "subclasses remaining in the Gonzalez action consist of individuals who were not subject to ongoing removal proceedings and were subject to detainers that were not based upon a final order of removal signed by an immigration judge."  ECF No. 346 at 30.  In so finding, the Court held that "Plaintiffs' claims here do not 'arise from' removal proceedings because the Gonzalez Plaintiffs were not subject to ongoing removal proceedings at the time that ICE issued detainers against them, and the detainers were not based upon a final order of removal signed by a judge."  *Id.* (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031-35 (9th Cir. 2016). On February 27, 2018, however, the Supreme Court clarified the scope of 8 U.S.C. § 1252(b)(9) and, without explicitly addressing detainers, suggested its application to the issuance of a detainer in *Jennings v. Rodriguez*, No. 15-1204, --- U.S. ---, 138 S. Ct. 830 (2018).  In *Jennings*, five justices agreed that section 1252(b)(9) is not limited only to situations seeking "review of an order of removal," as this Court previously determined, but also precludes jurisdiction over "challeng[es to] . . . any part of the process by which their removability will be determined," and, as relevant here, "challeng[es to] the *decision to detain them in the first place* or to seek removal."  *Id.* at 841 (emphasis added). Applying this determination to the instant action, the Court should reconsider its February 7, 2018 decision and grant Federal Defendants' motion to dismiss.

In addition, the Court should also reconsider its decision to grant Plaintiffs' motion – and to deny Federal Defendants' motion – for summary judgment as to Plaintiffs' Statutory Subclass claims.  The Court found for Plaintiffs on that claim, concluding that if ICE issued detainers to those in the

1

Statutory Subclass without making any assessment of flight risk, it violated 8 U.S.C. section 1357(a)(2), which permits ICE to make warrantless arrests only if it has determined that the individual is "likely to escape before a warrant can be obtained for his arrest." ECF 346 at 35-36. The Court held that "[a]n ICE agent is required to have probable cause to issue a warrantless detainer." *Id.* at 32 (citing *Morales v. Chadbourne*, 793 F. 3d 208, 211 (1st Cir. 2015). But in reaching this conclusion, the Court did not consider binding California law, including SB 54, effective January 1, 2018, and the TRUST Act, effective January 1, 2014, which prohibits localities in California from detaining aliens in response to detainer requests from ICE, unless the alien has been convicted of certain specified felonies. Cal. Gov. Code § 7282.5(a). That failure to consider the impact of these California laws was error, because California law does not authorize seizures based on detainers, so no such warrantless arrest can occur. And if no such warrantless arrest can occur, then ICE does not violate any provision of the INA or the Fourth Amendment in issuing detainers, especially where the bare issuance of a detainer without more will not impact the liberty interests of any class member absent further action by Los Angeles County.

Accordingly, the Court should grant the Government's motion for reconsideration and dismiss the action in its entirety for lack of subject-matter jurisdiction under 8 U.S.C. §1252(b)(9). In the alternative, the Court should grant the Government's motion for reconsideration and grant summary judgment in the Government's favor as to the Statutory Subclass.

## II.   MOTION TO RECONSIDER

Pursuant to Local Rule 7-18, a motion for reconsideration may be made on the grounds of "(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such

2

decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision." C.D. Cal. L.R. 7-18; *see also TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 821, 839 (C.D. Cal. 2010). Whether to grant a motion for reconsideration under Local Rule 7-18 is a matter within the court's discretion. *See Daghlian v. DeVry Univ., Inc.*, 582 F. Supp. 2d 1231, 1251 (C.D. Cal. 2007)

## III.   ARGUMENT

The Court should grant reconsideration for two reasons. First, the Supreme Court's decision in *Jennings*, issued February 27, 2018, presents a change of law occurring after the time of this Court's decision on February 7, 2018. *See* C.D. Cal. L.R. 7-18. Second, the court did not consider the impact of California law, specifically SB 54, and the TRUST Act, on whether the bare issuance of a detainer, without more, could ever cause a warrantless arrest or seizure by Los Angeles County. The Government (and the County) raised both provisions to the Court's attention prior to its decision, so these constitute material facts presented to the Court before such a decision. *See id.*

**A. The Court should consider whether the Supreme Court's recent decision in *Jennings* mandates a different conclusion as to Federal Defendants' motion to dismiss under 8 U.S.C. § 1252(b)(9).**

*Jennings* requires reconsideration of this court's denial of the Government's motion to dismiss because after *Jennings*, any challenge to a "decision to detain" an alien "in the first place" must be raised in removal proceedings, if at all, and then, in the Court of Appeals in the first instance.

In *Jennings*, the Court held that aliens detained pursuant to 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) are not entitled to bond hearings after six months of detention under those statutes. *See* Jennings, 138 S. Ct. at 842-48. In reaching that conclusion, however, five justices also rejected the notion that

3

section 1252(b)(9) does not apply to claims in cases such as the one Plaintiffs bring here.

Justice Alito, writing for himself and Chief Justice Roberts and Justice Kennedy, found that section 1252(b)(9) did not preclude jurisdiction in the case before the Court.  However, Justice Alito further explained that section 1252(b)(9) is not limited only to situations seeking "review of an order of removal," but also precludes jurisdiction over "challeng[es to] . . . any part of the process by which their removability will be determined," *and*, as relevant here, "challeng[es to] *the decision to detain them in the first place or to seek removal*." *Jennings*, 138 S. Ct. at 841 (emphasis added).  Justice Thomas, writing for himself and Justice Gorsuch, agreed, concluding that section 1252(b)(9) is *not limited* "to challenges to the removal order itself," and reaches, at the least, the scenarios contemplated by Justice Alito's plurality opinion.  *Id.* at 854.  Only Justices Breyer, Ginsburg, and Sotomayor accepted the position advanced by Plaintiffs here, ECF 2, that section 1252(b)(9) "does not bar challenges to detention."  ECF No. 280 at 19; see *Jennings*, 138 S. Ct at 876 (8 U.S.C. § 1252(b)(9) "by its terms applies only with respect to review of an order of removal under § 1252(a)(1)") (internal marks omitted) (Breyer, J., dissenting).  Thus, in *Jennings*, five justices have rejected the contention that section 1252(b)(9) only applies if an alien seeks review of a "final removal order[]." *See* ECF 106-1 at 12-16.  Instead, section 1252(b)(9) forecloses district court challenges to "any part of the process by which [an alien's] removability will be determined," and "challeng[es to] the decision to detain them in the first place or to seek removal." *Jennings*, 138 S. Ct. at 841; *accord id.* at 854 (Thomas, J., concurring).

The decision to issue a detainer is by its very nature a decision to "detain [an alien] in the first place" or to "seek [their] removal." *Jennings*, 138 S. Ct. at

4

841.  A detainer reflects ICE's determination that it has probable cause to believe that an alien is removable from the United States and indicates ICE's intent to take custody of that alien immediately upon their release from custody pursuant to state charges, in order to begin removal proceedings.  *See* 8 C.F.R. § 287.7; Forms I-247 and I-247A; ICE Policy No. 10074.2 ¶ 2.6.  The detainer is *the* mechanism by which ICE ensures it may detain removable aliens not in their custody and ensure their removal from the United States. Indeed, for that reason, even prior to *Jennings*, multiple courts had found, these provisions make clear that Count I must be brought in the administrative review process.[1]  After *Jennings*, it is now clear that challenges to decisions to "detain [an alien] in the first place" or to "seek [their] removal" must be raised in removal proceedings and cannot be litigated in federal district court.

Another recent decision, issued the same day as this Court's, further examined the scope of 8 U.S.C. § 1252(b)(9).  The court in *Castellar v. Nielsen*, 2018 WL 786742 (S.D. Ca. Feb. 8, 2018), analyzed section 1252(b)(9), in the context of a challenge to the time before detained aliens are presented for their initial hearings. The plaintiffs in that case raised a Fourth Amendment claim, seeking injunctive relief that would require the government to present aliens in custody to an immigration judge within 48 hours of arrest, where they would

---

[1] *See, e.g.*, *Mendez v. Feather*, 2016 WL 1618098, *2 (D. Or. March, 29, 2016) (detainer challenge "inextricably intertwined with his pending removal proceedings" and there is no "final order of removal"); *Martinez v. Holder*, 2014 WL 351906, *2 (D.N.J. July 16, 2014) (no jurisdiction if "immigration detainer exists but has not been the product of administrative hearings, let alone a final order"); *Escobar v. Holder*, 2010 U.S. Dist. LEXIS 31875, *8-9 (D. Minn. March 9, 2010) (challenge to "detainer . . . not ripe because ICE has not yet attempted to remove him"); *Arias v. ICE*, 2008 U.S. Dist. LEXIS 34072, *18-20 (D. Minn. 2008) (finding claims similar to Plaintiff's here subject to section 1252(b)(9)).

receive a probable cause determination. *Id.* at *14. The court reasoned that the presentment that the plaintiffs sought would require confirmation of the charges of removability by the immigration judge, which would "inevitably" bleed into aspects of the initial removal hearing. *Id.* Thus, the court concluded that there was an insufficient basis to conclude that the plaintiff's claims were "independent of or collateral to" removal proceedings. *Id.* The court also rejected the plaintiffs' argument that their claims were independent of the "substantive merits" of removal hearings, and thus excepted from the statute. *Id.* Accordingly, the court held that the plaintiffs' claims were barred under sections 1252(a)(5) and (b)(9). *Id.*

The Supreme Court is simply the most recent court, therefore, to have clarified that section 1252(b)(9) explains that individuals must bring claims directed at the Federal Defendants, such as those Plaintiffs assert here, in the administrative review process and then to the courts of appeal, if at all. Accordingly, as these same claims bear upon, and are inextricably intertwined with, any ultimate resolution of Plaintiffs' removability, this Court lacks subject-matter jurisdiction over Plaintiffs' claims. This Court, then, should reconsider its February 8, 2018, decision and find that section 1252(b)(9) mandates dismissal of Plaintiffs' claims.

**B.**   **The Court should reconsider its conclusion that ICE violates 8 U.S.C. § 1357(a)(2) by issuing a detainer to aliens in Los Angeles County's custody because Los Angeles County cannot, as a matter of state law, in fact seize aliens subject to a detainer**

The Court should also reconsider its conclusion that ICE cannot issue a detainer consistent with 8 U.S.C. 1357(a)(2) if it does not first make a determination the alien is "likely to escape before a warrant can be obtained for his arrest." As explained below, the bare issuance of a detainer, without more, does not affect in any way the liberty of the alien subject to the detainer unless

the law enforcement entity receiving the detainer in fact arrests the alien in response to that detainer. Here, California law since January 1, 2018, has not permitted *any* locality in California to seize based on a detainer, so it was inappropriate for the court to declare that such seizures as a general, prospective matter, violate the INA or, implicitly, the Fourth Amendment. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (explaining that court may not issue prospective declaratory or injunctive relief if plaintiff cannot demonstrate "a real and immediate threat that he again" will suffer the same alleged harm). Because the Court did not consider whether any employee of Los Angeles County can in fact seize an alien in response to a detainer, or if any member of the statutory subclass could be seized based on a detainer depending on the relevant law of the jurisdiction in which that alien is detained, it erred in concluding that the bare issuance of a detainer constitutes a warrantless arrest under section 1357(a)(2).

      1.  The INA authorizes ICE to issue detainers

In accordance with the INA, ICE may issue a detainer to request cooperation from a state or local law enforcement agency "either to hold the prisoner for the agency or to notify the agency when release [] is imminent." *McLean v. Crabtree*, 173 F.3d 1176, 1185 n.12 (9th Cir.1998) (defining detainer as a request "to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent" and holding that DHS "has authority to lodge a detainer against a prisoner"); *See* 8 C.F.R. § 287.7(a) (describing release notification), (d) (describing temporary detention request). This detainer "authority," authorized by 8 U.S.C. §§ 1103(a)(3), 1226(a) and (c), 1231(a), and 1357(d), "predates the INA and has long been viewed as implied by federal immigration enforcers' authority to arrest those suspected of being removable." *Santoyo v. United States*, No. 16-855, 2017 WL 6033861, at *3 (W.D. Tex. Oct.

7

18, 2017); *see Mendez v. United States*, 2009 U.S. Dist. LEXIS 116522, at *2 n.2 (S.D.N.Y 2009) (similar); *Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma*, 644 F. Supp. 2d 1177, 1199 (N.D. Cal. 2009) (similar); *see also Akande v. U.S. Marshals Serv.*, 659 Fed. App'x 681, 684 (2d Cir. 2016) ("the immigration detainer would appear . . . to justify an additional 48 hours of detention beyond the expiration of the prisoner's term"); *United States v. Carlos Gomez-Robles*, No.  17-730, 2017 WL 6558595, at *3 (D. Ariz. Nov. 28, 2017) ("federal law provides both the authority for DHS to issue immigration detainers and for law enforcement agencies, like the Pima County Jail, to detain those identified in those detainers," and relying on a final order of removal as the county's basis for probable cause); *Mendoza v. U.S. ICE*, 849 F.3d 408, 419 (8th Cir. 2017) ("County employees . . . reasonably relied on [ICE agent's] probable cause determination for the detainer"); *Rosario v. New York City*, 2013 U.S. Dist. LEXIS 69410, at *12 (S.D.N.Y. 2013) (noting INA "authority to detain [alien] under [] detainer"); *Galarza v. Szalczyk*, 2012 U.S. Dist. LEXIS 47023,*38 (D.N.J. 2012) (to issue a detainer pursuant to § 1357, there must be probable cause to believe that the subject of the detainer is (1) an "alien" who (2) "may not have been lawfully admitted to the United States" or (3) "otherwise is not lawfully present in the United States." 8 U.S.C. § 1357(d)(1)); *cf. Morales v. Chadbourne*, 793 F.3d 208, 218  (1st Cir. 2015) (explaining that ICE must have "probable cause" of an alien's removability to issue a detainer under the INA requesting a local law enforcement agency temporarily detain an alien).

Courts have thus recognized that federal law permits ICE to issue a detainer with federal notification and detention requests. *See, e.g*., *El Cenizo v. Texas*, 2017 WL 4250186, at *1-2 (5th Cir. Sept. 25, 2017) (staying district-court injunction to the contrary and holding that defendants were "likely to succeed on the merits" of their claim that such cooperation is consistent with

federal law); *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 467 (4th Cir. 2013) (such cooperation is lawful when "at ICE's express direction"); *United States v. Ovando-Garzo*, 752 F.3d 1161, 1164 (8th Cir. 2014) (cooperation without "written agreement" lawful if "not unilateral"). Because, as a number of courts have concluded, Congress has established in the INA that ICE is authorized to issue a detainer, Defendants are entitled to summary judgment on Plaintiff's claims relating to the Statutory Subclass.

> a. The bare issuance of a detainer alone does not violate the INA or the Fourth Amendment just because ICE does not make a finding of flight risk prior to issuing a detainer

The Court's conclusion to the contrary overlooked material facts and therefore was erroneous in two key respects. First, the Court's inaptly relied on section 1357(a)(2) to suggest that ICE may not issue a detainer without a finding that the alien is likely to abscond before ICE can secure a warrant.  In 8 U.S.C. § 1357(a)(2) Congress provided that an immigration officer may effect a warrantless arrest "if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." This provision has no application to ICE's actions in this case because the only ICE action challenged is the decision to issue a *detainer*. Indeed, ICE has not effected and does not effect a warrantless arrest by issuing a detainer, and in fact, as the record makes clear, when ICE does take custody of any alien subject to a detainer, it does so with an I-200 warrant of arrest. It is well-settled that an executive immigration officer can constitutionally make the necessary probable-cause determination without any presentment to a judicial officer. "[L]egislation giving authority to the Attorney General or his delegate to arrest aliens pending deportation proceedings under an administrative warrant, not a judicial warrant within the

9

scope of the Fourth Amendment," has existed "from almost the beginning of the Nation." *Abel v. United States*, 362 U.S. 217, 234 (1960); *see Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 876-80 (9th Cir. 2007) (immigration warrants may be issued "outside the scope of the Fourth Amendment's Warrant Clause"); *United States v. Lucas*, 499 F.3d 769, 777 (8th Cir. 2007) (same). Thus, there can be no plausible argument that any federal government official effected a warrantless arrest in violation of section 1357(a)(2) merely by issuing a Form I-247 detainer request to Los Angeles County.

That is further demonstrated by the fact that ICE does not violate the Fourth Amendment simply by lodging a detainer with a state or local entity. *See, e.g.,Tejeda–Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980) ("The phrase 'has reason to believe' [in § 1357] has been equated with the constitutional requirement of probable cause."). The Fourth Amendment prohibits unreasonable "seizures." For the government to effect a new Fourth Amendment seizure of a person, it must newly constrain that person's liberty by "means intentionally applied." *United States v. Al Nasser*, 555 F.3d 722, 729 (9th Cir. 2009). It is not enough that the person does not feel "free to leave." *Id.* The government must exert its authority "willful[ly]" to restrain or constrain the person. *Brower v. Cty. of Inyo*, 489 U.S. 593, 596-97 (1989). As the Supreme Court has put the point, "implicit in the word 'seizure'" is the understanding that a "detention [] be willful." *Id.* Thus, a Fourth Amendment "seizure" does not occur as the result of "an unknown act" or of "the accidental effects of otherwise lawful government conduct." *Id*. Instead, there must be "an intentional acquisition of physical control" by a government actor. *Id*. A person is seized under the Fourth Amendment only when he is "meant to be stopped by a particular law enforcement action" and that action is "the very instrumentality set in motion or put in place in order to achieve that result." *Al Nasser*, 555 F.3d

10

at 731. The government action alleged to be a seizure must be "designed to produce" the seizure. *Brower*, 489 U.S. at 598.

Applying the rule that a Fourth Amendment seizure occurs only when the governmental actor *intends* to effect the seizure, the Ninth Circuit has emphasized that it is not enough that a restraint on someone's liberty be "governmentally 'caused' in a 'but for' sense." *Al Nasser*, 555 F.3d at 730 (collecting cases). Thus, in *Al Nasser* this Court rejected the argument that police had seized a driver when the driver stopped his car upon seeing police at the side of a road, but the police did not intentionally seek to stop the driver. *Id.* This Court explained: "[B]ecause the means that led [defendant] to stop—the [police's] lights, stopped vehicles and officer directing traffic—were not 'means intentionally applied' [by police] to bring about the stop of [Defendant's] car," that stop was not a Fourth Amendment seizure. *Id.*

Even an intentional act is not enough to cause a seizure under the Fourth Amendment. A government actor must take an intentional act that is itself designed and intended to seize someone. Thus, in *Gangstee v. Cty of Sacramento*, 567 F. App'x 500 (9th Cir. 2014), the Ninth Circuit rejected the argument that a police officer's "intentional deployment of a canine" effected a Fourth Amendment seizure. *Id.* at 501. Even if the dog were to restrain someone's movement, the officer would have effected a seizure of that person only if the person was "the 'object of the detention.'" *Id.* (quoting *Brower*, 489 U.S. at 596). When a police officer does not "intentionally deploy[] his canine in an effort to seize" the person, he does not effect a seizure. *Id.*

To be sure, the Ninth Circuit has held that a plaintiff established Article III standing, at the motion-to-dismiss stage, by alleging that "but for [an] immigration detainer" he would have been able to "post[] bail with the assistance of a bail bondsman," even where the detainer only "indirectly" caused

11

1     the detention. *Mendia v. Garcia*, 768 F.3d 1011, 1013 (9th Cir. 2014). But that

2     does not help Plaintiffs here. Although *Mendia* deemed sufficient for standing,

3     at the motion-to-dismiss stage, an allegation of but-for causation, *Brower*, *Al*

4     *Nasser*, and the other authorities discussed above make clear that but-for

5     causation alone is not sufficient to establish a Fourth Amendment seizure on the

6     merits. *See, e.g., Al Nasser*, 555 F.3d at 730.

7         Thus, cases addressing on the merits the question whether a detainer

8     effects a Fourth Amendment seizure have emphasized that the detainer does not

9     itself cause the seizure, and that such a seizure instead requires a further,

10    intentional act. *See Keil v. Spinella*, 2011 U.S. Dist. LEXIS 1075, *8-9 (W.D.

11    Mo. Jan. 6, 2011) ("[D]etainer alone does not cause imprisonment or a seizure

12    by ICE. Rather, a seizure only occurs when the agency to which the detainer was

13    issued turns custody over to ICE."); *Nasious v. Two Unknown B.I.C.E. Agents*,

14    657 F. Supp. 2d 1218, 1223, 1225 (D. Colo. 2009), *aff'd*, 366 F. App'x 894

15    (10th Cir. 2010) ("Plaintiff's detention was imposed by the state of Colorado

16    based on Plaintiff's pending criminal charges; it was not imposed by or in any

17    way impacted by the ICE detainer," and "could not, as a matter of law,

18    constitute a restraint on or deprivation of a liberty"); *see also Hendrickson v.*

19    *Thurston Cty.*, 2008 U.S. Dist. LEXIS 100465, *32 (W.D. Wash. 2008)

20    (rejecting Fourth Amendment claim premised on assertion that existence of a

21    warrant on a separate charge "influenc[ed] third-party bail bondsmen to refuse to

22    issue a bond to assist the individual in posting bail"). Indeed, for that reason, in

23    the related habeas context the Ninth Circuit has held that the issuance of a "bare

24    detainer letter alone does not sufficiently place an alien in INS custody to make

25    habeas corpus available." *Garcia v. Taylor*, 40 F.3d 299, 303 (9th Cir. 1994);

26    *accord Campos v. INS*, 62 F.3d 311, 314 (9th Cir. 1995) (same, finding no APA

27    claim available); *Zolicoffer v. United States Dep't of Justice*, 315 F.3d 538, 540

28

(5th Cir. 2003) (collecting cases, including *Campos*, and agreeing that absent an order of removal, "prisoners are not 'in custody' for purposes of 28 U.S.C. § 2241 simply because the INS has lodged a detainer against them"). It follows *a fortiori* that the issuance of a detainer alone, without further action by ICE, does not "seize" an alien. Rather, a seizure occurs, if at all, when ICE *arrests* the alien either upon service of a lawful Form I-200, administrative warrant of arrest, or through its warrantless arrest authority if (for example) an alien is in fact determined to be a flight risk prior to a warrant being procurable.

Likewise, the mere fact that ICE requested through a detainer to be notified of an alien's impending release, or even for the alien to be detained at some future point in time so ICE may take custody, does not render the issuance of a document titled a detainer a seizure, let alone an unreasonable one. A federal request for notification is "simply an administrative mechanism that ensure[s] that upon the completion of his state criminal matter, [the alien] [will] be transferred to federal custody." *United States v. Juarez-Velasquez*, 763 F.3d 430, 436 (5th Cir. 2014). Such requests "do not limit [the receiving agency's] discretion" in any way. *Garcia*, 40 F.3d at 303. "[S]tate charges [remain] the impetus for the entire duration of [any] pretrial detention" in such circumstances. *Juarez-Velasquez*, 763 F.3d at 436. A locality's "responding to requests for information about when an alien will be released from their custody," in turn, is a permissible act of cooperation with the federal government and raises no Fourth Amendment—or other constitutional—concerns. *Arizona v. U.S.*, 567 U.S. 387, 410 (2012).  Indeed, the Fifth Circuit recently affirmed this proposition, staying an injunction of a state law that, among other things, required cooperating with federal requests for notification of an alien's release date, because "defendants are likely to succeed on the merits" of their claim that such cooperation does not violate the Fourth Amendment. *City of El Cenizo,*

13

1  *Texas*, 2017 WL 4250186, at \*1-2.

2      In short, because the mere *issuance* of a detainer by ICE, absent any

3  further action by ICE to effect a seizure, like serving an arrest warrant or taking

4  physical custody of the alien upon release from state custody, is not a seizure for

5  Fourth Amendment purposes and does not constitute a warrantless arrest under

6  section 1357(a)(2).

7          b.  Because a warrantless arrest or seizure does not occur until Los

8              Angeles County in fact *arrests* an alien subject to a detainer, and

9              because Los Angeles cannot in fact arrest aliens subject to

10             detainers, no seizure or warrantless arrest can occur

11     Given the foregoing, any alien subject to a detainer would only have been

12 seized, or arrested without warrant, when Los Angeles County officers

13 themselves effected a seizure or warrantless arrest. But Los Angeles County

14 officers could not have affected such an arrest in the first place. As explained

15 previously, two specific California laws, SB 54 and the TRUST Act, forbid local

16 enforcement in the state of California from seizing any aliens based on a

17 detainer alone.

18     Since January 1, 2014, all local law enforcement entities in the state of

19 California have been barred from arresting an alien based on an ICE detainer

20 unless the alien has been convicted of a limited set of certain felonies. Cal. Gov't

21 Code § 7282.5(a).  And since January 1, 2018, no locality in California can

22 cooperate with immigration detainer detention requests as categorical matter

23 without exception. *See id.* § 7284.6(a)(1)(B) forbidding "[d]etaining an

24 individual on the basis of a [detainer] request").

25     This Court did not cite, or even address, these provisions when issuing its

26 decision. That constituted error warranting reconsideration under this Court

27 rules. To start, as discussed above, Sec. II B., it was error to conclude that ICE

28

14

violates the INA or the Fourth Amendment by issuing a detainer "without first determining whether those individuals were 'likely to escape before a warrant could be obtained.'" ECF 346 at 35-36.  But even assuming that this legal conclusion might be correct, it was still error to conclude that the bare issuance of a detainer will result in a "warrantless civil deportation arrest[]," given that such arrest can only occur if, and only if, Los Angeles County in fact seizes an alien based on a detainer. *See supra*. But as just discussed, California law does not permit such warrantless arrests as a categorical matter since January 1, 2018, and as a general matter since January 1, 2014.  Indeed, the Court itself recognized as such, observing that law enforcement agencies in California, for instance, must comply with a California law, known as AB4 (The Trust Act), Cal[ifornia] Gov[ernment] Code[] section 7282.5(a), which limited the circumstances in which law enforcement agencies could honor immigration detainers." ECF No. 346 at 9 (citing ECF No. 275 ¶ 21).  And this Court further noted, "Beginning in June 2014, LASD adopted policies and practices aimed at reducing the time that it detains an individual on an ICE detainer and enabling transfer to ICE without extending a person's detention beyond the time [he or she] is eligible for release."  *Id*. (citing ECF No. 275 ¶ 22).

Thus, as to Los Angeles County and any class-member detained by the County since January 1, 2014, but no later than June 2014, and any class-member who at the time the operative complaint was filed was subject to state custody in California or subject to an ICE detainer in California, an ICE detainer, without more, could not have caused any seizure or warrantless arrest, because local law enforcement was without authority to actually seize someone based on a detainer. Because no recipient of an ICE detainer in the custody of a law enforcement entity in California could in fact *seize* an alien subject to a detainer as a matter of California law, there is no plausible argument that the

15

mere issuance of a detainer by ICE, without more, effects a warrantless arrest at the moment of issuance. Instead, "a seizure only occurs when the agency to which the detainer was issued turns custody over to ICE," *Keil v. Spinella*, 2011 U.S. Dist. LEXIS 1075, *8-9 (W.D. Mo. Jan. 6, 2011), *or* the alien is "kept in custody for a new purpose *after* she was entitled to release." *Morales*, 793 F.3d at 217. Neither situation obtains when ICE issues a detainer to a law enforcement entity who cannot in fact "turn custody over to ICE" or keep an alien "custody for a new purpose *after* she was entitled to release."

   2.   Even if some statutory subclass members might be detained in jurisdictions that do cooperate with detainers, that is no basis to facially invalidate ICE's issuance of detainers based on section 1357(a)(2)

Finally, the fact that some statutory subclass members might not be detained in California or other jurisdiction that bar cooperation with detainers does not warrant a finding that ICE *always* violates section 1357(a)(2) when issuing a detainer without making a finding that an alien is a flight risk. It is blackletter law that that a statutory enactment may not be invalidated based on the possibility that the statute may not be applied lawfully to some subset of individuals subject to that statute. Such possibilities cannot sustain a facial challenge to government action, as they cannot possibly show that there is "no set of circumstances" in which ICE's issuance of detainers does not cause a warrantless arrest by a law enforcement entity. *United States v. Salerno*, 481 U.S. 739, 745 (1987).

California, of course, is not the only State with law enforcement agencies that refuse to honor detainers.  This is significant because the Statutory Subclass is not limited to individuals in California, but, rather, describes individuals "who are subject to an immigration detainer issued by an ICE agent located in the

Central District of California . . . ."  ECF No. 346 at 6.  Plaintiffs have asserted that ICE's Pacific Enforcement Response Center (PERC) (*see* ECF No. 346 at 4), located within this District, issues detainers to 42 States.  ECF No. 281 at 4, ¶ 1.  Plaintiffs cannot plausibly dispute that hundreds of law enforcement agencies around the country refuse to honor ICE detainers.  *See, e.g.*, http://www.chicagotribune.com/news/opinion/letters/ct-dont-blame-local-police-for-bad-immigration-policies-20150723-story.html (last visited March 12, 2018) (indicating that as of July 23, 2015, "more than 300 jurisdictions throughout the country refuse to honor detainers."); *see also* http://apps.washingtonpost.com/g/documents/local/ice-declined-detainer-outcome-report/2381/ (ICE Declined Detainer Outcome Report shows that from January 28, 2017, through February 3, 2017, law enforcement agencies from at least 12 States other than California had refused to honor ICE detainers).  Unlike the situation in *Morales*, therefore, an ICE officer – whether at the LA field office or at the PERC – issuing a detainer cannot expect that the detainer issued would necessarily "result[] in the detention of an individual."  *Morales,* 793 F.3d at 217.  Simply issuing a detainer today, therefore, does not, as a facial matter, equate to an arrest, and does not, therefore, trigger the provisions of 8 U.S.C. § 1357(a)(2), even assuming, *arguendo*, that this provision has any application before a local law enforcement entity in fact effects a warrantless arrest.  Accordingly, the Court should grant reconsideration for the additional reason that it did not consider whether ICE can issue detainers without causing a warrantless arrest in any "set of circumstances." 481 U.S. at 745.

## IV.   CONCLUSION

Under Local Rule 7-18(a), a court should grant a motion for reconsideration if there is a change of law after the court issued its decision.  The Supreme Court's *Jennings* decision presents this Court with a clarification of the

application of 8 U.S.C. § 1252(b)(9) to the instant case, and the Court should, therefore, grant this motion to reconsider that decision.  Similarly, because the Court applied the holding of *Morales*, without acknowledging that the ICE officers here face a dramatically different scenario as to the likelihood that a law enforcement agency would arrest an individual based solely on the issuance of a detainer, the Court should reconsider the Statutory Subclass decision under Local Rule 7-18(c).

DATED:      March 12, 2018          Respectfully Submitted,


                                    */s/ J. Max Weintraub*
                                    J. MAX WEINTRAUB, VSB 36188
                                    Senior Litigation Counsel
                                    United States Department of Justice
                                    Civil Division
                                    Office of Immigration Litigation
                                    District Court Section
                                    P.O. Box 868, Ben Franklin Station
                                    Washington, D.C. 20044
                                    Tel.: (202) 305-7551
                                    Fax: (202) 305-7000
                                    Email: jacob.weintraub@usdoj.gov

                                    *Counsel for Federal Defendants*